**Sanjay Wadhwa**
**Adam Grace**
**Kevin P. McGrath**
**Danielle Sallah**
**Jess Velona**
**Neal Jacobson**
**Attorneys for the Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
200 Vesey Street
New York, New York 10281
(212) 336-1100

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>          v.<br><br>PLATINUM MANAGEMENT (NY) LLC;<br>PLATINUM CREDIT MANAGEMENT, L.P.;<br>MARK NORDLICHT;<br>DAVID LEVY;<br>DANIEL SMALL;<br>URI LANDESMAN;<br>JOSEPH MANN;<br>JOSEPH SANFILIPPO; and<br>JEFFREY SHULSE;<br><br>          Defendants. | Civil Case No. 16-6848 (DLI) (VMS)<br><br>ECF CASE |

**SECURITIES AND EXCHANGE COMMISSION'S AND RECEIVER'S JOINT REPLY IN FURTHER SUPPORT OF THEIR EMERGENCY MOTION FOR (I) AN ORDER MODIFYING THE PLATINUM TRO AND RECEIVER ORDER, (II) ORDER TO SHOW CAUSE, AND (III) TEMPORARY RESTRAINING ORDER**

## Table of Contents

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...................................................................................................................................2

    A.    The Fraudulent Transfer Action Should Be Enjoined and the Bankruptcy TRO Dissolved Because the Funds Subject to the Bankruptcy Court TRO Are Subject to This Court's Jurisdiction ...........................................................................2

    B.    The Court Should Deny the Bankruptcy Litigation Trustee's Request to Lift the Litigation Stay of the Fraudulent Transfer Action ..................................7

CONCLUSION..................................................................................................................................9

## Table of Authorities

**Page(s)**

**Cases**

*Begier v. IRS*,
  496 U.S. 53 (1990) ....................................................................................................................3

*In re Colonial Realty Co.*,
  980 F.2d 125 (2d Cir. 1992) .....................................................................................................4

*In re Enron Corp.*,
  2006 WL 2400096 (Bankr. S.D.N.Y., June 1, 2006) ...............................................................3

*Matter of Haber Oil Co.*,
  12 F.3d 426 (5th Cir. 1994) ..................................................................................................5, 6

*In re MortgageAmerica Corp.*,
  714 F.2d 1266 (5th Cir. 1983) ..........................................................................................3, 5, 6

*NLRB v. Martin Arsham Sewing Co.*,
  873 F.2d 884 (6th Cir. 1989) ....................................................................................................3

*In re Pan American Corp.*,
  950 F.2d 839 (2d Cir. 1991) .....................................................................................................4

*Rosenberg v. Collins*,
  624 F.2d 659 (5th Cir. 1980) ....................................................................................................6

*S.E.C. v. Byers*,
  592 F. Supp. 2d 532 (S.D.N.Y. 2008) ......................................................................................8

*S.E.C. v. Credit Bancorp, Ltd.*,
  290 F.3d 80 (2d Cir. 2002) .......................................................................................................7

*S.E.C. v. Forex Asset Mgt., LLC*,
  242 F.3d 325 (5th Cir. 2001) ....................................................................................................7

*S.E.C. v. Wencke*,
  742 F.2d 1230 (9th Cir. 1984) ..................................................................................................8

*In re Southmark Corp.*,
  49 F.3d 1111 (5th Cir. 1995) ....................................................................................................3

*In re Trailer Source, Inc.*,
  555 F.3d 231 (6th Cir. 2009) ....................................................................................................6

## Table of Authorities
## Continued

**Page(s)**

*United States v. Durham*,
    86 F.3d 70 (5th Cir. 1996) ...............................................................................................7

**Statutes**

11 U.S.C. § 362(a) ............................................................................................................5

11 U.S.C. § 547 .................................................................................................................3

11 U.S.C. § 547(b) ............................................................................................................3

11 U.S.C. § 548 .................................................................................................................3

## PRELIMINARY STATEMENT

Plaintiff Securities and Exchange Commission (the "SEC") and Bart M. Schwartz, the Receiver in this case, respectfully submit this joint reply to the Bankruptcy Litigation Trustee's January 19, 2017 response (the "Response") to the January 9, 2017 joint motion ("Joint Motion") of the SEC and Receiver for emergency relief to prevent the Bankruptcy Litigation Trustee[1], a single creditor of the Receivership Entities, from interfering with this Court's jurisdiction over Receivership Property and the ability of the Receiver to manage Receivership Property for the benefit of all investors and creditors of the Receivership Entities. The bulk of the Bankruptcy Litigation Trustee's Response is devoted to a recitation of the merits of his fraudulent transfer claim and the legal argument under Fifth Circuit law not applicable to this New York receivership, that the allegedly fraudulently transferred funds, despite having been commingled with other funds and spent such that they can no longer be traced by him, are nonetheless property of the Black Elk bankruptcy estate and not subject to this Court's jurisdiction.

For purpose of the Joint Motion the SEC and Receiver will assume that the Bankruptcy Litigation Trustee's factual allegations regarding the merits of the fraudulent transfer claim are correct.[2] Even accepting the factual allegations as true, there is no basis for the Court to permit the Fraudulent Transfer Action to proceed. But for the handwritten addition to the Receiver Order by SEC staff that was intended to preserve rights available to the Receiver and would not

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the January 9, 2017 Declaration of Receiver Bart M. Schwartz in Support of Joint Motion of Securities and Exchange Commission and Receiver for Modification of the Platinum TRO and Receiver Order and for Emergency Relief ("Schwartz Declaration").

[2] The SEC's Complaint and the Indictment in the parallel criminal case allege substantially similar facts to the facts alleged in the Fraudulent Transfer Action in addition to many other facts regarding a larger scheme to defraud by the defendants in this case. The SEC also does not dispute the fact that the Bankruptcy Litigation Trustee has cooperated with SEC staff in this matter and is grateful for his cooperation. However, these circumstances do not justify treatment of the Black Elk estate's claim in a manner different than any other claim against Receivership Estate.

have been agreed to in retrospect, a standard litigation stay would be in place. If this Court does not modify the Receiver Order, the Bankruptcy Court TRO may well extend into a full-fledged preliminary injunction and effectively prevent all ordinary-course spending by the Receiver. The Trustee's requested relief undermines the jurisdiction of this Article III court over the Receivership Assets, deprives the Receiver of critical funds necessary to administer the Receivership, and threatens to harm creditors and investors who also have large claims against the Receivership Estate.

## ARGUMENT

**A.     The Fraudulent Transfer Action Should Be Enjoined and the Bankruptcy TRO Dissolved Because the Funds Subject to the Bankruptcy Court TRO Are Subject to This Court's Jurisdiction**

As set forth in the SEC's and Receiver's joint memorandum of law (the "Joint Memorandum"), this Court has very broad equitable powers to both impose receiverships in securities fraud cases and to safeguard receivership assets, including by enjoining legal actions in other courts that may interfere with the Court's jurisdiction over the assets. (Joint Mem. at 4-6). The Bankruptcy Litigation Trustee's primary legal argument in his Response is that the funds subject to the Bankruptcy TRO are property of the Black Elk bankruptcy estate and not part of the Receivership Assets subject to this Court's jurisdiction. (Response at 12-16)

The SEC and Receiver disagree with that position. Most of the cases relied on by the Bankruptcy Litigation Trustee do not stand for the proposition for which the Bankruptcy Litigation Trustee cites them – whether a bankruptcy estate *maintains* an equitable interest in fraudulently transferred property held by the transferee before obtaining a fraudulent transfer judgment against the transferee. Rather, those cases deal with the issue of whether, *at the time*

2

*of the pre-bankruptcy transfer*, the debtor-transferor held a property interest in the transferred property sufficient for the bankruptcy trustee to state a fraudulent transfer claim.[3]

The only cases cited by the Bankruptcy Litigation Trustee for the proposition that the bankruptcy estate *maintains* an interest in the fraudulently transferred property held by the transferee are the Fifth Circuit's decision *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983), and the Sixth Circuit's decision in *NLRB v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887-88 (6th Cir. 1989), which relies on *MortgageAmerica*. As the Bankruptcy Litigation Trustee acknowledges, the Second Circuit does not follow *MortgageAmerica*. Under Second Circuit law, a debtor does not maintain a property interest in property fraudulently transferred by

---

[3] In *Begier v. IRS*, 496 U.S. 53 (1990) (Response at 12), the Supreme Court addressed whether a bankruptcy trustee may avoid as preferential under Section 547 of the Bankruptcy Code payments of withholding and excise taxes made by a debtor to the Internal Revenue Service before the bankruptcy filing. *Id.* at 54. Subject to certain conditions, Section 547(b) of the Bankruptcy Code permits the bankruptcy trustee to avoid as preferential "any transfer of the property of the debtor." *Begier*, 496 U.S. at 56-57. The question before the Supreme Court was whether, at the time of the transfers to the IRS, the debtor held a property interest in the funds sufficient to state a preference claim or whether the funds were held in trust for the IRS and therefore not avoidable by the bankruptcy trustee. The Supreme Court held that "property of the debtor subject to the preferential transfer provision is best understood as that property *that would have been* part of the estate had it not been transferred before the commencement of the bankruptcy proceedings." *Id.* at 58 (emphasis added). The Supreme Court held that the funds in question were held by the debtor in trust for the IRS and the transfers were therefore not avoidable by the bankruptcy trustee. *Id.* at 67. The Supreme Court did not address the issue raised by the Bankruptcy Litigation Trustee – whether the bankruptcy estate *maintains* a property interest in the transferred funds held by the transferee sufficient to give the bankruptcy court jurisdiction over those funds. Neither the Receiver nor the SEC dispute that the funds whose transfer the Bankruptcy Litigation Trustee is seeking to avoid were the property of Black Elk *at the time of* the pre-bankruptcy transfer.

The bankruptcy court in *In re Enron Corp.*, 2006 WL 2400096 (Bankr. S.D.N.Y., June 1, 2006) (Response at 13) dealt with a similar issue – whether the Enron bankruptcy estate could avoid as preferential or fraudulent payments made by one of its debtor subsidiaries. *Enron*, 2006 WL 2400096 at *1. The court noted that to state a claim, Section 547 of the Bankruptcy Code governing preferential payments and Section 548 governing fraudulent transfers both require a showing that the pre-bankruptcy transfer in question was of "an interest of the debtor in property." *Id.* at *4. Citing *Begier*, the court held that property of the debtor is that property that would have been part of the estate had it not been transferred before commencement of the bankruptcy case. *Id.* at *4-5. The *Enron* court did not address whether the bankruptcy estate *maintained* a property right in the transferred funds held by the transferee.

In *In re Southmark Corp.*, 49 F.3d 1111 (5th Cir. 1995) (Response at 14), the Fifth Circuit was faced with the question of whether the *Southmark* bankruptcy estate could avoid a prebankruptcy transfer of funds by one of its subsidiaries. *Southmark*, 49 F.3d at 1113-1114. Although *Southmark* analyzed the issue by referring to whether or not the funds transferred were "property of the debtor's estate," the only issue before the Fifth Circuit was whether the funds were the property of Southmark or its subsidiary *at the time of* the pre-bankruptcy transfer and not whether the Southmark estate *retained* a property interest in the funds held by the transferee. *Id.* at 1114-1117. *Southmark* therefore does not stand for the proposition for which the Bankruptcy Litigation Trustee cited it, and is at best dicta.

3

a debtor that is in the hands of the transferee. *In re Colonial Realty Co.*, 980 F.2d 125, 131-32 (2d Cir. 1992) (disagreeing with the Fifth Circuit's analysis and holding that the debtor does not maintain a property interest in fraudulently transferred property held by the transferee).

Notwithstanding the clear law in the Second Circuit (and other Circuits) that a debtor does *not* maintain any property interest in fraudulently transferred property, the Bankruptcy Litigation Trustee urges the Court to apply Fifth Circuit law "as a matter of comity" "because the bankruptcy court presiding over the [Fraudulent Transfer Action] first exercised jurisdiction over [the Receivership Entities] and their property." (Response at 15). The Court should decline the Bankruptcy Litigation Trustee's request for two reasons.

*First*, comity does not require the application of Fifth Circuit law. The Second Circuit has made clear that principles of comity are not implicated even when a district court sitting in the Second Circuit applies Second Circuit federal law to a case transferred from another Circuit whose interpretation of federal law is inconsistent with the Second Circuit's interpretation. *In re Pan American Corp.*, 950 F.2d 839, 847 (2d Cir. 1991) ("We agree that a transferee court should be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor circuit."). Accordingly, principles of comity do not require the New York Receivership Court to apply any law other than Second Circuit law when determining its own jurisdiction over Receivership Property.

*Second*, contrary to the Bankruptcy Litigation Trustee's assertion, the bankruptcy court has *not* exercised jurisdiction over the property in question. The bankruptcy court did not determine any property rights when it entered the Bankruptcy Court TRO. In fact, in his emergency application for the Bankruptcy Court TRO, the Bankruptcy Litigation Trustee never even argued to the bankruptcy court that the funds in the accounts over which he sought the TRO

4

were property of the Black Elk bankruptcy estate. *See* Schwartz Decl. Ex. C. The Bankruptcy Litigation Trustee first raised this argument in his Response to the Joint Motion pending before this Court.

The rationale underlying the Fifth Circuit's decision in *MortgageAmerica* also does not apply to the situation facing this Court. The issue in *MortgageAmerica* was whether, after a bankruptcy filing, the Bankruptcy Code's Section 362(a) automatic stay applied to an individual creditor's lawsuit to recover a fraudulent transfer of the debtor's property for its own benefit to the detriment of the entire bankruptcy estate. The Fifth Circuit held that the automatic stay applied, reasoning that while the transferee may have colorable title to the property, the equitable interest remains in the debtor so that creditors may attach or execute judgment upon it as though the debtor had never transferred it. *MortgageAmerica*, 714 F.2d at 1274. The Fifth Circuit reasoned that "[t]his result also does the most to further the fundamental bankruptcy policy of equitable distribution among creditors," because it allows the bankruptcy trustee to recover the property for the benefit of all creditors and avoids a race to the courthouse." *MortgageAmerica*, 714 F.2d at 1275-76.

Here, the Bankruptcy Litigation Trustee is attempting to do to the Receivership Estate what the individual creditor in *MortgageAmerica* was attempting to do to the bankruptcy estate – jump ahead of other creditors for its own benefit. If the Court allows the Fraudulent Transfer Action to proceed and the Bankruptcy Court TRO to remain in place, then the Bankruptcy Litigation Trustee will obtain an improper benefit to the detriment of the Receivership's other creditors and investors, the exact result that the Fifth Circuit sought to avoid in *MortgageAmerica*. *See Matter of Haber Oil Co.*, 12 F.3d 426, 436 (5th Cir. 1994) (noting the temptation for unsecured creditors to argue that their unsecured claims are eligible for the

5

remedy of a constructive trust to gain priority over other unsecured creditors); *see also In re Trailer Source, Inc.*, 555 F.3d 231, 236 (6th Cir. 2009) ("[A] primary purpose of both receivership and bankruptcy proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors.").

Even if the Court determines to follow Fifth Circuit law instead of Second Circuit law and apply *MortgageAmerica*, it should still enjoin the Fraudulent Transfer Action and dissolve the Bankruptcy Court TRO for two reasons.

*First*, the Bankruptcy Litigation Trustee has not identified any property or proceeds of property held by the Receivership Entities that can be traced back to the funds that were the subject of the Fraudulent Transfer Action. Therefore, there is no property to which an "equitable" interest can attach. *Rosenberg v. Collins,* 624 F.2d 659, 663 (5th Cir. 1980) ("A constructive trust is usually found where property is acquired by fraud. A constructive trust, however, can only attach to some identifiable property which can be traced back to the original property acquired by fraud.") (internal citations omitted). To the contrary, those funds were transferred immediately to non-receivership entities, and the Trustee cannot carry his burden of proving that the assets he seeks to freeze are directly traceable to the alleged Black Elk scheme. Reply Declaration of Receiver Bart M. Schwartz in Support of Joint Motion of Securities and Exchange Commission and Receiver for Modification of the Platinum TRO and Receiver Order and for Emergency Relief ("Schwartz Supp. Decl.") ¶ 8; *Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 436 (5th Cir. 1994) ("The burden of establishing the existence of the constructive trust rests on the claimant, as does the burden of identifying or tracing the trust property.").

*Second*, even if the Bankruptcy Litigation Trustee could identify property in which the Black Elk estate claims an equitable interest, that interest would be defeated by the fact of the

6

Receivership under either Second Circuit or Fifth Circuit law. *S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80, 89 (2d Cir. 2002) ("[W]hatever beneficial interest [the creditor] might have in the transferred shares, arising from a constructive trust, does not defeat the equitable authority of the District Court to treat all the fraud victims alike."); *S.E.C. v. Forex Asset Mgt., LLC*, 242 F.3d 325, 332 (5th Cir. 2001) (holding that district court overseeing receivership had discretion to deny application of equitable constructive trust principles to creditor's claim in favor of pro rata distribution for all of receiverships investors and creditors); *United States v. Durham*, 86 F.3d 70, 72-73 (5th Cir. 1996) (holding that district court administering equitable distribution plan may deny constructive trust claim in favor of equitable distribution of assets even if assets can be traced to specific investors). The Receiver is presently aware of over $85.5 million in purported PPCO and PPLO secured and unsecured debt (not including Black Elk, claims of employees and insiders or investors), over $33 million in unpaid redemptions, and the potential for investors to assert claims for over a half-billion dollars. Schwartz Supp. Decl. ¶ 14.

**B. The Court Should Deny the Bankruptcy Litigation Trustee's Request to Lift the Litigation Stay of the Fraudulent Transfer Action**

If the Court holds that the litigation stay applies to the Fraudulent Transfer Action, the Bankruptcy Litigation Trustee asks the Court in the alternative to lift the stay to permit the Fraudulent Transfer Action to proceed. The Court should deny the Bankruptcy Litigation Trustee's request. The factors a court considers in determining whether to lift an injunction against litigation are:

> (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from stay is made; and (3) the merit of the moving party's underlying claim.

7

*S.E.C. v. Byers*, 592 F. Supp. 2d 532, 536-7 (S.D.N.Y. 2008) (Chin, J.) (citing *S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984)), *aff'd*, 609 F.3d 87 (2d Cir. 2010).

As to the first factor, it is the Receivership Estate, and not the Black Elk bankruptcy estate that will suffer substantial injury if the Bankruptcy Court TRO is granted as a full preliminary injunction.  The Receiver may be unable to administer the Receivership Assets for the benefit of all of the Receivership's investors and creditors.  The Receiver will be forced to subject administration of the Receivership to the whims of the Bankruptcy Litigation Trustee – a result that is anathema to the jurisdiction of this Court, the underlying purpose of the Receivership to benefit all investors and creditors, and the duties of the Receiver.

As to the second factor, it is clearly very early in the Receivership and the Receiver is still in the process of getting his footing in this case.  Although Mr. Schwartz was hired as a consultant by certain of the Receivership Entities in the summer of 2016 to alleviate the immediate concerns of the SEC staff, he had no power to control the Receivership Entities and was completely dependent upon the cooperation of management at the time (who he has since terminated) to obtain information regarding the Receivership Assets.  Litigating the Fraudulent Transfer Action would require extensive document discovery, at least 20 depositions, and over 2500 hours of attorney time.  Declaration of Christopher D. Lindstrom in support of Joint Motion of Securities and Exchange Commission and Receiver for Modification of the Platinum TRO and Receiver Order and for Emergency Relief ("Lindstrom Decl.") ¶¶ 5, 8, 10, 14.  Such a drain on the resources of the Receivership Estate at so early a stage in the receivership proceedings is untenable.

As to the third factor, the SEC and the Receiver do not dispute for purposes of the current motion the factual allegations underlying the Fraudulent Transfer Action.  However, because the Receiver has a duty to act for the benefit of all creditors and investors, and the SEC's mission is the

8

protection of investors, the Receiver and the SEC will not object to a claim by the Bankruptcy Litigation Trustee against the Receivership Estate in an amount that is supported by competent evidence. There is therefore no need for the Bankruptcy Litigation Trustee to dissipate Black Elk's and the Receivership's assets to continue litigating the merits of the Fraudulent Transfer Claim in the bankruptcy court.

## CONCLUSION

For the foregoing reasons, the Commission and the Receiver respectfully request that the Court grant their motion to (i) modify the Platinum TRO Order and the Receivership Order, (ii) enter the Order to Show Cause, (iii) enter the Temporary Restraining Order, and (iii) grant such other and further relief as is just.

Dated: January 24, 2017
       New York, New York

                                    Respectfully submitted,

                                    By: /s/Neal Jacobson
                                         Sanjay Wadhwa
                                         Adam Grace
                                         Kevin McGrath
                                         Neal Jacobson
                                         Jess Velona
                                         Danielle Sallah
                                         SECURITIES AND EXCHANGE
                                          COMMISSION
                                         New York Regional Office
                                         Brookfield Place
                                         200 Vesey Street, Suite 400
                                         New York, NY 10281-1022
                                         (212) 336-0095 (Jacobson)
                                         Jacobsonn@SEC.gov

                                         -and-

                                    By: /s/ Celia Goldwag Barenholtz
                                         Celia Goldwag Barenholtz

9

>Alan Levine
>Abigail Belknap Seidner
>Proposed Counsel to Bart M. Schwartz, Receiver
>Cooley LLP, 1114 Avenue of the Americas,
>New York, NY 10036
>(212) 479-6330
>cbarenholtz@cooley.com