UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,  :
                Plaintiff,  :
    -v-  :  No. 16-cv-6848 (DLI)(VMS)
PLATINUM MANAGEMENT (NY) LLC;  :
PLATINUM CREDIT MANAGEMENT, L.P.;  :
MARK NORDLICHT;  :
DAVID LEVY;  :
DANIEL SMALL;  :
URI LANDESMAN;  :
JOSEPH MANN;  :
JOSEPH SANFILIPPO; and  :
JEFFREY SHULSE,  :
                Defendants.  :
------------------------------------X

**APPLICATION FOR ORDER APPROVING RECEIVER'S FEES
AND THE RETENTION OF GUIDEPOST SOLUTIONS LLC
*NUNC PRO TUNC* TO THE APPOINTMENT DATE**

Bart M. Schwartz, the duly appointed Receiver in this action (the "Receiver"), applies to the Court for an order, substantially in the form attached hereto as Exhibit A, approving his fees and the retention of Guidepost Solutions LLC ("Guidepost") to advise, assist, and support the Receiver, *nunc pro tunc* to December 19, 2016, the date on which the Receiver was appointed (the "Application").

**Preliminary Statement**

1.    The Receiver seeks an order approving his fees and the retention of financial and investigative professionals to assist him in connection with carrying out his duties as Receiver. It is routine for a court-appointed Receiver to employ financial and accounting professionals, and the Receiver Order explicitly allows the Receiver to retain professionals upon application to this

Court. The Receiver seeks to retain Guidepost, a firm that provides financial, investigative, and consulting services, to assist him in his duties.

2. The Receiver seeks the Court's approval of Guidepost *nunc pro tunc* to his appointment date. It is routine for a court-appointed Receiver to ask professionals to begin work immediately on the understanding that Court approval for their retention will be sought on a *nunc pro tunc* basis. Here, as is often the case where the Securities and Exchange Commission ("SEC") moves for the appointment of a receiver to take control over assets on an emergency basis based on allegations that the previous managers committed fraud and otherwise violated federal securities laws, the Receiver was appointed with virtually no advance notice, and immediately confronted a host of urgent problems which required the assistance of financial, investigative, and other professionals. In accordance with the usual practice in such situations, and with the approval of the SEC, the Receiver, who is Chairman of Guidepost, asked Guidepost to begin work immediately on the understanding that he would later seek approval for Guidepost's retention *nunc pro tunc* to the date on which he was appointed. The Receiver now makes that Application.

3. The SEC supports and consents to the instant Application. Platinum Management (NY) LLC; Platinum Credit Management, L.P., and Mark Nordlicht, the defendants who are the named parties to the SEC's application for the appointment of a receiver and other emergency relief (the "Restraining Order Defendants") previously consented to the appointment of the Receiver, and have consented to this Application. The Receiver also sought the consent of the other defendants who have appeared in this case. Defendants Daniel Small, Joseph SanFilippo, and Jeffrey Shulse consent to the Application. Defendants David Levy and Joseph Mann requested more detail regarding the Application, which they were provided, and neither consented nor objected to the Application at the time of filing. Defendant Uri Landesman did not respond to

communications regarding the Application.

4. In support of this Application, the Receiver submits the Declaration of Bart M. Schwartz (the "Schwartz Declaration"), which is attached to this Application as Exhibit B. In further support of this Application, the Receiver shows the Court as follows:

## Jurisdiction and Venue

5. The Court has jurisdiction to consider this Application pursuant to Sections 20(b) and 22(a) of the Securities Act of 1933, 15 U.S.C. §§ 77t(b) & 77v(a), Sections 21(d), 21(e) and 27 of Securities Exchange Act of 1934, 15 U.S.C. §§ 78u(d), 78u(e) & 78aa, and 28 U.S.C. § 1331.

6. Venue of this action in this District is proper pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

## Background

7. On December 19, 2016, the U.S. Attorney for the Eastern District of New York unsealed an eight-count indictment (the "Indictment") against seven individuals who were formerly affiliated with a purportedly $1.7 billion hedge fund family based in New York ("Platinum"). The Indictment alleges that the defendants defrauded Platinum investors through, among other things, the overvaluation of assets, the concealment of severe cash flow problems, and the preferential payment of redemptions. The Indictment also charges four of the defendants with defrauding the independent bondholders of Black Elk Energy Offshore Operations, LLC ("Black Elk"), a portfolio company owned by Platinum, through a fraudulent offering document and diverting more than $95 million in proceeds to Platinum by falsely representing in the offering document that Platinum controlled approximately $18 million of the bonds when, in fact, Platinum controlled more than $98 million of the bonds.

8. On December 19, 2016, the SEC filed this action against the Restraining Order Defendants, and other individuals, asserting violations of the anti-fraud provisions of federal securities laws and seeking, among other relief, temporary and permanent injunctive relief, disgorgement of ill-gotten gains, imposition of civil penalties, and appointment of a receiver (the "Complaint") [Docket No. 1].

9. On December 19, 2016, the Court entered an Order to Show Cause and Temporary Restraining Order (the "Restraining Order") against the Restraining Order Defendants, granting certain specified relief to the SEC, including the appointment of the Receiver and granting him control over the assets of Platinum Credit, Platinum Partners Credit Opportunities Master Fund L.P.; Platinum Partners Credit Opportunities Fund (TE) LLC; Platinum Partners Credit Opportunities Fund (BL) LLC; Platinum Liquid Opportunity Management (NY) LLC; and Platinum Partners Liquid Opportunity Fund (USA) L.P. (collectively, the "Receivership Entities") [Docket No. 5].

10. On December 19, 2016 (the "Appointment Date"), the Court also entered the Order Appointing Receiver, approving the appointment of the Receiver to act for the Receivership Entities (the "Receiver Order") [Docket No. 6]. The Restraining Order Defendants consented to the appointment of the Receiver.

### The Terms of the Receiver Order

11. Under the terms of the Receiver Order, the Receiver was appointed to preserve the *status quo*, ascertain the extent of commingling of funds, ascertain the true financial condition of the Receivership Entities, prevent further dissipation of property and assets of those entities, make investments to preserve the value of the property owned by the Receivership Entities, prevent the encumbrance or disposal of property or assets of the Receivership Entities, preserve the books,

records, and documents of the Receivership Entities, be available to respond to investors inquiries, protect investors' assets, conduct an orderly wind down, including a responsible liquidation of assets and orderly and fair distribution of those assets to investors, and determine whether one or more of the Receivership Entities should undertake bankruptcy filings, among other things.

12. Further, under the Receiver Order, the Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation and distribution of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan") and is required to prepare a full report and accounting of the Receivership Estate within thirty (30) days after the end of each calendar quarter (the "Quarterly Status Report"). The Quarterly Status Reports must include: summaries of the operations of the Receiver; accounting of the cash on hand; a schedule of the Receiver's receipts and disbursements; descriptions of all known property owned by the Receivership; descriptions of liquidated and unliquidated claims held by the Receivership, including valuations of claims, proposed methods of enforcing such claims, reducing the claims to judgments, and collecting judgments; a summary of the status of the Receiver's investigation; a listing of all known investors and creditors and the amount of their investments; the status of investor and creditor claims proceedings; and the Receiver's recommendations for a continuation or discontinuation of the Receivership. The Receiver, in performing his duties, will keep the Court updated as to the status of the Receivership Entities and the actions he has done in the course of his role as Receiver.

13. In support of these powers and duties, Paragraph 33 of the Receiver Order authorizes and empowers the Receiver, subject to leave of Court, "to resume or commence . . . litigation" and to "investigate, prosecute, defend, intervene in or otherwise participate in" actions in any state, federal or foreign court or proceeding of any kind "as may in the Receiver's discretion,

and in consultation with SEC counsel, be advisable or proper to recover and/or conserve" property owned by the Receivership Entities. Paragraph 34 of the Receiver Order further authorizes, empowers, and directs the Receiver "to investigate the manner in which the financial and business affairs of the Receivership Entitles were conducted" and, with leave of this Court, "institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate."

14. Paragraph 49 of the Receiver Order empowers the Receiver to "solicit persons and entities ("Retained Personnel") to assist the Receiver in carrying out the duties and responsibilities described in [the Receiver Order]" subject to obtaining an Order of the Court authorizing such engagement.

15. Paragraph 50 of the Receiver Order provides that the Receiver and Retained Personnel are "entitled to reasonable compensation and expense reimbursement," subject to the prior approval of the Court.

### The Receiver's Task and Need for Guidepost Professionals

16. The Receiver has been given a tremendous task. As noted in the Complaint, in Platinum Management's March 30, 2016 Form ADV, Platinum Credit claimed to have approximately $590 million in assets under management in Platinum Partners Credit Opportunities Master Fund L.P. and its feeder funds (collectively, "PPCO"). PPCO is a master fund and has a number of kinds of different assets in its portfolio of investments, including operating entities involved in a variety of industries (*e.g.*, oil and gas, mining), investments in various ongoing litigations via litigation funding arrangements, and a portfolio of life insurance policies, to name but a few. Thus, not only does the Receiver need to administer the affairs of the hedge fund entities of which he is the Receiver, he must also administer the affairs of the portfolio companies that are

controlled by the Receivership Entities. In addition to pending and contemplated business transactions that those entities have, there are on-going litigations and bankruptcy proceedings relating to some of those entities for which the Receiver is now responsible. The Receiver is also charged with investigating the transactions the Receivership Entities entered into, and, if appropriate, bringing lawsuits against insiders and other third parties on behalf of the Receivership Entities. Financial and investigative professionals are needed to assist with these proceedings. Preparing the Quarterly Reports, Liquidation Plan, and dealing with the claims against the Receivership Estate will require the Receiver to obtain the assistance of financial professionals. Finally, some Platinum funds are in liquidation under the authority of the Grand Court of the Cayman Islands. Because Receivership Entities jointly own certain investments with those entities, and have other relationships, the Receiver will need the services of financial professionals in order to evaluate the Receivership Entities' interests in those arrangements, understand the value of those interests, and evaluate possible agreements entered into with the liquidators appointed in the Cayman Islands

## **Services to Be Provided by Guidepost**

17. The services of Guidepost are necessary to enable the Receiver to perform and exercise faithfully and confidently his rights, remedies, powers, duties, and responsibilities under the Receiver Order. Subject to further Order of the Court, the Receiver proposes to use Guidepost to render services including, but not limited to, the following:

 (a) To advise and assist the Receiver in performing and exercising his rights, remedies, powers, duties, and obligations under the Receiver Order;

 (b) To assist the Receiver in reviewing and analyzing the books and records of the Receivership Entities;

(c) To advise and assist the Receiver in connection with managing, controlling, operating, and maintaining the Receivership Entities;

(d) To advise and assist the Receiver in the review and analysis of any financial issues incident to any proposed sale or other disposition of or transaction involving property owned by the Receivership Entities;

(e) To advise and assist the Receiver in connection with the actual or potential sale, collection, or other disposition of or transaction involving any Receivership Entity assets and the closing of any such transactions;

(f) To advise and assist the Receiver and the Receiver's counsel in any investigation, litigation, deposition, examination, and document production as may be held or conducted in connection discharging the Receiver's duties as Receiver;

(g) To provide advice, support and assistance to the Receiver with respect to the proper receipt, disbursement, and accounting of funds from the sale or other disposition of any property owned by the Receivership Entities;

(h) To advise and assist the Receiver and the Receiver's counsel in connection with any affirmative litigation to recover funds paid by any Receivership Entity or to recover damages sustained by any Receivership Entity;

(i) To perform any and all other financial services necessary or desirable for the assistance and support of the Receiver in the performance and exercise of his rights, remedies, powers, duties and responsibilities under the Receiver Order.

## Guidepost's Qualifications

18. The professionals employed by Guidepost include certified public accountants, certified insolvency and restructuring advisors, certified fraud examiners, and financial and

forensic consultants and analysts. These professionals have extensive experience and expertise in (i) the analysis, operation, restructuring and liquidation of businesses, (ii) forensic and fraud investigation, (iii) asset tracing, (iv) insurance, and (v) investment banking.

19. Guidepost has provided accounting, financial and consulting services in receiverships, bankruptcies, fraud investigations and other fiduciary matters and in a wide array of industries and markets, making it suitable to work on investments as varied and complex as those owned by the Receivership Entities.

20. For all of these reasons, the Receiver believes that the professionals of Guidepost whom he proposes to use are well qualified to assist him in this matter.

**Compensation and Expense Reimbursement of Receiver**

21. The Receiver proposes that he be compensated for his services at the rate of $600 per hour. The Receiver's hourly rates for his services provided through Guidepost are revised regularly, and are $850 per hour for the current calendar year. Thus, a $600 hourly rate represents a 29.4% discount from the Receiver's 2017 hourly rate, which the Receiver is proving as a public service discount. When employed as the Independent Oversight Advisor for Platinum, as described below, the Receiver was compensated at a rate of $725, which was his hourly billing rate for 2016.

22. The Receiver also proposes that he will charge for expenses in the same manner as Guidepost, as provided in ¶ 25 below, subject to the SEC Receivership Billing Instructions.

**Compensation and Expense Reimbursement of Guidepost.**

23. The Receiver proposes that Guidepost will be compensated for its services at the hourly rates set by Guidepost for each such professional in effect each year, for matters of this type, less a public service discount of 10%, and that Guidepost will be reimbursed for all

reasonable costs and expenses incurred in connection with its assistance to and support of the Receiver in this action, as set forth in the Schwartz Declaration, subject to the SEC Receivership Billing Instructions.

24. The hourly rates for the Guidepost professionals the Receiver is most likely to use in connection with this action are set forth in Exhibit 1 to the Schwartz Declaration. That list of professionals is intended to be a representative, but not definitive, listing of professionals who may provide services in this representation. Additional Guidepost professionals may be used in this engagement to provide services in the most efficient manner possible. In the normal course of its business, Guidepost revises its hourly rates on an annual basis. The hourly rates reflected in this Application are the rates Guidepost has adopted for matters of this type for services to be provided during calendar year 2017 less the public service discount described above. Guidepost will advise the Court if its hourly rates change.

25. In addition to the hourly rates set forth above, Guidepost customarily charges Guidepost clients for all reasonable costs and expenses incurred, including phone charges, bulk mail and express mail charges, special or hand delivery charges, photocopying charges, travel expenses, research expenses, and other reasonable costs incurred. The Receiver proposes that these costs and expenses will be billed at the same rates and in the same amounts as Guidepost typically charges clients for the same costs and expenses, but not in excess of actual costs, subject to the SEC Receivership Billing Instructions.

26. The Receiver will apply to the Court for allowance of compensation for professional services rendered and for reimbursement of reasonable costs and expenses incurred in connection with this matter in accordance with the Receiver Order and any other applicable

Orders of the Court. Guidepost has further confirmed to the Receiver that, in applying to the Court for compensation, Guidepost will comply with the SEC Receivership Billing Instructions.

### No Adverse Interest Precluding Employment of Guidepost

27. Guidepost has examined its books and records with respect to its holdings and its past services and searched its records for potentially adverse interests. As a result of this process, Guidepost has determined that it holds no interest with respect to the matters on which it is to be employed, other than a receivable for services previously rendered to the Receivership Entities in connection with prior work completed in discussion with and as reported to the SEC.

28. Specifically, prior to the Complaint, in June 2016, the Federal Bureau of Investigation executed a search warrant at Platinum Management's offices, and the U.S. Attorney's Office for the Southern District of New York filed criminal charges against Murray Huberfeld, who participated in the management of Platinum Management and its related funds. These charges were brought in connection with an alleged bribery scheme, where Huberfeld is alleged to have paid kickbacks to a New York City Correction Officer's Union official to obtain the union's retirement fund investments. On July 18, 2016, following consultations between the SEC and counsel for Platinum Management, Platinum Credit, and Platinum Liquid Opportunity Management LLC (collectively with their related funds the "Platinum Entities"), the Platinum Entities retained Guidepost as an "Independent Oversight Advisor." In that capacity, Guidepost advised the Platinum Entities as to the orderly management and disposition of the assets of the Funds and related matters, reviewed certain proposed transactions, counseled the Platinum Entities regarding regulatory and compliance matters, and communicated with the SEC and other interested parties regarding Guidepost's concerns about the Platinum Entities, among other things.

29. Guidepost is owed $275,624.84 for services it rendered as the Independent Oversight Advisor to the Platinum Entities. Guidepost will be paid for those services at earliest as an ordinary creditor pursuant to the Liquidation Plan. The SEC is aware of and consents to this arrangement.

**Relief Requested**

30. By this Application, the Receiver seeks entry of an Order pursuant to Paragraphs 6.F., 49, and 50 of the Receiver Order, approving the Receiver's requested fee and authorizing the Receiver to retain Guidepost *nunc pro tunc* to the Appointment Date.

31. The Receiver is asking for the appointment of Guidepost *nunc pro tunc* because the Receiver required assistance from Guidepost immediately after his appointment with respect to a number of pressing of matters, including understanding the transactions and other businesses the Receivership Entities were engaged in, evaluating and advising with respect to ongoing business transactions of the entities controlled by the Receivership Entities, taking possession of Receivership property, determining what bills needed to be paid, coordinating with the Caymans liquidators for other Platinum funds, and preserving the assets under the Receivership, among many other things.  Consistent with the routine practice in such cases, the Receiver consulted with the SEC about the use of Guidepost prior to a court order.  The SEC agreed that the Receiver should use Guidepost and seek the Court's approval of Guidepost *nunc pro tunc* to the Appointment Date.

32. Neither Guidepost nor the Receiver has received payment of any fees since the appointment of the Receiver and neither is seeking approval of fees they have incurred since the Appointment Date at this time. Payment of fees will be the subject of a separate fee applications to this Court.

## Notice

33.     The Receiver proposes to serve this Application on (a) the SEC and its counsel; (b) the Defendants and their counsel; and (c) any person or attorney who, as of January 31, 2017, had filed a notice of appearance in this action. In light of the nature of the relief requested, the Receiver respectfully submits that no further notice is necessary.

WHEREFORE, for all the foregoing reasons, the Receiver requests that, in accordance with the Receiver Order, he be authorized, effective *nunc pro tunc* to the Appointment Date, to use Guidepost Solutions LLC to assist and support him in performing and exercising his rights, remedies, duties, and responsibilities upon the terms, and for the compensation and reimbursement of expenses, as set forth above and that he be granted such other and further relief as the Court deems appropriate.

Respectfully submitted, this 31st day of January, 2017.

/s/ Bart M. Schwartz
Bart M. Schwartz
Court-Appointed Receiver