# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------- X
SECURITIES AND EXCHANGE COMMISSION,

           Plaintiff,

  -v-

PLATINUM MANAGEMENT (NY) LLC;
PLATINUM CREDIT MANAGEMENT, L.P.;
MARK NORDLICHT;
DAVID LEVY;
DANIEL SMALL;
URI LANDESMAN;
JOSEPH MANN;
JOSEPH SANFILIPPO; and
JEFFREY SHULSE,

           Defendants.
----------------------------------- X

No. 16-cv-6848 (DLI)(VMS)

**DECLARATION OF BART M. SCHWARTZ IN SUPPORT OF HIS APPLICATION FOR AN ORDER AUTHORIZING THE ARABELLA SETTLEMENT AGREEMENT**

I, Bart M. Schwartz, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a member of the bar of this Court, and am the Court-appointed Receiver for Platinum Partners Credit Opportunities Master Fund, LP ("PPCO") and certain related entities (collectively, the "Receivership Entities"). I was appointed, on consent, by an order of this Court on December 19, 2016, as amended January 30, 2017 [Docket No. 59-2] (the "Receiver Order"), following an Order to Show Cause filed in this matter by the Securities and Exchange Commission (the "SEC"). *See* Docket Nos. 5 & 6. On March 8, 2017, this Court entered a preliminary injunction, enjoining violation of the federal securities laws, and ordering that I continue to act as Receiver pursuant to the Receiver Order [Docket Nos. 105, 106].[1]

2. This declaration is based on my personal knowledge, books and records of the Receivership Entities, and information I learned from, among others, Guidepost personnel who are working for me on this matter, Platinum employees knowledgeable about PPCO's Arabella

---

[1] Capitalized terms in my declaration that I do not define are defined in the declaration of Michael E. Baum dated April 24, 2017 (the "Baum Declaration").

investment, Michael E. Baum and other attorneys with Schafer & Weiner, PPLC ("S&W"), a law firm that represents PPCO in the Arabella matters, and Stephen B. O'Connell, an attorney with expertise in oil and gas matters.

3. I submit this declaration in support of my application for an order approving a settlement agreement entered into on March 28, 2017 (the "Arabella Settlement Agreement") between Arabella Petroleum Company, LLC ("APC"), Arabella Exploration, LLC ("AEX"), Arabella Operating, LLC ("AO"), Arabella Exploration, Inc. ("AEI"), the Official Committee of Unsecured Creditors of APC, and me in my capacity as Receiver for PPCO and PPCO subsidiary Platinum Long Term Growth VIII (which I will refer to collectively with PPCO as "PPCO"). The Arabella Settlement Agreement was entered into after a two-day mediation in Austin, Texas before the Honorable Christopher Mott, U.S. Bankruptcy Judge for the Western District of Texas, Austin/El Paso Division (the "Mediation"), and is subject to the approval of this Court and two bankruptcy judges.

4. As described below, and in the accompanying Declarations of Michael E. Baum and Stephen B. O'Connell, the Arabella Settlement Agreement benefits the Receivership Estate in many ways. It puts an end to expensive, time-consuming litigation over rights where PPCO's entitlement to recovery was uncertain. It provides an agreed-upon mechanism to share the distribution of proceeds from potentially valuable property rights as to which multiple entities claimed ownership. Under the Arabella Settlement Agreement, an agreed-upon percentage of the proceeds of the all the disputed rights will flow to the Receivership Estate. It provides for cost-sharing for expenses incurred by parties with liens over property that PPCO claims as collateral. It also provides for releases and other consideration that I deem valuable to the Receivership Estate. As a result of the Arabella Settlement Agreement, the Receivership Estate

is likely to see a sizeable recovery on an investment that appeared to have very little value when I became Receiver.

**The Receiver Order**

5.  Under the Receiver Order, I am empowered to "take custody, control and possession of all Receivership Property," (Receiver Order ¶ 6.B), "manage, control, operate and maintain the Receivership Entities," (Receiver Order ¶ 6.C), "transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business" in the manner I deem "most beneficial" to the Receivership Entities (Receiver Order ¶ 28), and manage and maintain the business operations of the Receivership Entities (Receiver Order ¶ 31).

**The Arabella Loan and the Arabella Interests**

6.  As the Baum Declaration explains, prior to my appointment as Receiver, PPCO advanced $16 million to AEI, a company involved in oil and gas operations in Texas through its subsidiaries, pursuant to a $45 million loan facility (the "Arabella Loan"). The Arabella Loan was secured by all of AEI's assets and guaranteed by AEI's Texas subsidiaries, AEX and AO (together with AEI, the "Arabella Entities"), who had also pledged their assets to secure the Loan (collectively, the "Arabella Interests"). AEI did not repay any of the sums advanced by PPCO. PPCO declared the Arabella Loan in default in mid-2015. Although the Arabella Loan was secured, PPCO had not been able to recover against any of its collateral. *See generally* Baum Decl. ¶¶ 7-8.

**The Status of Arabella Interests as of the Appointment Date**

7.  When I was appointed Receiver on December 19, 2016 (the "Appointment Date"), there was significant ongoing litigation related to the property that secured the Arabella Loan. I learned from S&W, Platinum personnel, and the Guidepost team supporting me that

multiple challenges had been made to the Arabella Interests, and that those claims posed a significant risk of eliminating the security for the Arabella Loan.

8. Shortly after my appointment, I learned that another claimant, Founders Oil and Gas Operating, LLC ("Founders"), was on the verge of foreclosing on certain liens. I was informed that if those liens were foreclosed, PPCO's interest in the working interests created by the Arabella Loan (the "Arabella Working Interests") would have been substantially impaired.

**The Mediation and the Arabella Settlement Agreement**

9. On March 27 and 28, 2017, I participated in the Mediation, represented by the Arabella Professionals. As a result of the Mediation, I entered into the Arabella Settlement Agreement, subject to court approval. A copy of the Arabella Settlement Agreement is attached to the Baum Declaration as Exhibit A. In my judgment, the Arabella Settlement Agreement is a very favorable result for the Receivership Estate.

10. As described in greater detail in the Baum Declaration, if approved by this Court (and the bankruptcy courts whose approval is also required), the Arabella Settlement Agreement will end prolonged and expensive litigation over the ownership of the Tag-Along Rights and the Arabella Working Interests.

11. Under the Arabella Settlement Agreement, AEX will receive 22.5% of the proceeds of any sale of the Tag-Along Rights, which, prior to the Mediation, both APC and AEX claimed a complete (and exclusive) right. This potential property interest was unknown to me at the time of the Participation Agreement, described further below, and it improves the value of Arabella Interests significantly.

12. AEX will also receive 65% of the net proceeds from the sale of the Arabella Working Interests. As described above, AEX's right to the Arabella Working Interests was

challenged by APC prior to the Mediation. Because PPCO has a secured interest in AEX's property under the Arabella Loan, any proceeds received by AEX will accrue to the benefit of the Receivership Estate.

13. While the Arabella Settlement Agreement does not end the Founders Litigation, it allows for DIP funding for AEX so that AEX can resolve liens and claims against it, thus paving the way to a sale of its property (and hence a recovery by PPCO).

14. In order to receive those benefits, the Receivership Entities gave up certain claimed rights as a compromise. If PPCO had been completely successful in the various actions where the Arabella Interests were at issue, AEX would have had an exclusive right to any proceeds from a sale of the Tag-Along Rights, and would have received 100% of the proceeds from sale of AEX's oil and gas assets. The parties achieved a compromise in the Arabella Settlement Agreement, which allowed both APC and AEX to receive a portion of the proceeds of the disputed property.

15. The Arabella Settlement Agreement also provides for a mutual release of all of the parties (excepting the obligations under the Arabella Loan), but allows the parties to maintain any potential causes of action against former owners, board members, and officers of APC, AEX, AO, and AEI. At the same time, it provides a complete release for the Receivership Entities, as well as for the former owners, members, agents, and principals of PPCO, avoiding any potential obligation to bear costs in connection with such suits.

16. Having participated actively in the Mediation for two days in Texas, and having listened carefully to the guidance provided by Judge Mott and the Arabella Professionals during the Mediation, I believe the Mediation produced a fair and equitable result that confers a significant benefit on PPCO and thus on the Receivership Estate. As a result of the Arabella

Settlement Agreement, I believe the parties will be positioned to liquidate AEX's assets while market prices for similar property are relatively high, as opposed to facing years of expensive litigation with an uncertain outcome.

17. For the reasons stated above, and the reasons set forth in the Baum and O'Connell Declarations, I request that this Court approve the Arabella Settlement Agreement.

**The Participation Agreement**

18. Shortly after the Appointment Date, I learned that the Arabella Interests were imperiled by the threat of ongoing litigation. I was further advised that there was an immediate need for a minimum of $500,000 to defend Arabella Entities and PPCO against these claims. I was told that the issues in these various litigations were extremely complicated, and that in the end it would cost far more than $500,000 to defend the Arabella Interests. At the time, I understood that the Arabella Loan was being carried on PPCO's books at $5 million, and that Platinum personnel believed the investment was worth substantially less (*i.e.*, approximately $1.5 million).[2] Given the early stage of the Receivership and my limited knowledge of the Receivership Entities' value in December 2016, the uncertainty of recovery of the Arabella Interests, the need to use Receivership Assets to protect other Receivership Assets, and the Receivership Entities' dire cash position, I concluded that it would be imprudent for me to use

---

[2] A few months prior to my appointment as Receiver, Platinum personnel prepared a precis of PPCO's assets to aid me in connection with my work as the Independent Oversight Advisor. That summary listed the Arabella Loan at $5 million, which is consistent with PPCO's books and records as of the time I became the Receiver. However, it also stated, "The company is in negotiations to settle litigation which could compromise the entirety of our collateral. With a settlement, the hard assets (acreage) will be sold to net us at least the $1.3mm number." I believe the precis was referring to a written settlement offer made by the Chapter 11 Trustee to PPCO in September 2016. That offer called for AEX to receive approximately $1.25 million for the benefit of PPCO. PPCO had not itself commissioned a valuation of Arabella, it had two valuations in its files. The first, done in connection with the Arabella Loan in 2015, valued the Arabella Working Interests at approximately $50 million. The second, which speaks as of January 2016, put the value of the Arabella Working Interests at $3.7 million.

the limited cash available to the Receivership Entities to support the Arabella litigations.[3] At the same time, I understood that if I did nothing, the Arabella Interests would be wiped out.

19. Given the exigent circumstances before me, on December 30, 2016, I entered into an agreement in which an investor called 30294 LLC purchased 45% of PPCO's interest in and under its secured investment in AEI in exchange for $500,000 (the "Participation Agreement"). The $500,000 was paid into an S&W escrow account and used for costs associated with the AEX Bankruptcy Case, to pay S&W and the other lawyers representing PPCO, and to cover professional fees to be incurred by AEI, AEX and AO in defending the Arabella Interests. Without the Participation Agreement, I understood that PPCO would have been required to dedicate cash assets to an investment where recovery was far from certain—something I was not willing to do.

20. I provide the information about the Participation Agreement to give the Court the full context of the Arabella Settlement Agreement. However, I am not currently seeking approval of anything other than the Arabella Settlement Agreement. I expect that other Arabella related matters will be the subject of separate applications to this Court.

**The SEC Has Consented to the Relief Requested**

21. I understand from my counsel, Cooley LLP, that the SEC Staff consents to the relief requested in this application.

I declare under penalty of perjury that the foregoing is true and correct.

---

[3] As of my appointment, the Receivership Entities had approximately $3,800,000 in cash. Although we were able to generate more cash assets by late December, the Receivership Entities had had a number of assets that required continued funding to maintain their value (*e.g.*, a portfolio of life insurance policies, litigation funding investments). I also knew that I had to pay staff, professionals, rent, and the like. In short, I expected to have to pay millions of dollars to operate the Receivership Entities and maintain the value of the Receivership assets that I deemed worth preserving with no certainty as to what the future cash flows into the Receivership Estate would be.

Dated: New York, New York
April 25, 2017

_____
Bart M. Schwartz

-8-