# EXHIBIT A

EXECUTION VERSION

## MEDIATION SETTLEMENT AGREEMENT

Arabella Petroleum Company, LLC, a Texas limited liability company ("**APC**"), Arabella Exploration, LLC, a Texas limited liability company ("**AEX**"), Arabella Operating, LLC, a Texas limited liability company ("**AO**"), the Official Committee of Unsecured Creditors of APC ("**APC Committee**"), and Bart M. Schwartz, in his capacity as the SEC Receiver ("**SEC Receiver**") for Platinum Partners Credit Opportunities Master Fund, LP and its subsidiary Platinum Long Term Growth VIII, LLC (collectively, "**Platinum**") hereby enter into this Mediation Settlement Agreement on March 28, 2017 ("**Settlement Agreement**"). APC, AEI, AEX, AO and the SEC Receiver shall each be known as a "**Party**" and together as the "**Parties**."

## RECITALS

**WHEREAS**, APC is a debtor in Chapter 11 Case No. 15-70098-TMD ("**APC Case**") pending in the U.S. Bankruptcy Court for the Western District of Texas, Midland Division ("**APC Court**");

**WHEREAS**, AEX is a debtor-in-possession in Chapter 11 Case No. 17-40120-RFN ("**AEX Case**") pending in the U.S. Bankruptcy Court for the Northern District of Texas, Fort Worth Division ("**AEX Court**");

**WHEREAS**, AO is a wholly owned subsidiary of Arabella Exploration, Inc., a Cayman Islands company ("**AEI**"), and is operating under the management of Charles Hoebeke II, of Rehmann Turnaround and Receivership Group ("**Mr. Hoebeke**");

**WHEREAS**, the SEC Receiver was appointed by the U.S. District Court for the Eastern District of New York, Case No. 16-cv-06848 ("**SEC Receivership Court**") as SEC Receiver on December 19, 2016 as a result of a complaint filed by the U.S. Securities and Exchange Commission. The SEC Receiver's powers and authority derive from the amended order appointing receiver ("**Amended Receiver Order**") entered by the SEC Receivership Court;

**WHEREAS**, Morris D. Weiss, in his capacity as Chapter 11 Trustee of APC ("**Chapter 11 Trustee**"), as Plaintiff, has sued, among others, AEI, AEX, AO and Platinum as defendants in Adversary Proceeding No. 16-07002-RBK which is pending in the APC Court ("**Adversary Proceeding**");

**WHEREAS**, disputes have arisen between APC, AEX and the SEC Receiver relating to TAR (defined below);

**WHEREAS**, on March 27 and 28, 2017, the Parties participated in a mediation of their disputes before U.S. Bankruptcy Judge H. Christopher Mott, sitting in the U.S. Bankruptcy Court for the Western District of Texas, acting as a judicial mediator ("**Mediator**");

{00676590.1}

EXECUTION VERSION

**WHEREAS**, the Parties acknowledge that *bona fide* disputes and controversies exist between them, both as to liability and the amount thereof, if any, and by reason of such disputes and controversies, they desire to compromise and settle the claims and causes of action which the Parties have or may have to the extent set forth in this Settlement Agreement. It is further expressly understood and agreed by all Parties that this is a compromise of disputed claims, and nothing contained herein shall be construed as an admission of liability by any Party, any and all such liability being expressly denied.

**NOW THEREFORE**, in consideration of the covenants, representations, warranties and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each of the Parties, and each Party intending to be legally bound hereby, the Parties agree as follows:

<h3 style="text-align:center">AGREEMENT</h3>

1.      **Incorporation of Recitals.** The above Recitals are hereby incorporated by reference into, and made part of, this Settlement Agreement as if each of the Recitals is fully stated herein.

2.      **Proceeds Relating to the Samson and Brigham Tag-Along Rights.**      The Parties agree to resolve all disputes relating to the Samson Exploration, LLC and Brigham Operating, LLC Tag-Along Rights ("**TAR**"), the proceeds of which the Parties anticipate to be approximately $9 million ("**TAR Proceeds**") as follows: 77.5% of the TAR Proceeds shall be disbursed to APC, and 22.5% of the TAR Proceeds shall be disbursed to AEX within 10 days after the Effective Date.

3.      **Debtor-In-Possession Loan.** Out of APC's share of the TAR Proceeds, APC will make available to AEX a Debtor-In-Possession loan of up to $1 million ("**DIP Loan**") for the purpose of resolving any claims of Founders Oil & Gas Operating, LLC ("**Founders**") arising on or before February 28, 2017. The DIP Loan will be secured by a first priority priming lien on all assets of AEX (excluding causes of action under Chapter 5 of the Bankruptcy Code), and may be used solely for the purpose of paying Founders. Beginning on the date that APC funds the DIP Loan, the DIP Loan will bear interest at a rate of 2% per annum for the first 180 days. Any amount of the DIP Loan outstanding after 180 days shall bear interest at a rate of 5% per annum. The DIP Loan will be due and payable in full upon the earlier of the (a) sale of the Oil and Gas Assets (defined below), to be paid from AEX's allocation of Net Proceeds (defined below) at closing; or (b) 12 months after APC funds the DIP Loan. AEX shall bear the expense of any claim of Founders, J. Cleo Thompson, and Energen Resources Corporation arising on or before February 28, 2017, including any alleged non-consent penalties based on AFEs issued by Founders prior to February 28, 2017, regardless of whether such amount exceeds the amount of the DIP Loan. Mr. Hoebeke, the Chapter 11 Trustee and their respective counsel agree to promptly schedule a meeting with Founders to resolve any and all disputes with Founders.

{00676590.1}

2

EXECUTION VERSION

4. **Founders.**   Any expenses owing to Founders and any other operator of the Oil and Gas Assets which arise on or after March 1, 2017, shall be shared 65% by AEX and 35% by APC. Revenues arising on or after March 1, 2017 through the date of the closing of the sale of Oil & Gas Assets will also be shared 65% by AEX and 35% by APC. AEX shall provide APC and the SEC Receiver with all reports received from operators (including but not limited to JIBs and AFEs) for expenses and revenues for the prior month. All revenues and expenses that are provided for in this paragraph will be payable, accounted for, and distributed at the closing of the sale of the Oil & Gas Assets.

5. **Sale Process.**

   a. The Parties agree to fully cooperate and use their reasonable best efforts to file companion motions to sell Oil and Gas Assets under 11 U.S.C. § 363 ("**363 Sale**") in the APC Case, AEX Case and any subsequently filed AO bankruptcy case.

   b. The 363 Sale motions shall require all-cash bids, without financial contingencies.

   c. Platinum shall not be entitled to credit bid at the 363 Sale.

   d. Any decisions about whether to sell certain Oil and Gas Assets shall be finally determined by the Party that has record title to such assets. In the event that a Party with record title removes any Oil and Gas Asset from sale, the Net Proceeds from any subsequent sale of the excluded asset shall be distributed in accordance with Paragraph 6.

   e. Any material decision delegated to the Consulting Parties (defined below) under the orders approving the bidding procedures, shall be first discussed in good faith by the Consulting Parties. If the Consulting Parties do not agree, AEX shall make the disputed decision. All other Consulting Parties shall have the right to object to AEX's decision, and the Parties agree to an expedited hearing on any such objections. The "**Consulting Parties**" is defined as AEX, APC, the APC Committee, AO and the SEC Receiver.

6. **Share of Net Proceeds from Sale of Oil and Gas Assets.**   Net Proceeds from the sale of the Oil and Gas Assets will be distributed 65% to AEX and 35% to APC. "**Net Proceeds**" is defined as the gross proceeds from the sale of the Oil and Gas Assets, less (a) direct costs of sale; (b) amounts secured by valid and enforceable mineral liens that are senior to Platinum's deed of trust; (c) *ad valorem* taxes through the date of closing of the sale of the Oil and Gas Assets; (d) royalty payments required to maintain the underlying leases of the Oil and Gas Assets

{00676590.1}

3

EXECUTION VERSION

("**Royalty Claims**"); and (e) cure costs (excluding any amounts owed to Founders, J. Cleo Thompson, and Energen Resources Corporation which amounts will be paid as provided for under Paragraphs 3 and 4 above) that are required to assume and assign any executory contracts and unexpired leases which are required to preserve or maintain an Oil and Gas Asset to the extent not paid or assumed by the buyer of the Oil and Gas Assets. "**Oil and Gas Assets**" is defined as (y) all mineral interests owned by APC, AEX, and AO that are specifically identified by APC, AEX, AO or their agents to be included in the 363 Sale (defined below); and (z) the JIB receivables owned by APC with operator liens (excluding those JIB receivables owed by AEX to APC, which claims and liens shall be released promptly upon the direction of the SEC Receiver). Oil and Gas Assets shall not include any causes of action held by any Party.

7.      **Share of Proceeds from Other Mineral Interests.** Proceeds    from    mineral interests owned by APC, AEX or AO that are not specifically identified to be included in the 363 Sale will be paid in accordance with record title to such mineral interests. If record title to such mineral interests is held by APC, then APC will receive 77.5% of such proceeds, and AEX will receive 22.5% of such proceeds. If record title to such mineral interests is held by AEX or AO, then APC will receive 35% of such proceeds, and AEX or AO, as the case may be, receive 65% of such proceeds.

8.      **Claims Objections.**   APC will have the right to file objections to and resolve claims of working interest owners who owe JIB receivables to APC in the APC Case. AEX will pursue objections to and resolutions of the validity and priority of any mineral liens against the Oil & Gas Assets in the AEX Case. APC will pursue objections to and resolutions of the allowance and classification of claims asserted in the APC Case. APC, AEX, and AO will coordinate efforts to object to and resolve Royalty Claims.

9.      **Abatement and Dismissal of Pending Proceedings.**       All contested matters (including APC's motion for relief from stay in the AEX Case) between the Parties and the Adversary Proceeding shall be abated as to the Parties. Within 30 days after distribution of the Net Proceeds, such contested matters and the Adversary Proceeding shall be dismissed with prejudice as to the Parties. All deadlines in the TAR orders entered in the APC Case and the AEX Case, respectively, shall be tolled until 30 days after the Effective Date.

10.      **Approval by Courts.** This Settlement Agreement is binding upon the Parties, subject only to approval of (a) the SEC Receivership Court, with respect to the SEC Receiver; (b) APC Court, with respect to APC; and (c) the AEX Court, with respect to AEX; and (d) only if AO files for Chapter 11 bankruptcy protection, the court presiding over the chapter 11 bankruptcy case of AO (the "**AO Court**", together with the SEC Receivership Court, the APC Court, and the AEX Court, collectively, the "**Courts**"). Each respective Party shall use their best efforts to file (within 14 calendar days from the date of this Settlement Agreement), a motion to

{00676590.1}

4

EXECUTION VERSION

approve this Settlement Agreement ("**Settlement Approval Motion**"), and each respective Party shall diligently seek approval of this Settlement Agreement by their respective court. In the event that any of the Courts deny approval of this Settlement Agreement, this Settlement Agreement shall be null and void, and no statements made by the Parties in this Settlement Agreement, the Settlement Approval Motion to approve the Settlement Agreement, or at the hearing on any Settlement Approval Motion, may be used for any purpose whatsoever by the Parties.

11.     **Effective Date.** The effective date of this Settlement Agreement shall be the date that the last of the Courts approves this Settlement Agreement ("**Effective Date**").

12.     **Mutual Releases as to APC, AEX, AO and Platinum Only.**

a.   On the Effective Date, APC, the Chapter 11 Trustee, AEX, AO, Platinum (which for the purposes of this release means all Receivership Entities, as that term is defined in the Amended Receiver Order or any further receiver order entered by the SEC Receivership Court) and the SEC Receiver hereby forever release and discharge each other (and all of their current (and with respect to Platinum only, current and past) attorneys, managers, employees, officers, and agents) from any and all claims, demands, or suits, known or unknown, fixed or contingent, liquidated or unliquidated, from the beginning of time through the Effective Date of this Settlement Agreement, arising from or related to the events and transactions which are the subject matter of this Settlement Agreement, the Adversary Proceeding, the APC Case, the AEX Case, and AO, including but not limited to any claims and causes of action that have been or could be asserted by the Chapter 11 Trustee in the Adversary Proceeding and any claims and causes of action among and between APC, AEX, AO and Platinum under Chapter 5 of the Bankruptcy Code.

b.   Notwithstanding anything in this Settlement Agreement to the contrary, AEX and AO hereby affirm that Platinum's note, deed of trust, security agreement and other documents signed in connection therewith ("**Loan Documents**") are valid and enforceable in accordance with their terms, and all monies due under the Loan Documents are due to Platinum without any claim, or right of offset or defense, of any kind whatsoever, and all liens and security interests under the Loan Documents are valid and enforceable in accordance with their terms. The releases contained in this Settlement Agreement including, without limitation, this Paragraph 12, do not release the Loan Documents, including, without limitation, the obligations or liens and security interests contained therein.

{00676590.1}

5

    c. For clarity, nothing contained in this Settlement Agreement or the releases hereunder shall release:

        i. Any claims against any past or current officers, directors, employees or agents of any of the Receivership Entities, by the SEC Receiver or any of the Receivership Entities (as defined under the Amended Receiver Order or any further receiver order entered by the SEC Receivership Court);

        ii. Any claims by any Parties against any former officers, directors, members, managers, employees or agents of APC, AEX or AO, including, without limitation, Mr. Jason Hoisager and/or his spouse, Molly Hoisager; and

        iii. Any obligations of the Parties under this Settlement Agreement or the transactions contemplated herein.

13. **Mediator Shall Not Be Called As Witness.** All signatories to this Settlement Agreement hereby release the Mediator from any and all responsibility arising from the drafting of this Settlement Agreement, and by signing this Settlement Agreement acknowledge that they have been advised by the Mediator that this Settlement Agreement should be independently reviewed by their own counsel before executing it. The Parties and their counsel expressly agree that the Mediator shall not be called as a witness in the event of any dispute over this Settlement Agreement or otherwise.

14. **Representations and Warranties.** The Parties represent and warrant that: (a) the person signing this Settlement Agreement on behalf of such Party has full authority from the Party to execute and perform this Settlement Agreement on behalf of such Party, subject to approval of the Courts as set forth under this Settlement Agreement; (b) each Party has carefully reviewed this Settlement Agreement; (c) each Party has consulted with its own counsel concerning this Settlement Agreement; (d) any questions that each Party has pertaining to this Settlement Agreement have been answered and fully explained by the Party's own counsel; and (e) the Party's decision to execute this Settlement Agreement is not based upon any statement or representation, either written or oral, made by any person or entity other than those statements contained in this Settlement Agreement, and specifically is not based on or induced by any statement or representation made by the other Party, its counsel or the Mediator.

15. **Notice.** Any notices sent to the Parties under this Settlement Agreement shall be sent by email to the following individuals:

EXECUTION VERSION

## If to AEX or AO

Chip Hoebeke
Rehmann Turnaround and Receivership
Group
2330 East Paris Ave SE
Grand Rapids, MI 49516
chip.hoebeke@rehmann.com

*With copies to:*

Raymond Battaglia, Esq.
66 Grandburg Circle
San Antonio, TX 78218
rbattaglialaw@outlook.com

John T. Piggins, Esq.
David A. Hall, Esq.
Rachel L. Hillegonds, Esq.
PO Box 306
Grand Rapids, MI 49501-0306
pigginsj@millerjohnson.com
halld@millerjohnson.com
hillegondsr@millerjohnson.com

Patrick Murphy, Esq.
Murphy Mahon Keffler Farrier LLC
505 Pecan Street, Ste. 201
Fort Worth, Texas 76102
pmurphy@murphymahon.com

## If to the SEC Receiver

Bart M. Schwartz, Esq.
Guidepost Solutions LLC
415 Madison Ave., 11th Floor
New York, NY 10017
bschwartz@bartmschwartz.com

*With copies to:*

Dan P. Callahan, Esq.
2100 Ross Ave., Ste. 750
Dallas, TX 75201
dpc@kesslercollins.com

## If to APC

Morris D. Weiss, Esq.
Waller Lansden Dortch & Davis, LLC
100 Congress Ave., 18th Floor
Austin, TX 78701
Morris.weiss@wallerlaw.com

*With copies to:*

Eric J. Taube, Esq.
Mark C. Taylor, Esq.
Waller Lansden Dortch & Davis, LLC
100 Congress Ave., 18th Floor
Austin, TX 78701
Eric.taube@wallerlaw.com
Mark.taylor@wallerlaw.com

## If to the APC Committee

Kenneth Green, Esq.
Carolyn Carollo, Esq.
Snow Spence Green LLP
2929 Allen Parkway, Ste. 2800
Houston, TX 77019
kgreen@snowspencelaw.com
carolyncarollo@snowspencelaw.com

## If to the SEC Receiver

Michael E. Baum, Esq.
Joseph K. Grekin, Esq.
Jason L. Weiner, Esq.
Schafer and Weiner, PLLC
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
mbaum@schaferandweiner.com
jgrekin@schaferandweiner.com
jweiner@schaferandweiner.com

{00676590.1}

16.   **Miscellaneous.**

    a.   **APC Funds.** The SEC Receiver and Platinum confirm that neither the SEC Receiver nor Platinum have any claim, secured or otherwise, in the APC Case, and all distributions and funds received by APC under this Settlement Agreement shall not be subject to any claim or lien by Platinum or the SEC Receiver. The SEC Receiver shall remain a "Party-in-Interest" in the APC Case.

    b.   **Mutual Drafting.**   This Settlement Agreement has been drafted and edited by all Parties. Therefore, this Settlement Agreement shall not be construed against any Party on the basis that one or more of the Parties was the principal drafter of this Settlement Agreement.

    c.   **Counterparts.**   This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. Further, facsimile copies or electronic signatures shall be treated as originals for all purposes.

    d.   **Interpretation.**   The descriptive headings of the sections are for reference only and will in no way affect or be used to construe or interpret this Settlement Agreement. All references to sections and subsections contained in this Agreement are references to the sections and subsections of this Settlement Agreement. The word "including" means "including without limitation." All pronouns and any variation thereof will be deemed to refer to masculine, feminine, neuter, singular or plural as the context may require.

    e.   **Attorney Fees.**   Each Party shall be responsible for its own costs and attorneys' fees incurred with respect to this Settlement Agreement and any transactions contemplated hereby.

    f.   **Successors and Assigns.**   This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

    g.   **Further Assurances.** From time to time after the date of this Settlement Agreement, and without further consideration, the Parties agree to work cooperatively to do all such other acts and things, all in accordance with applicable law, as may be necessary or appropriate to more fully and effectively carry out the purposes and intent of this Agreement.

{00676590.1}

**EXECUTION VERSION**

      h. **If any dispute arises relating to this Settlement Agreement (including implementation and interpretation of the settlement contemplated hereby), the Parties each agree that any such disputes shall be submitted by the Parties to the Mediator for resolution by mediation.**

      17.    **Entire Agreement.**  This Settlement Agreement constitutes the entire agreement and understanding between the Parties relating to settlement and compromise of the disputes under this Settlement Agreement, whether written or oral. This Settlement Agreement supersedes, cancels, and replaces any and all prior and contemporaneous agreements, understandings, representations and statements between the Parties or their agents, heirs, and all of their successors and assigns pertaining to the subject matter of this Settlement Agreement, all of which are merged herein. No modification or addition to this Settlement Agreement shall be deemed to be effective unless in writing and signed by all Parties to this Settlement Agreement.

**[Remainder of Page Left Intentionally Blank]**

{00676590.1}

EXECUTION VERSION

## ADDENDUM TO MEDIATION SETTLEMENT AGREEMENT

Arabella Petroleum Company, LLC, a Texas limited liability company ("**APC**") and, Arabella Exploration, Inc., a Cayman Islands company ("**AEI**") hereby enter into this Addendum to Mediation Settlement Agreement on March 28, 2017 ("**Addendum**").

**WHEREAS**, APC is a debtor in Chapter 11 Case No. 15-70098-TMD ("**APC Case**") pending in the U.S. Bankruptcy Court for the Western District of Texas, Midland Division ("**APC Court**");

**WHEREAS**, AEI is in liquidation under the Winding Up Order in the Matter of the Companies Law (2013 Revision) (As Amended) and in the Matter of Arabella Exploration, Inc., Cause No. FSD 72 of 2016 (RMJ) ("**AEI Cayman Case**") pending in the Grand Court for the Cayman Islands ("**AEI Cayman Court**");

**WHEREAS**, AEI filed a Chapter 15 Petition for Recognition of a Foreign Proceeding in Case No. 17-40119-MXM15 ("**AEI Chapter 15**") pending in the U.S. Bankruptcy Court for the Northern District of Texas ("**AEI Chapter 15 Court**");

**WHEREAS**, Morris D. Weiss, Chapter 11 Trustee of APC ("**Chapter 11 Trustee**"), as Plaintiff, has sued, among others, AEI as a defendant in Adversary Proceeding No. 16-07002-RBK which is pending in the APC Court ("**Adversary Proceeding**");

**WHEREAS**, on March 27 and 28, 2017, APC and AEI participated in a mediation of their disputes and of the disputes between and among multiple other parties before U.S. Bankruptcy Judge H. Christopher Mott, sitting in the U.S. Bankruptcy Court for the Western District of Texas, acting as a judicial mediator ("**Mediator**");

**WHEREAS**, APC and AEI acknowledge that *bona fide* disputes and controversies exist between them, both as to liability and the amount thereof, if any, and by reason of such disputes and controversies, they desire to mutually release each other from any and all claims and causes of action which APC and AEI have or may have on the terms set forth in the Settlement Agreement. It is further expressly understood and agreed by APC and AEI that this is a compromise of disputed claims, and nothing contained herein shall be construed as an admission of liability by any Party, any and all such liability being expressly denied.

**NOW THEREFORE**, in consideration of the releases contained in this Addendum, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by APC and AEI, and each of them intending to be legally bound hereby, APC and AEI agree as follows:

{00676590.1}

**EXECUTION VERSION**

1.    **AEI Releases APC.**  As of the AEI Effective Date (defined below), AEI hereby forever releases and discharges APC from all liabilities, claims, demands, or suits against, or obligations to, AEI (and all of its attorneys, employees, officers, and agents), known or unknown, fixed or contingent, liquidated or unliquidated, from the beginning of time through the AEI Effective Date, including the Adversary Proceeding; *provided*, *however*, that AEI hereby expressly reserves and retains, and hereby excludes from the foregoing release, (a) all claims by AEI against Jason Hoisager and/or his spouse, Molly Hoisager; (b) all claims against any present and former officers, directors, employees, agents, attorneys, accountants or other professional person affiliated with AEI; and (c) all claims against Jett Capital Advisors, LLC and Marcum, LLP.

2.    **APC Releases AEI.**  As of the AEI Effective Date, APC hereby forever releases and discharges AEI from all liabilities, claims, demands, or suits against, or obligations to, APC (and all of its attorneys, employees, officers, and agents), known or unknown, fixed or contingent, liquidated or unliquidated, from the beginning of time through the AEI Effective Date, including the Adversary Proceeding; *provided*, *however*, that APC hereby expressly reserves and retains, and hereby excludes from the foregoing release, all claims by APC against Jason Hoisager and/or his spouse, Molly Hoisager.

3.    This Addendum is binding upon AEI and APC, subject only to approval of (a) the APC Court, with respect to APC; and (b) the AEI Cayman Court and/or the AEI Chapter 15 Court, with respect to AEI, (collectively, the "**Courts**"). Each respective Party shall use their best efforts to file (within 14 days from the date of this Addendum) a motion to approve this Addendum ("**Settlement Approval Motion**"), and AEI and APC shall diligently seek approval of this Addendum by their respective Courts. In the event that any of the Courts deny approval of this Addendum, this Addendum shall be null and void, and no statements made by AEI or APC in this Addendum, the Settlement Approval Motion to approve the Addendum, or at the hearing on any Settlement Approval Motion, may be used for any purpose whatsoever by AEI or APC.

4.    **Effective Date.** The effective date of this Addendum shall be the date that the last of the Courts approves this Addendum ("**AEI Effective Date**").

5.    **Mutuality of Release.**    This Addendum is specifically intended to effectuate mutual releases between APC and AEI, and shall only be effective if binding upon both parties.

6.    **Impact on Settlement Agreement.** This Addendum in no way impacts or has any effect on the Settlement Agreement or the Effective Date of the Settlement Agreement.

**[Remainder of Page Left Intentionally Blank]**

{00676590.1}

EXECUTION VERSION

**[SIGNATURE PAGE TO MEDIATION SETTLEMENT AGREEMENT AND ADDENDUM]**

**ARABELLA PETROLEUM COMPANY**,
a Texas limited liability company

By: _Morris D. Weiss_
Morris D. Weiss, Chapter 11 Trustee

**ARABELLA EXPLORATION, INC.**, a
Cayman Islands company

By: _Robert Forshey_
Robert Forshey, its Counsel

**ARABELLA EXPLORATION, LLC**, a
Texas limited liability company

By: _____
Charles Leonard Hoebeke, II, CRO

**ARABELLA OPERATING, LLC**, a
Texas limited liability company

By: _____
Charles Leonard Hoebeke II, Manager

**BART M. SCHWARTZ, IN HIS
CAPACITY AS SEC RECEIVER**

By: _Bart M. Schwartz_
Bart M. Schwartz, in his capacity as the
SEC Receiver in the SEC Receivership
Court for Receivership Entities including
but not limited to Platinum Partners Credit
Opportunities Master Fund, LP and its
subsidiary Platinum Long Term Growth
VIII, LLC

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
ARABELLA PETROLEUM COMPANY,
LLC**

By: _Susan M. Baletka_
Susan M. Baletka, Authorized
Representative for Baker Hughes Oilfield
Operations, Inc., as Chairperson for the APC
Committee

{00676590.1}

12