

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10281-1022

WRITER'S DIRECT DIAL LINE
(212) 336-0095

June 21, 2017

**Filed on ECF**

Honorable Dora L. Irizarry
Chief U.S. District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   <u>SEC v. Platinum Management (NY) LLP, et al., No. 16-6848 (DLI)(VMS)</u>

Dear Judge Irizarry:

We represent Plaintiff Securities and Exchange Commission ("SEC") in the above-captioned matter. We write to inform you that, yesterday, the SEC staff met with Bart M. Schwartz, the court-appointed Receiver, to address serious concerns about the conduct of the receivership and an apparent actual conflict of interest that the staff had recently learned about. As a result of the meeting, Mr. Schwartz agreed to move the Court for approval to resign as Receiver. Mr. Schwartz also agreed, subject to the Court's approval, to assist in an orderly transition to a new fiduciary. This letter sets forth the matters that the staff discussed with Mr. Schwartz and which the staff believes warrant his resignation from this case. The SEC staff is in the process of vetting substitute fiduciaries and hopes to have a recommendation shortly.

   1. **Recently Discovered Undisclosed Actual Conflict of Interest**

Shortly after the SEC and the Receiver filed the Joint Letter on May 19, 2017 [Dkt.#142] disclosing the disagreements between the staff and the Receiver concerning the conduct of the receivership, the staff was contacted by a large insurance company investor who met with the staff on June 14. The investor expressed concerns regarding a specific litigation finance loan (the "Litigation Finance Loan") held by the Receivership Estate.

The loan was made to a large class action law firm[1] by a Platinum affiliate in January 2013, which subsequently sold participations but continued to service the loan and to retain a profit share in the loan, valued at approximately $6.5 million, which would be paid after a large portion of the loan was satisfied. On Friday, June 16, in addition to raising numerous concerns about the Receiver's conduct in failing to protect the loan participants rights under the loan agreement, the investor provided the staff with an opinion letter written by the Receiver, in his individual capacity, dated

---

[1] The identity of the borrower was redacted from the public version of the Receiver's First Quarterly Status Report [Dkt.#130] and is therefore not named in this letter.

Honorable Dora L. Irizarry
June 21, 2017
Page 2

January 18, 2013, in which the Receiver had been retained by the law firm borrower under the Litigation Finance Loan to opine on the ethical propriety of the loan. In the staff's view, this prior representation constitutes an actual undisclosed material conflict of interest that could jeopardize the receivership estate's ability to obtain value from the loan. The Receiver had never disclosed this prior representation of an adverse party to the receivership estate, the SEC staff, or to the Court. The staff subsequently learned that the Receiver had also been retained by the law firm as a monitor for the borrower in 2006 in connection with the firm's criminal prosecution. This fact had also not been previously disclosed to the staff or to the Court. In yesterday's meeting, the Receiver advised the staff that he had no recollection of having been retained by the law firm, but understood the SEC staff's position regarding the conflict raised by the prior representation and stated that he would resign from the case due to the prior representation.

2. **Receiver's Breach of Escrow Agreement**

Additionally, on June 16, the investor shared with the staff information concerning the Receiver's breach of an escrow agreement that had been established by the Receiver's staff for the purpose of segregating the proceeds of certain life insurance policies for the investor's benefit. The investor provided the staff with documentation showing that the Receiver's representative improperly directed an escrow agent to transfer to a receivership controlled account $6.3 million of proceeds from the sale of life settlements in the first quarter of 2017 without the required consent of the investor, which was documented by letter dated February 17, 2017 and signed by the Receiver's representative.[2] After the investor learned that the escrow agreement had been violated, it raised its concern with the Receiver's representatives. The investor advised the staff that only then, and upon the advice of counsel did the Receiver's representative return the funds to the escrow. Moreover, the staff learned that in February 2017, the Receiver's representative had asked the investor to consent to the use of the proceeds of the sale to invest in the Brazilian Gold Recovery Project (referenced at Dkt.#130 at pp. 21-22) – a distressed and risky project that the investor did not consent to, and which, in the staff's view should be liquidated as soon as possible. In yesterday's meeting, the Receiver advised the staff that he did not direct the release of the escrow, and that a member of his staff had negotiated the escrow agreement which he did not learn about until after the investor challenged the breach of the escrow. Although the Receiver conceded his responsibility for the actions of his staff, he never disclosed the breach of the escrow agreement to the SEC staff or to the Court.

3. **Additional Concerns Regarding the Conduct of the Receivership**

In the May 19 joint letter [Dkt.#142], the SEC staff expressed additional concerns regarding the conduct of the receivership including a matter involving the Arabella Loan,[3] and use of investor funds to maintain and invest in risky investments. As set forth in the joint letter [Dkt.# 142 at p. 3,

---

[2] This sale is referenced in the redacted version of the Receiver's First Quarterly Report [Dkt.#130-1 at p. 23]. The sale was by ALS Capital Ventures, controlled by the Receiver.

[3] The Arabella Loan is a $16 million distressed secured loan made by Platinum to Arabella Exploration prior to the Receiver's appointment. [Dkt.#128 at p.3]

n.1], the Receiver sold 45% of the estate's interest in the Arabella Loan pursuant to a participation agreement to an investor who was introduced to the Receiver by an attorney representing the estate in the Arabella matter, and the $500,000 sale price was used to pay part of the attorney's and other professionals' pre-receivership fees.[4]  Subsequent to the sale, the Receiver learned that the collateral securing the Arabella Loan was more valuable than he had previously thought.  Upon learning of the transaction, it appeared to the staff that the attorney had an actual conflict of interest as a result of obtaining an investor, and negotiating a sales price to finance the payment of his attorney fees.  However, despite the staff raising the conflict with the Receiver and his counsel, the Receiver continued to attempt to retain the attorney due to his familiarity with the matter, although the Receiver advised the staff yesterday that the attorney has been dismissed.   On May 25, the staff sent an email to the Receiver asking what steps, if any, he has taken or will take to ensure that the $500,000 would not be drawn down prior to entry of any further order of the Court.  The staff followed up with an email on June 8 requesting that the Receiver send a demand letter to safeguard the funds, and offered to write the letter if the Receiver did not want to.  To date, despite these requests, the Receiver has not taken action to safeguard the transferred funds and on June 16, 2017, the staff sent its own letter to the law firm demanding that it escrow or otherwise preserve funds sufficient to repay the estate in the event the Court directs that the funds be returned to the estate.

   **4. Conclusion**

Upon discussing the above matters with the Receiver, he agreed to offer his resignation to the Court based on the undisclosed prior representation of the law firm in connection with the Litigation Finance Loan. The staff understands that the Receiver will be seeking Court approval to resign, and has offered to cooperate in preserving the estate's assets and to assist in a transition to a substitute receiver.  The staff will join in that request.

 In addition, the SEC requests that the Court defer ruling on the fee applications and other pending motions filed by the Receiver until a new fiduciary is appointed.  Specifically, the SEC requests that the Court defer ruling on the Receiver's (i) motion to retain Pricewaterhouse Coopers to provided limited tax services [Dkt.#110]; (ii)  motion to retain Houlihan Lokey as valuation and investment banking advisors [Dkt.#111]; (iii) motion to expand the scope of the receivership [Dkt.#112]; (iv) motion to approve the Arabella Settlement Agreement [Dkt.#128]; (v) motion to approve fee applications of the Receiver and Guidepost Solutions, LLC [Dkt.#143];  and (vi) motion to approve the fee application of Cooley LLP [Dkt.#144].

The SEC staff is in the process of seeking qualified fiduciaries to substitute for the Receiver and his counsel.   The staff hopes to be able to recommend a replacement Receiver within the next few days, assuming the Court approves the Receiver's resignation.  The staff is also available to appear before the Court at the Court's convenience if so requested by Your Honor to address any of

---

[4] The Receiver advised the staff that another member of his firm entered into the participation agreement and he was not aware of it at the time.

Honorable Dora L. Irizarry
June 21, 2017
Page 4

the foregoing in more detail.

                                              Respectfully,

                                              Neal Jacobson

Cc (via email):

Bart M. Schwartz, Receiver