```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
SECURITIES AND EXCHANGE COMMISSION,              :
                                                 :
                         Plaintiff,              :
                                                 :          **MEMORANDUM & ORDER**
           -against-                             :          16-CV-6848 (DLI) (VMS)
                                                 :
PLATINUM MANAGEMENT (NY) LLC;                    :
PLATINUM CREDIT MANAGEMENT, L.P.;                :
MARK NORDLICHT;                                  :
DAVID LEVY;                                      :
DANIEL SMALL;                                    :
URI LANDESMAN;                                   :
JOSEPH MANN;                                     :
JOSEPH SANFILIPPO; and                           :
JEFFREY SCHULSE,                                 :
                                                 :
                         Defendants.             :
---------------------------------------------------------------- x
```
**DORA L. IRIZARRY, Chief U.S. District Judge:**

In this civil action, commenced on December 19, 2016, the Securities and Exchange Commission ("SEC") alleges that defendants Platinum Management (NY) LLC ("PMNY") and Platinum Credit Management, L.P. ("PCM"), as well as individual defendants Mark Nordlicht, David Levy, Daniel Small, Uri Landesman, Joseph Mann, Joseph SanFilippo, and Jeffrey Schulse (the "Individual Defendants") (collectively, the "Civil Defendants"), participated in multiple fraudulent schemes in violation of various securities laws. *See* SEC Compl., Dkt. Entry. No. 1 at ¶¶ 2-4, 38-43, 50-75.

Just prior to the filing of this action, on December 14, 2016, an indictment was filed in this district charging each of the defendants with various counts of conspiracy to commit securities fraud and wire fraud, securities fraud, and investment advisor fraud.

On January 23, 2017, the United States, through the United States Attorney for the Eastern District of New York (the "Government"), moved to intervene and stay discovery pending the

outcome of the associated criminal proceeding. *See generally,* Gov't's Mem. of Law in Supp. of Appl. to Intervene and to Stay Civil Proceedings, Dkt. Entry No. 42 ("Gov't Mem."). For the reasons stated herein, the Government's motion is granted.

## BACKGROUND

On December 14, 2016, the Government filed an indictment charging all seven of the Individual Defendants with conspiracy to commit securities and wire fraud, securities fraud, and investment advisor fraud. (*See* Dkt. Entry No. 1, No. 16-cr-640) Specifically, the indictment charges defendants Nordlicht, Levy, Landesman, SanFilippo, and Mann together, with one count of conspiracy to commit securities fraud and investment advisor fraud, one count of conspiracy to commit wire fraud, two counts of securities fraud, and one count of investment adviser fraud. *Id.* at ¶¶ 88-90, 91-92, 93-94, 95-96, 97-98. Defendants Nordlicht, Levy, Small, and Schulse also were charged together with one count of conspiracy to commit securities fraud, one count of conspiracy to commit wire fraud, and one count of securities fraud. *Id.* at ¶¶ 99-101, 102-03, 104-05. Five days later, the SEC filed a civil complaint ("Complaint") in this action alleging violations of the securities laws by the Civil Defendants.

The civil and criminal actions address essentially the same two allegedly fraudulent schemes. First, the indictment and civil complaint allege that, between November 2012 and December 2016, the Civil Defendants concealed a growing liquidity crisis at Platinum Partners' flagship hedge fund, Platinum Partners Value Arbitrage Fund L.P. ("PPVA"), overvalued the performance of PPVA's assets, liquidity, and investments, and concealed the purpose of various transactions in violation of PPVA's governing documents. *See* SEC Compl. at ¶¶ 2-4, 38-43, 50-75; Indictment ¶ 42. The indictment and complaint also allege that select investors were paid

requested redemptions of their investments in PPVA ahead of and/or in lieu of other investors, contrary to PPVA's governing documents. SEC Compl. at ¶¶ 9, 127-37; Indictment at ¶ 42.

Second, the indictment and complaint allege that, between November 2011 and December 2016, certain of the Individual Defendants defrauded third-party holders of Black Elk bonds and deprived these bondholders of the proceeds of a Black Elk asset sale through misrepresentations regarding PMNY's ownership and control over the bonds. SEC Compl. at ¶¶ 5, 77-102; Indictment at ¶ 73.

After the SEC action was filed and the criminal indictment was unsealed, on January 23, 2017, the Government moved to intervene in the SEC's civil action and sought a stay of the civil proceedings pending the resolution of the parallel criminal action and an ongoing grand jury investigation. *See generally,* Gov't Mem. Defendants Small, Levy, SanFilippo, and Schulse opposed the motion, arguing that certain discovery should proceed in this action. *See* Defs. Small's, Levy's, SanFilippo's, and Schulse's Partial Opp. to App. of the U.S. to Intervene and to Stay Civil Proceedings, ("Small Opp. Br.") Dkt. Entry No. 79; Letter from Jeffrey Schulse, ("Schulse Opp. Letter") Dkt. Entry No. 80. Defendants Nordlicht, PMNY, and PCM joined. *See* Ltr. from Government, Dkt. Entry No. 81, at 1; Gov't Reply Mem. of Law in Supp. of Application to Intervene and to Stay Civil Proceedings, Dkt. Entry No. 84, at 1 fn 2. Defendants Landesman and Mann did not oppose the motion. *See* Gov't Mem. at 1; Ltr. from Joseph Mann, Dkt. Entry No. 78. The Government replied to Small, Levy, SanFilippo, Schulse, Nordlicht, PMNY, and PCM on February 13, 2017. *Id.*

## DISCUSSION

### I. Intervention

The Government moved to intervene in this action, arguing that it may do so as a matter of

right or alternatively on a permissive basis. (*See* Gov't Mem. at 4-8.) This request is unopposed by the Civil Defendants. (*See* Small Opp. Br. at 2.).

Under Rule 24 of the Federal Rules of Civil Procedure, a party may intervene in a civil action either as a matter of right or on a permissive basis. Rule 24 provides that intervention as of right is appropriate when, upon a timely motion, a party seeking to intervene:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2); See *also MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006) ("Intervention as of right . . . is granted when . . . : (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties.") (citations omitted); *Mortgage Lenders Network, Inc. v. Rosenblum*, 218 F.R.D. 381, 383 (E.D.N.Y. 2003).

Intervention as of right is appropriate in this case under Rule 24(a)(2). First, this action was filed on December 19, 2016 and the Government moved to intervene on January 23, 2017, just over one month later. *See* Gov't Mem. p. 6; *see Sec. & Exch. Comm'n v. Shkreli*, 2016 WL 1122029, at *2 (E.D.N.Y. Mar. 22, 2016) (finding movants' motion to intervene as timely when filed "just over a month" after the SEC complaint was filed); *Gulino v. Bd. of Educ.*, 2009 WL 2972997, at *3 (S.D.N.Y. Sept. 17, 2009) ("Movants filed their motion just one month after the case was reassigned within the District Court, so it is timely."). Moreover, the motion to intervene was filed before any discovery had taken place in the civil case, and, therefore, no party has

4

suffered prejudice. Second, the Government has "a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988). Third, further proceedings in this action could impair the Government's interest in limiting the defendants to the discovery available under the Federal Rules of Criminal Procedure. Finally, although the interests of the SEC and the Government certainly converge to some extent, the Government is uniquely focused on the enforcement of criminal statutes. *See S.E.C. v. Downe,* 1993 WL 22126, at *12 (S.D.N.Y. Jan. 26, 1993) ("[E]ven though the SEC is involved in this action, the United States Attorney may have an interest in this litigation which is qualitatively different from the SEC's interest."). Accordingly, intervention as of right is appropriate in this action.

Alternatively, permissive intervention per Rule 24(b)(1) equally is appropriate. Rule 24(b)(1) provides that, upon a timely motion, a court "may" permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "Permissive intervention is wholly discretionary with the trial court." *Shkreli*, 2016 WL 1122029, at *3 (quoting *Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.*, 2016 WL 845333, at *2 (S.D.N.Y. Mar. 2, 2016)); *see also St. John's Univ., New York v. Bolton*, 450 F. App'x 81, 84 (2d Cir. 2011) ("A district court has broad discretion under Rule 24(b) to determine whether to permit intervention . . ..").

Here, there is significant overlap between this proceeding and the criminal case. In both cases, the Individual Defendants are alleged to have perpetrated two schemes to: (1) defraud investors in Platinum's funds through misrepresentations and omissions about, among other things, PPVA's liquidity, the value of some of PPVA's largest investments, and the preferential and selective payment of investor redemptions, and (2) defraud third-party holders of Black Elk

5

bonds. (*Compare* Indictment *at* ¶¶ 42, 73, *with* Complaint at ¶¶ 3-5.) Both actions share common legal and factual questions, militating strongly in favor of permissive intervention. *See Shkreli*, 2016 WL 1122029, at *3 (granting permissive intervention where criminal and SEC actions shared "a great number of common legal and factual questions"); *Downe*, 1993 WL 22126, at *11 (granting permissive intervention where criminal investigation and corresponding SEC action arose "out of common questions of law and fact"); *See also Chestman*, 861 F.2d at 50. Permissive intervention, therefore, is appropriate.

Accordingly, the Government's motion to intervene in this action is granted.

## II. Stay

The Court turns to the Government's request for a complete stay of the civil proceedings. *See* Gov't Mem. at 8-17. "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also Chestman*, 861 F.2d at 50 (noting in dicta that "[t]he only result of the intervention has been the staying of discovery, an order the district court could have entered *sua sponte*."). Exercising that inherent power, federal courts "have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution, sometimes at the request of the defense." *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) (citations omitted) (collecting cases). Generally, the party "seeking a stay bears the burden of establishing its need." *S.E.C. v. McGinnis*, 2016 WL 591764, at *3 (D. Vt. Feb. 12, 2016) (internal quotation marks and citation omitted).

Courts in this Circuit have employed a six-factor test to determine whether a stay of civil

proceedings, pending the outcome of a party's criminal case, serves the interests of justice. In making determinations about stays, courts consider: 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest. *Louis Vuitton*, 676 F.3d at 99; *Plaintiffs # 1-21 v. Cnty. of Suffolk*, 138 F. Supp.3d 264, 279 (E.D.N.Y. 2015).

The Second Circuit has cautioned that these tests "can do no more than act as a rough guide for the district court as it exercises its discretion," and the tests are not "mechanical devices for churning out correct results in overlapping civil and federal proceedings." *Louis Vuitton*, 676 F.3d at 99. The appropriateness of a stay ultimately rests within the judgment of the district court "based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Id.*; *See also McGinnis*, 2016 WL 591764, at *3. The Court turns to a holistic consideration of these factors, mindful that none is dispositive.

First, the Court examines the overlap of the issues in the criminal and civil cases. Courts have recognized this as a particularly significant factor. *See Harris v. Nassau Cnty.*, 2014 WL 3491286, at *3 (E.D.N.Y. July 11, 2014) ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues."); *In re 650 Fifth Ave.*, 2011 WL 3586169, at *3 (S.D.N.Y. Aug. 12, 2011) (same); *Stamile v. Cnty. of Nassau*, 2011 WL 1754125, at *4 (E.D.N.Y. Jan. 31, 2011) (same). Where there is overlap, there is a greater concern about self-incrimination. By contrast, if "there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay." *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).

7

A comparison of the indictment and the complaint reveals that the alleged schemes are nearly identical. *Compare*, e.g., Indictment at ¶ 42 (allegation that certain of the defendants participated in a scheme to defraud investors and prospective investors in funds managed by Platinum), *with* SEC Compl. at ¶ 188 (allegation that certain of the defendants engaged in a scheme to defraud investors and potential investors by making material misrepresentations and omissions about, *inter alia*, the liquidity constraints of PPVA, the value of Platinum's investments, and the diversion of funds); *Compare also, e.g.,* Indictment ¶ 73 (allegation that certain of the defendants participated in a scheme to defraud third party bond holders of Black Elk bonds), *with* SEC Compl. at ¶ 5. The substantial commonality of the allegations in both the criminal and civil proceedings weigh strongly in favor of granting a stay.

Second, the Court considers the status of the parallel criminal proceeding. The filing of a criminal indictment weighs in favor of a stay of the parallel civil case. *See, e.g., Hicks v. City of N.Y.*, 268 F. Supp.2d 238, 242 (E.D.N.Y. 2003) ("[T]he strongest argument for granting a stay is where a party is under criminal indictment."); *See also Louis Vuitton*, 676 F.3d at 101 (recognizing that indictment in parallel criminal proceeding "supported the entry of a stay"); *Trustees of Plumbers*, 886 F. Supp. at 1139 ("A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct . . . ."); *SEC v. One or More Unknown Purchasers of Secs. of Global Inds., Ltd.*, 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) ("[A] civil stay is most appropriate when the defendant has already been indicted, as the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued.") (internal quotation marks and citation omitted).

In this case, all Individual Defendants have been indicted. *See* Indictment. Because the instant action and the criminal matter arise from the same underlying events and involve the same

actors, evidence from the civil action, where the Individual Defendants likely would be deposed, could incriminate them in the criminal action. Accordingly, the Court finds that this factor leans in the Government's favor. *See Harris*, 2014 WL 3491286, at *4 ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." (internal quotation marks and citation omitted)).

Third, the Court weighs the private interests of the plaintiff in proceeding expeditiously against the prejudice caused by a delay. While the SEC has not affirmatively joined the Government's motion to intervene and stay the civil case, the SEC has represented that it does not oppose the requested stay. *See* Def. Mem. at 1. Accordingly, this third factor has no bearing on the analysis. *See S.E.C. v. Treadway*, 2005 WL 713826, at *2-3 (S.D.N.Y. Mar. 30, 2005) (noting, where the SEC took no position on a stay until the end of criminal proceedings, the SEC did "not articulate[] an interest that requires consideration"); *One or More Unknown Purchasers of Secs. of Glob. Indus., Ltd.*, 2012 WL 5505738, at *3 ("The SEC, the Plaintiff in the Civil Case, does not oppose the U.S. Attorney's Motion. This position perhaps indicates support for a stay, but at the very least makes clear that the SEC does not believe it will be prejudiced by one."). Accordingly, this factor weighs in favor of granting a stay.

Fourth, the Court must consider the private interests and burden on the Individual Defendants should a stay be imposed. The opposing defendants contend that they will be prejudiced by a stay because it would allow the SEC to continue investigating its case while barring them from obtaining exculpatory evidence. Therefore, the opposing defendants propose a narrowly tailored stay that would bar depositions, interrogatories, or any "testimonial-type activities," including the filing of responsive pleadings, as to any party or witness, including Government cooperators, with a legitimate basis for the invocation of self-incrimination under the Fifth Amendment. Small Opp. at 2-3. Opposing defendants further argue that the Government

has not met its burden of showing either undue prejudice or actual harm that would result if the civil action were to proceed without the stay. *Id.* at 4. These arguments have no merit, given the potential impact on the Individual Defendants' Fifth Amendment rights. Even a narrowly tailored discovery protocol, that includes testimonial types of evidence, could include potentially incriminating documents or emails.

Defendants further contend that they face "significant prejudice if they are not permitted to take any discovery in this action for an indefinite, likely prolonged, period until resolution of the Criminal Action." *Id.* at 8. But these concerns are highly overstated as the Government represents that it will produce to defendants all materials it has received from the SEC allowing defendants to prepare for the civil case during the pendency of the criminal case. See Govt. Reply Br. at 9. Indeed, extensive discovery obtained not only from seizures, subpoenas, and witness interviews from the criminal investigation as well as from the SEC and its investigation, has been provided, and continues to be provided, to the Individual Defendants on a rolling basis in the criminal case.[1] Much of the same evidence is likely to be used in both cases. Notably, at the status conference held on both cases on the date of the issuance of this decision, the Government state that it had turned over to the Individual Defendants many documents received from the SEC. The Government further represented that it expects to receive additional discovery from the SEC in the near future that also will be turned over to the Individual Defendants. In effect, the only discovery that will not be had in this civil matter is "testimonial" type discovery, such as depositions, as proposed by the opposing defendants. Significantly, the discovery of exculpatory evidence was extensively discussed at the conference and a motion schedule has been set to address the Individual Defendant's request for such evidence as well as a bill of particulars in the criminal

---

[1] The Government represented at the conference (*See infra*), without opposition from the Individual Defendants, that, to date, it has turned over to defendants over 13.5 million documents, with more to come.

case. Opposing defendants can hardly be heard to complain that they will be deprived of discovery in this civil matter.

Defendants' additional claim that a complete stay will cause harm to their reputation is unconvincing and disingenuous at best. Small Br. at 13; Shulse Br. 2. The criminal case will proceed regardless of whether or not a complete stay of the civil proceedings is granted and it is implausible that the opposing defendants will suffer greater reputational harm from civil charges than from a criminal indictment. Therefore, this factor does not alter the Court's determination that a stay is justified.

Fifth, the Court considers its own interests. Courts often look to the "convenience of the court in the management of its cases" as well as the "efficient use of judicial resources." *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp.2d 573, 576 (S.D.N.Y. 2001) (internal quotation marks and citations omitted); *See also Fendi Adele S.R.L. v. Ashley Reed Trading, Inc.*, 2006 WL 2585612, at *2 (S.D.N.Y. Sept. 8, 2006) (same). Here, the Court has a strong interest in the efficient resolution of both the criminal and civil cases. The civil case is "likely to benefit to some extent from the [c]riminal [c]ase no matter its outcome." *Glob. Indus., Ltd.*, 2012 WL 5505738, at *4. For example, evidence gathered and presented during the criminal prosecution can be used in the civil action. *Shkreli*, 2016 WL 1122029, at *6. In proposing a partial stay that would bar any "testimonial-type activities" that broadly might implicate the Government's or defendants' legitimate interests, it is certain that judicial resources would be required to resolve civil discovery disputes in determining what types of discovery would implicate the Government's or defendants' interests. A stay of the civil action "would avoid a duplication of efforts and a waste of judicial time and resources." *Id.* (citing *S.E.C. v. Gordon*, 2009 WL 2252119, at *5 (N.D. Okla. July 28, 2009)); *See also Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003) ("By proceeding first with the criminal prosecution, the Court makes efficient use of judicial time and resources by

insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination."); *Volmar*, 152 F.R.D. at 42. Accordingly, this factor also favors a stay.

Finally, the Court considers the public interest. While "it can be difficult to discern whether the public has a stronger interest in the criminal or the civil litigation," often, as courts in this circuit have held, "the public's interest in the effective enforcement of the criminal law is the paramount public concern." *Shkreli*, 2016 WL 1122029, at *7; *See also McGinnis*, 2016 WL 591764, at *5 (granting stay of SEC action in part because the "public's interest in the integrity of the [parallel] criminal case is entitled to precedence over the civil litigant" (internal quotation marks and citation omitted)); *Treadway*, 2005 WL 713826, at *4 ("It is in the public interest . . . to prevent circumvention of the limitations on discovery in the criminal proceedings.") Here, Defendants Small, Levy, SanFilippo, Schulse, Nordlicht, PMNY, and PCM properly outline a string of district court decisions, in this Circuit and others, rejecting a complete stay of civil proceedings in an SEC-initiated civil action, pending the outcome of a parallel criminal action. *See* Small Opp. Br. at 5-6; *See also S.E.C. v. Gupta*, No. 11-CV-7566, 2011 WL 5977579, at *2 (S.D.N.Y. Nov. 30, 2011); *S.E.C. v. Cioffi*, No. 08-CV-2457, 2008 WL 4693320, at *2 (E.D.N.Y. Oct. 23, 2008); *Saad*, 229 F.R.D. at 92. Other the other hand, numerous courts in this Circuit *have* granted complete stays of SEC actions during the pendency of a parallel criminal case, even over a defendant's objections. *See, e.g., Shkreli*, 2016 WL 1122029, at *7; *Glob. Indus., Ltd.*, 2012 WL 5505738, at *6; *Gordon*, 2009 WL 2252119, at *5. Ultimately, the decision to stay the civil matter rests within the sound discretion of the Court.

Given the analysis above, the circumstances of the two cases before the Court heavily favor a stay of all civil proceedings. The substantial overlap of the issues and events in both cases, the post-indictment status of the criminal case, the SEC's lack of opposition to the Government's

proposed stay, the extensive discovery provided to the Individual Defendants in the criminal matter, the Court's interest in the effective resolution of both proceedings, and the strong public interest in criminal justice all favor a complete stay of the civil action.

## CONCLUSION

For the foregoing reasons, the Government's motion to intervene and to stay civil proceedings is granted. The SEC action is stayed pending the resolution of the criminal proceeding against the Individual Defendants. Nothing contained in this Memorandum and Order is to be construed as affecting the responsibilities and actions of the Receiver in disposing of the receivership assets.

SO ORDERED.

Dated: Brooklyn, New York
July 7, 2017

/s/
DORA L. IRIZARRY
Chief United States District Judge