UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SECURITIES AND EXCHANGE            :
COMMISSION,                        :
                     Plaintiff,           :
   -v-                               :
                                           :
PLATINUM MANAGEMENT (NY) LLC;      :   No. 16-cv-6848 (DLI)(VMS)
PLATINUM CREDIT MANAGEMENT, L.P.;  :
MARK NORDLICHT;                    :
DAVID LEVY;                        :
DANIEL SMALL;                      :
URI LANDESMAN;                     :
JOSEPH MANN;                       :
JOSEPH SANFILIPPO; and             :
JEFFREY SHULSE,                    :
                                           :
                    Defendants.         :
-----------------------------------------------------------x

## DECLARATION OF MELANIE L. CYGANOWSKI

I, Melanie L. Cyganowski, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information and belief:

1. I make this Declaration in my capacity as the duly appointed Receiver (the "***Receiver***") of Platinum Credit Management, L.P., Platinum Partners Credit Opportunities Master Fund LP, Platinum Partners Credit Opportunities Fund (TE) LLC, Platinum Partners Credit Opportunities Fund LLC, Platinum Partners Credit Opportunity Fund (BL) LLC, Platinum Liquid Opportunity Management (NY) LLC, and Platinum Partners Liquid Opportunity Fund (USA) L.P. (the "***Receivership Entities***"), in support of the motion (the "***Motion***") for an order approving the Stipulation and [Proposed] Order Regarding Settlement Between the Receiver and Heartland Bank, attached hereto as Exhibit 1 (the "***Settlement Stipulation***").

4855184.1

**Introduction**

2. The Settlement Stipulation is a negotiated agreement between me, as Receiver, and Heartland Bank ("Heartland") setting forth the terms of a discounted payoff of a loan from Heartland to Platinum Partners Credit Opportunities Master Fund LP ("PPCOMF"), one of the Receivership Entities, in the original principal amount of $7,000,000, and secured effectively by all of PPCOMF's assets, coming due as a balloon payment in less than two weeks, on August 31, 2017 (the "Loan"). Based on the efforts of professionals under my supervision engaged on behalf of the Receivership Entities, I am satisfied that the Loan reflects an actual transaction by which PPCOMF received a loan of $7,000,000 in principal from Heartland that is due to be repaid, and that Heartland possesses a valid, first-priority lien on effectively all of PPCOMF's assets. As further explained below, I, therefore, have concluded that the Settlement Stipulation, which discounts the amount of principal by over $1,000,000, and the amount of interest by over $200,000, owing by PPCOMF upon maturity, is in the best interests of the Receivership Entities.

**Background**

*The Loan*

3. By a series of loan documents entered into as of August 31, 2015, PPCOMF agreed to borrow, and Heartland agreed to lend, the principal amount of $7,000,000 in the form of a term loan, payable in a balloon payment upon maturity on August 31, 2017. The Loan accrues interest at the non-default rate of 5.875% per year, payable at the beginning of each quarter. Upon a Default (as defined in the loan documents), incremental default interest at the rate of 5% per year is added.

4. The Credit Agreement provides in Section 10.1 that an "Event of Default" exists when, among other things, (i) "Borrower shall fail to pay when due any principal of or interest

on the Term Loan Note or any monetary amount due under this Agreement or any other Loan Document," or (ii) a "proceeding . . . shall be commenced against Borrower or any Subsidiary . . . seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official . . ."

5.  The Loan is secured by a lien on all of PPCOMF's "Accounts, Chattel Paper, Documents, Equipment, Fixtures, General Intangibles, Investment Property, Instruments, Inventory, Pledged Deposits, Stock Rights and Other Collateral [collectively defined as "Collateral" in the loan documents], wherever located, in which [PPCOMF] now has or hereafter acquires any right or interest . . ."

6.  On September 3, 2015, a Uniform Commercial Code Financing Statement ("UCC-1") was filed with the Delaware Department of State, identifying Heartland as the secured party, PPCOMF as the debtor, and the Collateral as the collateral subject to the UCC-1.

7.  A copy of each of (i) the Credit Agreement by and between PPCOMF and Heartland, dated as of August 31, 2015, (ii) the Promissory Note by PPCOMF in favor of Heartland in the principal amount of $7,000,000, dated as of August 31, 2015, (iii) the Security Agreement by and between PPCOMF and Heartland, dated as August 31, 2015, and (iv) the UCC-1 (2015 3888855) filed on September 3, 2015, are attached as Exhibits 2 – 5 (collectively, the "***Loan Documents***"), respectively.

***The Receiver's Investigation and Authority to Settle***

8.  At my direction and under my supervision, attorneys with Otterbourg P.C., Court-approved counsel for the Receiver, and representatives of Goldin Associates, Court-approved financial advisor to the Receiver, have investigated the Loan and Loan Documents. Their investigation has revealed that the principal amount of the Loan was, in fact, extended to PPCOMF on or about August 31, 2015, that the Loan Documents appear to be genuine, and that

the UCC-1 appears to have been validly filed. In acknowledgment of those conclusions, both Bart M. Schwartz, the prior Court-appointed Receiver, and I, have authorized payment of quarterly interest payments to Heartland during the course of this SEC Receivership.

9. PPCOMF is the legal or beneficial owner of the vast majority of the Receivership Entities' assets that have been liquidated to date, and/or are expected to be liquidated during the course of this Receivership. Accordingly, Heartland's lien, if valid, would extend to much of the Receivership estate's assets.

10. The Loan comes due at the end of this month, at which time PPCOMF is required to make a balloon payment in the amount of the outstanding principal balance and accrued interest; otherwise, interest on all outstanding amounts will accrue at the total default rate of 10.875%. As of yesterday, the principal balance remaining on the Loan totals $6,750,000 (the "**Principal Balance**"), and the amount of unpaid interest on the Loan (on a non-default rate basis) totals $151,000.

11. Heartland asserts that PPCOMF missed a payment on October 19, 2016 and that, under the terms of the Credit Agreement, an Event of Default has continued to exist since, at least, that date. Heartland also has asserted that a separate Event of Default has occurred and continues to exist by reason of the filing of this Receivership action. If Heartland were to charge default interest on the principal balance from January 1, 2017 (when, according to the Receivership Entities' records, Heartland ceased charging default interest on the Loan) onwards, then, as of yesterday, the Receivership estate would owe Heartland an additional over $213,000 in default interest.

12. Under the [Proposed] Second Amended Order Appointing Receiver (the "**Proposed Receiver Order**") in the final stages of negotiation between the Receiver and the

United States Securities Exchange Commission ("**SEC**"), the Receiver has the authority "without further Order of this Court, [to] transfer, compromise, or otherwise dispose of Receivership Property in the ordinary course of business of the Receivership Entities' orderly wind down, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate." Further, "[t]he Receiver may engage in transactions outside of the ordinary course of business of the Receivership Entities' orderly wind down only upon motion and approval of the Court," including "any transaction that involves (i) the expenditure of cash constituting Receivership cash in excess of $3 million, or the disposition of the Receivership Estate's interest in Receivership Property in exchange for cash or property of value in excess of $3 million . . ."

13. Because the discounted payoff of the Loan involves the expenditure of more than $3 million, I am seeking Court Order approving the Settlement Stipulation, even though the Proposed Receiver Order has not yet been fully agreed to by parties or approved by the Court and the current Amended Order Appointing Receiver does not appear to require Court approval.

***The Settlement Stipulation***

14. The Settlement Stipulation (Exhibit 1 hereto) provides for the Receiver, within five days of Court approval, to pay 85% of the Principal Balance, along with unpaid interest at the non-default rate, to Heartland in full satisfaction of the Loan. Heartland's agreement to discount the Principal Balance by 15% (a savings of $1,012,500), and to waive interest at the default rate (an additional savings of over $213,000, plus potentially tens of thousands of dollars per month in future default interest if the Loan is not paid off at maturity), were heavily negotiated terms that provide significant value to the Receivership Entities' estate, especially in light of Heartland's first-priority lien on PPCOMF's assets, which could be foreclosed upon to recover amounts far in excess of the discounted payoff amount.

15. At the same time, the Settlement Stipulation provides protections to the Receivership in the event that further investigation later results in the discovery of acts of wrongdoing with respect to the Receivership Entities. While the Settlement Stipulation contains mutual releases upon approval by the Court of the Settlement Stipulation and Heartland's receipt of the discounted payoff amount, the Settlement Stipulation carves-out from such mutual releases (i) any claims against Heartland "arising from or related to fraud, willful misconduct or gross negligence" (which would include claims for fraudulent conveyance with actual intent to defraud), and (ii) any claims, of any nature, against Heartland's current or former affiliates, officers, directors, employees, agents and other representatives.

16. Using my business judgment, for the reasons set forth herein, I have concluded that the Settlement Stipulation's combination of providing economic value to the Receivership estate in the form of a 15% reduction in the principal balance, totaling $1,012,500 in savings, plus a waiver of default rate interest of at least $213,000, as well as saved legal fees from not having to negotiate forbearance agreements and/or litigate defaults, all while providing the estate with the protection to pursue Heartland and/or its officers, directors or employees in the event further investigation reveals fraud, willful misconduct or gross negligence, is in the best interests of the Receivership Entities.

## Conclusion

17. For the foregoing reasons, and those set forth in the accompanying Memorandum of Law, I respectfully submit that the Court should grant the Motion in its entirety.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of August, 2017, at Stony Brook, NY.

                                                          __Melanie L. Cyganowski__
                                                          Melanie L. Cyganowski