UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,  :
                                                                                                 :
                                  Plaintiff,         :
                                                                        :         No. 16-cv-6848 (BMC)(VMS)
    -v-                                                            :

PLATINUM MANAGEMENT (NY) LLC;            :
PLATINUM CREDIT MANAGEMENT, L.P.;   :
MARK NORDLICHT;                              :
DAVID LEVY;                                          :
DANIEL SMALL;                                   :
URI LANDESMAN;                              :
JOSEPH MANN;                                     :
JOSEPH SANFILIPPO; and                 :
JEFFREY SHULSE,                          :
                                                                       :
                                Defendants.     :
---------------------------------------------------------------X

## FIRST INTERIM APPLICATION OF GOLDIN ASSOCIATES, LLC FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING THE PERIOD JULY 6, 2017 THROUGH SEPTEMBER 30, 2017

      Goldin Associates, LLC ("Goldin"), as financial advisor to Melanie L. Cyganowski, the Court-appointed receiver (the "Receiver") for Platinum Credit Management, L.P., Platinum Partners Credit Opportunities Master Fund LP ("PPCOMF"), Platinum Partners Credit Opportunities Fund (TE) LLC, Platinum Partners Credit Opportunities Fund LLC, Platinum Partners Credit Opportunity Fund (BL) LLC, Platinum Liquid Opportunity Management (NY) LLC and Platinum Partners Liquid Opportunity Fund (USA) L.P. (collectively, the "Receivership Entities" or "Platinum"), hereby submits its First Interim Application for Allowance of Compensation and Reimbursement of Expenses Incurred During the Period July 6, 2017 through September 30, 2017 ("First Interim Application"). Goldin respectfully requests interim approval for payment of $985,666.50 in professional fees and reimbursement of

$1,350.24 in expenses incurred for July 6, 2017 through September 30, 2017 (the "First Application Period").

Goldin's First Interim Application contains the following sections:

(a) **Section I** offers a preliminary statement on Goldin's activities in this case to date.

(b) **Section II** contains information about Goldin and the case's status as required by Section C of the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Receivership Billing Instructions"). Section II also includes a description of each exhibit to this First Interim Application, as well as the reduction in fees agreed to by Goldin in connection with its appointment as financial advisor to the Receiver.

(c) **Section III** contains a narrative of the work that Goldin professionals performed under each activity category as required by Section D of the SEC Receivership Billing Instructions.

(d) **Section IV** summarizes the expenses for which Goldin seeks reimbursement as required by Section E of the SEC Receivership Billing Instructions.

(e) **Section V** describes the standards to be applied by the Court in determining fee awards in SEC equity receiverships.

(f) **Section VI** describes the holdback arrangement to which Goldin has agreed.

I.  PRELIMINARY STATEMENT

1. During the First Application Period, Goldin's main focus has been assisting the Receiver to address a variety of complex, time-sensitive matters, including many that were either

ignored or inadequately attended to in the months preceding her appointment. Immediate and intensive effort addressing these matters has resulted in substantial benefits to the Platinum receivership estate ("Receivership Estate"). These benefits involved not only the introduction of a significant amount of new cash into the Receivership Estate, but also the avoidance of significant costs. Several noteworthy examples of avoided costs, and Goldin's efforts related thereto, are described briefly below.

  (a) Goldin provided analytical support to the Receiver and her legal counsel in connection with the favorable settlement of a debt owed to Heartland Bank, PPCOMF's senior secured creditor. As a result of the efforts of the Receiver, its legal counsel and Goldin (collectively, the "Receivership Team"), Heartland agreed to discount the principal balance due on the relevant loan by 15% and to waive interest at the default rate, which resulted in a $1.2 million benefit to the Receivership Estate.

  (b) Goldin provided significant support to the Receiver and her retained tax professionals from Deloitte LLP ("Deloitte") in connection with preparation of Platinum's tax year 2016 filings. Goldin's investigation of various transactions, including assessing how they were accounted for by prior management, led to the identification of unsubstantiated realized gains recorded in PPCOMF's books. As a result of the Receivership Team's efforts, PPCOMF's taxable income will be reduced by almost $70 million when the returns are filed.

  (c) Goldin's comprehensive review and detailed analysis of Platinum's portfolio led, among other things, to the suspension of certain incremental payments where the Receiver determined that such payments were not favorably structured or were not likely to facilitate orderly liquidation. To take one illustrative example, based on the

work of the Receivership Team, the Receiver declined to provide additional funding, on a second-lien basis, to Desert Hawk Gold Company, a dormant domestic gold mine.[1] Between October 2016 and the Receiver's appointment, Platinum accommodated similar prior requests, lending $1.5 million to Desert Hawk on a second-lien basis. The Receiver conditioned any additional maintenance payments to Desert Hawk on such payments being conferred first-lien status and at the minimum amount necessary to preserve value pending the commencement of a sale process. As a result of the Receivership Team's efforts, with regard to Desert Hawk and other Platinum portfolio companies, incremental maintenance payments have been limited and on terms calculated to bridge these companies to an orderly, near-term sale.

(d)     Goldin performed analysis in support of the Receiver's decision not to honor certain other purported funding commitments made by the prior receiver related to, among other things, employee retention payments. Moreover, Goldin provided analysis in support of the Receiver's decision to terminate particular legacy Platinum employees, as well as to relocate the remaining employees to less expensive office space. As a result of the Receivership Team's efforts, sizeable anticipated expenses associated with the foregoing have been eliminated or moderated.

(e)     Goldin helped the Receiver institute and manage a variety of cash disbursement and budgeting protocols to prevent unauthorized or unexpected payments. For instance, Goldin (i) prepared periodic 13-Week cash receipts and disbursements forecasts; (ii) performed weekly actual vs. forecasted variance analyses regarding Platinum's cash position; (iii) established standardized procedures over the review and

---

[1] Two Desert Hawk shareholders own a $900,000 first-lien note.

4

approval of disbursements (including payroll); and (iv) conducted daily and weekly reconciliations of Platinum's cash and brokerage accounts. These controls have resulted in enhanced scrutiny and accountability, which has benefitted the Receivership Estate, albeit in an amount not readily susceptible to calculation.

2. In addition to these cost avoidance measures, Goldin devoted substantial time and effort to increasing the Receivership Estate's cash receipts. In this connection, Goldin worked closely with the Receiver and her legal counsel to identify, evaluate and execute disposition and loan collection strategies for certain portfolio positions. These strategies relied in meaningful part on Goldin's thorough financial analysis of Platinum's portfolio, which it developed essentially from scratch due to the limited documentation provided by the prior receiver.[2] Goldin's analysis included an assessment of the financial condition and capital structure of all relevant Platinum holdings. All told, during the Application Period, the Receivership Team sold portfolio positions and collected loans that brought over $11 million into the receivership estate.[3]

3. During the Application Period, Goldin also took steps to enable the Receiver to enhance the future salability of other Platinum holdings. This preparatory work involved: (i) responding to information requests and providing analytical support to Houlihan Lokey ("Houlihan"), which the Receiver has charged with selling certain Platinum assets; (ii) reviewing

---

[2] As indicated in the report the Receiver filed with the Court on August 10, 2017 (the "August 2017 Status Report"), the Receivership Team "has not had the benefit of written analyses and work product concerning [the Receivership Entities'] investments, and has encountered a lack of documentation associated with such transactions. To the extent such documents exist, their disorganization has impeded a prompt analysis. The Receivership Team has spent considerable time trying to assemble, organize and/or recreate the files for the investments and undertake a more thorough financial and legal analysis of the Receivership Entities' position(s) in each, the rights of the Receivership Entity in the capital structure and pursuant to the operative documents, assessing the maintenance costs of the asset, and options available to the Receiver." *August 2017 Report* at 8.

[3] This total is comprised of dispositions and collections involving the following investment positions: Katrina Barge Litigation Joint Venture, LLC ($5.6 million), Milberg LLP ($2.2 million), Martin Kenney & Co. ($1.8 million), Blumont Ltd. ($1.2 million), Grey K Environmental Fund ($136,000) and Bang Holdings Corp. ($50,000).

valuation reports, prepared by Houlihan, relating to Platinum's major holdings; (iii) assisting the Receiver and her legal counsel to develop disposition strategies for assets Houlihan is not marketing; and (iv) working constructively and collaboratively with the Joint Official Liquidators of certain offshore Platinum funds (the "PPVA Joint Liquidators"), with whom the Receivership Entities maintain shared interests in various assets.

## II.   APPLICATION REQUIREMENTS

### A.   Information about the Applicant and the Application

4. **Application Period**. This application covers the period of July 6, 2017 through September 30, 2017.

5. **Appointment of the Receiver**. On December 19, 2016, the U.S. Attorney for the Eastern District of New York unsealed an eight-count indictment (the "Indictment") against seven individuals who were formerly affiliated with Platinum, a purported $1.7 billion hedge-fund family based in New York. The Indictment alleges that the defendants defrauded Platinum investors through, among other things, the overvaluation of assets, the concealment of severe cash flow problems and the preferential payment of redemptions. The Indictment also charges four of the defendants with defrauding the independent bondholders of Black Elk Energy Offshore Operations, LLC, a portfolio company owned by Platinum, through a fraudulent offering document and diverting more than $95 million in proceeds to Platinum by falsely representing in the offering document that Platinum controlled approximately $18 million of the bonds when, in fact, Platinum controlled more than $98 million of the bonds.

On December 19, 2016, the SEC filed this action, asserting violations of the anti-fraud provisions of federal securities laws and seeking, among other relief, temporary and permanent

injunctive relief, disgorgement of ill-gotten gains, imposition of civil penalties, and appointment of a receiver (the "Complaint") [Docket No. 1].

On December 19, 2016, the Court entered an Order to Show Cause and Temporary Restraining Order (the "Restraining Order") against the defendants, granting certain specified relief to the SEC, including the appointment of a receiver, and granting the receiver control over the assets of the Receivership Entities [Docket No. 5].

Also on December 19, 2016, the Court entered the Order Appointing Receiver (the "Receiver Order"), as amended on January 30, 2017 (the "Amended Receiver Order") [Docket Nos. 6 and 59], naming Bart Schwartz as the initial receiver.

On January 31, 2017, the initial receiver sought to retain Cooley LLP as his counsel and Guidepost Solutions LLC to advise, assist and support him with his duties as receiver. [Docket Nos. 63 and 65]. Such retention applications were approved by the Court on February 17, 2017.

On June 23, 2017, Mr. Schwartz requested that the Court approve his resignation as receiver, effective upon the Court's appointment of a successor receiver [Docket No. 170]. On July 6, 2017, the Court accepted the resignation of Mr. Schwartz and appointed Melanie L. Cyganowski as his successor on July 6, 2017 [Docket No. 216].

6. **Appointment of the Applicant**. The Amended Receiver Order authorized the Receiver to engage professionals to assist in fulfilling her duties. On July 21, 2017, the Court approved Goldin's retention as the Receiver's financial advisor *nunc pro tunc* to July 6, 2017 [Docket No. 232].

7. **Fee Schedule**. The names and hourly rates of all Goldin professionals who billed time during the First Application Period is attached as **Exhibit B** (the "Fee Schedule"). The fees requested in this First Interim Application were determined on the basis of the hours worked by

7

Goldin professionals and Goldin's usual and customary hourly rates, as modified by a 10% public service discount.

8. **Prior Applications**. This application is interim and is Goldin's first fee and expense application in this case.

B. **Case Status**

9. **Cash on Hand and Unencumbered Funds**. As of September 30, 2017, the Receivership Entities had $8.6 million in unencumbered funds, of which $7.17 million was held in cash in bank accounts and $1.46 million was held in brokerage accounts.

(a) **Accrued Administrative Expenses**. As of September 30, 2017, it is estimated that accrued, unpaid administrative expenses amount to approximately $3.6 million. These administrative expenses consist of accrued and unpaid professional fees and expenses owed to Goldin, the Receiver and her legal counsel, as well as to Houlihan, Deloitte and certain other professional firms. In addition to these unpaid administrative expenses, the Receivership Estate paid remaining in-house Platinum staff and other operating expenses during the First Application Period.

10. **Summary of Receipts and Disbursements**. Cash disbursements during the First Application Period totaled approximately $11.9 million. This amount primarily consists of the following: (i) payment to Heartland Bank in connection with the August 24, 2017 loan settlement ($5.9 million); (ii) disbursements to certain Platinum assets to preserve their value pending the commencement of a sales process ($4.5 million);[4] (iii) payroll and related expenses paid to Platinum employees ($936,000); and (iv) payments to retained professionals ($546,000).

---

[4] This amount primarily consists of disbursements to preserve the value of the following investment positions pending the commencement of a sales process: Acceleration Bay ($2.1 million); ALS Capital Ventures LLC ($1.8 million); LC Energy ($320,000); Abdala Gold ($138,000); and Daybreak Oil and Gas ($68,000).

Cash receipts during the First Application Period totaled approximately $11.1 million. This amount primarily consists of proceeds derived from dispositions and collections associated with the following investment positions: Katrina Barge Litigation Joint Venture, LLC ($5.6 million), Milberg LLP ($2.2 million), Martin Kenney & Co. ($1.8 million), Blumont Ltd. ($1.2 million), Grey K Environmental Fund ($136,000) and Bang Holdings Corp. ($50,000).

11. **Closing of Case**. Goldin cannot at this time state when the Receiver will deem it appropriate to seek the conclusion of this case.

12. **Summary of Creditor Claims Proceedings**. The Receivership Team has not yet initiated a formal claims process.

13. **Summary of Assets**. The primary assets of the Receivership Estate consist of the following:

(a) Cash and cash equivalents of approximately $8.6 million.

(b) Non-cash assets that had been valued by prior management at approximately $446.6 million as of December 19, 2016.[5]

14. **Liquidated and Unliquidated Claims**. The Receiver currently holds no liquidated litigation recoveries. The Receiver may, however, have causes of action against a number of parties and is currently considering associated claims.

C. **Current and Previous Billings**

15. Goldin has not filed any prior fee and expense applications in this case.

D. **SEC Review**

---

[5] Prior management placed its investments into the following categories, and assigned the values noted: Mining ($222.3 million); Energy ($96.1 million); Litigation Finance ($34.6 million); Life Settlements ($30.9 million); Pharmaceuticals/Healthcare ($29.7 million); Industrials ($11.0 million) and Other Investments ($22.0 million). Prior management's values should not be deemed as admissions, representations, or waivers with respect to the actual value of the assets. The actual realizable values and/or fair market value for the assets may differ significantly.

16. Goldin submitted this First Interim Application to the SEC on October 13, 2017 to allow for a thirty-day review period, as required by the SEC Receivership Billing Instructions.

**E. Exhibits**

17. The First Interim Application contains the following exhibits:

(a) **Exhibit A**: The Standardized Fund Accounting Report ("SFAR") for the period July 7, 2017 through September 30, 2017.

(b) **Exhibit B**: A Fee Schedule showing the total fees billed, hours worked and hourly rates of each Goldin professional involved.

(c) **Exhibit C**: A summary of the total fees billed and hours worked by activity category.

(d) **Exhibit D**: All time records of Goldin professionals listed chronologically by activity category, as required by Section D.5 of the SEC Receivership Billing Instructions.

(e) **Exhibit E**: A summary of all expenses incurred by Goldin, organized by expense category, as required by Section E.1a of the SEC Receivership Billing Instructions.

(f) Goldin also submits herewith as **Exhibit F** the Certification required by Section A.1 of the SEC Receivership Billing Instructions.

**III. SERVICES RENDERED BY GOLDIN DURING THE FIRST APPLICATION PERIOD**

18. Goldin professionals recorded all services performed in time increments of one tenth (0.1) of an hour. Goldin made use of a lean team; the senior professionals involved each brought distinct, but essential, expertise to the engagement and were the primary responsible party on different tasks.

19. In accordance with Section D.3 of the SEC Receivership Billing Instructions, Goldin accounted for its time charges during the First Application Period by activity categories. Narrative summaries of these activity categories follow.[6]

20. **Accounting (01)**. $107,862.75 requested. During the First Application Period, Goldin helped establish and perform a variety of cash disbursement and budgeting protocols. For example, on a weekly basis, Goldin prepared 13-week cash flow forecasts and variance analyses, which enhanced the Receivership Estate's ability to monitor and manage its cash position. Goldin also conducted periodic reconciliations of Platinum's cash and brokerage accounts as an additional control. Additionally, Goldin provided day-to-day oversight of Platinum's accounting function, which included supervising work performed by Platinum's Chief Financial Officer. Moreover, Goldin helped close or consolidate numerous accounts and assisted the Receiver to secure control over Platinum's brokerage and bank accounts through, among other things, eliminating the ability of legacy Platinum employees to authorize the issuance of checks and wire transfers. Goldin professionals who billed time in this activity category during the First Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Alois Chakabva and Troy Sarpen.

21. **Asset Analysis and Recovery (02)**. $480,341.25 requested. Goldin devoted a significant percentage of its time during the First Application Period to assisting the Receiver to compile the information and conduct the analyses necessary to evaluate Platinum's assets in preparation for their orderly liquidation. Platinum's investment portfolio, broadly speaking, can

---

[6] Goldin professionals did not bill any time during the First Application Period to the following activity categories: Business Analysis (04), Business Operations (05), Claims Administration (07), Corporate Finance (08), Valuation (12) or Travel (13).

11

be divided into three categories: (i) life settlement investments;[7] (ii) litigation finance investments;[8] and (iii) a wide-array of investments in mostly developmental stage companies. During the First Application Period, Goldin performed extensive analysis of these investment positions in connection with the Receiver's efforts to wind-down the portfolio in a responsible, non-fire-sale manner. Goldin professionals who billed time in this activity category during the First Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Alois Chakabva, Noah Solomon and Troy Sarpen.

        (a)    **Life Settlement Investments**. Goldin worked with the Receivership Team to enhance the administration of Platinum's life settlements portfolio. Critically, during the initial weeks of her receivership, Goldin assisted the Receiver to assess and cure a pre-Receivership policy lapse that threatened to impair significantly the value of the life settlements portfolio.[9]

        (b)    **Litigation Finance Investments**. Goldin provided analytical support to the Receiver and her legal counsel with regard to each of Platinum's litigation financing investments. For instance, Goldin provided extensive support in connection with the favorable settlement of a litigation funding dispute between Milberg LLP, a class-action law firm, and certain participants in a pre-Receivership loan Platinum had extended to

---

[7]     PPCOMF, through its wholly owned subsidiary Credit Strategies, LLC, holds approximately 83% of the membership interests in ALS Capital Ventures LLC ("ALS"), a life settlements company. ALS manages life insurance policies to either sell or hold to maturity. ALS typically acquires life insurance policies from insured individuals at a discount to the policies' death benefit in exchange for the right to receive the death benefits upon the insureds' passing. As a condition to the receipt of these benefits, ALS must continue to make the required premium payments.

[8]     PPCOMF, through a series of special purpose limited liability companies, each of whose names references Hamilton Capital, provides litigation financing to law firms requiring short-term or growth capital and corporate and individual plaintiffs requiring capital to pursue litigation. The law firm loans are typically collateralized by the law firm's portfolio of existing cases and anticipated revenue, and the corporate and individual plaintiff's loans are secured by anticipated recoveries from a specific case or cases.

[9]     On July 18, 2017, the Receiver entered into a settlement that had the effect of reinstating a life insurance policy, with a face amount of $10 million, which was deemed to have lapsed due to Platinum's failure to make required premium payments.

Milberg.  Goldin reviewed and evaluated the key documents, and conferred repeatedly with the relevant parties.  Likewise, in connection with Platinum's loan arrangement with Acceleration Bay, a California-based technology incubator, Goldin assisted the Receiver and Houlihan in connection with their efforts to monetize Platinum's position.  Goldin reviewed and evaluated pertinent documentation and participated in meetings with the relevant parties.  Goldin also provided analytical support, including the review and analysis of relevant documents, and conferences with pertinent individuals, in connection with two additional litigation financing positions related to Martin Kenney & Co., a British Virgin Islands-based law firm, as well as Katrina Barge Litigation Joint Venture, LLC, a joint venture created to sue for damages caused by Hurricane Katrina.

(c) **Developmental Stage Investments**.  Goldin devoted significant attention to developing and executing strategies to preserve the value of certain Platinum portfolio positions pending the commencement of an orderly sales process.  In order to formulate these strategies, Goldin (i) reviewed and evaluated pertinent documents; (ii) held in-depth discussions with relevant Platinum personnel; (iii) conducted meetings with portfolio company management; (iv) conferred internally, as well as with the Receiver and her counsel; and (v) created comprehensive and detailed memoranda, spreadsheets and other documentation reflecting its financial analyses of Platinum's portfolio positions.  Among other things, as a consequence of this work, the Receiver suspended certain further maintenance payments to portfolio companies, where the incremental payments were either badly structured or were not essential to facilitate orderly liquidation.

22. **Asset Disposition (03)**.  $53,410.50 requested.  During the First Application Period, Goldin provided the Receiver with significant analytical support and counsel with respect

13

to the actual and potential monetization of Platinum's investment positions. Since her appointment, the Receiver, with Goldin's aid, has generated more than $11 million. In addition to facilitating the dispositions associated with the foregoing, Goldin conferred with, and provided analytical assistance to, Houlihan as that firm prepared for a potential sale of various other Platinum holdings, including the Brazilian gold tailings project (Abdala). Goldin professionals who billed time in this activity category during the First Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Alois Chakabva, Noah Solomon and Troy Sarpen.

23. **Case Administration (06)**. $274,866.75 requested. Goldin, the Receiver and her counsel have endeavored throughout the First Application Period to administer the Receivership Estate efficiently. Accordingly, Goldin conferred frequently with the Receiver and her legal counsel to ensure that its efforts were coordinated with their own. In addition, Goldin's internal team members met to strategize and plan their approach to mandated tasks.

The effective administration of the estate also entails communicating with external stakeholders about the status of the Receivership, and addressing questions related thereto. To that end, during the First Application Period, Goldin spoke periodically with investors, the PPVA Joint Liquidators, the SEC, Houlihan and Deloitte, among others. In addition, the Goldin team, in concert with the Receiver and her legal counsel, drafted the August 2017 Report and published a website aimed at providing information to third-parties about their work. Goldin professionals who billed time in this activity category during the First Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Alois Chakabva, Noah Solomon and Troy Sarpen.

24. **Employee Benefits (09)**. $8,671.50 requested. During the First Application Period, Goldin provided analytical support to the Receiver and her legal counsel in connection

14

with the termination and retention of Platinum employees. Goldin professionals who billed time in this activity category during the First Application Period included Marc Kirschner, William Edwards, Curtis Solsvig and Alois Chakabva.

25. **Forensic Accounting (10)**. $4,837.50 requested. Goldin, shortly after it commenced work on this case, obtained access to Platinum's general ledger. Goldin undertook to reconcile the July 6, 2017 opening and closing balances of Platinum's bank accounts, brokerage accounts and investment portfolio. The Receivership Team did not identify any discrepancies. In the period ahead, Goldin anticipates that it will conduct more extensive forensic analyses of certain pre-Receivership transactions, including purported asset transfers by and between PPCOMF and certain other Platinum entities. Alois Chakabva is the only Goldin professional who billed time in this activity category during the First Application Period.

26. **Tax Issues (11)**. $55,676.25 requested. Goldin provided extensive support to the Receiver and Deloitte in connection with preparation of Platinum's tax year 2016 filings. Among other things, Goldin investigated various 2016 transactions and assessed how they accounted for by prior management. This work led to the identification of substantial unsubstantiated realized gains recorded in PPCOMF's books and records. Goldin professionals who billed time in this category during the First Application Period included Marc Kirschner, William Edwards, Curtis Solsvig and Alois Chakabva.

IV. **EXPLANATION OF EXPENSES AND RELATED POLICIES**

27. Goldin seeks reimbursement of its out-of-pocket costs in the amount of $1,350.24. Exhibit E sets forth various categories of expenses for which Goldin seeks reimbursement. Goldin will retain the documentation supporting these expenses for a period of seven years in accordance with the SEC Receivership Billing Instructions and will provide the SEC with copies

upon request. Goldin's request for expense reimbursement complies with the SEC Receivership Billing Instructions.

## V. FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

28. The case law on equity receiverships sets forth the standards for approving receiver compensation and the fees and expenses for the receiver's retained professionals. The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and her retained professionals and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994). Many authorities (some quite dated) provide "convenient guidelines," but in the final analysis, "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

29. In allowing professional fees in receiverships, "[t]he court will consider . . . the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); s*ee also United States v. Code Prods*., 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained). "'[R]esults are always relevant.'" *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992), *quoting Moody,* 374 F Supp. at 480. However, a good result may take a form other than a simple increase in monetary value. *Id*. ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation.").

16

30. Under these standards Goldin has adequately demonstrated that the amount of fees requested is appropriate. The scope of the tasks that confronted Goldin and the Receivership Team upon their appointment was far greater than foreseeable, in large measure because of pre-existing exigent circumstances, described in summary form above. It required tremendous effort to gather, process and analyze information, while simultaneously working to stabilize, and impose essential controls on, the Receivership Estate. Goldin helped the Receivership Team overcome these unanticipated threshold challenges, while simultaneously beginning to execute on the primary mission of orderly liquidation.

31. In the period ahead, Goldin anticipates that, based on the efforts expended during this Application Period, numerous additional Platinum positions will be liquidated, which should generate substantial additional benefits to the Receivership Estate.

## VI.  HOLDBACK

32. Goldin and the Receiver are cognizant of the fact that the disposition of assets is still in its early stages and that there are significant costs of maintaining certain of the portfolio assets until they can be sold in an orderly manner (*e.g.*, the monthly carrying costs of the litigation financing investments and the monthly premiums required to be paid on the life settlement policies). Accordingly, in an effort to preserve assets at this stage of the Receivership, the Receiver has requested and Goldin has agreed to hold back forty (40%) percent of the allowed fees requested in this First Interim Application (the "Holdback Amount"). Goldin has agreed to forego immediate payment of the Holdback Amount with the understanding that (i) upon disposition of additional assets, and subject to the consent of the SEC, the Receiver will authorize the payment of half of the Holdback Amount (*i.e.*, 20% of Goldin's allowed fees), and

(ii) the remaining Holdback Amount can be paid to Goldin at the conclusion of the Receivership. All payments will be made from the Receivership assets.

WHEREFORE, Goldin respectfully requests that the Court:

(a) grant interim approval of Goldin's request for compensation in the amount of $985,666.50;

(b) grant interim approval of Goldin's request for reimbursement of its out-of-pocket expenses in the amount of $1,350.24;

(c) authorize the Receiver to immediately pay from the Receivership assets (i) the allowed fees of Goldin, less the Holdback Amount, plus (ii) 100% of the allowed out-of-pocket expenses of Goldin;

(d) authorize the Receiver, upon the disposition of additional assets, to pay from the Receivership assets half of Goldin's Holdback Amount (*i.e.*, 20% of Goldin's allowed fees), subject to the consent of the SEC; and

(e) grant such other relief as the Court deems appropriate.

Dated: November 15, 2017
New York, NY

Respectfully submitted,

/s/ Marc S. Kirschner
Marc S. Kirschner
Senior Managing Director
Goldin Associates, LLC
350 Fifth Avenue
44th Floor
New York, NY 10118
Telephone: (212) 593-2255
mkirschner@goldinassociates.com

18

Of Counsel:
Jonathan E. Goldin
General Counsel
Goldin Associates, LLC
350 Fifth Avenue
44th Floor
New York, NY 10118
Telephone: (212) 593-2255
jegoldin@goldinassociates.com