UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION, :
                                         :
                   Plaintiff,       :
                                           :     No. 16-cv-6848 (BMC)
                                   :
   -v-                                   :
                                   :
PLATINUM MANAGEMENT (NY) LLC;        :
PLATINUM CREDIT MANAGEMENT, L.P.;    :
MARK NORDLICHT;                      :
DAVID LEVY;                             :
DANIEL SMALL;                        :
URI LANDESMAN;                     :
JOSEPH MANN;                       :
JOSEPH SANFILIPPO; and            :
JEFFREY SHULSE,                  :
                                   :
                   Defendants.     :
-------------------------------------------------------------X

**SECOND INTERIM APPLICATION OF GOLDIN ASSOCIATES, LLC FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF
EXPENSES INCURRED DURING THE PERIOD OCTOBER 1, 2017
THROUGH DECEMBER 31, 2017**

Goldin Associates, LLC ("Goldin"), as financial advisor to Melanie L. Cyganowski, the

Court-appointed receiver (the "Receiver") for Platinum Credit Management, L.P., Platinum

Partners Credit Opportunities Master Fund LP ("PPCOMF"), Platinum Partners Credit

Opportunities Fund (TE) LLC, Platinum Partners Credit Opportunities Fund LLC, Platinum

Partners Credit Opportunity Fund (BL) LLC, Platinum Liquid Opportunity Management (NY)

LLC, Platinum Partners Liquid Opportunity Fund (USA) L.P., Platinum Partners Liquid

Opportunity Master Fund L.P, Platinum Partners Credit Opportunities Fund International Ltd,

and Platinum Partners Credit Opportunities Fund International (A) Ltd. (collectively, the

"Receivership Entities" or "Platinum"),[1] hereby submits its Second Interim Application for Allowance of Compensation and Reimbursement of Expenses Incurred During the Period October 1, 2017 through December 31, 2017 ("Second Interim Application").  Goldin respectfully requests interim approval for payment of $629,210.25 in professional fees and reimbursement of $1,825.42 in expenses incurred for October 1, 2017 through December 31, 2017 (the "Second Application Period").

Goldin's Second Interim Application contains the following sections:

(a)     **Section I** contains a preliminary statement on Goldin's activities in this case during the Second Application Period.

(b)     **Section II** contains information about Goldin and the case's status, as required by Section C of the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Receivership Billing Instructions").  Section II also includes a description of each exhibit to this Second Interim Application, as well as the reduction in fees agreed to by Goldin in connection with its appointment as financial advisor to the Receiver.

(c)     **Section III** contains a narrative of the work that Goldin professionals performed under each activity category, as required by Section D of the SEC Receivership Billing Instructions.

(d)     **Section IV** summarizes the expenses for which Goldin seeks reimbursement, as required by Section E of the SEC Receivership Billing Instructions.

---

[1]     On December 29, 2017, the Court entered an order approving the expansion of the Receivership Estate to include the following entities: (i) Platinum Partners Liquid Opportunity Master Fund L.P.; (ii) Platinum Partners Credit Opportunities Fund International Ltd; and (iii) Platinum Partners Credit Opportunities Fund International (A) Ltd [Docket No. 298].

(e)     **Section V** describes the standards to be applied by the Court in determining fee awards in SEC equity receiverships.

(f)     **Section VI** describes the holdback arrangement to which Goldin has agreed.

# I.     PRELIMINARY STATEMENT

1.      During the Second Application Period, Goldin's central focus has been assisting the Receiver to monetize additional assets of the Platinum receivership estate ("Receivership Estate"). All told, during this period, the Receiver sold portfolio positions that brought over $11.5 million into the Receivership Estate.[2] Goldin's efforts that helped bring about this result are described briefly below.

(a)     Goldin supported Houlihan Lokey ("Houlihan") and Conway MacKenzie Capital Advisors, LLC ("Conway") in connection with marketing certain Platinum portfolio positions.[3] For instance, Goldin provided Houlihan and Conway with information and analysis related to Platinum's assets, and facilitated, as necessary, engagement with portfolio company management and/or potential purchasers. Goldin also advised the Receiver on Houlihan and Conway's disposition-related recommendations. In order to so advise, Goldin reviewed analyses generated by, and conferred regularly with, Houlihan and Conway.

(b)     Goldin assisted the Receiver and her legal counsel in the development and execution of disposition strategies for certain assets Houlihan and Conway are not

---

[2]     This amount primarily consists of proceeds derived from the sale of certain stock holdings, as well as the sale of Platinum's investment positions in Acceleration Bay ($10 million) and Airdye ($1.265 million).

[3]     The Receiver retained Houlihan to market specific Platinum assets, including the following: (i) the life settlements portfolio; (ii) the litigation finance portfolio; (iii) the Brazilian gold tailings project (Abdala); (iv) Urigen Pharmaceuticals, Inc.; and (v) LC Energy Operations LLP. The Receiver tasked Conway with, in the first instance, marketing the following Platinum assets: (i) West Ventures LLC and its wholly owned subsidiary, Buffalo Lake Advanced Biofuels, LLC; (ii) Desert Hawk Gold Corp.; and (iii) Daybreak Oil and Gas, Inc.

3

marketing.  With regard to these assets, Goldin, among other things, (i) reviewed and analyzed relevant financial information; (ii) created comprehensive and detailed memoranda, spreadsheets and other documentation reflecting its financial analyses; (iii) conducted meetings with portfolio company management; (iv) conferred internally, as well with the Receiver and her counsel; (v) identified and conferred with potential purchasers; and (vi) participated in negotiations pertinent to the sale of these assets, which ranged from thinly-traded, illiquid stock to debt positions in small private companies.

2.      In addition to the liquidation of assets, another potential source of cash receipts is the pursuit of litigation claims against third-parties.  Goldin, the Receiver and her legal counsel (collectively, the "Receivership Team") continue to evaluate such potential claims, which involves, among other things, performing forensic accounting and related factual investigations. This work is still in its early stages, and the Receivership Team anticipates that, in the period ahead, this forensic assessment will intensify.

3.      During the Second Application Period, Goldin also provided significant support to the Receiver and her retained tax professionals from Deloitte LLP ("Deloitte") in connection with the preparation and issuance of Platinum's tax year 2016 filings.  This support included: (i) reviewing computations relevant to investor tax returns; (ii) investigating the facts and circumstances of various 2016 transactions; and (iii) confirming the accuracy of investor demographic information through the review and reconciliation of several data sources.

4.      Goldin continued to manage a variety of cash disbursement and budgeting protocols on behalf of the Receivership Estate during the Second Application Period.  For instance, Goldin (i) prepared periodic 13-Week cash receipts and disbursements forecasts; (ii)

4

performed weekly actual vs. forecasted variance analyses regarding Platinum's cash position; (iii) oversaw the procedures governing the review and approval of disbursements (including payroll); and (iv) conducted daily and weekly reconciliations of Platinum's cash and brokerage accounts.

## II.     APPLICATION REQUIREMENTS

### A.     Information about the Applicant and the Application

5.     **Application Period**.  This application covers the period of October 1, 2017 through December 31, 2017.

6.     **Appointment of the Receiver**.  On December 19, 2016, the U.S. Attorney for the Eastern District of New York unsealed an eight-count indictment (the "Indictment") against seven individuals who were formerly affiliated with Platinum, a purported $1.7 billion hedge-fund family based in New York.  The Indictment alleges that the defendants defrauded Platinum investors through, among other things, the overvaluation of assets, the concealment of severe cash flow problems and the preferential payment of redemptions.  The Indictment also charges four of the defendants with defrauding the independent bondholders of Black Elk Energy Offshore Operations, LLC, a portfolio company owned by Platinum, through a fraudulent offering document and diverting more than $95 million in proceeds to Platinum by falsely representing in the offering document that Platinum controlled approximately $18 million of the bonds when, in fact, Platinum controlled more than $98 million of the bonds.

On December 19, 2016, the SEC filed this action, asserting violations of the anti-fraud provisions of federal securities laws and seeking, among other relief, temporary and permanent injunctive relief, disgorgement of ill-gotten gains, imposition of civil penalties, and appointment of a receiver [Docket No. 1].

On December 19, 2016, the Court entered an Order to Show Cause and Temporary Restraining Order against the defendants, granting certain specified relief to the SEC, including the appointment of a receiver, and granting the receiver control over the assets of the Receivership Entities [Docket No. 5].

Also on December 19, 2016, the Court entered the Order Appointing Receiver, as amended on January 30, 2017 [Docket Nos. 6 and 59], naming Bart Schwartz as the initial receiver.

On January 31, 2017, the initial receiver sought to retain Cooley LLP as his counsel and Guidepost Solutions LLC to advise, assist and support him with his duties as receiver. [Docket Nos. 63 and 65]. Such retention applications were approved by the Court on February 17, 2017.

On June 23, 2017, Mr. Schwartz requested that the Court approve his resignation as receiver, effective upon the Court's appointment of a successor receiver [Docket No. 170]. On July 6, 2017, the Court accepted the resignation of Mr. Schwartz and appointed Melanie L. Cyganowski as his successor [Docket No. 216].

7.    **Appointment of the Applicant**.  The Amended Receiver Order authorized the Receiver to engage professionals to assist in fulfilling her duties.  On July 21, 2017, the Court approved Goldin's retention as the Receiver's financial advisor *nunc pro tunc* to July 6, 2017 [Docket No. 232].

8.    **Fee Schedule**.  The names and hourly rates of all Goldin professionals who billed time during the Second Application Period is attached as **Exhibit B** (the "Fee Schedule").  The fees requested in this Second Interim Application were determined on the basis of the hours worked by Goldin professionals and Goldin's usual and customary hourly rates, as modified by a 10% public service discount.

9.      **Prior Applications**.  This application is interim and is Goldin's second fee and expense application in this case.  The fees and expenses requested by Goldin in its first fee and expense application, which it filed with the Court on November 15, 2017, were allowed and paid as follows:

| Period | Order Date Docket No. | Amount Requested | | Amount Allowed | | Amount Paid to Date | |
|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| 7/6/17-9/30/17 | 12/5/17 Docket No. 290 | $985,666.50 | $1,350.24 | $985,666.50 | $1,360.24 | $788,533.20 | $1,350.24 |

**B.      Case Status**

10.      **Cash on Hand and Unencumbered Funds**.  As of December 31, 2017, the Receivership Entities had $11.7 million in unencumbered funds, of which $10.2 million was held in cash in bank accounts and $1.5 million was held in brokerage accounts.

(a)      **Accrued Administrative Expenses**.  As of December 31, 2017, it is estimated that accrued, unpaid administrative expenses amount to approximately $2.6 million.  These administrative expenses primarily consist of accrued and unpaid professional fees.  In addition to these unpaid administrative expenses, the Receivership Estate paid remaining in-house Platinum staff and other operating expenses during the Second Application Period.

11.      **Summary of Receipts and Disbursements**.  Cash disbursements during the Second Application Period totaled approximately $8.6 million.  This amount primarily consists of the following: (i) payments to the Receiver and retained professionals ($4.5 million); (ii)

disbursements to certain Platinum assets to preserve their value pending their sale ($3.45 million);[4] and (iii) $535,100 in rent, payroll and related expenses paid to Platinum employees.  Cash receipts during the Second Application Period totaled approximately $11.5 million.  This amount primarily consists of proceeds derived from dispositions associated with the following investment positions: Acceleration Bay ($10 million net to Platinum)[5] and Airdye ($1.265 million), as well as certain miscellaneous stock sales.

12.    **Closing of Case**.  Goldin cannot at this time state when the Receiver will deem it appropriate to seek the conclusion of this case.

13.    **Summary of Creditor Claims Proceedings**.  The Receivership Team has not yet initiated a formal claims process.

14.    **Summary of Assets**.  The primary assets of the Receivership Estate consist of the following:

(a)    Cash and cash equivalents of approximately $11.7 million.

(b)    Non-cash assets that had been valued by prior management at approximately $446.6 million as of December 19, 2016.[6]

15.    **Liquidated and Unliquidated Claims**.  The Receiver currently holds no liquidated litigation recoveries.  The Receiver may, however, have causes of action against a number of parties and is currently considering associated claims.

---

[4]    This amount includes funds disbursed to preserve the value of the following assets pending their sale: Acceleration Bay ($1.4 million); ALS Capital Ventures LLC ($1.7 million); LC Energy ($270,000); and Abdala ($111,600).
[5]    This amount is net of a $526,000 completion fee paid to Houlihan pursuant to its retention agreement.  The gross sale amount was $10,540,000.
[6]    Prior management placed its investments into the following categories and assigned the values noted: Mining ($222.3 million); Energy ($96.1 million); Litigation Finance ($34.6 million); Life Settlements ($30.9 million); Pharmaceuticals/Healthcare ($29.7 million); Industrials ($11.0 million) and Other Investments ($22.0 million).  Prior management's values should not be deemed as admissions, representations, or waivers with respect to the actual value of the assets.  The actual realizable values and/or fair market value for the assets may differ significantly from prior management's estimates.

**C.     SEC Review**

16.     Goldin submitted this Second Interim Application to the SEC on January 16, 2018 to allow for a thirty-day review period, as required by the SEC Receivership Billing Instructions. The SEC review resulted in Goldin reducing its requested fees by $28,363.50.

**D.     Exhibits**

17.     The Second Interim Application contains the following exhibits:

(a)     **Exhibit A**: The Standardized Fund Accounting Report ("SFAR") for the period October 1, 2017 through December 31, 2017.

(b)     **Exhibit B**: A Fee Schedule showing the total fees billed, hours worked and hourly rates of each Goldin professional involved.

(c)     **Exhibit C**: A summary of the total fees billed and hours worked by activity category.

(d)     **Exhibit D**: All time records of Goldin professionals listed chronologically by activity category, as required by Section D.5 of the SEC Receivership Billing Instructions.

(e)     **Exhibit E**: A summary of all expenses incurred by Goldin, organized by expense category, as required by Section E.1a of the SEC Receivership Billing Instructions.

(f)     **Exhibit F**: The certification contemplated by Section A.1 of the SEC Receivership Billing Instructions.

**III.     SERVICES RENDERED BY GOLDIN DURING THE SECOND APPLICATION PERIOD**

18.     Goldin professionals recorded services performed in time increments of one tenth (0.1) of an hour.  Goldin made use of a lean team; the senior professionals involved each brought

9

distinct, but essential, expertise to the engagement and were the primary responsible party on different tasks.

19.     Per Section D.3 of the SEC Receivership Billing Instructions, Goldin accounted for its time charges during the Second Application Period by activity categories.  Narrative summaries of these activity categories follow.[7]

20.     **Accounting (01)**.  $51,702.75 requested.  During the Second Application Period, Goldin continued to manage a variety of cash disbursement and budgeting protocols.  For example, on a weekly basis, Goldin prepared 13-week cash flow forecasts and variance analyses, which enhanced the Receivership Estate's ability to monitor and manage its cash position.  Goldin also conducted periodic reconciliations of Platinum's cash and brokerage accounts as a control.  Additionally, Goldin provided day-to-day oversight of Platinum's accounting function, which included monitoring work performed by Platinum's Chief Financial Officer.  Goldin professionals who billed time in this activity category during the Second Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Alois Chakabva and Troy Sarpen.

21.     **Asset Analysis and Recovery (02)**.  $56,621.25 requested.  Platinum's investment portfolio, broadly speaking, can be divided into three categories: (i) life settlement investments;[8] (ii) litigation finance investments;[9] and (iii) a wide-array of investments in mostly

---

[7]     Goldin professionals did not bill any time during the Second Application Period to the following activity categories: Business Analysis (04), Business Operations (05), Claims Administration (07), Corporate Finance (08), Valuation (12) or Travel (13).

[8]     PPCOMF, through its wholly owned subsidiary Credit Strategies, LLC, holds approximately 83% of the membership interests in ALS Capital Ventures LLC ("ALS"), a life settlements company.  ALS manages life insurance policies to either sell or hold to maturity.  ALS typically acquires life insurance policies from insured individuals at a discount to the policies' death benefit in exchange for the right to receive the death benefits upon the insureds' passing.  As a condition to the receipt of these benefits, ALS must continue to make the required premium payments.

[9]     PPCOMF, through a series of special purpose limited liability companies, each of whose names references Hamilton Capital, provides litigation financing to law firms requiring short-term or growth capital and corporate and

developmental stage companies.  Goldin, on behalf of the Receivership Team, continues to track and monitor the disposition status of each Platinum asset.  The Receivership Team has commenced the sales process for a significant number of Platinum's assets.  For certain Platinum assets, however, additional pre-disposition work is required prior to commencing a sales process and/or pursuing other monetization strategies.  To take one example, during the Second Application Period, Goldin developed bespoke financial models, participated in relevant negotiations and critiqued third-party financial analyses in connection with the Receivership Estate's efforts to obtain a recovery on a $16 million loan from Platinum to Arabella Exploration, Inc. in 2014.  Goldin's Arabella-related financial analyses focused on issues central to an adversary proceeding, commenced by Founders Oil & Gas III, LLC and Founders Oil & Gas Operating, LLC, which involves the right to certain revenues associated with several large oil and gas wells.  The outcome of this proceeding will impact Platinum's loan recovery materially.  Goldin professionals who billed time in this activity category during the Second Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Alois Chakabva and Troy Sarpen.

22.     **Asset Disposition (03)**.  $237,415.50 requested.  During the Second Application Period, Goldin assisted the Receiver, as well as professionals at Houlihan and Conway, in connection with the monetization of certain Platinum portfolio positions, including Acceleration Bay and AirDye.  All told, during this period, the Receiver sold portfolio positions that brought over $11.5 million of cash into the Receivership Estate.  In connection with these dispositions, Goldin provided Houlihan and Conway with information and analysis related to pertinent assets,

---

individual plaintiffs requiring capital to pursue litigation.  The law firm loans are typically collateralized by the law firm's portfolio of existing cases and anticipated revenue, and the corporate and individual plaintiff's loans are secured by anticipated recoveries from a specific case or cases.

and facilitated, as necessary, engagement with portfolio company management and/or potential purchasers.  Goldin also advised the Receiver on Houlihan and Conway's disposition-related recommendations after reviewing analyses generated by, and conferring with, these firms.

In addition, Goldin assisted the Receiver and her legal counsel in the development and execution of disposition strategies for assets not being marketed by Houlihan or Conway, including Agera Energy, Azarga Uranium, China Horizon, Cleveland Mining, Cokal Limited and New Jersey Ethanol, among others.  With regard to these assets, Goldin, among other things, (i) reviewed and analyzed relevant financial information; (ii) created detailed memoranda, spreadsheets and other documentation reflecting its financial analyses; (iii) conducted meetings with relevant portfolio company management; (iv) conferred internally, as well as with the Receiver and her counsel; (v) identified and conferred with potential purchasers; and (vi) participated in negotiations pertinent to the sale of these assets, which ranged from thinly-traded, illiquid stock to debt positions in small private companies.  Goldin professionals who billed time in this activity category during the Second Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Alois Chakabva and Troy Sarpen.

23.     **Case Administration (06)**.  $160,859.25 requested.  The Receivership Team endeavored throughout the Second Application Period to administer the Receivership Estate efficiently.  Accordingly, Goldin conferred frequently with the Receiver and her legal counsel to ensure that its efforts were coordinated with their own.  In addition, Goldin's internal team members met to plan their approach to mandated tasks.

The effective administration of the Receivership Estate also entails communicating with external stakeholders about the status of the Receivership, and addressing questions related thereto.  To that end, during the Second Application Period, Goldin spoke

periodically with investors, the PPVA Joint Liquidators, the SEC, Houlihan, Conway and Deloitte, among others.  In addition, Goldin assisted the Receiver and her legal counsel in drafting the status report filed with the Court on November 30, 2017, as well as in hosting an investor "town hall" on December 20, 2017.  Goldin professionals who billed time in this activity category during the Second Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Karthik Bhavaraju, Alois Chakabva and Troy Sarpen.

24.    **Employee Benefits (09)**.  $3,208.50 requested.  During the Second Application Period, Goldin provided financial analytical support to the Receiver and her legal counsel in connection with questions relating to altering the employment status of certain Platinum employees, as well as compensation-related queries.  Goldin professionals who billed time in this activity category during the Second Application Period included Marc Kirschner, William Edwards, Curtis Solsvig and Alois Chakabva.

25.    **Forensic Accounting (10)**.  $63,742.50 requested.  During the Second Application Period, Goldin commenced forensic analyses of certain pre-Receivership transactions, including purported asset transfers by and between PPCOMF, Platinum Partners Value Arbitrage, Beechwood Re Investments LLC, Principal Growth Strategy, LLC and Agera Energy LLC.  In addition, Goldin prepared plans for necessary follow-on forensic and factual reviews as part of the Receivership Team's efforts to assess potential third-party claims.  Goldin professionals who billed time in this activity category during the Second Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Karthik Bhavaraju and Alois Chakabva.

26.    **Tax Issues (11)**.  $55,660.50 requested.  During the Second Application Period, Goldin provided extensive support to the Receiver and Deloitte in connection with the

preparation and issuance of Platinum's tax year 2016 filings.  This support included: (i) reviewing computations relevant to investor tax returns; (ii) investigating the facts and circumstances of various 2016 transactions; and (iii) confirming the accuracy of investor demographic information through review and reconciliation of several data sources.  Goldin professionals who billed time in this category during the Second Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Alois Chakabva and Troy Sarpen.

## IV.   EXPLANATION OF EXPENSES AND RELATED POLICIES

27.   Goldin seeks reimbursement of its out-of-pocket costs in the amount of $1,825.42. Exhibit E sets forth various categories of expenses for which Goldin seeks reimbursement. Goldin will retain the documentation supporting these expenses for a period of seven years in accordance with the SEC Receivership Billing Instructions and will provide the SEC with copies of such materials upon request.  Goldin's request for expense reimbursement complies with the SEC Receivership Billing Instructions.

## V.   FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

28.   The case law on equity receiverships sets forth the standards for approving receiver compensation and the fees and expenses for the receiver's retained professionals.  The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and her retained professionals and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994). Many authorities (some quite dated) provide "convenient guidelines," but in the final analysis, "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

29.     In allowing professional fees in receiverships, "[t]he court will consider . . . the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); s*ee also United States v. Code Prods*., 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained).  "'[R]esults are always relevant.'" *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992), *quoting Moody,* 374 F Supp. at 480, as are the extent to which "a receiver reasonably and diligently discharges his duties."  *Id*.

30.     Under these standards Goldin has demonstrated that the amount of fees requested is appropriate.  Goldin, in concert with the rest of the Receivership Team, has acted with appropriate dispatch to develop and execute monetization strategies for the Platinum assets.  Given the unusual diversity and complexity of these assets, to say nothing of the fact that relevant documentation inherited from prior management requires careful scrutiny, Goldin has had to expend meaningful effort to prepare these assets for disposition.  This notwithstanding, the Receivership Team liquidated significant Platinum positions and is poised to monetize even more in the period ahead, which should generate substantial additional benefits to the Receivership Estate.

## VI.     HOLDBACK

31.     Goldin and the Receiver are cognizant of the fact that the disposition of assets is still in its early stages and that there are significant costs of maintaining certain of the portfolio assets until they can be sold in an orderly manner (*e.g.*, the monthly premiums required to be

paid on the life settlement policies).  Accordingly, in an effort to preserve assets at this stage of the Receivership, the Receiver has requested and Goldin has agreed to hold back twenty-five percent (25%) of the allowed fees requested in this Second Interim Application (the "Holdback Amount").  Goldin has agreed to forego immediate payment of the Holdback Amount with the understanding that (i) upon disposition of additional assets, and subject to the consent of the SEC, the Receiver will authorize the reduction of the Holdback Amount to twenty percent (20%) and pay to Goldin 5% of its allowed fees; and (ii) the remaining Holdback Amount can be paid to Goldin at the conclusion of the Receivership.  All payments will be made from the Receivership assets.

WHEREFORE, Goldin respectfully requests that the Court:

(a)     grant interim approval of Goldin's request for compensation in the amount of $629,210.25;

(b)     grant interim approval of Goldin's request for reimbursement of its out-of-pocket expenses in the amount of $1,825.42;

(c)     authorize the Receiver to immediately pay from the Receivership assets (i) the allowed fees of Goldin, less the Holdback Amount, plus (ii) 100% of the allowed out-of-pocket expenses of Goldin;

(d)     authorize the Receiver, upon the disposition of additional assets, to reduce Goldin's Holdback Amount to twenty percent (20%) and pay to Goldin from the Receivership assets 5% of Goldin's allowed fees, subject to the consent of the SEC; and

(e)     grant such other relief as the Court deems appropriate.

Dated: February 15, 2018
       New York, NY

16

Respectfully submitted,


/s/ Marc S. Kirschner_____
Marc S. Kirschner
Senior Managing Director
Goldin Associates, LLC
350 Fifth Avenue
44th Floor
New York, NY 10118
Telephone: (212) 593-2255
mkirschner@goldinassociates.com

Of Counsel:
Jonathan E. Goldin
General Counsel
Goldin Associates, LLC
350 Fifth Avenue
44th Floor
New York, NY 10118
Telephone: (212) 593-2255
jegoldin@goldinassociates.com