UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION, :
:
                Plaintiff, :
:   No. 16-cv-6848 (BMC)
:
  -v- :
:
PLATINUM MANAGEMENT (NY) LLC; :
PLATINUM CREDIT MANAGEMENT, L.P.; :
MARK NORDLICHT; :
DAVID LEVY; :
DANIEL SMALL; :
URI LANDESMAN; :
JOSEPH MANN; :
JOSEPH SANFILIPPO; and :
JEFFREY SHULSE, :
:
                Defendants. :
-------------------------------------------------------------X

**THIRD INTERIM APPLICATION OF GOLDIN ASSOCIATES, LLC FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING THE PERIOD JANUARY 1, 2018 THROUGH MARCH 31, 2018**

      Goldin Associates, LLC ("Goldin"), as financial advisor to Melanie L. Cyganowski, the Court-appointed receiver (the "Receiver") for Platinum Credit Management, L.P., Platinum Partners Credit Opportunities Master Fund LP ("PPCO"), Platinum Partners Credit Opportunities Fund (TE) LLC, Platinum Partners Credit Opportunities Fund LLC, Platinum Partners Credit Opportunity Fund (BL) LLC, Platinum Liquid Opportunity Management (NY) LLC, Platinum Partners Liquid Opportunity Fund (USA) L.P., Platinum Partners Liquid Opportunity Master Fund L.P, Platinum Partners Credit Opportunities Fund International Ltd, and Platinum Partners Credit Opportunities Fund International (A) Ltd. (collectively, the "Receivership Entities" or

1

"Platinum"),[1] hereby submits its Third Interim Application for Allowance of Compensation and Reimbursement of Expenses Incurred During the Period January 1, 2018 through March 31, 2018 ("Third Interim Application"). Goldin respectfully requests interim approval for payment of $744,147.00 in professional fees and reimbursement of $1,689.42 in expenses incurred for January 1, 2018 through March 31, 2018 (the "Third Application Period").

Goldin's Third Interim Application contains the following sections:

(a) **Section I** contains a preliminary statement on Goldin's activities in this case during the Third Application Period.

(b) **Section II** contains information about Goldin and the case's status, as required by Section C of the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Receivership Billing Instructions"). Section II also includes a description of each exhibit to this Third Interim Application, as well as the reduction in fees agreed to by Goldin in connection with its appointment as financial advisor to the Receiver.

(c) **Section III** contains a narrative of the work that Goldin professionals performed under each activity category, as required by Section D of the SEC Receivership Billing Instructions.

(d) **Section IV** summarizes the expenses for which Goldin seeks reimbursement, as required by Section E of the SEC Receivership Billing Instructions.

(e) **Section V** describes the standards to be applied by the Court in determining fee awards in SEC equity receiverships.

---

[1] On December 29, 2017, the Court entered an order approving the expansion of the Receivership Estate to include the following entities: (i) Platinum Partners Liquid Opportunity Master Fund L.P.; (ii) Platinum Partners Credit Opportunities Fund International Ltd; and (iii) Platinum Partners Credit Opportunities Fund International (A) Ltd [Docket No. 298].

2

  (f) **Section VI** describes the holdback arrangement to which Goldin has agreed.

## I. PRELIMINARY STATEMENT

1. During the Third Application Period, Goldin devoted considerable attention to executing on its forensic investigatory plan. This plan aims principally to aid Goldin, the Receiver and her legal counsel (collectively, the "Receivership Team") determine whether potential causes of action exist against various parties, including but not limited to insiders, certain transaction counterparties, valuation agents, fund administrators, auditors, legal advisors and other professional firms. In addition, aspects of Goldin's forensic work will facilitate the claims analysis process, inasmuch as this process requires validating the funds that flowed into, out of and through the Receivership Entities.

2. The forensic work performed during the Application Period can be placed into three categories: (i) analysis of transactions involving Platinum and certain insurers, including Beechwood Re Ltd. and Beechwood Bermuda Ltd. (collectively, "Beechwood"), Senior Health Insurance Company of Pennsylvania ("SHIP") and CNO Financial Group, Inc. ("CNO"); (ii) analysis of work performed by Platinum's service providers; and (iii) construction of a funds flow analysis. These categories of activity are detailed in turn below.

  (a) As an initial matter, Goldin focused its forensic analysis on pre-Receivership transactions involving Beechwood, SHIP and/or CNO, as these transactions were among Platinum's largest.[2] Goldin's analysis of these transactions has involved, among other things, (i) review and assessment of general ledgers, insurance agreements,

---

[2] The examined transactions include, for instance, the sale by Principal Growth Strategies, LLC, an entity 45%-owned by PPCO, of a convertible note issued by Agera Energy. The sale was made to a Beechwood-related entity.

3

credit agreements, investment documentation, financial statements and related schedules, court filings, organizational documents and contemporaneous valuation memoranda; (ii) construction and utilization of a funds flow model to ascertain the sources and uses of transaction proceeds; and (iii) preparation of a detailed presentation to the Receiver which, among other things, memorialized key facts surrounding these transactions in a form suitable for use in the development of litigation papers, if necessary. In the period ahead, Goldin anticipates that it will continue to assess the insurers' involvement with Platinum, whether through investments or borrowings, in an effort to aid in the identification of potential causes of action.

(b) Goldin also concentrated its investigatory efforts on evaluating the actions of Platinum's service providers. Goldin's efforts in this regard have focused on the activities of Platinum's valuation advisors, auditors, fund administrators, legal advisors and other professional services firms. To take but one example, during the Application Period, Goldin identified the largest PPCO investments and commenced a review of the pertinent valuations prepared for them by third party advisors. This review, which is ongoing, involves identifying, gathering and analyzing information relied upon by the advisors, and assessing the reasonableness of the methodologies used in connection with the valuations. Inquiries like the aforementioned seek to facilitate the Receiver's assessment of whether the Platinum receivership estate ("Receivership Estate") has actionable claims against any entities that putatively provided professional services to Platinum.

(c) Goldin also commenced in earnest construction of a funds flow analysis, an essential forensic investigatory tool. The funds flow analysis permits the Receivership

4

Team to understand, at a granular level, the sources and uses of cash that flowed into and out of Platinum, as well as through and between the various Receivership Entities. This particular analysis, which spans many years of activity, involves standardizing and reviewing thousands of native general ledger entries and then logging them in a bespoke database that enables more focused inquiries. Information yielded by the funds flow analysis, when read in conjunction with documentary and testamentary sources, should prove critical in formulating and assessing claims against third parties.

3. In addition to its forensic work, during the Third Application Period, Goldin continued to assist the Receiver to monetize additional assets of the Receivership Estate. During this period, the Receiver sold or commenced the sale of several portfolio positions, including the sale of certain life settlement policies for approximately $10.78 million in gross proceeds.[3] Goldin's disposition-related efforts are described briefly below.

(a) Goldin supported Houlihan Lokey ("Houlihan") and Conway MacKenzie Capital Advisors, LLC ("Conway") in connection with marketing certain Platinum portfolio positions.[4] For instance, Goldin provided Houlihan and Conway with information and analysis related to Platinum's assets, and facilitated, as necessary, engagement with portfolio company management and/or potential purchasers. Goldin also advised the Receiver on Houlihan and Conway's disposition-related

---

[3] On March 23, 2018, the Receiver sought the Court's approval for the sale of twenty (20) life settlement policies to BroadRiver Asset Management, L.P. and Cromwell Asset Partners LLC. See Notice of Motion for Order of Sale of Melanie L. Cyganowski, As Receiver, for Entry of an Order Approving the Sale of Certain Life Insurance Policies by Receiver [Docket No. 311]. The Court approved the sale on April 23, 2018. See Order Dated 4/23/18 Approving Receiver's Motion for Order Approving the Sale of Certain Life Insurance Policies [Docket No. 318].

[4] The Receiver retained Houlihan to market specific Platinum assets, including the following: (i) the life settlements portfolio; (ii) the litigation finance portfolio; (iii) the Brazilian gold tailings project (Abdala); (iv) Urigen Pharmaceuticals, Inc.; and (v) LC Energy Operations LLP. The Receiver tasked Conway with, in the first instance, marketing the following Platinum assets: (i) West Ventures LLC and its wholly owned subsidiary, Buffalo Lake Advanced Biofuels, LLC; (ii) Desert Hawk Gold Corp.; and (iii) Daybreak Oil and Gas, Inc.

recommendations. In order to so advise, Goldin reviewed analyses generated by, and conferred regularly with, Houlihan and Conway.

    (b)  Goldin assisted the Receiver and her legal counsel in the development and execution of disposition strategies for certain assets Houlihan and Conway are not marketing. With regard to these assets, Goldin, among other things, (i) reviewed and analyzed relevant financial information; (ii) created comprehensive and detailed memoranda, spreadsheets and other documentation reflecting its financial analyses; (iii) conducted meetings with portfolio company management; (iv) conferred internally, as well as with the Receiver and her counsel; (v) identified and conferred with potential purchasers; and (vi) participated in negotiations pertinent to the sale of these assets, which ranged from thinly-traded, illiquid stock to debt positions in small private companies.

    4.  During the Third Application Period, Goldin continued to manage a variety of cash disbursement and budgeting protocols on behalf of the Receivership Estate. For instance, Goldin (i) prepared periodic 13-Week cash receipts and disbursements forecasts; (ii) performed weekly actual vs. forecasted variance analyses regarding Platinum's cash position; (iii) oversaw the procedures governing the review and approval of disbursements (including payroll); and (iv) conducted daily and weekly reconciliations of Platinum's cash and brokerage accounts.

## II. APPLICATION REQUIREMENTS

###  A. Information about the Applicant and the Application

    5.  **Application Period**. This application covers the period of January 1, 2018 through March 31, 2018.

6. **Appointment of the Receiver**. On December 19, 2016, the U.S. Attorney for the Eastern District of New York unsealed an eight-count indictment (the "Indictment") against seven individuals who were formerly affiliated with Platinum, a purported $1.7 billion hedge-fund family based in New York. The Indictment alleges that the defendants defrauded Platinum investors through, among other things, the overvaluation of assets, the concealment of severe cash flow problems and the preferential payment of redemptions. The Indictment also charges four of the defendants with defrauding the independent bondholders of Black Elk Energy Offshore Operations, LLC, a portfolio company owned by Platinum, through a fraudulent offering document and diverting more than $95 million in proceeds to Platinum by falsely representing in the offering document that Platinum controlled approximately $18 million of the bonds when, in fact, Platinum controlled more than $98 million of the bonds.

On December 19, 2016, the SEC filed this action, asserting violations of the anti-fraud provisions of federal securities laws and seeking, among other relief, temporary and permanent injunctive relief, disgorgement of ill-gotten gains, imposition of civil penalties, and appointment of a receiver [Docket No. 1].

On December 19, 2016, the Court entered an Order to Show Cause and Temporary Restraining Order against the defendants, granting certain specified relief to the SEC, including the appointment of a receiver, and granting the receiver control over the assets of the Receivership Entities [Docket No. 5].

Also on December 19, 2016, the Court entered the Order Appointing Receiver, as amended on January 30, 2017 [Docket Nos. 6 and 59], naming Bart Schwartz as the initial receiver.

On January 31, 2017, the initial receiver sought to retain Cooley LLP as his counsel and Guidepost Solutions LLC to advise, assist and support him with his duties as receiver. [Docket Nos. 63 and 65]. Such retention applications were approved by the Court on February 17, 2017.

On June 23, 2017, Mr. Schwartz requested that the Court approve his resignation as receiver, effective upon the Court's appointment of a successor receiver [Docket No. 170]. On July 6, 2017, the Court accepted the resignation of Mr. Schwartz and appointed Melanie L. Cyganowski as his successor [Docket No. 216].

7. **Appointment of the Applicant**. The Amended Receiver Order authorized the Receiver to engage professionals to assist in fulfilling her duties. On July 21, 2017, the Court approved Goldin's retention as the Receiver's financial advisor *nunc pro tunc* to July 6, 2017 [Docket No. 232].

8. **Fee Schedule**. The names and hourly rates of all Goldin professionals who billed time during the Third Application Period is attached as **Exhibit B** (the "Fee Schedule"). The fees requested in this Third Interim Application were determined on the basis of the hours worked by Goldin professionals and Goldin's usual and customary hourly rates, as modified by a 10% public service discount.

9. **Prior Applications**. This application is interim and is Goldin's third fee and expense application in this case. The fees and expenses requested by Goldin in its first and second fee and expense applications were allowed and paid as follows:

| Period | Order Date Docket No. | Amount Requested | | Amount Allowed | | Amount Paid to Date | |
|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| 7/6/17-9/30/17 | 12/5/17 Docket No. 290 | $985,666.50 | $1,350.24 | $985,666.50 | $1,360.24 | $788,533.20 | $1,350.24 |
| 10/1/17-12/31/17 | 3/05/18 Docket No. 310 | $629,210.25 | $1,825.42 | $629,210.25 | $1,825.42 | $471,907.69 | $1,825.42 |

B. **Case Status**

10. **Cash on Hand and Unencumbered Funds**. As of March 31, 2018, the Receivership Entities had $7.2 million in unencumbered funds, of which $5.4 million was held in cash in bank accounts and $1.8 million was held in brokerage accounts.

(a) **Accrued Administrative Expenses**. As of March 31, 2018, it is estimated that accrued, unpaid administrative expenses amount to approximately $3.0 million. These administrative expenses primarily consist of accrued and unpaid professional fees. In addition to these unpaid administrative expenses, the Receivership Estate paid remaining in-house Platinum staff and other operating expenses during the Third Application Period.

11. **Summary of Receipts and Disbursements**. Cash disbursements during the Third Application Period totaled approximately $5.1 million. This amount consisted primarily of (i) $1.9 million in disbursements to retained professionals and the Receiver; (ii) $478,000 in business asset expenses (payroll and related expenses paid to Platinum employees, as well as rent); and (iii) $2.75 million in investment expenses, which include funds disbursed to preserve the value of the following assets: ALS Capital Ventures LLC ($1.8 million), LC Energy ($665,000) and Abdala Gold ($305,000).

9

Cash receipts during the Reporting Period totaled approximately $468,000. This amount primarily consists of proceeds derived from dispositions associated with the following investment positions: Desert Hawk ($417,000) and Wintercrest ($51,000).

12. **Closing of Case**. Goldin cannot at this time state when the Receiver will deem it appropriate to seek the conclusion of this case.

13. **Summary of Creditor Claims Proceedings**. The Receivership Team has not yet initiated a formal claims process.

14. **Summary of Assets**. The primary assets of the Receivership Estate consist of the following:

    (a)   Cash and cash equivalents of approximately $7.2 million.

    (b)   Real estate investments without any set book value, due to their inherently speculative nature.

    (c)   Natural resources investments, litigation financing, life settlement investments, energy and other miscellaneous investments.

15. **Liquidated and Unliquidated Claims**. The Receiver currently holds no liquidated litigation recoveries. The Receiver may, however, have causes of action against a number of parties and is currently considering associated claims.

    C.   **SEC Review**

16. Goldin submitted this Third Interim Application to the SEC on April 16, 2018 to allow for a thirty-day review period, as required by the SEC Receivership Billing Instructions.

    D.   **Exhibits**

17. The Third Interim Application contains the following exhibits:

(a) **Exhibit A**: The Standardized Fund Accounting Report ("SFAR") for the period January 1, 2018 through March 31, 2018.

(b) **Exhibit B**: A Fee Schedule showing the total fees billed, hours worked and hourly rates of each Goldin professional involved.

(c) **Exhibit C**: A summary of the total fees billed and hours worked by activity category.

(d) **Exhibit D**: All time records of Goldin professionals listed chronologically by activity category, as required by Section D.5 of the SEC Receivership Billing Instructions.

(e) **Exhibit E**: A summary of all expenses incurred by Goldin, organized by expense category, as required by Section E.1a of the SEC Receivership Billing Instructions.

(f) **Exhibit F**: The certification contemplated by Section A.1 of the SEC Receivership Billing Instructions.

### III. SERVICES RENDERED BY GOLDIN DURING THE THIRD APPLICATION PERIOD

18. Goldin professionals recorded services performed in time increments of one tenth (0.1) of an hour. Goldin made use of a lean team; the senior professionals involved each brought distinct, but essential, expertise to the engagement and were the primary responsible party on different tasks.

19. Per Section D.3 of the SEC Receivership Billing Instructions, Goldin accounted for its time charges during the Third Application Period by activity categories. Narrative summaries of these activity categories follow.[5]

20. **Accounting (01)**. $39,357.00 requested. During the Third Application Period, Goldin continued to manage a variety of cash disbursement and budgeting protocols. For example, on a weekly basis, Goldin prepared 13-week cash flow forecasts and variance analyses, which enhanced the Receivership Estate's ability to monitor and manage its cash position. Goldin also conducted periodic reconciliations of Platinum's cash and brokerage accounts as a control. Additionally, Goldin provided day-to-day oversight of Platinum's accounting function, which included monitoring work performed by Platinum's Chief Financial Officer. Goldin professionals who billed time in this activity category during the Third Application Period included William Edwards, Curtis Solsvig and Alois Chakabva. Mr. Chakabva has principal responsibility for overseeing Platinum's cash disbursement and budgeting protocols. Mr. Solsvig periodically reviews Platinum's cash forecasts in connection with his disposition-related responsibilities. Mr. Edwards periodically directs accounting-related research projects in connection with his investor relations and/or third-party reporting responsibilities.

21. **Asset Analysis and Recovery (02)**. $48,926.25 requested. Platinum's remaining investment portfolio, broadly speaking, can be divided into two categories: (i) life settlement investments;[6] and (ii) a wide-array of investments in mostly developmental stage companies.

---

[5] Goldin professionals did not bill any time during the Third Application Period to the following activity categories: Business Analysis (04), Business Operations (05), Claims Administration (07), Corporate Finance (08), Employee Benefits (09), Valuation (12) or Travel (13).

[6] PPCOMF, through its wholly owned subsidiary Credit Strategies, LLC, holds approximately 83% of the membership interests in ALS Capital Ventures LLC ("ALS"), a life settlements company. ALS manages life insurance policies to either sell or hold to maturity. ALS typically acquires life insurance policies from insured individuals at a discount to the policies' death benefit in exchange for the right to receive the death benefits upon the

Goldin, on behalf of the Receivership Team, continues to track and monitor the disposition status of each Platinum asset.  As a part of this task, Goldin has created and regularly updates a document that tracks the status of all Platinum assets.  The Receivership Team has commenced the sales process for a significant number of Platinum's assets.  For certain Platinum assets, however, additional pre-disposition work is required prior to commencing a sales process and/or pursuing other monetization strategies.  To take one example, during the Third Application Period, Goldin continued to develop customized financial models, participate in relevant negotiations and critique third-party financial analyses in connection with the Receivership Estate's efforts to obtain a recovery on a $16 million loan from Platinum to Arabella Exploration, Inc. in 2014.  Goldin's Arabella-related financial analyses focused on issues central to an adversary proceeding, commenced by Founders Oil & Gas III, LLC and Founders Oil & Gas Operating, LLC, which involves the right to certain revenues associated with several large oil and gas wells.  The outcome of this proceeding will impact Platinum's loan recovery materially.  Goldin professionals who billed time in this activity category during the Third Application Period included Marc Kirschner, William Edwards, Curtis Solsvig and Troy Sarpen.  Mr. Solsvig bears principal responsibility for the substantive aspects of the asset tracker; Mr. Sarpen ensures the quality and accuracy of the information contained within it.  Mr. Kirschner and Mr. Edwards, in their capacity as supervisors of Goldin's overall engagement, periodically review and comment on the substantive aspects of the asset tracker to ensure alignment with the Receiver's strategic aims.  Mr. Solsvig is also responsible for the provision of financial advice and analysis to the Receiver in connection with the Arabella proceeding.

---

insureds' passing.  As a condition to the receipt of these benefits, ALS must continue to make the required premium payments.

13

22. **Asset Disposition (03)**. $90,859.50 requested. During the Third Application Period, Goldin assisted the Receiver, as well as professionals at Houlihan and Conway, in connection with the monetization of certain Platinum portfolio positions, including Desert Hawk and Wintercrest. In connection with these and other disposition-related efforts, Goldin provided Houlihan and Conway with information and analysis related to pertinent assets, and facilitated, as necessary, engagement with portfolio company management and/or potential purchasers. For example, in connection with the potential disposition of LC Energy, an idle coal mine in Indiana, Goldin negotiated the terms for renewal of both the mine's environmental bond and aspects of its lease. Goldin also advised the Receiver on Houlihan and Conway's disposition-related recommendations after reviewing analyses generated by, and conferring with, these firms.

In addition, Goldin assisted the Receiver and her legal counsel in the development and execution of disposition strategies for assets not being marketed by Houlihan or Conway, including Agera Energy, Azarga Uranium, China Horizon, Cleveland Mining, Cokal Limited, Infinity Augmented Reality, New Jersey Ethanol, PEDEVCO and Rolling Acres of Stamford, among others. With regard to these assets, Goldin, among other things, (i) reviewed and analyzed relevant financial information; (ii) created detailed memoranda, spreadsheets and other documentation reflecting its financial analyses; (iii) conducted meetings with relevant portfolio company management; (iv) conferred internally, as well as with the Receiver and her counsel; (v) identified and conferred with potential purchasers; and (vi) participated in negotiations pertinent to the sale of these assets, which ranged from thinly-traded, illiquid stock to debt positions in small private companies. Goldin professionals who billed time in this activity category during the Third Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Karthik Bhavaraju and Troy Sarpen. Mr. Solsvig bears principal responsibility for

14

executing disposition strategies for assets not otherwise assigned to Houlihan or Conway; Mr. Kirschner and Mr. Edwards assist Mr. Solsvig in the development of the strategies, themselves. Mr. Bhavaraju and Mr. Sarpen assist Mr. Solsvig with the execution of disposition strategies, including, for this Application Period, those related to Infinity Augmented Reality and Genesis Resources, among others. In addition, Mr. Kirschner and Mr. Solsvig are responsible for coordinating with Houlihan and Conway, respectively, in connection with those firms' efforts to monetize the assets assigned to them.

23.   **Case Administration (06)**.  $140,643.00 requested. The Receivership Team endeavored throughout the Third Application Period to administer the Receivership Estate efficiently. Accordingly, Goldin conferred frequently with the Receiver and her legal counsel to ensure that its efforts were coordinated with their own. In addition, Goldin's internal team members met to plan their approach to necessary tasks.

The effective administration of the Receivership Estate also entails communicating with external stakeholders about the status of the Receivership, and addressing questions related thereto. To that end, during the Third Application Period, Goldin spoke periodically with investors, the PPVA Joint Liquidators, the SEC and Houlihan, among others. In addition, Goldin assisted the Receiver and her legal counsel in drafting the status report filed with the Court on January 22, 2018, as well as in hosting an investor "town hall" on March 1, 2018. Goldin professionals who billed time in this activity category during the Third Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Karthik Bhavaraju, Alois Chakabva and Troy Sarpen. Mr. Kirschner and Mr. Edwards bear principal responsibility for organizing Goldin personnel to ensure that their assigned tasks are executed effectively and efficiently. In that connection, Mr. Kirschner focuses principally on the oversight and administration of

Goldin's forensic and disposition-related efforts, with Mr. Edwards focused on the management of Goldin's reporting obligations, as well as its interactions with the Receiver's legal counsel, investors and the SEC. The time billed by Mr. Solsvig, Mr. Bhavaraju, Mr. Chakabva and Mr. Sarpen in this category relate in significant measure to their participation in routinized and/or <u>ad hoc</u> strategy and coordination meetings with members of the Receivership Team.

24. **Forensic Accounting (10)**. $422,448.75 requested. During the Third Application Period, Goldin continued its forensic analyses of certain pre-Receivership transactions. This analysis centered on an assessment of transactions involving Platinum and certain insurers, including Beechwood, SHIP and CNO. Goldin's analysis of these transactions involved (i) review and assessment of general ledgers, insurance agreements, credit agreements, investment documentation, financial statements and related schedules, court filings, organizational documents and contemporaneous valuation memoranda; (ii) construction and utilization of a funds flow model to ascertain the sources and uses of transaction proceeds; and (iii) preparation of a detailed presentation to the Receiver which, among other things, memorialized key facts surrounding these transactions in a form suitable for use in the development of litigation claims.

In addition, during the Third Application Period, Goldin commenced its review of certain actions taken by Platinum's service providers. Goldin's efforts in this regard focused on the activities of Platinum's valuation advisors, auditors, fund administrators, legal advisors and other professional services firms. Moreover, in the Application Period, Goldin commenced in earnest construction of a funds flow analysis aimed at enhancing its understanding of the sources and uses of cash that flowed into and out of Platinum, as well as through and between the various Receivership Entities. This analysis, which spans many years of activity, required Goldin to

standardize and review thousands of native general ledger entries and then logging them in a bespoke database that enables more focused inquiries.  Goldin professionals who billed time in this activity category during the Third Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Karthik Bhavaraju, Alois Chakabva, Seve Franceschelli and Troy Sarpen.  Mr. Kirschner supervises and provides strategic direction to the efforts of Mr. Bhavaraju and Mr. Chakabva in connection with their forensic investigatory work.  Mr. Bhavaraju is principally responsible for the forensic work related to Beechwood, SHIP and CNO.  Mr. Chakabva is principally responsible for the forensic work related to Platinum's service providers.  In addition, Mr. Chakabva, with the assistance of Mr. Franceschelli, is responsible for the construction and maintenance of the funds flow analysis, an essential forensic investigatory tool.  Mr. Sarpen provides various forms of assistance to members of the forensic team in connection with the execution of their assignments.

25. **Tax Issues (11)**.  $1,912.50 requested.  During the Third Application Period, Goldin provided support to the Receiver in connection with the preparation and issuance of Platinum's tax year 2016 filings.  This support included: (i) conferring with Platinum's tax accountants and its Chief Financial Officer about certain aspects of the returns; and (ii) assisting the Receivership Team to formulate responses to tax-related questions posed by taxing authorities.  Alois Chakabva is the only Goldin professional who billed time in this category during the Third Application Period.  Mr. Chakabva bears responsibility for working with Platinum's Chief Financial Officer to prepare and file Platinum's tax returns.

IV.   **EXPLANATION OF EXPENSES AND RELATED POLICIES**

26. Goldin seeks reimbursement of its out-of-pocket costs in the amount of $1,689.42. Exhibit E sets forth various categories of expenses for which Goldin seeks reimbursement. Goldin will retain the documentation supporting these expenses for a period of seven years in

17

accordance with the SEC Receivership Billing Instructions and will provide the SEC with copies of such materials upon request. Goldin's request for expense reimbursement complies with the SEC Receivership Billing Instructions.

## V.   FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

27.   The case law on equity receiverships sets forth the standards for approving receiver compensation and the fees and expenses for the receiver's retained professionals. The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and her retained professionals and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994). Many authorities (some quite dated) provide "convenient guidelines," but in the final analysis, "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

28.   In allowing professional fees in receiverships, "[t]he court will consider . . . the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); s*ee also United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained). "'[R]esults are always relevant.'" *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992), *quoting Moody,* 374 F. Supp. at 480, as are the extent to which "a receiver reasonably and diligently discharges his duties." *Id*.

29. Under these standards Goldin has demonstrated that the amount of fees requested is appropriate. Goldin, in concert with the rest of the Receivership Team, has acted with appropriate dispatch to develop and execute monetization strategies for the Platinum assets. Given the unusual diversity and complexity of these assets, to say nothing of the fact that relevant documentation inherited from prior management requires careful scrutiny, Goldin has had to expend meaningful effort to prepare these assets for disposition, as well as to assist in the dispositions themselves. In addition, Goldin has worked diligently to assist in the development of actionable legal claims that, if successful, could provide meaningful recoveries to the Receivership Estate.

## VI. HOLDBACK

30. Goldin has agreed to holdback 20% of its allowed fees, with such holdback to be paid at the conclusion of the Receivership. All payments will be made from the Receivership assets.

WHEREFORE, Goldin respectfully requests that the Court:

(a) grant interim approval of Goldin's request for compensation in the amount of $744,147.00;

(b) grant interim approval of Goldin's request for reimbursement of its out-of-pocket expenses in the amount of $1,689.42;

(c) authorize the Receiver to immediately pay from the Receivership assets (i) the allowed fees of Goldin, less the 20% holdback, plus (ii) 100% of the allowed out-of-pocket expenses of Goldin; and

(d) grant such other relief as the Court deems appropriate.

Dated: May 25, 2018

New York, NY

                                      Respectfully submitted,

                                      /s/ Marc S. Kirschner\_\_\_\_\_
                                      Marc S. Kirschner
                                      Senior Managing Director
                                      Goldin Associates, LLC
                                      350 Fifth Avenue
                                      44th Floor
                                      New York, NY 10118
                                      Telephone: (212) 593-2255
                                      mkirschner@goldinassociates.com

Of Counsel:
Jonathan E. Goldin
General Counsel
Goldin Associates, LLC
350 Fifth Avenue
44th Floor
New York, NY 10118
Telephone: (212) 593-2255
jegoldin@goldinassociates.com