UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

SECURITIES AND EXCHANGE                    Civil Case No. 16-cv-6848
COMMISSION,

      Plaintiff,

v.

PLATINUM MANAGEMENT (NY) LLC, *et al.*;
      Defendants.

### NAVIDEA BIOPHARMACEUTICALS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR AN ORDER LIFTING THE LITIGATION STAY

The Receiver[1] mischaracterizes the legal standard to be applied to Navidea's Biopharmaceuticals, Inc.'s ("Navidea") Motion for an Order Lifting the Litigation Stay ("Motion to Lift Stay") and misapplies that standard to the facts. Under the correct legal standard, and with the facts properly applied, Navidea is entitled to an order lifting the litigation stay to permit Navidea's Third Party Complaint against PPCO in the Navidea Litigation.[2]

## I. The Receiver Improperly Seeks to Raise the Legal Standard for the Motion to Lift Stay

The Receiver identifies *Wencke* as the controlling test, but misapplies that test. A district court may impose a litigation stay on a non-party to a receivership as part of its inherent equity power. *S.E.C. v. Byers*, 609 F.3d 87, 91 (2d Cir.2010) (citing *S.E.C. v. Wencke*, 622 F.2d 1363, 1369 (9th Cir .1980) ("*Wencke I*")). In analyzing a motion to lift a litigation stay, courts utilize a three-part test from *Wencke I* and *S.E.C. v. Wencke*, 742 F.2d 1230 (9th Cir.1984) ("*Wencke II*") (collectively "*Wencke*"). *S.E.C. v. Callahan*, 2 F.Supp.3d 427, 437 (E.D.N.Y.2014).

Under *Wencke*, courts consider "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay

---

[1] The SEC presented no additional arguments. The arguments referenced throughout are the Receiver's arguments.
[2] All capitalized terms used herein and not otherwise defined are used as defined in the Motion to Lift Stay.

is made; and (3) the merit of the moving party's underlying claim." *Callahan*, at 437 (internal quotations omitted). "The burden is on the movant to prove that the balance of the factors weighs in favor of lifting the stay." *Id.* (Internal quotations omitted). The Receiver largely concedes the first two *Wencke* factors, which, along with the third factor, weigh in Navidea's favor, and therefore the Court should grant Navidea's motion to lift the litigation stay.

The Receiver wrongly contends that the third prong, the merits of the underlying claim, is dispositive. *See* Memorandum Contra at 10-11. Even in cases where the third *Wencke* factor is lacking, courts have lifted a litigation stay. *See S.E.C. v. Private Equity Mgmt. Grp., LLC*, No. CV 09-2901 PSG (Ex), 2010 WL 4794701, at **2–4 (C.D. Cal. Nov. 18, 2010) (granting the movant's motion to lift a stay when the first *Wencke* factor weighed in favor of the receiver, the second *Wencke* factor weighed in favor of the movant, and under the third *Wencke* factor, it was unclear to the court whether the movant would be successful). Courts have also refused to lift a litigation stay in the face of meritorious claims, because the other two factors weighed in favor of the stay. *See FTC v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 609 (N.D. Ill. 2001). Courts take a sliding-scale approach to the third *Wencke* factor. *See JHW Greentree Capital*, 2014 WL 2608516, at *9 (D. Conn) ("The more meritorious a movant's underlying claim, the more heavily this factor will weigh in the movant's favor."). This factor is just one of three factors, and it is not dispositive of whether or not to lift the stay, and thus all three factors must be analyzed.

### i. Status Quo

This factor "essentially balances the interests in preserving the receivership estate with the interests" of the movant. *S.E.C. v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir.2011). In determining a receiver's interest in maintaining the status quo, courts look to "considerations of judicial economy." *S.E.C. v. Provident Royalties, LLC*, No. 3:09-CV-1238-L,

2011 WL 2678840, at *2 (N.D. Texas July 7, 2011) (internal quotations omitted). Courts have expressed fear that removing a litigation stay can lead to a flurry of actions against the receivership estate. *See FTC v. Med Resorts Intern., Inc.*, 199 F.R.D. 601, 609 (N.D. Ill. 2001) (if stay lifted as to proposed action, "[c]ertainly, others would follow."). Where the party seeking to lift the receivership stay had paid money into the receivership estate after appointment of a receiver, the court noted that "lifting the litigation stay will cause little harm to the status quo, which is already characterized by extensive litigation, because the funds at issue will have already been turned over." *FTC v. NHS Systems, Inc.*, 708 F.Supp.2d 456, 471 (E.D. Pa. 2009).

In this case, the receiver's interest in the status quo is less significant. Navidea seeks only to lift the litigation stay in a limited manner, solely to allow Navidea's claim against PPCO. *See generally* Motion to Lift Stay. Navidea's claim is based on the unique circumstances alleged in Navidea's Third-Party Complaint and lifting the stay in a limited manner does not risk a flurry of lawsuits. In addition, Navidea's claim, as in *NHS Systems*, will not harm the status quo because Navidea paid money to the Receiver, and Navidea's indemnification claim is for far less than the amount paid to the Receiver. *See generally* Navidea Litigation Complaint.

The Receiver argues prejudice if the stay is lifted because of limited resources and suggests it is more appropriate to permit Navidea's claim against PPCO after the Navidea Litigation and with the receivership closer to conclusion. Memorandum Contra at 15. This is an argument for judicial economy, but judicial economy weighs in favor of Navidea's claim against PPCO proceeding in the Navidea Litigation. As addressed in § II, *infra*, many factual issues related to Navidea's claim against PPCO are inextricably related to factual issues related to PPVA's claim against Navidea. Judicial economy favors having these related issues resolved by one court in one case. This Court cannot determine the issues related to PPVA's claim against

Navidea. Therefore, judicial economy favors resolution of all related issues, as between PPVA and Navidea and Navidea and PPCO, in the Navidea Litigation.

Navidea's interest is receiving the benefit of its bargain. The Receiver argues Navidea cannot demonstrate the benefit of indemnification now as opposed to later. Memorandum Contra, at 14 ("if applicable at all, the clause is for reimbursement, not advancement of costs."). This is incorrect. Indemnification provisions which "provides for indemnification against 'any and all injury, loss or damage of whatever nature'" allow for the recovery of costs and attorney's fees incurred in the underlying case. *Klock v. Grosodonia*, 674 N.Y.S.2d 187 (4th Dep't, 1998). Here, the provision at issue indemnifies for Causes of Action, which include "…damages, demands, liabilities, obligations, costs, expenses and sums of money of every kind and nature whatsoever…" Third-Party Complaint, Ex. A. Navidea is entitled to a prompt determination, in the Navidea Litigation, of its indemnification right. This is the benefit of a Third-Party Complaint, which "permit[s] the third-party plaintiff to obtain the earliest possible determination as to the extent to which he may expect to be reimbursed for any loss." *DiPerna v. American Broadcasting Companies, Inc.*, 612 N.Y.S.2d 564, 567 (1st Dep't, 1994) (internal citation omitted). This factor weighs in favor of granting the Motion to Lift Stay.

**ii. Time in course**

The second *Wencke* factor requires courts to analyze the time in a receivership in which a motion to lift a litigation stay is made. There is no "clear cut-off date after which a stay should be presumptively lifted." *Acorn Tech. Fund, L.P.*, 429 F.3d 438, 450 (3rd Cir.2005). This factor is fact-specific and "based on the number of entities, the complexity of the scheme, and any number of other factors." *Stanford Int'l Bank Ltd.*, 424 F. App'x at 341; *see also S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1197 (10th Cir.2010) ("the timing factor is case-specific").

4

Several courts have lifted litigation stays and concluded this factor weighed in favor of the movant when the receivership was in place for two years or less. *See  S.E.C. v. Private Equity Management Group, LLC*, No. CV 09–2901 PSG (Ex). 2010 WL 4794701, at *3 (C.D. Cal. Nov. 18, 2010) (after one year of receivership); *S.E.C. v. Provident Royalties, L.L.C.*, No. 3:09–CV–1238–L, 2011 WL 2678840 at *3 (N.D. Texas July 7, 2011) (when the receivership had been in place for less than two years); *S.E.C. v. Stanford Int'l Bank, Ltd., Inc.*, No. 3:09–CV–0298–N (N.D.Tex. May 6, 2011) (when the receivership was just over two years old).

Here, as admitted by the Receiver, the receivership has been in place for over 18 months and "[a]t some point, persons with claims against the receivership should have their day in court. The receivership cannot be protected from suit forever."  *Wencke II*, 742 F.2d at 1231. This factor weighs in favor of lifting the litigation stay to allow Navidea's claim against PPCO.

### iii. Merit of the moving party's underlying claim

The third factor is the merit of the underlying claim. "A district court need only determine whether the party has *colorable* claims to assert which justify lifting the receivership stay." *Acorn Tech.*, 429 F.3d 438, 444 (3rd Cir.2005) (emphasis added). On the other hand, "[i]f it appears that a claim has *no merit* on its face, that of course may end the matter." *Id.* (emphasis added). *Acorn Tech*, decided before *Twombley* and *Iqbal*, could not, and did not, apply the *Twombley/Iqbal* standard. The Receiver conflates a *colorable* claim standard with a *plausible* standard. *See* Memorandum Contra at 10-11; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint must have "facial plausibility…" to survive a motion to dismiss, or "more than a sheer possibility that a defendant has acted unlawfully."). These are two different standards.

Contrary to the Receiver's argument, the third *Wencke* factor is a low bar. *See Acorn Tech. Fund, L.P.*, 429 F.3d 438, 444 (3rd Cir.2005) ("[I]f a claim may have merit-and factual

development may be necessary to assess this-the district court will have to address the other *Wencke* factors."); *see also Huntington Nat'l Bank v. Saint Catharine Coll., Inc.*, No. 3:16-CV-465-DJH, 2017 WL 6347971, at *8 (W.D. Ky. Dec. 12, 2017) ("The nonparties need not show that they are 'likely to prevail on the merits.'" (citing *One Equity Corp.*, No. 2:08-cv-667, 2010 WL 4878993, at *7 (S.D. Ohio Nov. 23, 2010)); *Id.* ("Although there is no caselaw defining 'colorable claim' in the context of *Wencke*, the Sixth Circuit has held in another context that a 'colorable claim' is one where there is any reasonable basis for predicting that the plaintiff could prevail.") (citing *Probus v. Charter Commc'ns, LLC*, 234 Fed.Appx. 404, 407 (6th Cir.2007)).

The Receiver cites two other cases in support of the argument that the "colorable claim" prong is akin to a motion to dismiss, but these cases, like *Acorn Tech*, provide no support for the argument that this Court should apply a *Twombley/Iqbal* standard to the Motion to Lift Stay. Tellingly, neither *Schwartzman v. Rogue Intern. Talent Group, Inc.* No. 12–5255, 2013 WL 460218 (Feb. 7, 2013 E.D. Penn.) nor *S.E.C. v. Illarramendi*, No. 3:11CV78 (JBA), 2012 WL 234016 (Jan. 25, 2012 D. Conn.), both of which were decided after *Twombley* and *Iqbal*, cite to those cases. This is not surprising, as there is not a single case applying the *Wencke* factors which cites to either *Twombley* or *Iqbal* as part of analyzing the "colorable claim" prong.

The Receiver's cited authority is inapplicable for other reasons. In *Schwartzman* the court had determined that the stay should not have been lifted based on the first and second *Wencke* factors. *Schwartzman*, 2013 WL 460218, at *3 ("…even assuming the underlying claims are colorable […] the Court concludes that lifting the stay is not warranted due to the weight of the other factors."). Similarly, in *Illarramendi*, at the outset of addressing the third *Wencke* factor, the court indicated "courts are generally unwilling to delve deeply into the merits where the first two [*Wencke*] factors weigh heavily in favor of maintaining the litigation stay." *Illarramendi*,

2012 WL 234016, at *6. Moreover, the movant in *Illarramendi* sought to lift the litigation stay to file a claim of fraud, which required a heightened pleading standard that the movant failed to meet. *See Id.* at *7 ("Not only does the heightened pleading standard for ReoStar's allegations of fraud require more against the Receivership Entities and against individuals Percival and Lionelli, and especially in light of the first two *Wencke* factors, which both weigh strongly in favor of preserving the litigation stay, ReoStar has not met its burden of demonstrating that the balance of factors weigh in favor of lifting the litigation stay at this stage.").

Moreover, not applying the *Twombley/Iqbal* standard to the "colorable claim" prong of the *Wencke* test makes sense based on the standard of review on appeal. An appeal from a decision to maintain a stay, is reviewed for an abuse of discretion. *See Wencke II*, 742 F.2d at 1231, (citing *Wencke I*, 622 F.2d at 1374) abuse of discretion standard applies in reviewing district court's application of *Wencke* factors and its ultimate decision). On an appeal from a decision granting a motion to dismiss, legal determinations are reviewed de novo. *See O'Donnell v. AXA Equitable Life Ins. Co.*, 887 F.3d 124, 128 (2d Cir.2018) (internal citation omitted).

**II. The Court Need Not Accept as True the Allegations of PPVA's Complaint Which Conflict With the Exhibits to PPVA's Complaint**

The Receiver asks this Court to look beyond the allegations of Navidea's Third-Party Complaint, and to construe the PPCO Payoff Demand[3] against Navidea, but to uncritically accept PPVA's allegations concerning the alleged partial assignment. The Receiver cannot have it both ways. If the Court looks at the PPCO Payoff Demand, the Court should also look at the Assignment Agreement[4]. In doing so, the Court will find that the Assignment Agreement does not support a partial assignment. The notion of a partial assignment is critical to the Receiver's argument that the indemnification provision does not apply to PPVA's claims against Navidea.

---

[3] As defined in Navidea's Third-Party Complaint.
[4] As defined in Navidea's Third-Party Complaint.

*See* Memorandum Contra, at 12 ("PPCO only released and indemnified Navidea for those causes of action related to the portion of the Navidea Note[5] that PPVA assigned to PPCO."). If the purported partial assignment was in fact a complete assignment of PPVA's interest to PPCO, PPVA would have no interest in the Navidea Note, and the indemnification provision would extend to cover Navidea's costs and fees associated with PPVA's suit against Navidea. *Id.* at 14-15 (acknowledging Navidea's litigation costs as possible present damages).

Based on its terms, the Assignment Agreement is a complete assignment of PPVA's interest to PPCO. After assignment, the assignor generally lacks standing to enforce the instrument. *National Financial Co. v. Uh*, 720 N.Y.S.2d 17, 17 (1st Dep't 2001). The assignment of a promissory note is a contract and "[i]t is the primary rule of construction of contracts that when the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract..." *Howard v. Howard*, 740 N.Y.S.2d 71, 71 (2d Dep't 2002). Thus, if, on its face, the Assignment Agreement assigned all of PPVA's interest to PPCO, the Assignment Agreement was a complete assignment.

Based on the face of the Assignment Agreement, PPVA assigned all of its rights and interests to PPCO. *See generally* Navidea Litigation Complaint, Exhibit 66. The Assignment Agreement states "Assignor [PPVA] does hereby sell, transfer, convey and assign, set over and otherwise convey (or "Assign") to the Assignee [PPCO] *all* of its right, title and interest in, to and under the Asset set forth opposite its name on Exhibit A hereto, including to the extent applicable, (a) *all* payments paid in respect thereof and all monies due, to become due or paid in respect thereof accruing on and after the Effect Date and all liquidation proceeds and recoveries thereon…" *Id.* at § 1 (emphasis added). The "Asset," per Exhibit A to the Assignment Agreement, is the "*[e]ntirety* of that Subordinated Promissory Note, dated July 25, 2012 (as

---

[5] As defined in Navidea's Third-Party Complaint.

amended), issued by Navidea Biopharmaceuticals, Inc. to Platinum-Montaur Life Sciences, Inc. in the initial principal amount of $6,650,869.35." *Id.*, Exhibit A (emphasis added). Having assigned "all" of and the "entirety" of its interest, nothing in the Assignment Agreement suggests less than a complete assignment from PPVA to PPCO. *See generally* Assignment Agreement. The plain language is clear and the Court need not look outside the four corners of the contract. *Howard*, 292 A.D.2d at 345. Furthermore, where allegations in a pleading "are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the [pleading]." *Sazerac Co. v. Falk*, 861 F.Supp. 253, 257 (S.D.N.Y. 1994).

Both PPVA and the Receiver cite to Navidea SEC filings to support the argument that the Assignment Agreement was a partial assignment. *See e.g.* Navidea Litigation Complaint, ¶¶ 19-21; Memorandum Contra, at 12. However, the alleged total balance owed under the Navidea Note is not found anywhere in the Assignment Agreement. *See generally* Navidea Litigation Complaint, Exhibit 66. PPVA, and now the Receiver, claim that, based solely on that purported total owed, the Assignment Agreement must have been a partial assignment. That is not the case. The Assignment Agreement is a contract, construed based on its terms. Any other documents cannot change those terms. The Assignment Agreement was a complete assignment.

This is inextricably related to the argument that is currently before the court in the Navidea Litigation on Navidea's Motion to Dismiss. Even if the Court does not see the merit of Navidea's position on this point, at a minimum, the inability to separate these issues in Navidea's Third Party Complaint from the issues in PPVA's claim against Navidea suggests judicial economy weighs in favor of allowing both claims to be heard in the Navidea Litigation.

The Receiver's argument that PPCO and PPVA are not affiliates is unavailing. The case cited by the Receiver deals with future affiliates not in existence. *See Ellington v. EMI Music,*

*Inc.*, 21 N.E.3d 1000, 1004 (N.Y. 2014). That does not resolve the issue in this case, nor does the Receiver's invocation of dictionary definitions of "affiliate" in an attempt to limit indemnification. Memorandum Contra, at 13. In fact, the Receiver's own definition says that an "affiliate" can be a "sibling" corporation. *Id.* The Receiver has noted PPVA and PPCO were, at one time, siblings, and thus affiliated. Doc. 130-1, at 3 (describing PPVA as "Platinum's signature hedge fund…" while PPCO was described as "Platinum's credit fund.") In addition, even after the appointment of the Cayman Islands joint liquidators, which allegedly severed the affiliate relationship between PPVA and PPCO, the Receiver referred to the Receivership Entities as "…the seven entities affiliated with the Funds." Doc. 130-1, at 5. The Funds included both PPVA and PPCO. *Id.* at 2. To resolve the Motion to Lift Stay, the Court need not determine whether PPVA and PPCO were affiliates for PPCO's agreement to indemnify Navidea. All the Court must determine is that this issue is far more complicated than the manner in which the Receiver presents it, and is an issue, like the other purported deficiencies in Navidea's Third-Party Complaint, to be determined, after due consideration, in the Navidea Litigation.

### a. Conclusion

Navidea should be permitted to pursue its Third-Party Complaint against PPCO. All three factors weigh in favor of granting the Motion to Lift Stay, and permitting Navidea's Third-Party Complaint against PPCO. Granting the Motion to Lift Stay does not impermissibly alter the status quo, the receivership has been in place for a sufficient length of time, and Navidea has asserted a colorable claim. Importantly, resolving Navidea's claims against PPCO will require resolution of factual issues inextricably linked to PPVA's claim against Navidea. Both claims should thus be simultaneously resolved in the Navidea Litigation.

10

Respectfully Submitted,

*/s/ Robert C. Folland*
Robert C. Folland (Admitted PHV)
David J. Dirisamer (Admitted PHV)
BARNES & THORNBURG LLP
41 South High Street, Suite 3300
Columbus, OH  43215
614-628-1429 (Office)
614-628-1433 (Facsimile)
Rob.Folland@btlaw.com
David.Dirisamer@btlaw.com
*Counsel for Navidea Biopharmaceuticals, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served this 12th day of July, 2018, via the Court's CM/ECF electronic filing system, and served via U.S. Mail on all parties not served via the Court's CM/ECF electronic filing system.

*/s/ Robert C. Folland*
Robert C. Folland

12