```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
SECURITIES AND EXCHANGE                                     :
COMMISSION,                                                 :
                                                            :     **MEMORANDUM DECISION AND**
                                  Plaintiff,                :     **ORDER**
                                                            :
                     - against -                            :     16-cv-6848 (BMC)
                                                            :
PLATINUM MANAGEMENT (NY) LLC;                               :
PLATINUM CREDIT MANAGEMENT,                                 :
L.P.; MARK NORDLICHT; DAVID LEVY;                           :
DANIEL SMALL; URI LANDESMAN;                                :
JOSEPH MANN; JOSEPH SANFILIPPO;                             :
and JEFFREY SHULSE,                                         :
                                                            :
                                  Defendants.               :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Schafer and Weiner, PLLC ("S&W"), former counsel to Platinum and Bart Schwartz, the initial court-appointed receiver in this matter, moves for reimbursement of attorneys' fees and expenses. The receiver opposes the motion and cross-moves for disgorgement of fees previously paid to S&W. The SEC joins the receiver's opposition and cross-motion.

For the reasons below, S&W's motion is denied, and the Court will defer judgment on the receiver's cross-motion.

## BACKGROUND

S&W describes itself as a "boutique bankruptcy and commercial litigation firm comprised of eleven attorneys in Bloomfield Hills, Michigan." Its attorneys have "extensive experience representing debtors and creditors alike in Chapter 11 proceedings across many sectors and industries, and have assisted clients in a wide variety of secured transactions."

Platinum originally retained S&W in August 2015 – prior to the receivership – in connection with a $16,000,000 loan that Platinum advanced to Arabella Exploration, Inc. ("AEI").[1] The Arabella loan is secured by all of AEI's assets and is guaranteed by AEI's Texas subsidiaries. The guarantees, in turn, are secured by oil and gas interests owned by Arabella Exploration, LLC ("AEX") and Arabella Operating, LLC ("AO") (two of AEI's Texas subsidiaries).

AEI defaulted on the Arabella loan after making two payments. Shortly after AEI's default, a related company, Arabella Petroleum Company, LLC ("APC"), filed for Chapter 11 relief. APC's bankruptcy trustee commenced an adversary proceeding against Platinum and other Arabella entities alleging that transfers of those oil and gas interests from APC to AEX and AO were fraudulent and Platinum knew or should have known that based on its due diligence performed in connection with the Arabella loan. Platinum retained S&W to represent its interests in connection with the default and the adversary proceeding.

Over the course of this representation, Platinum began to face liquidity problems, and S&W was concerned that Platinum would not be able to pay its accrued legal fees. In light of this concern, Platinum signed a guaranty in July 2016 in which it "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction of the Professionals' fees and expenses related to any work performed by the Professionals in connection with" the Arabella loan.[2] These fees were "superior to any claim that Platinum" had at the time or would later acquire, and Platinum would "make any payments to Professionals from the first monies

---

[1] The Arabella loan was made in September 2014 as part of a $45,000,000 credit facility extended to AEI. It currently has an outstanding balance of $20,000,000.

[2] In addition to S&W, "Professionals" is defined to include Kessler Collins P.C., Stephen B. O'Connell, Solomon Harris, RHSW Caribbean, Law Offices of Ray Battaglia PLLC, Forshey Prostok LLP, and Rehmann Turnaround and Receivership Services LLC.

recovered by Platinum from AEX, AO, or any other claims related to AEX or AO." Days later, Platinum agreed in an amendment to the guaranty that it was securing these payments "by providing for the benefit of the Professionals a first out participation in [Platinum's] security interests" under the Arabella loan. S&W explains that this first-out participation "granted the Arabella Professionals a senior position, ahead of Platinum, in all proceeds generated from the Arabella Loan when Platinum either foreclosed on any of the [oil and gas interests] or sold or assigned all or part of its interest in the Arabella Loan." S&W continued to represent Platinum because it believed its pecuniary interests were protected by the guaranty.

In November 2016, Founders Oil and Gas III, LLC claimed that AEX owed millions of dollars in connection with the oil and gas interests securing the guarantees to the Arabella loan, and threatened to foreclose on those liens. S&W believed this claim could eliminate Platinum's security interests in those assets. S&W suggested that Platinum give AEX $400,000 so it could file for bankruptcy and prevent Founders (and the APC trustee) from taking action against the oil and gas interests. Platinum declined, but advised AEX and S&W that it could find an independent third party to buy a participation in the proceeds of the Arabella loan and provide that money to AEX to fund the bankruptcies.

AEX identified a third-party participant in December 2016 – Craig Bush of 30294, LLC. AEX and the participant negotiated a purchase price (without S&W's help). S&W, AEX, and the participant then drafted a participation agreement, which incorporated the previously negotiated purchase price. Under the terms of the participation agreement, the participant purchased 45% of Platinum's interest in the proceeds of the Arabella loan in exchange for a cash payment of $500,000. Platinum agreed that this $500,000 would be "used exclusively to fund

3

professional fees," and authorized the funds to be disbursed into a trust account held by S&W.[3] Platinum also agreed that any additional recovery it made from the Arabella loan would first go to "any professionals for fees and expenses not yet otherwise paid," then to interest, and finally, to Platinum and the participant pursuant to their 55%-45% split.

The former receiver was appointed on December 19, 2016, when the SEC commenced the instant action. S&W encouraged the former receiver to enter into the participation agreement to protect the value of the Arabella assets. Bob Rittereiser at Guidepost (the former receiver's consulting firm) signed the participation agreement on behalf of the former receiver on December 28, 2016, but S&W was instructed to hold the signature in escrow while an unrelated question of approval was answered. S&W was permitted to release the signature on January 5, 2017.[4] The requisite payments were made to the professionals, and S&W immediately helped AEX and AO file for bankruptcy relief to prevent any creditor – including APC and Founders – from taking action against the oil and gas interests.

On the same day the participation agreement went into effect, APC sent AEX notice of its purported tag-along rights in the oil and gas interests securing the guarantees on the Arabella loan, which would allow APC to take a pro rata share of any sale of those interests. In March

---

[3] Of the total purchase price, approximately $350,000 was paid to professionals under the July 2016 guaranty, including a $180,000 payment to S&W for pre-receivership fees, and the remainder of the purchase price was used to retain professionals for the impending bankruptcies.

[4] There is a dearth of facts surrounding whether the former receiver sought or received meaningful advice from independent counsel before entering into the participation agreement. Cooley LLP (the former receiver's independent law firm) sent a memo to the SEC on January 3, 2017 including an update on the status of various receivership assets. This nine-page memo included three substantive bullet points about the Arabella loan, and noted that the "third party will pay $500,000 to Platinum which will use the funds to pay the professionals." It also indicated that Platinum "has not been able to finalize the arrangement." In addition, Cooley's time sheets include a .3 hour entry on January 5, 2017 stating "telephone calls with R. Rittereiser and C. Lindstrom regarding Arabella." But a later email from Cooley to the SEC (which goes into a significant amount of detail about the Arabella loan and the participation agreement) states, "Cooley was not involved in the Participation Agreement." That email also provides that "[t]he Participation Agreement was entered into at a time when the affairs of Platinum were in a state of extreme disarray, and the Receiver was newly appointed."

2017, S&W participated in a two-day thirty-person mediation during which APC's claims to the tag-along rights were resolved by a settlement agreement that this Court approved. S&W argues that this settlement avoided years of costly litigation, because APC was the record owner of the tag-along rights, and any interests AEX had in them were received through unrecorded transfers from APC.

Ultimately, S&W claims that it "represented the Initial Receiver's interests in the bankruptcies of [AEX and AO] and exerted heavy influence and leverage on behalf of the Initial Receiver to ensure that Platinum's first priority interest in the [oil and gas interests] was preserved and to remove all obstacles to a sale of [those interests]." As a result, these oil and gas interests "will yield several million dollars for the Receivership Entities."

On May 29, 2017, the former receiver and the SEC together informed the Court that they disagreed on the direction of the receivership, including with respect to S&W. Specifically, the SEC was concerned about the potential conflicted nature of the participation agreement,[5] and S&W's asserted lack of knowledge of APC's tag-along rights despite its in-depth work on the Arabella loan to date. These disputes were never resolved, and the former receiver was ultimately replaced. Before he left, the former receiver terminated S&W. At no time prior to his termination, however, did the former receiver file an application to approve S&W's retention as a receivership professional.

Nevertheless, S&W submitted a fee application for the period of December 19, 2016 to June 13, 2017, which both the receiver and the SEC oppose.[6] Through its application, S&W

---

[5] To show that it did not operate with an impermissible conflict of interest, S&W provides an opinion by Retired Chief Judge of the United States Bankruptcy Court for the Eastern District of Michigan, Steven W. Rhodes. With all due respect to Judge Rhodes, the Court does not need an expert opinion on the law. Instead, the Court has construed Judge Rhodes's opinion as an additional affidavit attached in support of S&W's fee application.

[6] S&W sought to depose the receiver and an SEC attorney in connection with these motions, specifically to learn why they believed it was operating under a conflict of interest. The Court denied S&W's motion to compel those

5

seeks reimbursement of $459,729.25 in legal fees and $29,197.86 in expenses incurred during the receivership.[7] S&W received a $5,000 retainer from Platinum, which has not yet been applied, and has already received pre-receivership payments of $215,000 (including $180,000 through the participation agreement). Finally, S&W performed 299.65 of the approximate total of 1,500 hours billed at a discounted rate of $275 per hour and did not charge for 170.5 hours worked, allegedly saving the receivership $95,205.

## DISCUSSION

Generally, "[a] receiver appointed by a court "who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred." S.E.C. v. Byers, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) (citing 65 Am. Jur. 2d, Receivers § 219 (2d ed. 2008); Jeffrey F. Ghent, Annotation, "Measure and Amount of Compensation of Receiver Appointed By Federal Court," 6 A.L.R. Fed. 817, §§ 3-9 (1971 & Supp. 2008)). This presumption of reasonable compensation extends to a receiver's counsel and professionals. That being said, the amount of compensation to be awarded to those professionals is squarely within the court's discretion. F.T.C. v. Consumer Health Benefits Ass'n, No. 10 CIV. 3551, 2011 WL 5513182, at *1 (E.D.N.Y. Nov. 10, 2011) (internal citations omitted).

A court can consider several different factors in determining a reasonable fee. These factors include (1) "the complexity of problems faced," (2) "the benefits to the receivership estate," (3) the quality of the work performed," and (4) "the time records presented." Byers, 590

---

depositions, and ordered that if S&W's application is granted in any part, it will be reduced by $500 in recognition of S&W's frivolous position in seeking that discovery. Either S&W has a conflict or it does not; S&W does not need to take depositions of other entities to figure that out.

[7] S&W also states that it is owed $222,599.11 in pre-receivership fees connected to the Arabella loan, but does not seek compensation for that amount here. S&W is correct not to seek reimbursement for pre-receivership fees through this application, as claims for pre-receivership fees are properly heard through the claims-adjudication process.

6

F. Supp. 2d at 644.  A court may also consider "the degree of activity, integrity and dispatch with which the work is conducted and the result obtained." United States v. Code Prod. Corp., 362 F.2d 669, 673 (3d Cir. 1966) (internal quotation marks and citation omitted).

Finally – and noteworthy in this instance – "in a securities receivership, '[o]pposition or acquiescence by the SEC to the fee application will be given great weight.'" Byers, 590 F. Supp. 2d at 644 (internal citations omitted).

### I. Court Approval for Retained Professionals

The former receiver was authorized to retain professionals to assist him in carrying out his duties as receiver.  Before he could retain anyone, however, he first had to obtain an order from this Court authorizing the engagement.  The former receiver never obtained approval to hire S&W.  The receiver and the SEC argue that this should bar S&W from receiving any compensation at all.

S&W provides an alternative reading of the order appointing the receiver in an effort to avoid this point.[8]  Despite the fact that the receiver order states that "[t]he Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement," S&W seems to believe that court approval is not required to be a retained professional, so long as that professional was solicited by and acts as an agent of the receiver.  It follows, under S&W's interpretation, that because all retained professionals are entitled to reasonable compensation, a professional retained without court approval is still entitled to

---

[8] S&W's argument is based on the terms of the second amended receiver order, which appointed the current receiver.  However, that order was not entered until October 16, 2017 – well after S&W's termination.  As a result, the Court addresses S&W's argument using the terms of the first amended receiver order, which was operative during the time when S&W's retention could have been approved.

7

reasonable compensation if the professional was acting within the scope of the agency relationship. This is wrong.

S&W is a sophisticated actor. Moreover, it is experienced in the field of receivership and bankruptcy practice. S&W should not claim that its convoluted interpretation is "obvious" from the clear and unambiguous language of the receiver order. S&W understood – as the emails it attaches in support of its fee application demonstrate[9] – that Court approval of its retention was a necessary precondition to its being a receivership professional entitled to compensation.[10]

S&W also argues that the former receiver "had not yet engaged a single professional under the First Receiver Order at the time the SEC demanded, months into the receivership . . . that the Initial Receiver terminate S&W's services" – meaning that the Court should not view its lack of retention as anomalous. A quick look at the docket shows that S&W is wrong again. On January 31, 2017, the former receiver applied to retain as professionals Guidepost Solutions LLC and Cooley LLP, and those applications were approved on February 17, 2017. On March 22, 2017, the former receiver sought to retain PricewaterhouseCoopers LLP as a limited professional, and the next day sought to retain Houlihan Lokey Financial Advisors, Inc. as a valuation and investment banking advisory firm. This is simply another frivolous argument made in S&W's final attempt at payment.

---

[9] On May 11, 2017, S&W emailed Cooley with the following message: "First, I would like to know whether there is a draft of the application for the receiver to have us appointed as his counsel that we can review. This is a very important pleading for us because, as you know, we are a small boutique law firm and we need to know where we stand in our ability to get paid in this case. The lack of payment is very difficult for us." This clearly demonstrates an understanding that court approval was a prerequisite for compensation. S&W's argument here contradicts its own words, as well as standard practice in the field in which it purports to be well versed.

[10] S&W apparently did not deem it appropriate to take this approach with Judge Rhodes (whose opinion is attached to S&W's fee application). In an August 10, 2017 letter to Judge Rhodes, Michael Baum of S&W states, "In hindsight, I should have pushed back at their position. Retention applications should have been filed, and not subject to the scheduling of discussions with the SEC or the time constraints of Cooley or the Receiver." The Court does not appreciate S&W's choice to be candid to Judge Rhodes but not to this Court.

Ultimately, prior court approval was a prerequisite to becoming a retained professional entitled to reasonable compensation. This could not possibly have been news to S&W. By way of parallel to bankruptcy practice, the Second Circuit has articulated a *per se* rule that "forbids allowing compensation to any professional for services rendered prior to the attorney's retention by an order of the bankruptcy court." In re 245 Assocs., LLC, 188 B.R. 743, 749 (Bankr. S.D.N.Y. 1995), corrected (Nov. 9, 1995) (collecting cases); see also Matter of Futuronics Corp., 655 F.2d 463, 469 (2d Cir. 1981) ("Indeed, it has long been the practice in [the Second Circuit] to deny compensation to counsel who fail to comply with the disclosure provisions [of the Bankruptcy Code.]"). One bankruptcy court has explained:

> The consequences of a debtor's failure to secure prior bankruptcy court approval of a professional's employment within the jurisdiction of the United States Court of Appeals for the Second Circuit are indeed harsh. With very limited exceptions, the so-called "per se" rule controlling in this Circuit prohibits the payment of compensation to a professional who renders services to a debtor absent an order of appointment.

In re Ne. Dairy Co-op. Fed'n, Inc., 74 B.R. 149, 154 (Bankr. N.D.N.Y. 1987); see also In re Borders Grp., Inc., 456 B.R. 195, 209 (Bankr. S.D.N.Y. 2011). Courts still cite to Judge Learned Hand's articulation of this rule from 1931:

> The order and the rule were passed to control serious abuses and are to be strictly observed; without an order of court upon full presentation of the relation of the proposed attorney with all other interests involved, not only may he not be retained, but he can recover nothing, no matter how beneficial, or how arduous, his services.

In re Eureka Upholstering Co., Inc., 48 F.2d 95, 95 (2d Cir. 1931) (Hand, J.).

There are two reasons for this *per se* rule – first, "it discourages volunteer services," and second, "it enables the court to review attorneys' potentially disqualifying conflicts or relationships 'unaffected by the emotional pressure which inevitably arises in their favor after the services have been rendered.'" In re 245 Assocs., LLC, 188 B.R. at 749-50 (internal citations

9

omitted); In re Bronx 439 E. 135th St. D.T. Bldg. Corp., No. 11-15855 (MG), 2014 WL 200996, at *3 (Bankr. S.D.N.Y. Jan. 17, 2014). The first concern – that a volunteer will offer to provide unnecessary services that are too costly for the estate – can be alleviated retroactively through the fee application process. The second concern – that of an impermissible conflict – cannot. As a result, an attorney who provides services to the debtor will not be compensated if the court did not have an opportunity to scrutinize its retention for possible impropriety.

There is no meaningful distinction between a bankruptcy and this receivership that would compel a different result in this case. The authority for the *per se* rule in bankruptcy practice is statutory, see 11 U.S.C. § 327 ("The trustee, with the court's approval, may employ one or more attorneys . . . ."); here, it comes from a Court order entered in this very case. But the source of the obligation, whether statutory or by court order, is immaterial. The same rationale applies – the receiver and the professionals have a duty to act in the best interests of the receivership, and this Court has identical interest to a bankruptcy court in ensuring those duties are upheld at the outset.

S&W took this representation at its own risk; it could have said no and walked away, or it could have demanded that the former receiver file a retention application before it performed any additional work on behalf of the receivership estate. The chaos at the time of the commencement of the receivership is no excuse, as that is often the case in the commencement of significant insolvency proceedings.[11] As an experienced bankruptcy firm, S&W had to know that the retention of counsel is typically one of the "first day orders" entered in any insolvency case, no

---

[11] In addition, the Court does not need to apply the Supreme Court's multifactor balancing test articulated in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 400 (1993), to determine whether there is "excusable neglect" in the prior receiver's failure to formally retain S&W as a receivership professional. The Pioneer test is an equitable analysis employed when "a party moves for permission to act after having missed a deadline," id., and is relevant to professional retention in the context of *nunc pro tunc* applications. See In re 245 Assocs., LLC, 188 B.R. at 751. Here, S&W does not seek permission for its retention *nunc pro tunc* to the date of the receivership; S&W asks for compensation from the receivership despite never having sought such retention.

10

matter how chaotic the affairs of the debtor. Instead, S&W chose to secure its payment through the terms of the guaranty and the participation agreement rather than the terms of the receiver order and a formal retention application. S&W has nobody to blame but itself for that mistake;[12] and as a result, its fee application is denied.[13]

## II. Conflict of Interest

The receiver and the SEC also seek disgorgement of pre-receivership fees that S&W has previously received. This motion is premised on claims that S&W had an impermissible conflict of interest, and that S&W provided the former receiver with incorrect legal advice, both in connection with the participation agreement discussed above. However, I conclude that these would be best determined in another context.

The receiver indicated in her opposition that she "intends to file a declaratory judgment action in the short term seeking a declaration that the Purported Participation Agreement is void *ab initio* because, among other things, it required approval of this Court, and because, it gave rise to a conflict of interest between S&W and its client, the Receiver."

S&W, on the other hand, argues that the receiver is estopped from litigating this issue because the Arabella bankruptcy court has already heard and determined it in the context of a claims transfer notice filed in the bankruptcy case. S&W is wrong. The Arabella bankruptcy court did not reach the merits of the issues inherent in the receiver's cross-motion for disgorgement of fees – specifically, whether the payment to S&W constitutes an ordinary course transaction (rather than entering into a participation agreement generally), and whether S&W

---

[12] Indeed, S&W's failure to ensure court approval of its retention suggests that it had something to hide in connection with the participation agreement. But because the former receiver never applied to formally retain S&W, the Court never got a chance to determine whether that was the case.

[13] The SEC's vehement opposition to S&W's fee application further supports this conclusion.

operated with an impermissible conflict of interest when it advised the former receiver to enter into the participation agreement under the circumstances of a receivership.  Instead, the bankruptcy court determined (1) that the receiver waived any claim that the bankruptcy action was stayed by the order entered in this case, (2) that the former receiver had the authority to enter into the participation agreement pursuant to his powers as outlined in the receiver order (that is, he had the authority to sell all or any part of Platinum's interest in the Arabella loan), and (3) that the participation agreement did not amount to an assignment of claims to the participant.  In other words, the bankruptcy court found that it had jurisdiction to determine who held the claim at issue – Platinum or the third-party participant.  It specifically declined to address any issues of impropriety connected with the participation agreement.  Moreover, the bankruptcy court acknowledged that this Court remains free to disregard its decision as violative of the terms of the receiver order.

Either way, any argument that S&W is not entitled to the pre-receivership fees that it has already received must be made in connection with full briefing and, if necessary, an evidentiary hearing on the merits of these issues.  The Court will thus defer any ruling on the receiver's cross-motion for disgorgement of fees until the receiver seeks a declaratory judgment in connection with the participation agreement.

## CONCLUSION

S&W's [326] motion for attorneys' fees and expenses is DENIED.

**SO ORDERED.**

Dated: Brooklyn, New York　　　　　　　　　　　　　　　　U.S.D.J.
　　　　September 25, 2018