```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
SECURITIES AND EXCHANGE                                     :
COMMISSION,                                                 :
                                                            :    **MEMORANDUM DECISION AND**
                                       Plaintiff,           :    **ORDER**
                                                            :
             - against -                                    :    16-CV-6848 (BMC)
                                                            :
PLATINUM MANAGEMENT (NY) LLC;                               :
PLATINUM CREDIT MANAGEMENT,                                 :
L.P.; MARK NORDLICHT; DAVID LEVY;                           :
DANIEL SMALL; URI LANDESMAN;                                :
JOSEPH MANN; JOSEPH SANFILIPPO;                             :
and JEFFREY SHULSE,                                         :
                                                            :
                                       Defendants.          :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Defendants Joseph SanFilippo, David Levy, Daniel Small, and Joseph Mann (collectively, the "former officers"), have moved to compel their former charge, Platinum Management (NY) LLC and its related entities (collectively, "Platinum Partners"), to pay legal fees incurred in United States v. Nordlicht, et al., No. 1:16-cr-00640 (E.D.N.Y.) (the "Criminal Matter").

Platinum Partners may well indeed owe reimbursement to these former officers. But it owes lots of money to people and entities that it lacks sufficient funds to pay, which is why it is in receivership. The former officers have shown no compelling reason why they should get to jump the line. Their motion is therefore denied.

## BACKGROUND

### I. The Platinum Partners Litigation

The former officers are former employees of Platinum Partners. They are also defendants in two proceedings relating to their employment at Platinum Partners.

First, the Government indicted each of the former officers, among others, with various counts of conspiracy to commit securities fraud and wire fraud, securities fraud, and investment advisor fraud in connection with their roles at Platinum Partners. Five days later, the Securities and Exchange Commission ("SEC") commenced this civil action, alleging that the former officers, among others, participated in multiple fraudulent schemes in violation of various securities laws.

On the same day the SEC commenced this action, the Court entered an order appointing a receiver (the "Receiver") to take control of certain Platinum Partners entities (the "Receivership Entities") and all of their assets (the "Receivership Assets"). On October 16, 2017, the Court approved a Second Amended Order Appointing Receiver (the "Receiver Order"). The Receiver Order authorizes the Receiver to, among other things, conduct an orderly wind down of the Receivership Entities, including a fair distribution of the Receivership Assets to investors. The Receiver Order also provides that "[a]ll officers, directors, managing members, general and limited partners of the Receivership Entities are and remain dismissed from any and all positions of management of the Receivership Entities.…"

### II. The Former Officers' Indemnification and Advancement Rights

All of the former officers are covered by various provisions in Platinum Partners internal documents giving them rights in connection with getting their lawyers paid. They differ in terms

of whether the payment of fees is permissive or mandatory, and whether they require advancement of legal fees or merely reimbursement.

Levy entered into multiple agreements in which Platinum Partners entities agreed to indemnify him, including three agreements that provided for mandatory advancement of Levy's legal fees. One agreement (the "Credit Funding Agreement") provided that Platinum Partners "shall" indemnify Levy against any "Damages" (a term the agreement capitalizes but does not define) in connection with criminal proceedings and also "shall" advance the expenses of defending the claim.

Another agreement (the "PPCO Master Fund Agreement") provides that Platinum Partners "shall indemnify" Levy for his legal fees and "shall promptly reimburse (and/or advance to the extent reasonably required)" Levy for these legal fees "<u>provided</u> [Levy] executes a written undertaking to repay" the advance if "it is finally judicially determined that" he is not entitled to indemnification. Platinum Partners founder Mark Nordlicht also entered into a letter agreement (the "Wilson Sonsini Agreement") committing Platinum Partners to pay bills from Levy's counsel "within 15 days of receipt."

Like Levy, Small claims rights to advancement under the Credit Funding Agreement and the PPCO Master Fund Agreement by virtue of his positions at Platinum Partners.

And, like Levy, Mann claims advancement rights under the PPCO Master Fund Agreement. Mann also claims rights under a separate agreement that provides that Platinum Partners "shall indemnify" Mann and "may, in its discretion, advance" his legal fees.

SanFilippo's agreement (the "PPCO Operating Agreement") provides that, as an employee of the managing member of a certain Platinum Partners entity, Platinum Partners "shall" indemnify him for his legal fees and "may" advance payment of these legal fees.

3

SanFilippo's agreement also provides that his indemnification rights and "payment of associated expenses shall not be affected by the … removal of the Managing Member." SanFilippo subsequently requested advancement of his legal fees, and in-house counsel at Platinum Partners approved his request for advancement.

## DISCUSSION

### I. The Former Officers' Rights to Advancement of Legal Fees

Under Delaware law, which governs the relevant agreements, legal fee provisions in internal corporate documents are construed according to the standard rule of contract interpretation – courts will interpret the contract according to its plain meaning if the contract is "reasonably or fairly susceptible to only one interpretation." Blankenship v. Alpha Appalachia Holdings, Inc., 10610-CB, 2015 WL 3408255, at *14 (Del. Ch. May 28, 2015). The Delaware Chancery Court has explained that "the plain meaning of 'shall be advanced' is that advancement is mandatory." Stockman v. Heartland Indus. Partners, L.P., 4227-VCS, 4427-VCS, 2009 WL 2096213, at *6 (Del. Ch. July 14, 2009). And if the attorneys' fee provision is ambiguous, Delaware public policy "supports resolving ambiguity in favor of indemnification and advancement." Blankenship, 2015 WL 3408255, at *17.

Here, Levy, Small, and SanFilippo are entitled to advancement of their legal fees, but Mann does not have a right to advancement. Levy and Small are entitled to advancement of their legal fees under the Credit Funding Agreement, which provides that Platinum Partners "shall advance" their legal fees. The plain meaning of "shall advance" is that advancement is mandatory, not discretionary. Stockman, 2009 WL 2096213, at *6, at *23.[1] Platinum Partners –

---

[1] The Receiver claims that the indemnification provision of the Credit Funding Agreement is ambiguous because it uses, but does not define, the word "Damages." Even if this language were ambiguous, Delaware public policy counsels in favor of resolving the ambiguity in favor of advancement. See Blankenship, 2015 WL 3408255, at *17.

through its agent and founder, Mark Nordlicht – further confirmed its obligation to advance Levy's legal fees by entering into the Wilson Sonsini Agreement, in which Platinum Partners agreed to pay Levy's monthly legal fees within 15 days of receipt.

SanFilippo is also entitled to advancement of his legal fees because, despite the discretionary language that the PPCO Operating Agreement used when providing for advancement of legal fees, Platinum Partners agreed to advance his legal fees. Because the PPCO Operating Agreement also provided that his rights to indemnification "and payment of associated expenses shall not be affected by the … removal …. of the Managing Member," the Receiver Order's dismissal of the managing members of the Receivership Entities cannot affect SanFilippo's rights to advancement.

Levy, Small, and Mann also claim advancement under the PPCO Master Fund Agreement, which provides that their recovery is conditional on the execution of a written undertaking. The Receiver claims that Levy, Small, and Mann have not provided this undertaking, and Levy, Small, and Mann have not provided any evidence that they have provided the undertaking. Therefore, any advancement rights that Levy, Small, and Mann may have under the PPCO Master Fund Agreement have not vested. Levy and Small still have advancement rights under the Credit Funding Agreement – and in Levy's case, the Wilson Sonsini Agreement – but Mann has not identified any other agreement that requires mandatory advancement of his legal fees.[2]

Finally, the Receiver asserts that, even if the former officers have a right to advancement, the advancement would not exceed a small fraction of their total defense costs because the

---

[2] Mann claims advancement rights under an additional agreement, but this agreement does not provide for mandatory advancement of legal fees. Rather, this agreement provides that a Platinum Partners entity "may, in its discretion, advance" reasonable legal fees and costs.

5

agreements at issue do not cover most of the conduct underlying the Criminal Matter. But as the Receiver appears to recognize, the amount of covered defense costs is a separate question from whether the former officers are entitled to advancement in the first place. The amount of the claim can be determined later; all that is before the Court on the instant motions is whether there is a right to recover.[3]

## II. The Priority of Claims for Legal Fees

Under Delaware law, claims for advancement of legal fees are treated the same as the claims of other unsecured creditors. Andrikopoulos v. Silicon Valley Innovation Company, LLC, 120 A.3d 19, 25 (Del. Ch. 2015). See also Henson v. Sousa, 8057–VCG, 2015 WL 4640415 (Del. Ch. Aug. 4, 2015). The former officers distinguish Andrikopoulos and Henson from this case because Andrikopoulos and Henson involved the rights to advancement in civil litigation. They argue that because they are seeking to defend themselves in a criminal case, the Sixth Amendment requires the Receiver to pay or advance their claims ahead of other creditors.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence." The Sixth Amendment protects individuals from government action, not private action. See Michigan v. Jackson, 475 U.S. 625, 634 (1986) ("For the Sixth Amendment concerns the confrontation between the State and the individual."), overruled on other grounds by Montejo v. Louisiana, 556 U.S. 778 (2009); U.S. v Stein, 541 F.3d 130, 156 (2d Cir. 2008) ("In a nutshell, the Sixth Amendment protects against unjustified governmental interference with the right to defend oneself using whatever assets one has or might reasonably and lawfully obtain.").

---

[3] The Receiver also disputes whether the former officers have provided sufficient evidence of their positions at Platinum Partners. But the sworn declarations and internal Platinum Partners documents are more than sufficient for the purpose of the present motions.

6

The authorities on this point are clear.  Since a receiver is not a governmental actor, the Sixth Amendment does not protect against the actions of a receiver.  United States v. Johnson, 2:11-cr-501-DN, 2016 WL 4087351 (D. Utah July 28, 2016) ("Consequently, there was no Sixth Amendment violation when Johnson was denied access to funds to hire an attorney when the funds were held by the receiver pursuant to court order in a civil case in another jurisdiction.").  See also U.S. v. Beszborn, 21 F.3d 62, 68 (5th Cir. 1994) ("In its capacity as receiver, the RTC stands as a private, non-governmental entity, and is not the Government for purpose of the Double Jeopardy Clause."); Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc., 125 F.R.D. 51, 53 (S.D.N.Y. 1989) (holding that the deliberative process privilege, which is available to the government, does not apply to a receiver since he was "not a government agent").  Here, the Receiver is not a governmental actor, so none of Receiver's actions violate the Sixth Amendment.

In support of their interpretation of their Sixth Amendments rights, the former officers analogize this case to U.S. v Stein, 541 F.3d 130 (2d Cir. 2008).  In Stein, the Second Circuit ruled that the government violated the Sixth Amendment by pressuring KPMG to restrict its advancement of legal fees to the defendants.  The government's pressure on KPMG implemented the "Thompson Memorandum," a Department of Justice policy document that directed prosecutors to inquire whether a company is advancing attorney's fees to culpable employees when deciding whether to criminally charge the company.

The Receiver is not a governmental entity.  She is not implementing any government policy by giving the former officers' unsecured the claims the same priority as other unsecured claims.  She is not seeking to handcuff the lawyers in the criminal proceedings.  She is simply doing her job as Receiver and paying creditors according to their priority.  Conversely, the

7

Department of Justice has not done anything to influence the Receiver's decision, and, indeed, there is no reason to think that the prosecutors in the criminal case care one way or the other as to how the instant motions are resolved.

The point of Stein's holding is that government prosecutors cannot prosecute and simultaneously use the prosecution to prevent defendants from hiring the lawyer of their choice. That is not what is happening here.

Levy argues that the SEC has provided sufficient encouragement to the Receiver so that the Receiver's conduct constitutes governmental action. Stein, 541 F.3d at 147 (explaining that the actions of a private actor are attributable to the government if there is a "sufficiently close nexus" between the government and the actions of the private actor, including when the government provides the private actor with "significant encouragement"). Levy identifies instances in which the SEC purportedly provided such encouragement, but the only instance relevant to the advancement of attorney's fees is an email in which Kevin McGrath of the SEC acknowledged the Receiver's "position that advancement of legal fees from the Receivership assets ahead of other creditors is inappropriate in this case." McGrath then stated that "[a]bsent any reason to dispute that determination, we are not prepared to consent to the advancement of legal fees from Receivership assets." This email does not establish a "sufficiently close nexus" between the SEC and the Receiver. Instead, it reflects the SEC's recognition that the Receiver would exercise her independent judgment in paying claims.[4]

---

[4] The former officers also cite to SEC v. FTC Capital Mkts., No. 09-cv-4755, 2010 WL 2652405 (S.D.N.Y. June 30, 2010), in which the Southern District of New York held that a court order freezing assets violated the Sixth Amendment by completely depriving a criminal defendant of access to her funds. The scope of the Sixth Amendment's protection is indeed broad enough to include a court order. See Luis v. U.S., 136 S. Ct. 1083, 1093 (2016) ("[W]e believe that the Sixth Amendment prohibits the court order that the Government seeks."). In the instant case, however, the Receiver has not frozen any of the former officers' funds. She has, instead, taken control of company assets, and is under a fiduciary obligation not to prefer one creditor's claim against those assets over that of another except as necessary to preserve the estate.

It is true that as plaintiff, the SEC is in an adverse position to the former officers. However, if the Court believed that the Receiver was a mere rubber-stamp for the SEC, it would remove and replace her. There is no evidence or suggestion of a lack of independence. And unlike in Stein, the Receiver is not doing anything novel or questionable – she is merely applying the fundamental rule of equal distribution among creditors of like kind.[5]

In fact, the former officers' motions seek more than an accelerated payment of their claims. They seek 100% payment, something which no creditor of these estates may ever receive. Since the estates' assets have not been fully liquidated, there is no way to know whether creditors will receive a 10% distribution or a 90% distribution on their claims. But the former officers want it all, as if their claims were secured or administrative, which they are not.

Because the Sixth Amendment does not compel the advancement of legal fees, granting the former officers priority over the claims of unsecured creditors would not only disregard established Delaware law but also interfere with the orderly wind up of the Receivership Entities. Thus, the former officers' rights to advancement of legal fees do not have priority over the claims of unsecured creditors.

---

[5] At some point, the Receiver may assert the argument that if defendants engaged in wrongdoing, their claim should be equitably subordinated to other creditors. That argument is not before me on these motions.

## CONCLUSION

The former officers' motions to compel advancement of legal fees [392, 402, 405, 406] are denied.

**SO ORDERED.**

Dated: Brooklyn, New York  
       November 25, 2018

                                            U.S.D.J.