UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION, :
                                                 :
                          Plaintiff,     :
                                                 :    No. 16-cv-6848 (BMC)
                                               :
     -v-                                         :
                                               :
PLATINUM MANAGEMENT (NY) LLC;     :
PLATINUM CREDIT MANAGEMENT, L.P.;   :
MARK NORDLICHT;                    :
DAVID LEVY;                         :
DANIEL SMALL;                      :
URI LANDESMAN;                    :
JOSEPH MANN;                      :
JOSEPH SANFILIPPO; and           :
JEFFREY SHULSE,                  :
                                             :
                          Defendants.   :
------------------------------------------------------------X

**FOURTH INTERIM APPLICATION OF GOLDIN ASSOCIATES, LLC FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF
EXPENSES INCURRED DURING THE PERIOD APRIL 1, 2018
THROUGH JUNE 30, 2018**

      Goldin Associates, LLC ("Goldin"), as financial advisor to Melanie L. Cyganowski, the

Court-appointed receiver (the "Receiver") for Platinum Credit Management, L.P., Platinum

Partners Credit Opportunities Master Fund LP ("PPCO"), Platinum Partners Credit Opportunities

Fund (TE) LLC, Platinum Partners Credit Opportunities Fund LLC, Platinum Partners Credit

Opportunity Fund (BL) LLC, Platinum Liquid Opportunity Management (NY) LLC, Platinum

Partners Liquid Opportunity Fund (USA) L.P., Platinum Partners Liquid Opportunity Master

Fund L.P, Platinum Partners Credit Opportunities Fund International Ltd, and Platinum Partners

Credit Opportunities Fund International (A) Ltd. (collectively, the "Receivership Entities" or

"Platinum"),[1] hereby submits its Fourth Interim Application for Allowance of Compensation and Reimbursement of Expenses Incurred During the Period April 1, 2018 through June 30, 2018 ("Fourth Interim Application").  Goldin respectfully requests interim approval for payment of $970,161.75 in professional fees and reimbursement of $1,937.01 in expenses incurred for April 1, 2018 through June 30, 2018 (the "Fourth Application Period").

Goldin's Fourth Interim Application contains the following sections:

(a)     **Section I** contains a preliminary statement on Goldin's activities in this case during the Fourth Application Period.

(b)     **Section II** contains information about Goldin and the case's status, as required by Section C of the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Receivership Billing Instructions").  Section II also includes a description of each exhibit to this Fourth Interim Application, as well as the reduction in fees agreed to by Goldin in connection with its appointment as financial advisor to the Receiver.

(c)     **Section III** contains a narrative of the work that Goldin professionals performed under each activity category, as required by Section D of the SEC Receivership Billing Instructions.

(d)     **Section IV** summarizes the expenses for which Goldin seeks reimbursement, as required by Section E of the SEC Receivership Billing Instructions.

(e)     **Section V** describes the standards to be applied by the Court in determining fee awards in SEC equity receiverships.

---

[1]     On December 29, 2017, the Court entered an order approving the expansion of the Receivership Estate to include the following entities: (i) Platinum Partners Liquid Opportunity Master Fund L.P.; (ii) Platinum Partners Credit Opportunities Fund International Ltd; and (iii) Platinum Partners Credit Opportunities Fund International (A) Ltd [Docket No. 298].

(f) **Section VI** describes the holdback arrangement to which Goldin has agreed.

## I.   PRELIMINARY STATEMENT

1.     During the Fourth Application Period, Goldin continued to devote considerable attention to executing on its forensic investigatory plan.  This plan aims principally to aid Goldin, the Receiver and her legal counsel (collectively, the "Receivership Team") determine whether potential causes of action exist against various parties, including but not limited to insiders, certain transaction counterparties, valuation agents, fund administrators, auditors, legal advisors and other professional firms.  In addition, aspects of Goldin's forensic work will facilitate the claims analysis process, inasmuch as this process requires validating the funds that flowed into, out of and through the Receivership Entities.

2.     The forensic work performed during the Application Period can be placed into several categories: (i) analysis of transactions involving Platinum and certain insurers, including Beechwood Re Ltd. and Beechwood Bermuda Ltd. (collectively, "Beechwood"), CNO and SHIP; (ii) provision of analytical support to the Receiver's legal counsel in connection with commenced and/or contemplated actions against third parties; and (iii) construction of a funds flow analysis.  These categories of activity are detailed in turn below.

(a)     Goldin continued to investigate the nature and extent of Platinum's relationship with Beechwood, CNO and SHIP.  In this connection, Goldin evaluated asset sales, loan transactions and certain portfolio company note redemptions involving Platinum and the aforementioned insurers.  As part of this evaluation, Goldin examined, among other things, internal Platinum valuation materials, portfolio company business plans, financial projections and publicly available comparable transaction information.  In

3

addition, Goldin began an assessment of Platinum's solvency at the time of these
transactions, which may bear on certain potential causes of action.  Based on its work to-
date, Goldin has developed a preliminary framework that seeks to estimate what, if any,
harm these transactions caused to Platinum.

       (b)     Goldin provided analytical support to the Receiver's legal counsel
in connection with several filed and/or contemplated legal actions.  For instance, Goldin
assisted the Receiver in preparing a complaint against one of Platinum's key third-party
service providers.  Goldin, among other things, reviewed various reports certified by the
service provider and identified red flags that warranted, but did not garner, heightened
inquiry by the service provider.  Goldin is performing similar work with regard to tasks
putatively performed by other Platinum services providers.  Goldin also provided
analytical support to the Receiver's legal counsel in connection with the preparation of
subpoenas to various interested parties.  Information received through the subpoena
process will assist the Receivership Team in, among other things, identifying and
evaluating potential causes of action against the various involved parties.

       (c)     Goldin continued to develop its funds flow analysis, an essential forensic
investigatory tool.  The funds flow analysis permits the Receivership Team to understand,
at a granular level, the sources and uses of cash that flowed into and out of Platinum, as
well as through and between the various Receivership Entities.  This particular analysis,
which spans many years of activity, involves standardizing and reviewing thousands of
native general ledger entries and then logging them in a bespoke database that allows for
more focused inquiries.  Information yielded by the funds flow analysis, when read in

conjunction with documentary and testamentary sources, should prove critical in formulating and assessing claims against third parties.

3.      In addition to its forensic work, during the Fourth Application Period, Goldin continued to assist the Receiver to monetize additional assets of the Receivership Estate. Goldin's disposition-related efforts are described briefly below.

(a)      Goldin supported Houlihan Lokey ("Houlihan") and Conway MacKenzie Capital Advisors, LLC ("Conway") in connection with marketing certain Platinum portfolio positions.[2]  For instance, Goldin provided Houlihan and Conway with information and analysis related to Platinum's assets, and facilitated, as necessary, engagement with portfolio company management and/or potential purchasers.  Goldin also advised the Receiver on Houlihan and Conway's disposition-related recommendations.  In order to so advise, Goldin reviewed analyses generated by, and conferred regularly with, Houlihan and Conway.

(b)      Goldin assisted the Receiver and her legal counsel in the development and execution of disposition strategies for certain assets Houlihan and Conway are not marketing.  With regard to these assets, Goldin, among other things, (i) reviewed and analyzed relevant financial information; (ii) created comprehensive and detailed memoranda, spreadsheets and other documentation reflecting its financial analyses; (iii) conducted meetings with portfolio company management; (iv) conferred internally, as well as with the Receiver and her counsel; (v) identified and conferred with potential

---

[2]      The Receiver retained Houlihan to market specific Platinum assets, including the following: (i) the life settlements portfolio; (ii) the litigation finance portfolio; (iii) the Brazilian gold tailings project (Abdala); (iv) Urigen Pharmaceuticals, Inc.; and (v) LC Energy Operations LLP.  The Receiver tasked Conway with, in the first instance, marketing the following Platinum assets: (i) West Ventures LLC and its wholly owned subsidiary, Buffalo Lake Advanced Biofuels, LLC; (ii) Desert Hawk Gold Corp.; and (iii) Daybreak Oil and Gas, Inc.

purchasers; and (vi) participated in negotiations pertinent to the sale of these assets, which ranged from thinly-traded, illiquid stock to debt positions in small private companies.

4.      During the Fourth Application Period, Goldin continued to manage a variety of cash disbursement and budgeting protocols on behalf of the Receivership Estate.  For instance, Goldin (i) prepared periodic 13-Week cash receipts and disbursements forecasts; (ii) performed weekly actual vs. forecasted variance analyses regarding Platinum's cash position; (iii) oversaw the procedures governing the review and approval of disbursements (including payroll); and (iv) conducted daily and weekly reconciliations of Platinum's cash and brokerage accounts.

## II.      APPLICATION REQUIREMENTS

### A.      Information about the Applicant and the Application

5.      **Application Period**.  This application covers the period of April 1, 2018 through June 30, 2018.

6.      **Appointment of the Receiver**.  On December 19, 2016, the U.S. Attorney for the Eastern District of New York unsealed an eight-count indictment (the "Indictment") against seven individuals who were formerly affiliated with Platinum, a purported $1.7 billion hedge-fund family based in New York.  The Indictment alleges that the defendants defrauded Platinum investors through, among other things, the overvaluation of assets, the concealment of severe cash flow problems and the preferential payment of redemptions.  The Indictment also charges four of the defendants with defrauding the independent bondholders of Black Elk Energy Offshore Operations, LLC, a portfolio company owned by Platinum, through a fraudulent offering document and diverting more than $95 million in proceeds to Platinum by falsely representing in the offering

document that Platinum controlled approximately $18 million of the bonds when, in fact, Platinum controlled more than $98 million of the bonds.

On December 19, 2016, the SEC filed this action, asserting violations of the anti-fraud provisions of federal securities laws and seeking, among other relief, temporary and permanent injunctive relief, disgorgement of ill-gotten gains, imposition of civil penalties, and appointment of a receiver [Docket No. 1].

On December 19, 2016, the Court entered an Order to Show Cause and Temporary Restraining Order against the defendants, granting certain specified relief to the SEC, including the appointment of a receiver, and granting the receiver control over the assets of the Receivership Entities [Docket No. 5].

Also on December 19, 2016, the Court entered the Order Appointing Receiver, as amended on January 30, 2017 [Docket Nos. 6 and 59], naming Bart Schwartz as the initial receiver.

On January 31, 2017, the initial receiver sought to retain Cooley LLP as his counsel and Guidepost Solutions LLC to advise, assist and support him with his duties as receiver. [Docket Nos. 63 and 65]. Such retention applications were approved by the Court on February 17, 2017.

On June 23, 2017, Mr. Schwartz requested that the Court approve his resignation as receiver, effective upon the Court's appointment of a successor receiver [Docket No. 170]. On July 6, 2017, the Court accepted the resignation of Mr. Schwartz and appointed Melanie L. Cyganowski as his successor [Docket No. 216].

7.     **Appointment of the Applicant**.   The Amended Receiver Order authorized the Receiver to engage professionals to assist in fulfilling her duties.  On July 21, 2017, the Court

approved Goldin's retention as the Receiver's financial advisor *nunc pro tunc* to July 6, 2017 [Docket No. 232].

8.     **Fee Schedule**.  The names and hourly rates of all Goldin professionals who billed time during the Fourth Application Period is attached as **Exhibit B** (the "Fee Schedule").  The fees requested in this Fourth Interim Application were determined on the basis of the hours worked by Goldin professionals and Goldin's usual and customary hourly rates, as modified by a 10% public service discount.

9.     **Prior Applications**.  This application is interim and is Goldin's fourth fee and expense application in this case.  The fees and expenses requested by Goldin in its previous fee and expense applications were allowed and paid as follows:

| Period | Order Date Docket No. | Amount Requested | | Amount Allowed | | Amount Paid to Date | |
|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| 7/6/17-9/30/17 | 12/5/17 Docket No. 290 | $985,666.50 | $1,350.24 | $985,666.50 | $1,360.24 | $788,533.20 | $1,350.24 |
| 10/1/17-12/31/17 | 3/05/18 Docket No. 310 | $629,210.25 | $1,825.42 | $629,210.25 | $1,825.42 | $471,907.69 | $1,825.42 |
| 1/1/18-3/31/18 | 6/17/18 Docket No. 341 | $744,147.00 | $1,689.42 | $744,147.00 | $1,689.42 | $595,317.60 | $1,689.42 |

**B.     Case Status**

10.     **Cash on Hand and Unencumbered Funds**.  As of June 30, 2018, the Receivership Entities had $15.7 million in unencumbered funds, of which $13.97 million was held in cash in bank accounts and $1.77 million was held in brokerage accounts.[3]

---

[3]     As of the filing of this application, following the closing of the sale of the Abdala tailings project, the Receivership Entities have approximately $38.8 million in unencumbered funds.

(a)      **Accrued Administrative Expenses**.  As of June 30, 2018, it is estimated that accrued, unpaid administrative expenses amount to approximately $3.6 million. These administrative expenses primarily consist of accrued and unpaid professional fees. In addition to these unpaid administrative expenses, the Receivership Estate paid remaining in-house Platinum staff and other operating expenses during the Fourth Application Period.

11.      **Summary of Receipts and Disbursements**.  Cash disbursements during the Fourth Application Period totaled approximately $3.5 million.  This amount consisted primarily of (i) $2.0 million in disbursements to the Receiver, her retained professionals, as well as limited scope professionals hired by the prior receiver; (ii) $475,000 in business asset expenses (payroll and related expenses paid to Platinum employees, as well as rent); and (iii) $1.0 million in investment expenses, which include funds disbursed to preserve the value of the following assets: ALS Capital Ventures ($398,000), LC Energy ($380,000) and Abdala Gold ($266,000).

Cash receipts during the Application Period totaled approximately $11.84 million.  This amount primarily consists of proceeds derived from dispositions associated with the following investment positions: ALS Capital Ventures ($10.5 million), Alcor Energy Solutions ($600,000), Pedevco Corp. ($300,000), Martin Kenney & Co. ($300,000) and Rolling Acres of Stamford ($100,000).

12.      **Closing of Case**.  Goldin cannot at this time state when the Receiver will deem it appropriate to seek the conclusion of this case.

13.      **Summary of Creditor Claims Proceedings**.  The Receivership Team has not yet initiated a formal claims process.

14.     **Summary of Assets**.  The primary assets of the Receivership Estate consist of the following:

(a)     Cash and cash equivalents of approximately $15.7 million.

(b)     Real estate investments without any set book value, due to their inherently speculative nature.

(c)     Natural resources investments, litigation financing, life settlement investments, energy and other miscellaneous investments.

15.     **Liquidated and Unliquidated Claims**.  The Receiver currently holds no liquidated litigation recoveries.  The Receiver may, however, have causes of action against a number of parties and is currently considering associated claims.

**C.     SEC Review**

16.     Goldin submitted this Fourth Interim Application to the SEC on November 9, 2018 to allow for a thirty-day review period, as required by the SEC Receivership Billing Instructions.

**D.     Exhibits**

17.     The Fourth Interim Application contains the following exhibits:

(a)     **Exhibit A**: The Standardized Fund Accounting Report ("SFAR") for the period April 1, 2018 through June 30, 2018.

(b)     **Exhibit B**: A Fee Schedule showing the total fees billed, hours worked and hourly rates of each Goldin professional involved.

(c)     **Exhibit C**: A summary of the total fees billed and hours worked by activity category.

(d)      **Exhibit D**: All time records of Goldin professionals listed chronologically by activity category, as required by Section D.5 of the SEC Receivership Billing Instructions.

(e)      **Exhibit E**: A summary of all expenses incurred by Goldin, organized by expense category, as required by Section E.1a of the SEC Receivership Billing Instructions.

(f)      **Exhibit F**: The certification contemplated by Section A.1 of the SEC Receivership Billing Instructions.

## III.   SERVICES RENDERED BY GOLDIN DURING THE FOURTH APPLICATION PERIOD

18.      Goldin professionals recorded services performed in time increments of one tenth (0.1) of an hour.  Goldin made use of a lean team; the senior professionals involved each brought distinct, but essential, expertise to the engagement and were the primary responsible party on different tasks.

19.      Per Section D.3 of the SEC Receivership Billing Instructions, Goldin accounted for its time charges during the Fourth Application Period by activity categories.  Narrative summaries of these activity categories follow.[4]

20.      **Accounting (01)**.  $29,700.00 requested.  During the Fourth Application Period, Goldin continued to manage a variety of cash disbursement and budgeting protocols.  For example, on a weekly basis, Goldin prepared 13-week cash flow forecasts and variance analyses, which enhanced the Receivership Estate's ability to monitor and manage its cash position.  Goldin also conducted periodic reconciliations of Platinum's cash and brokerage

---

[4]      Goldin professionals did not bill any time during the Fourth Application Period to the following activity categories: Business Analysis (04), Business Operations (05), Claims Administration (07), Corporate Finance (08), Employee Benefits (09), Valuation (12) or Travel (13).

11

accounts as a control.  Additionally, Goldin provided day-to-day oversight of Platinum's accounting function, which included monitoring work performed by Platinum's Chief Financial Officer.  Alois Chakabva is the only Goldin professionals who billed time in this activity category during the Fourth Application Period.  Mr. Chakabva has principal responsibility for overseeing Platinum's cash disbursement and budgeting protocols.

21.     **Asset Analysis and Recovery (02)**.  $137,812.50 requested.  The Receivership Team has commenced the sales process for a significant number of Platinum's assets.  For certain Platinum assets, however, additional pre-disposition work is required prior to commencing a sales process and/or pursuing other monetization strategies.  During the Fourth Application Period, for instance, Goldin continued to provide advice and analysis, as well as to conduct relevant negotiations in connection with the Receivership Estate's efforts to obtain a recovery on a $16 million loan from Platinum to Arabella Exploration, Inc.  In particular, Goldin performed substantial work related to the negotiation of a settlement with the operator of the Arabella assets, as well as the participation of certain Non-operating Working Interests in the planned sale of Arabella assets.  Mr. Solsvig is the only Goldin professional who billed time in this activity category during the Fourth Application Period.  Mr. Solsvig is responsible for coordinating the Arabella-related negotiations on behalf of the Receivership Team, as well as for the provision of financial advice and analysis to the Receiver related to Arabella.

22.     **Asset Disposition (03)**.  $119,439.00 requested.  During the Fourth Application Period, Goldin assisted the Receiver, as well as professionals at Houlihan and Conway, in connection with the monetization of certain Platinum portfolio positions.  In connection with these and other disposition-related efforts, Goldin provided Houlihan and Conway with information and analysis related to pertinent assets, and facilitated, as necessary, engagement

with portfolio company management and/or potential purchasers.  Goldin also advised the

Receiver on Houlihan and Conway's disposition-related recommendations after reviewing

analyses generated by, and conferring with, these firms.

In addition, Goldin assisted the Receiver and her legal counsel in the development and

execution of disposition strategies for assets not being marketed by Houlihan or Conway,

including Azarga Uranium, China Horizon, Cleveland Mining, Cokal Limited, New Jersey

Ethanol, Pedevco Corp. and Rolling Acres of Stamford, among others.  With regard to these

assets, Goldin, among other things, (i) reviewed and analyzed relevant financial information; (ii)

created detailed memoranda, spreadsheets and other documentation reflecting its financial

analyses; (iii) conducted meetings with relevant portfolio company management; (iv) conferred

internally, as well as with the Receiver and her counsel; (v) identified and conferred with

potential purchasers; and (vi) participated in negotiations pertinent to the sale of these assets,

which ranged from thinly-traded, illiquid stock to debt positions in small private companies.

Goldin professionals who billed time in this activity category during the Fourth Application

Period included Marc Kirschner, William Edwards, Curtis Solsvig, Karthik Bhavaraju, Alois

Chakabva and Troy Sarpen.  Mr. Solsvig bears principal responsibility for executing disposition

strategies for assets not otherwise assigned to Houlihan or Conway; Mr. Kirschner and Mr.

Edwards assist Mr. Solsvig in the development of the strategies, themselves.  In addition, Mr.

Kirschner and Mr. Solsvig are responsible for coordinating with Houlihan and Conway,

respectively, in connection with those firms' efforts to monetize the assets assigned to them.  Mr.

Bhavaraju, Mr. Chakabva and Mr. Sarpen provided modest assistance to Mr. Solsvig in the

performance of disposition-related tasks involving Infinity Augmented Reality, ALS Capital

Ventures and Blink Car Charging Group.

23. **Case Administration (06)**. $100,057.50 requested.  The Receivership Team endeavored throughout the Fourth Application Period to administer the Receivership Estate efficiently.  Accordingly, Goldin conferred frequently with the Receiver and her legal counsel to ensure that its efforts were coordinated with their own to maximize efficiency.  In addition, Goldin's internal team members met to plan their approach to necessary tasks.

The effective administration of the Receivership Estate also entails communicating with external stakeholders about the status of the Receivership, and addressing questions related thereto.  To that end, during the Fourth Application Period, Goldin spoke periodically with investors, the PPVA Joint Liquidators and the SEC, among others.  In addition, Goldin assisted the Receiver and her legal counsel in drafting the status report filed with the Court on April 20, 2018, as well as in hosting an investor "town hall" on June 6, 2018.  Goldin professionals who billed time in this activity category during the Fourth Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Karthik Bhavaraju, Alois Chakabva and Troy Sarpen.  Mr. Kirschner and Mr. Edwards bear principal responsibility for organizing Goldin personnel to ensure that their assigned tasks are executed effectively and efficiently.  In that connection, Mr. Kirschner focuses principally on the oversight and administration of Goldin's forensic and disposition-related efforts, with Mr. Edwards focused on the management of Goldin's reporting obligations, as well as its interactions with the Receiver's legal counsel, investors and the SEC.  The time billed by Mr. Solsvig, Mr. Bhavaraju, Mr. Chakabva and Mr. Sarpen in this category relate in significant measure to their participation in routinized and/or ad hoc strategy and coordination meetings with members of the Receivership Team.

24. **Forensic Accounting (10)**. $581,015.25 requested.  During the Fourth Application Period, Goldin continued its forensic analyses of certain pre-Receivership

14

transactions, particularly those involving Platinum and certain insurers, such as Beechwood, SHIP and CNO. These analyses assist the Receiver in determining whether there are potential causes of action arising from these transactions. Moreover, during the Fourth Application Period, Goldin continued its review of certain actions taken by Platinum's service providers. Goldin's efforts in this regard focused on the activities of Platinum's valuation advisors, auditors, fund administrators, legal advisors and other professional services firms. In the Application Period, Goldin further developed its funds flow analysis, a forensic investigatory tool for evaluating the sources and uses of cash that flowed into and out of Platinum, as well as through and between the various Receivership Entities. This analysis, which spans many years of activity, required Goldin to standardize and review thousands of native general ledger entries and then log them in a bespoke database that enables more focused inquiries. Goldin professionals who billed time in this activity category during the Fourth Application Period included Marc Kirschner, William Edwards, Karthik Bhavaraju, Alois Chakabva, Seve Franceschelli and Troy Sarpen. Mr. Kirschner supervises and provides strategic direction to the efforts of Mr. Bhavaraju and Mr. Chakabva in connection with their forensic investigatory work. Mr. Bhavaraju is principally responsible for the forensic work related to Beechwood, SHIP and CNO. Mr. Chakabva is principally responsible for the forensic work related to Platinum's service providers. In addition, Mr. Chakabva, with the assistance of Mr. Franceschelli, is responsible for the construction and maintenance of the funds flow analysis. Mr. Franceschelli and Mr. Sarpen provide various forms of assistance to senior members of the forensic team.

25.     **Tax Issues (11)**. $2,137.50 requested. During the Fourth Application Period, Goldin provided support to the Receiver in connection with the preparation and issuance of Platinum's tax year 2017 filings. This support principally involved conferring with Platinum's

tax accountants and its Chief Financial Officer about certain aspects of the returns to ensure their accuracy and completeness.  Alois Chakabva is the only Goldin professional who billed time in this category during the Fourth Application Period.  Mr. Chakabva bears responsibility for working with Platinum's Chief Financial Officer to prepare and file Platinum's tax returns.

## IV.    EXPLANATION OF EXPENSES AND RELATED POLICIES

26.    Goldin seeks reimbursement of its out-of-pocket costs in the amount of $1,937.01. Exhibit E sets forth various categories of expenses for which Goldin seeks reimbursement. Goldin will retain the documentation supporting these expenses for a period of seven years in accordance with the SEC Receivership Billing Instructions and will provide the SEC with copies of such materials upon request.  Goldin's request for expense reimbursement complies with the SEC Receivership Billing Instructions.

## V.    FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

27.    The case law on equity receiverships sets forth the standards for approving receiver compensation and the fees and expenses for the receiver's retained professionals.  The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and her retained professionals and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994). Many authorities (some quite dated) provide "convenient guidelines," but in the final analysis, "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

28.    In allowing professional fees in receiverships, "[t]he court will consider . . . the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach*

16

*Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); s*ee also United States v. Code Prods*., 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained). "'[R]esults are always relevant.'" *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992), *quoting Moody,* 374 F. Supp. at 480, as are the extent to which "a receiver reasonably and diligently discharges his duties." *Id*.

29.     Under these standards Goldin has demonstrated that the amount of fees requested is appropriate.  Goldin, in concert with the rest of the Receivership Team, has acted with appropriate dispatch to develop and execute monetization strategies for the Platinum assets. Given the unusual diversity and complexity of these assets, to say nothing of the fact that relevant documentation inherited from prior management requires careful scrutiny, Goldin has had to expend meaningful effort to prepare these assets for disposition, as well as to assist in the dispositions themselves.  In addition, Goldin has worked diligently to assist in the development of actionable legal claims that, if successful, could provide meaningful recoveries to the Receivership Estate.

**VI.    HOLDBACK**

30.     Goldin has agreed to holdback 20% of its allowed fees, with such holdback to be paid at the conclusion of the Receivership.  All payments will be made from the Receivership assets.

WHEREFORE, Goldin respectfully requests that the Court:

(a)     grant interim approval of Goldin's request for compensation in the amount of $970,161.75;

(b)      grant interim approval of Goldin's request for reimbursement of its out-of-pocket expenses in the amount of $1,937.01;

(c)      authorize the Receiver to immediately pay from the Receivership assets (i) the allowed fees of Goldin, less the 20% holdback, plus (ii) 100% of the allowed out-of-pocket expenses of Goldin; and

(d)      grant such other relief as the Court deems appropriate.

Dated: November 29, 2018
       New York, NY


                                   Respectfully submitted,


                                   /s/ Marc S. Kirschner
                                   Marc S. Kirschner
                                   Senior Managing Director
                                   Goldin Associates, LLC
                                   350 Fifth Avenue
                                   44th Floor
                                   New York, NY 10118
                                   Telephone: (212) 593-2255
                                   mkirschner@goldinassociates.com

Of Counsel:
Jonathan E. Goldin
General Counsel
Goldin Associates, LLC
350 Fifth Avenue
44th Floor
New York, NY 10118
Telephone: (212) 593-2255
jegoldin@goldinassociates.com