UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION, :
                                             :
                    Plaintiff,               :
                                             :          No. 16-cv-6848 (BMC)
                                             :
        -v-                                  :
                                             :
PLATINUM MANAGEMENT (NY) LLC;                :
PLATINUM CREDIT MANAGEMENT, L.P.;            :
MARK NORDLICHT;                              :
DAVID LEVY;                                  :
DANIEL SMALL;                                :
URI LANDESMAN;                               :
JOSEPH MANN;                                 :
JOSEPH SANFILIPPO; and                       :
JEFFREY SHULSE,                              :
                                             :
                    Defendants.              :
-------------------------------------------------------------X

### FIFTH INTERIM APPLICATION OF GOLDIN ASSOCIATES, LLC FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING THE PERIOD JULY 1, 2018 THROUGH SEPTEMBER 30, 2018

Goldin Associates, LLC ("Goldin"), as financial advisor to Melanie L. Cyganowski, the

Court-appointed receiver (the "Receiver") for Platinum Credit Management, L.P., Platinum

Partners Credit Opportunities Master Fund LP ("PPCO"), Platinum Partners Credit Opportunities

Fund (TE) LLC, Platinum Partners Credit Opportunities Fund LLC, Platinum Partners Credit

Opportunity Fund (BL) LLC, Platinum Liquid Opportunity Management (NY) LLC, Platinum

Partners Liquid Opportunity Fund (USA) L.P., Platinum Partners Liquid Opportunity Master

Fund L.P, Platinum Partners Credit Opportunities Fund International Ltd, and Platinum Partners

Credit Opportunities Fund International (A) Ltd. (collectively, the "Receivership Entities" or

1

"Platinum"),[1] hereby submits its Fifth Interim Application for Allowance of Compensation and Reimbursement of Expenses Incurred During the Period July 1, 2018 through September 30, 2018 ("Fifth Interim Application").  Goldin respectfully requests interim approval for payment of $805,900.50 in professional fees and reimbursement of $1,124.35 in expenses incurred for July 1, 2018 through September 30, 2018 (the "Fifth Application Period").

Goldin's Fifth Interim Application contains the following sections:

(a)     **Section I** contains a preliminary statement on Goldin's activities in this case during the Fifth Application Period.

(b)     **Section II** contains information about Goldin and the case's status, as required by Section C of the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Receivership Billing Instructions").  Section II also includes a description of each exhibit to this Fifth Interim Application, as well as the reduction in fees agreed to by Goldin in connection with its appointment as financial advisor to the Receiver.

(c)     **Section III** contains a narrative of the work that Goldin professionals performed under each activity category, as required by Section D of the SEC Receivership Billing Instructions.

(d)     **Section IV** summarizes the expenses for which Goldin seeks reimbursement, as required by Section E of the SEC Receivership Billing Instructions.

(e)     **Section V** describes the standards to be applied by the Court in determining fee awards in SEC equity receiverships.

---

[1]      On December 29, 2017, the Court entered an order approving the expansion of the Receivership Estate to include the following entities: (i) Platinum Partners Liquid Opportunity Master Fund L.P.; (ii) Platinum Partners Credit Opportunities Fund International Ltd; and (iii) Platinum Partners Credit Opportunities Fund International (A) Ltd [Docket No. 298].

(f)     **Section VI** describes the holdback arrangement to which Goldin has agreed.

## I.     PRELIMINARY STATEMENT

1.     During the Fifth Application Period, Goldin continued to devote significant attention to its forensic investigative work.  This work, broadly speaking, can be placed into several categories: (i) analysis of transactions involving Platinum and certain insurers, including Beechwood Re Ltd. and Beechwood Bermuda Ltd. (collectively, "Beechwood"), CNO and SHIP; (ii) provision of analytical support to the Receiver's legal counsel in connection with commenced and/or contemplated actions against third parties; and (iii) construction of a funds flow analysis.  These categories of activity are detailed in turn below.

(a)     Goldin continued its investigation of Platinum's relationship to, and involvement with, Beechwood, CNO and SHIP.  In addition to this investigation, Goldin also focused on, among other things, (i) analyzing certain intercompany transactions among the Platinum and its affiliates; and (ii) assessing the activities of certain third party valuation advisors and fund administrators.

(b)     Goldin continued to provide analytical support to the Receiver's legal counsel in connection with several filed and/or contemplated legal actions.  For instance, Goldin assisted in the review and analysis of documents, including business plans, financial projections and other quantitative materials, related to potential claims against a variety of third parties.

(c)     Goldin continued to refine its funds flow analysis, an essential forensic investigatory tool.  The funds flow analysis permits the Receiver and her legal counsel (collectively, the "Receivership Team") to understand, at a granular level, the sources and

uses of cash that flowed into and out of Platinum, as well as through and between the various Receivership Entities.  During the Application period, Goldin continued to standardize and reconcile general ledger entries, as well as run queries based on this data. Information yielded by this funds flow analysis has been, and will continue to be, incorporated into the Receivership Team's assessment of potential claims against third parties.

2.       In addition to its forensic work, during the Fifth Application Period, Goldin continued to assist the Receiver monetize the Receivership Estate's remaining assets. Goldin's disposition-related efforts are described briefly below.

(a)       Goldin supported Houlihan Lokey ("Houlihan") and Conway MacKenzie Capital Advisors, LLC ("Conway") in connection with marketing certain Platinum portfolio positions.[2]  For instance, Goldin provided Houlihan and Conway with information and analysis related to Platinum's assets.  Goldin also advised the Receiver on Houlihan and Conway's disposition-related recommendations, including those pertinent to the Abdala and Arabella assets.  In order to so advise, Goldin reviewed analyses generated by, and conferred regularly with, Houlihan and Conway.

(b)       Goldin assisted the Receiver and her legal counsel in the development and execution of disposition strategies for certain assets Houlihan and Conway are not marketing.  With regard to these assets, Goldin, among other things, (i) reviewed and analyzed relevant financial information; (ii) created comprehensive and detailed

---

[2]       The Receiver retained Houlihan to market specific Platinum assets, including the following: (i) the life settlements portfolio; (ii) the litigation finance portfolio; (iii) the Brazilian gold tailings project (Abdala); (iv) Urigen Pharmaceuticals, Inc.; and (v) LC Energy Operations LLP.  The Receiver tasked Conway with, in the first instance, marketing the following Platinum assets: (i) West Ventures LLC and its wholly owned subsidiary, Buffalo Lake Advanced Biofuels, LLC; (ii) Desert Hawk Gold Corp.; and (iii) Daybreak Oil and Gas, Inc.

memoranda, spreadsheets and other documentation reflecting its financial analyses; (iii) conducted meetings with portfolio company management; (iv) conferred internally, as well as with the Receiver and her counsel; (v) identified and conferred with potential purchasers; and (vi) participated in negotiations pertinent to the sale of these assets, which ranged from thinly-traded, illiquid stock to debt positions in small private companies.

3.      During the Fifth Application Period, Goldin continued to manage a variety of cash disbursement and budgeting protocols on behalf of the Receivership Estate.  For instance, Goldin (i) prepared periodic 13-Week cash receipts and disbursements forecasts; (ii) performed weekly actual vs. forecasted variance analyses regarding Platinum's cash position; (iii) oversaw the procedures governing the review and approval of disbursements (including payroll); and (iv) conducted daily and weekly reconciliations of Platinum's cash and brokerage accounts.

4.      Goldin, during the Application Period, also performed certain financial and forensic analyses pertinent to the Receivership Team's efforts to develop a claims administration protocol.

## II.    APPLICATION REQUIREMENTS

### A.    Information about the Applicant and the Application

5.      **Application Period**.  This application covers the period of April 1, 2018 through June 30, 2018.

6.      **Appointment of the Receiver**.  On December 19, 2016, the U.S. Attorney for the Eastern District of New York unsealed an eight-count indictment (the "Indictment") against seven individuals who were formerly affiliated with Platinum, a purported $1.7 billion hedge-fund family based in New York.  The Indictment alleges that the defendants defrauded Platinum investors

through, among other things, the overvaluation of assets, the concealment of severe cash flow problems and the preferential payment of redemptions. The Indictment also charges four of the defendants with defrauding the independent bondholders of Black Elk Energy Offshore Operations, LLC, a portfolio company owned by Platinum, through a fraudulent offering document and diverting more than $95 million in proceeds to Platinum by falsely representing in the offering document that Platinum controlled approximately $18 million of the bonds when, in fact, Platinum controlled more than $98 million of the bonds.

On December 19, 2016, the SEC filed this action, asserting violations of the anti-fraud provisions of federal securities laws and seeking, among other relief, temporary and permanent injunctive relief, disgorgement of ill-gotten gains, imposition of civil penalties, and appointment of a receiver [Docket No. 1].

On December 19, 2016, the Court entered an Order to Show Cause and Temporary Restraining Order against the defendants, granting certain specified relief to the SEC, including the appointment of a receiver, and granting the receiver control over the assets of the Receivership Entities [Docket No. 5].

Also on December 19, 2016, the Court entered the Order Appointing Receiver, as amended on January 30, 2017 [Docket Nos. 6 and 59], naming Bart Schwartz as the initial receiver.

On January 31, 2017, the initial receiver sought to retain Cooley LLP as his counsel and Guidepost Solutions LLC to advise, assist and support him with his duties as receiver. [Docket Nos. 63 and 65]. Such retention applications were approved by the Court on February 17, 2017.

On June 23, 2017, Mr. Schwartz requested that the Court approve his resignation as receiver, effective upon the Court's appointment of a successor receiver [Docket No. 170]. On

July 6, 2017, the Court accepted the resignation of Mr. Schwartz and appointed Melanie L.

Cyganowski as his successor [Docket No. 216].

7.    **Appointment of the Applicant**.  The Amended Receiver Order authorized the

Receiver to engage professionals to assist in fulfilling her duties.  On July 21, 2017, the Court

approved Goldin's retention as the Receiver's financial advisor *nunc pro tunc* to July 6, 2017

[Docket No. 232].

8.    **Fee Schedule**.  The names and hourly rates of all Goldin professionals who billed

time during the Fifth Application Period is attached as **Exhibit B** (the "Fee Schedule").  The fees

requested in this Fifth Interim Application were determined on the basis of the hours worked by

Goldin professionals and Goldin's usual and customary hourly rates, as modified by a 10%

public service discount.

9.    **Prior Applications**.  This application is interim and is Goldin's fifth fee and

expense application in this case.  The fees and expenses requested by Goldin in its previous fee

and expense applications were allowed and paid as follows:

| Period | Order Date Docket No. | Amount Requested | | Amount Allowed | | Amount Paid to Date | |
|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| 7/6/17-9/30/17 | 12/5/17 Docket No. 290 | $985,666.50 | $1,350.24 | $985,666.50 | $1,360.24 | $788,533.20 | $1,350.24 |
| 10/1/17-12/31/17 | 3/05/18 Docket No. 310 | $629,210.25 | $1,825.42 | $629,210.25 | $1,825.42 | $471,907.69 | $1,825.42 |
| 1/1/18-3/31/18 | 6/17/18 Docket No. 341 | $744,147.00 | $1,689.42 | $744,147.00 | $1,689.42 | $595,317.60 | $1,689.42 |
| 4/1/18-6/30/18 | TBD | $970,161.75 | $1,937.01 | TBD | TBD | TBD | TBD |

      **B.**    **Case Status**

10. **Cash on Hand and Unencumbered Funds**. As of September 30, 2018, the Receivership Entities had approximately $16.6 million in unencumbered funds, of which $16.55 million was held in cash in bank accounts and the balance in brokerage accounts.[3]

(a) **Accrued Administrative Expenses**. As of September 30, 2018, it is estimated that accrued, unpaid administrative expenses amount to approximately $5.6 million. These administrative expenses primarily consist of accrued and unpaid professional fees. In addition to these unpaid administrative expenses, the Receivership Estate paid remaining in-house Platinum staff and other operating expenses during the Fifth Application Period.

11. **Summary of Receipts and Disbursements**. Cash disbursements during the Fifth Application Period totaled approximately $1.4 million. This amount consisted primarily of (i) $389,000 in disbursements to the Receiver, her retained professionals, as well as limited scope professionals hired by the prior receiver; (ii) $388,000 in business asset expenses (payroll and related expenses paid to Platinum employees, as well as rent); and (iii) $608,000 in investment expenses, which include funds disbursed to preserve the value of the following assets: LC Energy ($330,000) and Abdala Gold ($278,000).

Cash receipts during the Application Period totaled approximately $2.2 million. This amount primarily consists of proceeds derived from dispositions and collections associated with the following investment positions: ALS Capital Ventures ($1.9 million), Pedevco Corp. ($215,000) and Katrina Barge ($75,000).

12. **Closing of Case**. Goldin cannot at this time state when the Receiver will deem it appropriate to seek the conclusion of this case.

---

[3]     As of the filing of this application, following the closing of the sale of the Abdala tailings project, the Receivership Entities have approximately $38.8 million in unencumbered funds.

13.    **Summary of Creditor Claims Proceedings**.  The Receivership Team has not yet initiated a formal claims process.

14.    **Summary of Assets**.  The primary assets of the Receivership Estate consist of the following:

(a)    Cash and cash equivalents of approximately $16.6 million.

(b)    Real estate investments without any set book value, due to their inherently speculative nature.

(c)    Natural resources investments, litigation financing, life settlement investments, energy and other miscellaneous investments.

15.    **Liquidated and Unliquidated Claims**.  The Receiver currently holds no liquidated litigation recoveries.  The Receiver may, however, have causes of action against a number of parties and is currently considering associated claims.

C.    **SEC Review**

16.    Goldin submitted this Fifth Interim Application to the SEC on November 9, 2018 to allow for a thirty-day review period, as required by the SEC Receivership Billing Instructions.

D.    **Exhibits**

17.    The Fifth Interim Application contains the following exhibits:

(a)    **Exhibit A**: The Standardized Fund Accounting Report ("SFAR") for the period July 1, 2018 through September 30, 2018.

(b)    **Exhibit B**: A Fee Schedule showing the total fees billed, hours worked and hourly rates of each Goldin professional involved.

(c)    **Exhibit C**: A summary of the total fees billed and hours worked by activity category.

(d)     **Exhibit D**: All time records of Goldin professionals listed chronologically by activity category, as required by Section D.5 of the SEC Receivership Billing Instructions.

(e)     **Exhibit E**: A summary of all expenses incurred by Goldin, organized by expense category, as required by Section E.1a of the SEC Receivership Billing Instructions.

(f)     **Exhibit F**: The certification contemplated by Section A.1 of the SEC Receivership Billing Instructions.

## III.   SERVICES RENDERED BY GOLDIN DURING THE FIFTH APPLICATION PERIOD

18.     Goldin professionals recorded services performed in time increments of one tenth (0.1) of an hour.  Goldin made use of a lean team; the senior professionals involved each brought distinct, but essential, expertise to the engagement and were the primary responsible party on different tasks.

19.     Per Section D.3 of the SEC Receivership Billing Instructions, Goldin accounted for its time charges during the Fifth Application Period by activity categories.  Narrative summaries of these activity categories follow.[4]

20.     **Accounting (01)**.  $25,031.25 requested.  During the Fifth Application Period, Goldin continued to manage a variety of cash disbursement and budgeting protocols.  For example, on a weekly basis, Goldin prepared 13-week cash flow forecasts and variance analyses, which enhanced the Receivership Estate's ability to monitor and manage its cash position.  Goldin also conducted periodic reconciliations of Platinum's cash and brokerage

---

[4]     Goldin professionals did not bill any time during the Fifth Application Period to the following activity categories: Business Analysis (04), Business Operations (05), Corporate Finance (08), Employee Benefits (09), Tax Issues (11), Valuation (12) or Travel (13).

accounts as a control.  Additionally, Goldin provided day-to-day oversight of Platinum's accounting function, which included monitoring work performed by Platinum's Chief Financial Officer.  Alois Chakabva is the only Goldin professionals who billed time in this activity category during the Fifth Application Period.  Mr. Chakabva has principal responsibility for overseeing Platinum's cash disbursement and budgeting protocols.

21.    **Asset Analysis and Recovery (02)**.  $60,873.75 requested.  During the Fifth Application Period, for instance, Goldin continued to provide advice and analysis, as well as to conduct relevant negotiations in connection with the Receivership Estate's efforts to obtain a recovery on a $16 million loan from Platinum to Arabella Exploration, Inc.  In particular, Goldin performed substantial work related to the sale process for the Arabella assets, including (i) assisting in the development of a strategy for exiting Arabella's bankruptcy; (ii) negotiating with the Non-operating Working Interests regarding various matters; and (iii) updating the valuation analysis related to PPCO's share of the proceeds from the sale process.  Mr. Solsvig is the only Goldin professional who billed time in this activity category during the Fifth Application Period. Notably, Mr. Solsvig is responsible for coordinating the Arabella-related negotiations on behalf of the Receivership Team, as well as for the provision of financial advice and analysis to the Receiver related to Arabella.

22.    **Asset Disposition (03)**.  $276,696.00 requested.  During the Fifth Application Period, Goldin assisted the Receiver, as well as professionals at Houlihan and Conway, in connection with the monetization of certain Platinum portfolio positions.  In connection with these and other disposition-related efforts, Goldin provided Houlihan and Conway with information and analysis related to pertinent assets.  Goldin also advised the Receiver on

Houlihan and Conway's disposition-related recommendations after reviewing analyses generated by, and conferring with, these firms.

In addition, Goldin assisted the Receiver and her legal counsel in the development and execution of disposition strategies for assets not being marketed by Houlihan or Conway, including American Patriot Gold, Azarga Uranium, certain Bahamian properties, China Horizon, Cleveland Mining, Cokal Limited, New Jersey Ethanol, and Pedevco Corp., among others.  With regard to these assets, Goldin, among other things, (i) reviewed and analyzed relevant financial information; (ii) created detailed memoranda, spreadsheets and other documentation reflecting its financial analyses; (iii) conducted meetings with relevant portfolio company management; (iv) conferred internally, as well as with the Receiver and her counsel; (v) identified and conferred with potential purchasers; and (vi) participated in negotiations pertinent to the sale of these assets, which ranged from thinly-traded, illiquid stock to debt positions in small private companies.  In particular, during the Fifth Application Period, Goldin worked extensively with the Receiver, her legal counsel and Houlihan to assess the competing bids for Abdala.  This involved, among other things, developing a model that facilitated the comparison of the various bids received for Abdala.  Goldin also performed substantial work related to LC Energy, an idle coal mine in Illinois.  This work entailed (i) evaluating residual claims from the mine's previous bankruptcy and (ii) developing a strategy for selling the assets free and clear of these claims. Goldin professionals who billed time in this activity category during the Fifth Application Period included Marc Kirschner, William Edwards, Curtis Solsvig and Troy Sarpen.  Mr. Solsvig bears principal responsibility for executing disposition strategies for assets not otherwise assigned to Houlihan or Conway; Mr. Kirschner and Mr. Edwards assist Mr. Solsvig in the development of the strategies, themselves.  In addition, Mr. Kirschner and Mr. Solsvig are responsible for

coordinating with Houlihan and Conway, respectively, in connection with those firms' efforts to monetize the assets assigned to them.  Mr. Sarpen provided assistance to Mr. Solsvig in the performance of certain disposition-related tasks.

23.    **Case Administration (06)**.  $53,259.75 requested.  The Receivership Team endeavored throughout the Fifth Application Period to administer the Receivership Estate efficiently.  Accordingly, Goldin conferred frequently with the Receiver and her legal counsel to ensure that its efforts were coordinated with their own to maximize efficiency.  In addition, Goldin's internal team members met to plan their approach to necessary tasks.

The effective administration of the Receivership Estate also entails communicating with external stakeholders about the status of the Receivership, and addressing questions related thereto.  To that end, during the Fifth Application Period, Goldin spoke periodically with investors, the PPVA Joint Liquidators and the SEC, among others.  In addition, Goldin assisted the Receiver and her legal counsel in drafting the status report filed with the Court on April 20, 2018, as well as in hosting an investor "town hall" on June 6, 2018.  Goldin professionals who billed time in this activity category during the Fifth Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Karthik Bhavaraju, Alois Chakabva, Seve Franceschelli and Troy Sarpen.  Mr. Kirschner and Mr. Edwards bear principal responsibility for organizing Goldin personnel to ensure that their assigned tasks are executed effectively and efficiently.  In that connection, Mr. Kirschner focuses principally on the oversight and administration of Goldin's forensic and disposition-related efforts, with Mr. Edwards focused on the management of Goldin's reporting obligations, as well as its interactions with the Receiver's legal counsel, investors and the SEC.  The time billed by Mr. Solsvig, Mr. Bhavaraju, Mr. Chakabva, Mr. Franceschelli and Mr. Sarpen in this category relate in significant measure to their participation

in routinized and/or ad hoc strategy and coordination meetings with members of the Receivership Team.

24.     **Claims Administration (07)**.  $9,000.00 requested.  During the Fifth Application Period, Goldin assisted the Receiver and her legal counsel perform certain financial analyses pertinent to the development of a plan of distribution.  Goldin professionals who billed time in this activity category during the Fifth Application Period included Marc Kirschner and William Edwards.  Mr. Kirschner and Mr. Edwards bear principal responsibility for providing analytical support to the Receiver and her legal counsel in connection with their efforts to devise a plan of liquidation.

25.     **Forensic Accounting (10)**.  $381,039.75 requested.  During the Fifth Application Period, Goldin continued its forensic analyses of certain pre-Receivership transactions, particularly those involving Platinum and certain insurers, such as Beechwood, SHIP and CNO. These analyses assist the Receiver in determining whether there are potential causes of action arising from these transactions.  In the Application Period, Goldin further refined its funds flow analysis, a forensic investigatory tool for evaluating the sources and uses of cash that flowed into and out of Platinum, as well as through and between the various Receivership Entities.  Certain information yielded by the funds flow analysis was used to develop claims against third parties. Goldin professionals who billed time in this activity category during the Fifth Application Period included Marc Kirschner, Karthik Bhavaraju, Alois Chakabva, Seve Franceschelli and Troy Sarpen.  Mr. Kirschner supervises and provides strategic direction to the efforts of Mr. Bhavaraju and Mr. Chakabva in connection with their forensic investigatory work.  Mr. Bhavaraju is principally responsible for the forensic work related to Beechwood, SHIP and CNO.  Mr. Chakabva is principally responsible for the forensic work related to Platinum's service providers.

In addition, Mr. Chakabva, with the assistance of Mr. Franceschelli, is responsible for the construction and maintenance of funds flow analyses.  Mr. Franceschelli and Mr. Sarpen provide various forms of assistance to senior members of the forensic team.

## IV.    EXPLANATION OF EXPENSES AND RELATED POLICIES

26.    Goldin seeks reimbursement of its out-of-pocket costs in the amount of $1,937.01. Exhibit E sets forth various categories of expenses for which Goldin seeks reimbursement. Goldin will retain the documentation supporting these expenses for a period of seven years in accordance with the SEC Receivership Billing Instructions and will provide the SEC with copies of such materials upon request.  Goldin's request for expense reimbursement complies with the SEC Receivership Billing Instructions.

## V.    FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

27.    The case law on equity receiverships sets forth the standards for approving receiver compensation and the fees and expenses for the receiver's retained professionals.  The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and her retained professionals and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994). Many authorities (some quite dated) provide "convenient guidelines," but in the final analysis, "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

28.    In allowing professional fees in receiverships, "[t]he court will consider . . . the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); s*ee also United States v. Code Prods.*, 362

15

F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained).  "'[R]esults are always relevant.'" *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992), *quoting Moody,* 374 F. Supp. at 480, as are the extent to which "a receiver reasonably and diligently discharges his duties."  *Id.*

29.     Under these standards Goldin has demonstrated that the amount of fees requested is appropriate.  Goldin, in concert with the rest of the Receivership Team, has acted with appropriate dispatch to develop and execute monetization strategies for the Platinum assets. Given the unusual diversity and complexity of these assets, to say nothing of the fact that relevant documentation inherited from prior management requires careful scrutiny, Goldin has had to expend meaningful effort to prepare these assets for disposition, as well as to assist in the dispositions themselves.  In addition, Goldin has worked diligently to assist in the development of actionable legal claims that, if successful, could provide meaningful recoveries to the Receivership Estate.

## VI.    HOLDBACK

30.     Goldin has agreed to holdback 20% of its allowed fees, with such holdback to be paid at the conclusion of the Receivership.  All payments will be made from the Receivership assets.

WHEREFORE, Goldin respectfully requests that the Court:

(a)     grant interim approval of Goldin's request for compensation in the amount of $805,900.50;

(b)    grant interim approval of Goldin's request for reimbursement of its out-of-pocket expenses in the amount of $1,124.35;

(c)    authorize the Receiver to immediately pay from the Receivership assets (i) the allowed fees of Goldin, less the 20% holdback, plus (ii) 100% of the allowed out-of-pocket expenses of Goldin; and

(d)    grant such other relief as the Court deems appropriate.


Dated: November 29, 2018
        New York, NY



                                    Respectfully submitted,


                                    /s/ Marc S. Kirschner
                                    Marc S. Kirschner
                                    Senior Managing Director
                                    Goldin Associates, LLC
                                    350 Fifth Avenue
                                    44th Floor
                                    New York, NY 10118
                                    Telephone: (212) 593-2255
                                    mkirschner@goldinassociates.com

Of Counsel:
Jonathan E. Goldin
General Counsel
Goldin Associates, LLC
350 Fifth Avenue
44th Floor
New York, NY 10118
Telephone: (212) 593-2255
jegoldin@goldinassociates.com