UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,  :
                                                                      :
                                       Plaintiff,         :
                                                                      :          No. 16-cv-6848 (BMC)
                                                                      :
       -v-                                                       :
                                                                      :
PLATINUM MANAGEMENT (NV) LLC;          :
PLATINUM CREDIT MANAGEMENT, L.P.;     :
MARK NORDLICHT;                                    :
DAVID LEVY;                                              :
DANIEL SMALL;                                          :
URI LANDESMAN;                                       :
JOSEPH MANN;                                           :
JOSEPH SANFILIPPO; and                          :
JEFFREY SHULSE,                                       :
                                                                      :
                                       Defendants.    :
---------------------------------------------------------------X

**SECOND INTERIM APPLICATION OF
CONWAY MACKENZIE CAPITAL ADVISORS, LLC FOR THE ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING
THE PERIOD JANUARY 1, 2018 THROUGH MARCH 31, 2018**

Conway MacKenzie Capital Advisors, LLC ("CM"), as consultant and investment banker

to Melanie L. Cyganowski, the Court-appointed receiver (the "Receiver") for Platinum Credit

Management, L.P., Platinum Partners Credit Opportunities Master Fund LP ("PPCOMF"),

Platinum Partners Credit Opportunities Fund (TE) LLC, Platinum Partners Credit Opportunities

Fund LLC, Platinum Partners Credit Opportunity Fund (BL) LLC, Platinum Liquid Opportunity

Management (NY) LLC, Platinum Partners Liquid Opportunity Fund (USA) L.P., Platinum

Partners Liquid Opportunity Master Fund L.P., Platinum Partners Credit Opportunities Fund

International Ltd. and Platinum Partners Credit Opportunities Fund International (A) Ltd.

(collectively, the "Receivership Entities" or "Platinum" or "PPCO"), hereby submits its Second

1

Interim Application for Allowance of Compensation and Reimbursement of Expenses incurred During the Period January 1, 2018 through March 31, 2018 ("Second Interim Application").  CM respectfully requests interim approval for payment of $438,080.25 in professional fees and reimbursement of $5,204.45 in expenses incurred for January 1, 2018 through March 31, 2018 (the "Second Application Period").

CM's Second Interim Application contains the following sections:

(a)     **Section I** contains a preliminary statement on CM's activities in this case during the Second Application Period.

(b)     **Section II** contains information about CM and the case's status, as required by Section C of the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Receivership Billing Instructions"). Section II also includes a description of each exhibit to this Second Interim Application, as well as the reduction in fees agreed to by CM in connection with appointment as consultant and investment banker to the Receiver.

(c)     **Section III** contains a narrative of the work that CM professionals performed by professional and under each activity category, as required by Section D of the SEC Receivership Billing Instructions.

(d)     **Section IV** summarizes the expenses for which CM seeks reimbursement, as required by section E of the SEC Receivership Billing Instructions.

(e)     **Section V** describes the standards to be applied by the Court in determining fee awards in SEC equity receiverships.

(f)     **Section VI** describes the interim payment and holdback arrangement to which CM has agreed.

## I.   PRELIMINARY STATEMENT

1.      During the Second Application Period, CM's central focus has been assisting the Receiver with due diligence, strategic alternatives analysis and monetization efforts with respect to the following portfolio companies of the Platinum receivership estate (the "Receivership Estate"), which are separate and apart from assets that are being monetized by the Receiver's other professionals:  Desert Hawk Gold, Daybreak Oil & Gas, Buffalo Lake Advanced Biofuels, Arabella Exploration, American Patriot Gold, Greentown Oil Company and Nordaq Energy (the "Portfolio Companies").

2.      Specifically, with regard to the Portfolio Companies, CM performed the following services during the Second Application Period:

a.      *Due Diligence*: The performance of focused due diligence with emphasis on (A) understanding and validating the rights and obligations of the Receivership Entities under relevant investment agreements, (B) gaining an understanding of the financial condition and prospects for each portfolio company, and (C) evaluation of potential near term funding requirements for the Receivership Entities;

b.      *Strategic Alternatives Analysis*: The identification and evaluation of relevant strategic alternatives that are available to the Receivership Entities to monetize their debt and equity interests, which may range from (A) working with portfolio company management teams and other stakeholders to effectuate a consensual sale of assets to (B) other alternatives, including but not limited to a foreclosure action.

c.      *Monitoring and Analysis of Investment Positions*:  The performance of routine monitoring and analysis of investment positions, including routine site visits and meetings and correspondence with portfolio company management teams; and

d.      *Financial Advisory Services*: The performance of financial advisory and investment banking services as requested by the Receiver to assist with the disposition of specifically identified Platinum portfolio company investment positions.

3.      A summary of the assistance provided by CM to each Portfolio Company is set forth below:

a.      ***Desert Hawk Gold Corporation ("Desert Hawk")***.  Desert Hawk is a publicly held gold mining company. PPCO held second-lien debt in Desert Hawk and owned securities which are convertible into 20% of the common equity of the company. Desert Hawk owns an idled, pilot stage gold mine located in Gold Hill, Utah. CM worked with the Receiver to monetize PPCO's interests in Desert Hawk.  A transaction conveying PPCO's interests in Desert Hawk occurred in March 2018.

b.      ***Daybreak Oil & Gas ("Daybreak")***.  Daybreak is a publicly held oil and gas company with assets in Kern Country, California and in Montcalm County, Michigan. PPCO owns 99% of the membership interests and is the managing member of Maximilian Resources LLC, an entity which is owed approximately $9.1 plus accrued interest million from Daybreak on account of a senior loan, secured by Daybreak's interest in two joint ventures via a senior secured real property mortgage.  CM is presently working with the company and the Receiver to monetize PPCO's interests in Daybreak.

c.      ***Buffalo Lake Advanced Biofuels*** ("***BLAB***").  BLAB is a shuttered ethanol plant located in south central Minnesota that was capacitated to produce 19 million gallons of ethanol annually using corn as its primary feedstock.  PPCO holds a debt and equity interest in BLAB. During the period covered by this Second Interim Fee Application, CM marketed BLAB's assets for sale while also assessing alternatives for pursuing certain avenues for recovery.

     d.     ***Arabella Exploration ("Arabella")***.  Arabella refers to three entities: Arabella Exploration, an entity to which PPCO made a $16 million senior secured loan in 2014, along with two other subsidiary entities that are guarantors and whose assets secure the PPCO senior secured loan. Arabella is engaged in the ownership and operation of certain oil and gas properties in the Permian and Delaware Basins in Texas. Certain of the Arabella entities are debtors in bankruptcy proceedings that are presently pending in the Northern District of Texas and in coordinated liquidation proceedings in the Cayman Islands.  PPCO filed claims in Arabella's bankruptcy proceedings in an amount of approximately $20.1 million.  Working in concert with the Receiver and her advisors, CM is presently engaged with Arabella and its key stakeholders to resolve certain complex disputes and claims, which will facilitate a sale of Arabella's assets.

     e.     ***American Patriot Gold ("American Patriot")***.  American Patriot is an entity that formerly operated a gold mine in Montezuma County, Colorado.  The PPCO investment was structured as a senior secured loan that was made to the company with the intent of restarting the mine, but it was unable to achieve economic production.  After a protracted process, PPCO successfully foreclosed on American Patriot's assets, including the mine and underlying real estate.  During the period covered by this Second Interim Fee Application, CM conducted an evaluation of strategic alternatives to monetize American Patriot's assets for the benefit of PPCO.

     f.     ***Greentown Oil Company ("Greentown")***.  Greentown refers to an investment in a company holding certain oil and gas assets located in the Paradox Basin in the state of Utah.  PPCO holds debt and equity interests in the company through its affiliate, Maximillian.  Likewise, CM is presently working in concert with the Receiver and her advisors to evaluate strategic alternatives to maximize the value of PPCO's interests in Greentown.

g.   ***Nordaq Energy ("Nordaq")***.   Nordaq is a privately held oil and gas company, which holds a minority interest in the Smith Bay project on the North Slope of Alaska. PPCO, in turn, holds a minority equity interest in Nordaq.  In June 2017, the operator and majority interest holder in the Smith Bay project indicated it would defer drilling as a result of uncertainty related to the fiscal regime in Alaska.  Similar to American Patriot and Greentown, CM is in the early phases of evaluating strategic alternatives to monetize the Receivership Entities' interests in Nordaq.

## II.   APPLICATION REQUIREMENTS

### A.   Information About the Applicant and the Application

4.   **Application Period**.   This Second Interim Application covers the Second Application Period.

5.   **Appointment of Receiver**.  On December 19, 2016, the U.S. Attorney for the Eastern District of New York unsealed an eight-count indictment (the "Indictment") against seven individuals who were formerly affiliated with Platinum, a purported $1.7 billion hedge-fund family based in New York.  The Indictment alleges that the defendants defrauded Platinum investors through, among other things, the overvaluation of assets, the concealment of severe cash flow problems and the preferential payment of redemptions.  The Indictment also charges four of the defendants with defrauding the independent bondholders of Black Elk Energy Offshore Operations, LLC, a portfolio company owned by Platinum, through a fraudulent offering document and diverting more than $95 million in proceeds to Platinum by falsely representing in the offering document that Platinum controlled approximately $18 million of the bonds when, in fact, Platinum controlled more than $98 million of the bonds.

On December 19, 2016, the SEC filed this action, asserting violations of the anti-fraud provisions of federal securities laws and seeking, among other relief, temporary and permanent

injunctive relief, disgorgement of ill-gotten gains, imposition of civil penalties, and appointment of a receiver [Docket No. 1].

On December 19, 2016, the Court entered an Order to Show Cause and Temporary Restraining Order against the defendants, granting certain specified relief to the SEC, including the appointment of a receiver, and granting the receiver control over the assets of the Receivership Entities [Docket No. 5].

On January 31, 2017, the initial receiver sought to retain Cooley LLP as his counsel and Guidepost Solutions LLC to advise, assist and support him with his duties as receiver.  [Docket Nos. 63 and 65].  Such retention applications were approved by the Court on February 17, 2017.

On June 3, 2017, Mr. Schwartz requested that the Court approve his resignation as receiver, effective upon the Court's appointment of a successor receiver [Docket No. 170].  On July 6, 2017, the Court accepted the resignation of Mr. Schwartz and appointed the Receiver as his successor [Docket No. 216].  On October 16, 2017, in connection with the Motion of the SEC to Appoint a Substitute Receiver, the Court entered the Second Amended Order Appointing Receiver (the "Amended Receiver Order") [Docket No. 276].

6.      **Appointment of the Applicant**.  The Amended Receiver Order authorized the Receiver to engage professionals to assist in fulfilling her duties.  On November 11, 2017 (as modified on November 30, 2017), this Court approved CM's retention as consultant and investment banker to the Receiver *nunc pro tunc* to October 12, 2017 [Docket Nos. 280 and 287].

7.      **Fee Schedule**.  The names and hourly rates of all CM professionals who billed during the Second Application Period is attached as Exhibit B (the "Fee Schedule").  The fees requested in this Second Interim Application were determined on the basis of the hours worked by CM professionals and CM's usual and customary hourly rates, as modified by a 10% public service

discount.  Pursuant to the authority of this Court, CM has received interim payments not to exceed $100,000.00 per month.

8.  **Prior Applications**.  CM's fee application for the First Application for fees and expenses for the period October 12, 2017 through December 31, 2017 is pending review by the SEC.  In connection with its First Application for fees and expenses, CM sought payment for professional fees in the amount of $251,530.00 and expenses of $2,940.07.

**B.  Case Status**

9.  **Cash on Hand and Unencumbered Funds**.  As of March 31, 2018, the Receivership Entities had $7.2 million in unencumbered funds, of which $5.2 million was held in cash in bank accounts and $1.8 million was held in brokerage accounts.

10.  **Accrued Administrative Expenses**.  As of March 31, 2018, it is estimated that accrued, unpaid administrative expenses amount to approximately $3.0 million.  These administrative expenses primarily consist of accrued and unpaid professional fees.  In addition to these unpaid administrative expenses, the Receivership Estate paid remaining in-house Platinum staff and other operating expenses during the Second Application Period.

11.  **Summary of Receipts and Disbursements**.  Cash disbursements during the Second Application Period totaled approximately $5.1 million.  This amount primarily consists of the following: (i) payments to the Receiver and retained professionals ($1.9 million); (ii) disbursements to certain Platinum assets to preserve their value pending their sale ($2.75 million); (iii) $478,000 in rent, payroll and related expenses paid to Platinum employees.  Cash receipts during the Second Application Period totaled approximately $468,000.  This amount primarily consists of proceeds derived from dispositions associated with the following investment positions: Desert Hawk ($417,000) and Wintercrest ($51,000).

12. **Closing of Case**. CM cannot at this time state when the Receiver will deem it appropriate to seek the conclusion of this case.

13. **Summary of Creditor Claims Proceedings**. The Receiver and her professionals have not yet initiated a formal claims process.

14. **Summary of Assets**. The primary assets of the Receivership Estate consist of the following:

> **(a)** Cash and cash equivalents of approximately $7.2 million.
>
> **(b)** Real estate investments without any set book value, due to their inherently speculative nature.
>
> **(c)** Natural resources investments, litigation financing, life settlement investments, energy and other miscellaneous investments.

15. **Liquidated and Unliquidated Claims**. The Receiver currently holds no liquidated litigation recoveries. The Receiver may, however, have causes of action against a number of parties and is currently considering associated claims.

## C. SEC Review

16. CM submitted this Second Interim Application to the SEC in sufficient time to allow for a thirty-day review period, as required by the SEC Receivership Billing Instructions.

## D. Exhibits

17. The Second Interim Application contains the following exhibits:

> a. **Exhibit A**: The Standardized Fund Accounting Report ("SFAR") for the period January 1, 2018 through March 31, 2018.

b. **Exhibit B**:  A Fee Schedule showing the total fees billed, hours worked and hourly rates of each CM professional involved.

c. **Exhibit C**:  A summary of the total fees billed and hours worked by activity category.

d. **Exhibit D**:  All time records of CM professionals listed chronologically by activity category, as required by Section E.1a of the SEC Receivership Billing Instructions.

e. **Exhibit E**:  A summary of all expenses incurred by CM, organized by expense category, as required by Section E.1a of the SEC Receivership Billing Instructions.

f. **Exhibit F**:  The certification contemplated by Section A.1 of the SEC Receivership Billing Instructions.

## III.  SERVICES RENDERED BY CM DURING THE SECOND APPLICATION PERIOD

18.    CM professionals recorded services performed in time increments of one tenth (0.1) of an hour.  CM made use of a lean team; the senior professionals involved each brought distinct, but essential, expertise to the engagement and were the primary responsible parties on the different tasks.

19.    Although nine CM professionals performed services to the Receivership during the Second Application Period, CM is seeking approval for the fees expenses associated with six professionals[1]; they are Logan Bitter, Kenneth Garnett, Jeffrey Huddleston, Kenneth Latz, Brian Smith and George Vassilellis.

---

[1]

20.     The particular roles of each of the CM professionals who billed time during the Second Application Period were as follows:

a.   Logan Bitter - LPB (Senior Associate) (48.6 hours to P02; 1.8 hours to P04; 50.7 hours to P08) – Mr. Bitter is a member of CM's energy practice and specializes in advising oil & gas companies.  During the Second Application Period, Mr. Bitter (i) performed focused operational and financial due diligence on Greentown, (ii) performed analysis and research on the value of the company's assets and (ii) assisted in the preparation of CM's analysis of strategic alternatives for the Receivership's related investments and pending litigation.   Mr. Bitter also assisted the CM team's efforts to monetize the Receivership's Daybreak and BLAB interests through preparation of sales information/materials and interacting with potential buyers.  In addition, Mr. Bitter prepared various valuation and recovery analyses in support of the Receiver and the CM team's efforts to resolve various disputes related to Arabella.

b.   Kenneth Garnett - KAG (Managing Director) (50.3 hours to P02; 27.3 hours to P04; 84.8 hours to P08) – Mr. Garnett is co-leader of CM's Private Fund Services practice, which provides advisory and fiduciary services to the stakeholders of private capital funds.  He has particular industry expertise in the

---

Conway MacKenzie has elected to not bill the time of any professional that billed less than fifteen (15) hours for the time period covered.

mining and energy industries.   During the Second Application Period, Mr. Garnett assisted the Receiver in negotiating and closing a transaction through which the Receivership sold its Desert Hawk related investment positions.   Mr. Garnett also managed and participated in the CM team that performed focused operational and financial due diligence and prepared strategic alternatives and monetization analyses for Greentown.   In addition, Mr. Garnett managed CM efforts to sell the Receiverships interests in Daybreak and BLAB.   Other matters Mr. Garnett participated in during the period include CM's operational, technical and financial due diligence with respect to APG.

c.   Jeffery Huddleston - JNH (Managing Director) (56.0 hours to P02; 8.5 hours to P04; 46.7 hours to P08) – A senior member of CM's energy practice, with a particular expertise in the oil & gas industry, Mr. Huddleston managed and participated in the CM team that performed focused operational and financial due diligence and prepared valuation, strategic alternatives and monetization analyses for Arabella during the Second Application Period.   In addition, Mr. Huddleston assisted the Receiver in analyzing and negotiating settlements with various Arabella stakeholders with whom the company had disputes.

d.   Kenneth Latz – KTL (Senior Managing Director) (4.2 hours to P02; 22.7 hours to P04; 23.9 hours to P08) – Mr. Latz is co-leader of CM's Private Fund Services practice, which provides advisory and fiduciary services to the stakeholders of private capital funds.   During the Second Application Period, Mr. Latz directed the teams performing due diligence, preparing strategic

alternative and monetization analyses for the Portfolio Companies, with particular focus on Greentown.

e.  Brian Smith – BJS (Director) (76.9 hours to P02; 5.9 hours to P04; 87.5 hours to P08) – Mr. Smith is member of CM's energy practice, with a particular expertise in the oil & gas industry.  During the Second Application Period, Mr. Smith: (i) performed focused operational and financial due diligence on Greentown, (ii) performed analysis and research on the value of the company's assets and (ii) assisted in the preparation of CM's analysis of strategic alternatives for the Receivership's related investments and pending litigation. Mr. Smith also led CM's efforts to monetize the Receivership's Daybreak and Nordaq interests through the preparation of sales information/materials and contacting potential buyers.  In addition, Mr. Smith also assisted with the preparation of various valuation and recovery analyses in support of the Receiver and the CM team's efforts to resolve various disputes related to Arabella.

f.  George Vassilellis - GV (Managing Director) (10.1 hours to P02; 67.7 hours to P08) – A Professional Engineer, degreed geologist and petroleum engineer, Mr. Vassilellis has over 30 years of reservoir engineering and oil & gas operations experience. Mr. Vassilellis provides technical, financial and economic analysis as part of CM's energy practice.  During the Second Application Period, Mr. Vassilellis: (i) performed focused operational and technical (e.g. hydrocarbons reserve estimates) due diligence on Daybreak, and (ii) assisted with the preparation of sales information/materials and contacting potential buyers with

respect to the company. Mr. Vassilellis also (i) performed operational and technical due diligence on Greentown, (ii) performed analysis and research on the value of the company's assets and in support of CM's analysis of strategic alternatives for the Receivership's related investments and pending litigation.

21.     Per Section D.3 of the SEC Receivership Billing Instructions, CM accounted for its time charges during the Second Application Period by activity categories. Narrative summaries of these activity categories follow.

22.     *Case Administration*. During the Second Interim Application Period, CM incurred 66.2 hours and $43,678.00 of fees related to the activity category *Case Administration*. Key tasks comprising this activity category included initial communications and briefing with the Receiver and her other professionals regarding Platinum; internal CM correspondence re engagement status and strategy; preparation for and participation in regular and as needed communications and updates with the Receiver and her other professionals; preparation of summary materials and document production activities. The CM professionals and staff that incurred time in connection with this activity category during the Second Interim Application Period primarily included Kenneth Latz, Kenneth Garnett, Jeffrey Huddleston, Brian Smith and Logan Bitter.

23.     *Business Analysis*. During the Second Interim Application Period, CM incurred 361.3 hours and $224,627.00 of fees related to the activity category *Business Analysis*. Key tasks comprising this activity category included the performance of reviews and analyses of Portfolio Company business and operations, recent historical operating performance and cash flows; evaluation of financial projections, strategic plans and other information necessary to evaluate Portfolio Company business plans; preparation for and participation in meetings and

correspondence with Portfolio Company management teams; and participation in Portfolio Company-specific coordination meetings and communications with the internal CM team as well as with the Receiver and her other professionals.  The CM professionals and staff that incurred time in connection with this activity category during the Second Interim Application Period primarily included Kenneth Latz, Kenneth Garnett, Jeffrey Huddleston, George Vassilellis, Brian Smith, and Logan Bitter.

24.     ***Asset Disposition.*** During the Second Interim Application Period, CM incurred 246.1 hours and $157,402.50 of fees related to the activity category Asset Disposition. Key tasks comprising this activity category included origination and execution of sales, leases, abandonment and/or related documentation and transaction work. The CM professionals and staff that incurred time in connection with this activity category during the Second Interim Application Period primarily included Kenneth Latz, Kenneth Garnett, Jeffrey Huddleston, George Vassilellis, Brian Smith, and Logan Bitter.

25.     ***Travel Time***. During the Second Interim Application Period, CM incurred 33.9 hours and $12,372.75 of fees (billed at 50% of agreed upon hourly rates) in connection with CM's travel to conduct Portfolio Company site visits and management meetings. The CM professionals and staff that incurred time in connection with this activity category during the Second Interim Application Period included Jeffrey Huddleston, Brian Smith and Logan Bitter.

## IV.     EXPLANATION OF EXPENSES AND RELATED POLICIES

26.     CM seeks reimbursement for its out-of-pocket costs in the amount of $5,204.45. Exhibit E sets forth various categories of expenses for which CM seeks reimbursement.  CM will retain the documentation supporting these expenses for a period of seven years in accordance with the SEC Receivership Billing Instructions and will provide the SEC with copies of such materials

upon request.  CM's request for expense reimbursement complies with the SEC Receivership Billing Instructions.

## V.     FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

27.     The case law on equity receiverships sets forth the standards for approving receiver compensation and the fees and expenses for the receiver's retained professionals.  This Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and her retained professionals and "may consider all of the factors involved in a particular receivership in determining the appropriate fee."  *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994).  Many authorities (some quite dated) provide "convenient guidelines," but in the final analysis, "the unique fact situation renders direct reliance on precedent impossible."  *Securities & Exchange Comm'n v. W.L. Moody & Co*., 374 F. Supp. 465 (S.D. Tex. 1974), aff'd, 519 F.2d 1087 (5th Cir. 1975).

28.     In allowing professional fees in receiverships, "[t]he court will consider . . . the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented."  *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc*., 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods*., 362 F.2d 669, 673 (3rd Cir 1966) (court should consider the time, labor and skill, the degree of activity, the dispatch with which the work is conducted, and the result obtained).  "'[R]esults are always relevant.'"  *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992), quoting Moody, 374 F. Supp. At 480, as are the extent to which "a receiver reasonably and diligently discharges his duties."  Id.

29.     Under these standards CM has demonstrated that the amount of fees requested is appropriate.  CM, in concert with the Receiver and her professionals, has acted with appropriate

dispatch to develop and execute monetization strategies for the Portfolio Companies.  CM's efforts during the Second Interim Application period were crucial for gaining a deep understanding of the specific nature and value of the interests held by the Receivership Entities in connection with the Portfolio Companies and positioning those assets for near term monetization.  In addition, CM played a critical role in leading Desert Hawk to a liquidity event for the Receiver.

## VI.    HOLDBACK

27.    CM and the Receiver are cognizant of the fact that the disposition of assets is still in the early stages and that there are significant costs of maintaining certain of the portfolio assets until they can be sold in an orderly manner (e.g. the monthly premiums required to be paid in the life settlement policies.)   Accordingly, in an effort to preserve assets at this stage of the Receivership, the Receiver has requested, and CM has agreed to limit interim monthly payments to no more than $100,000.00 per month.  To date, CM has received aggregate interim monthly payments from the Receiver of $630,341.81, including $300,000.00 of interim payments related to the Second Application Period.

28.    Furthermore, CM understands that the SEC has requested that certain Receivership contractors and professionals, including CM, be subject to a holdback (the "Holdback") equal to 20% of its fees and expenses incurred in connection with each application filed with the Court. Total amounts held back will be available for payment at the conclusion of the Receivership at the discretion of the Court pursuant to a final fee application.  Based on CM's total fees and expenses incurred during the Second Application Period of $443,284.70, CM is subject to a Holdback of $88,656.94 in connection with the Second Application Period.

29.    WHEREFORE, CM respectfully requests that this Court:

a.      Grant interim approval of CM's request for $438,080.25 in professional fees and $5,204.45 expenses  incurred during the Second Application Period;

b.      Grant interim approval of payment of the amount of $49,423.31, representing CM's aggregate professional fees incurred during the Second Application Period of $438,080.25 less the Holdback of $88,656.94, of which CM has received interim payments from the Receivership of $300,000.00;

c.      CM's request for reimbursement of its out-of-pocket expenses in the amount of $5,204.45, for which CM has not received interim compensation from the Receiver;

d.      Authorize the Receiver to immediately pay from the Receivership assets (i) any unpaid allowed fees of CM, plus (ii) 100% of the allowed out-of-pocket expenses of CM; and

e.    Grant such other relief as the Court deems appropriate.

Respectfully submitted,


/s/ Kenneth T. Latz
Senior Managing Director
Conway MacKenzie Capital Advisors, LLC
600 Fifth Avenue, 25th Floor
New York, NY  10020
Telephone: (212) 586-2400
klatz@conwaymackenzie.com


Date: December 28, 2018