UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,  :
                                                Plaintiff, :
                                                        :   No. 16-cv-6848 (BMC)
   -v-                                                :

PLATINUM MANAGEMENT (NV) LLC; :
PLATINUM CREDIT MANAGEMENT, L.P.; :
MARK NORDLICHT; :
DAVID LEVY; :
DANIEL SMALL; :
URI LANDESMAN; :
JOSEPH MANN; :
JOSEPH SANFILIPPO; and :
JEFFREY SHULSE, :
                                           Defendants. :
-------------------------------------------------------------X

# THIRD INTERIM APPLICATION OF
# CONWAY MACKENZIE CAPITAL ADVISORS, LLC FOR THE ALLOWANCE OF
# COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING
# THE PERIOD APRIL 1, 2018 THROUGH JUNE 30, 2018

Conway MacKenzie Capital Advisors, LLC ("CM"), as consultant to Melanie L. Cyganowski, the Court-appointed receiver (the "Receiver") for Platinum Credit Management, L.P., Platinum Partners Credit Opportunities Master Fund LP ("PPCOMF"), Platinum Partners Credit Opportunities Fund (TE) LLC, Platinum Partners Credit Opportunities Fund LLC, Platinum Partners Credit Opportunity Fund (BL) LLC, Platinum Liquid Opportunity Management (NY) LLC, Platinum Partners Liquid Opportunity Fund (USA) L.P., Platinum Partners Liquid Opportunity Master Fund L.P., Platinum Partners Credit Opportunities Fund International Ltd. and Platinum Partners Credit Opportunities Fund International (A) Ltd. (collectively, the "Receivership Entities" or "Platinum" or "PPCO"), hereby submits its Third Interim Application

for Allowance of Compensation and Reimbursement of Expenses incurred During the Period April 1, 2018 through June 30, 2018 ("Third Interim Application"). CM respectfully requests interim approval for payment of $456,562.50 in professional fees and reimbursement of $4,974.46 in expenses incurred for April 1, 2018 through June 30, 2018 (the "Third Application Period").

CM's Third Interim Application contains the following sections:

(a) **Section I** contains a preliminary statement on CM's activities in this case during the Third Application Period.

(b) **Section II** contains information about CM and the case's status, as required by Section C of the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Receivership Billing Instructions"). Section II also includes a description of each exhibit to this Third Interim Application, as well as the reduction in fees agreed to by CM in connection with appointment as consultant to the Receiver.

(c) **Section III** contains a narrative of the work that CM professionals performed by professional and under each activity category, as required by Section D of the SEC Receivership Billing Instructions.

(d) **Section IV** summarizes the expenses for which CM seeks reimbursement, as required by section E of the SEC Receivership Billing Instructions.

(e) **Section V** describes the standards to be applied by the Court in determining fee awards in SEC equity receiverships.

(f)  **Section VI** describes the interim payment and holdback arrangement to which CM has agreed.

## I. PRELIMINARY STATEMENT

1. During the Third Application Period, CM's central focus has been assisting the Receiver with due diligence, strategic alternatives analysis and monetization efforts with respect to the following portfolio companies of the Platinum receivership estate (the "Receivership Estate"): Daybreak Oil & Gas, Buffalo Lake Advanced Biofuels, Arabella Exploration, American Patriot Gold, Greentown Oil & Gas and Nordaq Energy (the "Portfolio Companies").

2. Specifically, with regard to the Portfolio Companies, CM performed the following services:

   a. *Due Diligence*: The performance of focused due diligence with emphasis on (A) understanding and validating the rights and obligations of the Receivership Entities under relevant investment agreements, (B) gaining an understanding of the financial condition and prospects for each portfolio company, and (C) evaluation of potential near term funding requirements for the Receivership Entities;

   b. *Strategic Alternatives Analysis*: The identification and evaluation of relevant strategic alternatives that are available to the Receivership Entities to monetize their debt and equity interests, which may range from (A) working with portfolio company management teams and other stakeholders to effectuate a consensual sale of assets to (B) other alternatives, including but not limited to a foreclosure action.

   c. *Monitoring and Analysis of Investment Positions*: The performance of routine monitoring and analysis of investment positions, including routine site visits and meetings and correspondence with portfolio company management teams; and

   d. *Financial Advisory Services*: The performance of financial advisory services as requested by the Receiver to assist with the disposition of specifically identified Platinum portfolio company investment positions.

3. To date, Conway MacKenzie has been asked by the Receiver to provide the assistance described previously with respect to the Portfolio Companies, which are separate and apart from assets that are being monetized by the Receiver's other professionals. Details regarding the assistance provided to each Portfolio Company is set forth below:

a. ***Daybreak Oil & Gas ("Daybreak")***. Daybreak is a publicly held oil and gas company with assets in Kern Country, California and in Montcalm County, Michigan. PPCO owns 99% of the membership interests and is the managing member of Maximilian Resources LLC, an entity which is owed approximately $9.2 million from Daybreak on account of a senior loan, secured by Daybreak's interest in two joint ventures via a senior secured real property mortgage. CM is presently working with the company and the Receiver to monetize PPCO's interests in Daybreak.

b. ***Buffalo Lake Advanced Biofuels*** ("***BLAB***"). BLAB is a shuttered ethanol plant located in south central Minnesota that was capacitated to produce 19 million gallons of ethanol annually using corn as its primary feedstock. PPCO holds a debt and equity interest in BLAB. CM is in the process of marketing BLAB's assets for sale while also pursuing other avenues for recovery.

c. ***Arabella Exploration ("Arabella")***. Arabella refers to three entities: Arabella Exploration, an entity to which PPCO made a $16 million senior secured loan in 2014, along with two other subsidiary entities that are guarantors and whose assets secure the PPCO senior secured loan. Arabella is engaged in the ownership and operation of certain oil and gas properties in the Permian and Delaware Basins in Texas. Certain of the Arabella entities are debtors in bankruptcy proceedings that are presently pending in the Northern District of Texas and in coordinated liquidation proceedings in the Cayman Islands. PPCO filed claims in Arabella's bankruptcy proceedings in an amount of approximately $20.1 million. Working in concert with the Receiver and her advisors, CM is presently engaged with Arabella and its key stakeholders to resolve certain complex disputes and claims, which will facilitate a sale of Arabella's assets.

d. ***American Patriot Gold ("American Patriot")***. American Patriot is an entity that formerly operated a gold mine in Montezuma County, Colorado. The PPCO investment was structured as a senior secured loan that was made to the company with the intent of restarting the mine, but it was unable to achieve economic production. After a protracted process, PPCO successfully foreclosed on American Patriot's assets, including the mine and underlying real

estate. CM is presently conducting an evaluation of strategic alternatives to monetize American Patriot's assets for the benefit of PPCO.

e. ***Greentown Oil Company ("Greentown")***. Greentown refers to an investment in a company holding certain oil and gas assets located in the Paradox Basin in the state of Utah. PPCO holds a debt and equity interest in the company through its affiliate, Maximillian. Likewise, CM is presently working in concert with the Receiver and her advisors to evaluate strategic alternatives to maximize the value of PPCO's interests in Greentown.

f. ***Nordaq Energy ("Nordaq")***. Nordaq is a privately held oil and gas company, which holds a minority interest in the Smith Bay project on the North Slope of Alaska. PPCO, in turn, holds a minority equity interest in Nordaq. In June 2017, the operator and majority interest holder in the Smith Bay project indicated it would defer drilling as a result of uncertainty related to the fiscal regime in Alaska. Similar to American Patriot and Greentown, CM is in the early phases of evaluating strategic alternatives to monetize the Receivership Entities' interests in Nordaq.

g. ***Cokal Limited* ("*Cokal*")**. Cokal is a coal mining company headquartered in Sydney, NSW. CKA's active mining project is on the island of Borneo in the Bumi Barito Mineral of Indonesia. Over the past year, the BBM mine has been developed and CKA has received commitments from several investors to support continued development of the mine. CM worked with the Receiver and her advisors to analyze and value the Receivership's interests in Cokal and evaluate and execute strategic monetization alternatives in connection therewith.

4. With respect to the monetization of assets related to the Portfolio Companies, CM:

   a. Developed and implemented marketing plans with respect to the Portfolio Companies, including identifying prospective investors/buyers to be contact;

   b. Prepared executive summaries and electronic data rooms relating to potential sale transactions for distribution and presentation to prospective investors/buyers;

   c. Coordinated (together with involvement from key personnel from the Portfolio Companies, the Receiver and the Receiver's legal counsel and other professionals) materials and information to be made available to prospective investors/buyers as part of their due diligence investigations and as a supplement to the electronic data room materials;

   d. Assisted the Receiver in evaluating indications of interest and/or letters of intent received from prospective investors/buyers;

   e. Assisted the Receiver and legal counsel in its negotiation of documents related to any potential sale transaction;

    f. Advised the Receiver with respect to the form and structure of, and consideration to be received in, any potential sale transaction; and

    g. In addition to the above services with respect to the Portfolio Companies, CM:

    h. Assisted with the identification and safeguarding of assets and other potential sources of recovery for the Receivership Entities if and to the extent requested by the Receiver;

    i. Evaluated strategic alternatives available to maximize value for the Receivership Entities related to Portfolio Companies, including the comparison of potential near term liquidity events with orderly exits over a longer timeframe;

    j. Performed routine monitoring and analysis of investment positions, including engaging in regular communications with management teams and other relevant stakeholders, for Portfolio Companies and prepared and delivered periodic updates regarding the same to the Receiver;

    k. Provided investment advice to the Receiver and advocacy to the Receivership Entities in connection with key investment decisions related to the Portfolio Companies, including, capital calls, transactions involving the potential disposition of investment securities, consent actions and the modification of underlying investment and/or governing agreements;

## II. APPLICATION REQUIREMENTS

### A. Information About the Applicant and the Application

5. **Application Period**. This Third Interim Application covers the Third Application Period.

6. **Appointment of Receiver**. On December 19, 2016, the U.S. Attorney for the Eastern District of New York unsealed an eight-count indictment (the "Indictment") against seven individuals who were formerly affiliated with Platinum, a purported $1.7 billion hedge-fund family based in New York. The Indictment alleges that the defendants defrauded Platinum investors through, among other things, the overvaluation of assets, the concealment of severe cash flow problems and the preferential payment of redemptions. The Indictment also charges four of the

6

defendants with defrauding the independent bondholders of Black Elk Energy Offshore Operations, LLC, a portfolio company owned by Platinum, through a fraudulent offering document and diverting more than $95 million in proceeds to Platinum by falsely representing in the offering document that Platinum controlled approximately $18 million of the bonds when, in fact, Platinum controlled more than $98 million of the bonds.

On December 19, 2016, the SEC filed this action, asserting violations of the anti-fraud provisions of federal securities laws and seeking, among other relief, temporary and permanent injunctive relief, disgorgement of ill-gotten gains, imposition of civil penalties, and appointment of a receiver [Docket No. 1].

On December 19, 2016, the Court entered an Order to Show Cause and Temporary Restraining Order against the defendants, granting certain specified relief to the SEC, including the appointment of a receiver, and granting the receiver control over the assets of the Receivership Entities [Docket No. 5].

On January 31, 2017, the initial receiver sought to retain Cooley LLP as his counsel and Guidepost Solutions LLC to advise, assist and support him with his duties as receiver.  [Docket Nos. 63 and 65].  Such retention applications were approved by the Court on February 17, 2017.

On June 3, 2017, Mr. Schwartz requested that the Court approve his resignation as receiver, effective upon the Court's appointment of a successor receiver [Docket No. 170].  On July 6, 2017, the Court accepted the resignation of Mr. Schwartz and appointed the Receiver as his successor [Docket No. 216].  On October 16, 2017, in connection with the Motion of the SEC to Appoint a Substitute Receiver, the Court entered the Second Amended Order Appointing Receiver (the "Amended Receiver Order") [Docket No. 276].

7

7. **Appointment of the Applicant**. The Amended Receiver Order authorized the Receiver to engage professionals to assist in fulfilling her duties. On November 11, 2017 (as modified on November 30, 2017), this Court approved CM's retention as consultant to the Receiver *nunc pro tunc* to October 12, 2017 [Docket Nos. 280 and 287].

8. **Fee Schedule**. The names and hourly rates of all CM professionals who billed during the Third Application Period is attached as Exhibit B (the "Fee Schedule"). The fees requested in this Third Interim Application were determined on the basis of the hours worked by CM professionals and CM's usual and customary hourly rates, as modified by a 10% public service discount. Pursuant to the authority of this Court, CM has received interim payments of $100,000.00 related to the Third Application Period.

9. **Prior Applications**. CM's fee applications for the First Application for fees and expenses for the period October 12, 2017 through December 31, 2017 and the Second Application for fees and expenses for the period January 1, 2018 through March 31, 2018 are pending review by the SEC. In connection with its First Application for fees and expenses, CM sought payment for professional fees in the amount of $251,530.00 and expenses of $2,940.07, and in connection with its Second Application for fees and expenses, CM sought payment for professional fees in the amount of $438,080.25 and expenses of $5,204.45.

B. Case Status

10. **Cash on Hand and Unencumbered Funds**. As of June 30, 2018, the Receivership Entities had $15.7 million in unencumbered funds, of which $13.97 million was held in cash in bank accounts and $1.77 million was held in brokerage accounts.

11.     **Accrued Administrative Expenses**.  As of June 30, 2018, it is estimated that accrued, unpaid administrative expenses amount to approximately $3.6 million.  These administrative expenses primarily consist of accrued and unpaid professional fees.  In addition to these unpaid administrative expenses, the Receivership Estate paid remaining in-house Platinum staff and other operating expenses during the Third Application Period.

12.     **Summary of Receipts and Disbursements**.  Cash disbursements during the Third Application Period totaled approximately $3.5 million.  This amount primarily consists of the following: (i) payments to the Receiver and retained professionals ($2 million); (ii) disbursements to certain Platinum assets to preserve their value pending their sale ($1 million); (iii) $475,000 in rent, payroll and related expenses paid to Platinum employees.  Cash receipts during the Third Application Period totaled approximately $11.8 million.  This amount primarily consists of proceeds derived from dispositions associated with the following investment positions:  ALS Life settlement portfolio ($10.5 million); Alcor Energy Solutions ($600,000); Pedevco Corp. ($300,000); Martin Kenney & Co. Ltd. ($300,000); and Rolling Acres of Stamford ($100,000).

13.     **Closing of Case**.  CM cannot at this time state when the Receiver will deem it appropriate to seek the conclusion of this case.

14.     **Summary of Creditor Claims Proceedings**.  The Receiver and her professionals have not yet initiated a formal claims process.

15.     **Summary of Assets**.  The primary assets of the Receivership Estate consist of the following:

(a) Cash and cash equivalents of approximately $15.7 million;

    **(b)** Real estate investments without any set book value, due to their inherently speculative nature;

    **(c)** Natural resources investments, litigation financing, life settlement investments, energy and other miscellaneous investments; and

    **(d)** Potential litigation claims.

16.    **Liquidated and Unliquidated Claims**. The Receiver currently holds no liquidated litigation recoveries. The Receiver may, however, have causes of action against a number of parties and is currently considering associated claims.

### C. SEC Review

17.    CM submitted this Third Interim Application to the SEC in sufficient time to allow for a thirty-day review period, as required by the SEC Receivership Billing Instructions.

### D. Exhibits

18.    The Third Interim Application contains the following exhibits:

    a. **Exhibit A**: The Standardized Fund Accounting Report ("SFAR") for the period April 1, 2018 through June 30, 2018.

    b. **Exhibit B**: A Fee Schedule showing the total fees billed, hours worked and hourly rates of each CM professional involved.

10

    c. **Exhibit C**: A summary of the total fees billed and hours worked by activity category.

    d. **Exhibit D**: All time records of CM professionals listed chronologically by activity category, as required by Section E.1a of the SEC Receivership Billing Instructions.

    e. **Exhibit E**: A summary of all expenses incurred by CM, organized by expense category, as required by Section E.1a of the SEC Receivership Billing Instructions.

    f. **Exhibit F**: The certification contemplated by Section A.1 of the SEC Receivership Billing Instructions.

### III. SERVICES RENDERED BY CM DURING THE THIRD APPLICATION PERIOD

19. CM professionals recorded services performed in time increments of one tenth (0.1) of an hour. CM made use of a lean team; the senior professionals involved each brought distinct, but essential, expertise to the engagement and were the primary responsible parties on the different tasks.

20. CM is seeking approval for the fees expenses associated with seven professionals[1] who performed services to the Receivership during the Third Application Period; they are Logan Bitter, Kenneth Garnett, Paul Jansen, Kenneth Latz, Brian Smith, Rohan Sura, and Jeffrey Wood.

---

[1] Conway MacKenzie has elected to not bill the time of any professional that billed less than fifteen (15) hours for the time period covered.

11

21. The particular roles of each of the CM professionals who billed time during the Third Application Period were as follows:

   a. Logan Bitter (Senior Associate) (43.1 hours to P02; 1.8 hours to P04; 4.6 hours to P08) – Mr. Bitter is a member of CM's energy practice and specializes in advising oil & gas companies. During the Third Application Period, Mr. Bitter participated in CM's efforts to monetize the Receivership's Daybreak, Nordaq and BLAB interests through contacting potential buyers, providing due diligence information to potential buyers and managing the virtual data rooms established for each sale process. In addition, Mr. Bitter prepared various analyses in support of CM's analysis of a BLAB asset liquidation as well as CM's strategic alternatives analyses in relation to Greentown.

   b. Kenneth Garnett (Managing Director) (9.5 hours to P01; 39.3 hours to P02; 25.5 hours to P04; 55.6 hours to P08) – Mr. Garnett is co-leader of CM's Private Fund Services practice, which provides advisory and fiduciary services to the stakeholders of private capital funds. He has particular industry expertise in the mining and energy industries. During the Third Application Period, Mr. Garnett managed and participated in the CM team that continued its strategic alternatives and monetization analyses for Greentown, as well as supported the Receivership's litigation efforts with respect to the company. In addition, Mr. Garnett managed CM efforts to sell the Receiverships interests in Daybreak and

Nordaq.  With respect to APG, Mr. Garnett managed and participated in CM's (i) operational, technical and financial due diligence, (ii) drove the strategic alternatives analysis and recommendations for the company and (iii) assisted the Receivership in identifying and negotiating with a real estate broker/professional who specializes in the type of property owned by the Receiver.  During the Third Application Period, Mr. Garnett managed and participated in CM's (i) operational, technical and financial due diligence on Cokal, (ii) drove the strategic alternatives analysis and recommendations for the company and (iii) contacted potential buyers for the Receivership's related postions.

c. Paul Jansen (Managing Director) (22.6 hours to P01; 41.0 hours to P02; 7.0 hours to P04; 24.9 hours to P08) – Mr. Jansen is a senior member of CM's energy practice with deep experience in oil & gas, especially E&P companies. During the Third Application Period, Mr. Jansen (i) assisted the Receiver in analyzing and negotiating settlements with various Arabella stakeholders with whom the company had disputes, and (ii) monitored and provided input to Arabella's broker/investment banker as part of the company's asset sale process.

d. Kenneth Latz (Senior Managing Director) (3.9 hours to P01; 5.5 hours to P02; 11.0 hours to P04; 18.5 hours to P08) – Mr. Latz is co-leader of CM's Private Fund Services practice, which provides advisory and fiduciary services to the stakeholders of private capital funds.  During the Third Application Period, Mr. Latz directed the teams performing due diligence, preparing strategic

13

alternative and monetization analyses for the Portfolio Companies, with particular focus on Greentown and BLAB.

e. Brian Smith (Director) (21.7 hours to P01; 107.9 hours to P02; 10.1 hours to P04; 105.3 hours to P08) – Mr. Smith is member of CM's energy practice, with a particular expertise in the oil & gas industry. During the Third Application Period, Mr. Smith led CM's efforts to monetize the Receivership's Daybreak and Nordaq interests. In addition, Mr. Smith (ii) performed due diligence on Greentown and assisted in the preparation of CM's analysis of strategic alternatives for the Receivership's related investments and pending litigation. Mr. Smith also assisted the Receiver in analyzing and negotiating settlements with various Arabella stakeholders with whom the company had disputes, and monitored and provided input to Arabella's broker/investment banker as part of the company's asset sale process.

f. Rohan Sura (Director) (1.5 hours to P01; 40.6 hours to P02; 16.1 hours to P04; 40.4 hours to P08) – Mr. Sura is a member of CM's Private Fund Services practice, which provides advisory and fiduciary services to the stakeholders of private capital funds. Mr. Sura provides deep M&A and investment banking experience to the team. During the Third Application Period, Mr. Sura performed due diligence and prepared strategic alternative, valuation and monetization analyses for the Receivership's Cokal position. In addition, Mr. Sura assisted with the CM's analysis of asset liquidation scenarios for BLAB, as well as with CM's monetization efforts for the Receivership's APG assets.

14

      g. Jeffery Wood (Senior Associate) (1.7 hours to P01; 19.2 hours to P02; 5.7 hours to P04; 64.1 hours to P08).  Mr. Wood is member of CM's energy practice, with a particular expertise in the oil & gas industry.  During the Third Application Period, Mr. Wood assisted in CM's monetization efforts for the Receivership's positions related to Daybreak, BLAB and Nordaq. In addition, Mr. Wood performed analyses in support of CM's strategic alternatives analysis on Greentown.

22.    Per Section D.3 of the SEC Receivership Billing Instructions, CM accounted for its time charges during the Third Application Period by activity categories.  Narrative summaries of these activity categories follow.

23.    ***Asset Disposition.*** During the Third Interim Application Period, CM incurred 296.6 hours and $175,998.50 of fees related to the activity category Asset Disposition. Key tasks comprising this activity category included origination and execution of sales, leases, abandonment and/or related documentation and transaction work. The CM professionals and staff that incurred time in connection with this activity category during the Third Interim Application Period primarily included Kenneth Latz, Kenneth Garnett, Paul Jansen, Brian Smith, Logan Bitter, Rohan Sura, and Jeffery Wood.

24.    ***Business Analysis***. During the Third Interim Application Period, CM incurred 313.4 hours and $181,609.00 of fees related to the activity category *Business Analysis*.  Key tasks comprising this activity category included the performance of reviews and analyses of Portfolio Company business and operations, recent historical operating performance and cash flows;

15

evaluation of financial projections, strategic plans and other information necessary to evaluate Portfolio Company business plans; preparation for and participation in site visits to Portfolio Companies and meetings and correspondence with Portfolio Company management teams; and participation in Portfolio Company-specific coordination meetings and communications with the internal CM team as well as with the Receiver and her other professionals.  The CM professionals and staff that incurred time in connection with this activity category during the Third Interim Application Period primarily included Kenneth Latz, Kenneth Garnett, Paul Jansen, Brian Smith, Jeffrey Wood, Logan Bitter, and Rohan Sura.

25.     *Case Administration*. During the Third Interim Application Period, CM incurred 77.2 hours and $45,539.50 of fees related to the activity category *Case Administration*.  Key tasks comprising this activity category included communications and briefing with the Receiver and her other professionals regarding the Portfolio Companies; internal CM correspondence re engagement status and strategy; preparation for and participation in regular and as needed communications and updates with the Receiver and her other professionals; preparation of summary materials and document production activities.  The CM professionals and staff that incurred time in connection with this activity category during the Third Interim Application Period primarily included Kenneth Latz, Kenneth Garnett, Brian Smith, Logan Bitter, Paul Jansen, Jeffrey Wood and Rohan Sura.

26.     *Asset Analysis and Recovery.* During the Third Interim Application Period, CM incurred 60.9 hours and $42,830.50 of fees related to the activity category Asset Analysis and Recovery. Key tasks comprising this activity category included the review, analysis and commentary regarding settlement proposals with and among key Portfolio Company constituents, review and analysis of key agreements and correspondence re the same with the Receivership

16

team, review and analysis of recovery scenarios for Portfolio Company investment positions. The CM professionals and staff that incurred time in connection with this activity category during the Third Interim Application Period primarily included Kenneth Latz, Kenneth Garnett, Paul Jansen, Brian Smith, Jeffery Wood and Rohan Sura.

27. *Travel Time*. During the Third Interim Application Period, CM incurred 26.0 hours and $10,585.00 of fees (billed at 50% of agreed upon hourly rates) in connection with CM's travel to conduct Portfolio Company site visits and management meetings. The CM professionals and staff that incurred time in connection with this activity category during the Third Interim Application Period included Paul Jansen and Brian Smith.

## IV. EXPLANATION OF EXPENSES AND RELATED POLICIES

28. CM seeks reimbursement for its out-of-pocket costs in the amount of $4,974.46. Exhibit E sets forth various categories of expenses for which CM seeks reimbursement. CM will retain the documentation supporting these expenses for a period of seven years in accordance with the SEC Receivership Billing Instructions and will provide the SEC with copies of such materials upon request. CM's request for expense reimbursement complies with the SEC Receivership Billing Instructions.

## V. FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

29. The case law on equity receiverships sets forth the standards for approving receiver compensation and the fees and expenses for the receiver's retained professionals. This Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and her retained professionals and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994). Many

17

authorities (some quite dated) provide "convenient guidelines," but in the final analysis, "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465 (S.D. Tex. 1974), aff'd, 519 F.2d 1087 (5th Cir. 1975).

30. In allowing professional fees in receiverships, "[t]he court will consider . . . the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir 1966) (court should consider the time, labor and skill, the degree of activity, the dispatch with which the work is conducted, and the result obtained). "'[R]esults are always relevant.'" *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992), quoting Moody, 374 F. Supp. At 480, as are the extent to which "a receiver reasonably and diligently discharges his duties." Id.

31. Under these standards CM has demonstrated that the amount of fees requested is appropriate. CM, in concert with the Receiver and her professionals, has acted with appropriate dispatch to develop and execute monetization strategies for the Portfolio Companies CM's efforts during the Third Interim Application period were crucial for gaining a deep understanding of the specific nature and value of the interests held by the Receivership Entities in connection with the Portfolio Companies and positioning those assets for near term monetization.

**VI.    HOLDBACK**

27. CM and the Receiver are cognizant of the fact that the disposition of assets is still in the early stages and that there are significant costs of maintaining certain of the portfolio assets

until they can be sold in an orderly manner (e.g. the monthly premiums required to be paid in the life settlement policies.)  Accordingly, in an effort to preserve assets at this stage of the Receivership, the Receiver has requested, and CM has agreed to limit interim monthly payments to no more than $100,000.00 per month.  To date, CM has received aggregate interim monthly payments from the Receiver of $630,341.81, including $100,000.00 of interim payments related to the Third Application Period.

28. Furthermore, CM understands that the SEC has requested that certain Receivership contractors and professionals, including CM, be subject to a holdback (the "Holdback") equal to 20% of its fees and expenses incurred in connection with each application filed with the Court. Total amounts held back will be available for payment at the conclusion of the Receivership at the discretion of the Court pursuant to a final fee application.  Based on CM's total fees and expenses incurred during the Third Application Period of $461,536.96, CM is subject to a Holdback of $92,307.39 in connection with the Third Application Period.

29. WHEREFORE, CM respectfully requests that this Court:

   a. Grant interim approval of CM's request for $456,562.50 in professional fees and $4,974.46 expenses incurred during the Third Application Period;

   b. Grant interim approval of payment of the amount of $264,255.11, representing CM's aggregate professional fees incurred during the Third Application Period of $456,562.50 less the Holdback of $92,307.39, of which CM has received interim payments from the Receivership of $100,000.00;

   c. CM's request for reimbursement of its out-of-pocket expenses in the amount of $4,974.46, for which CM has not received interim compensation from the Receiver;

    d.    Authorize the Receiver to immediately pay from the Receivership assets (i) any unpaid allowed fees of CM, plus (ii) 100% of the allowed out-of-pocket expenses of CM; and

    e.    Grant such other relief as the Court deems appropriate.

Respectfully submitted,

/s/ Kenneth T. Latz_____
Senior Managing Director
Conway MacKenzie Capital Advisors, LLC
600 Fifth Avenue, 25th Floor
New York, NY  10020
Telephone:  (212) 586-2200
klatz@conwaymackenzie.com

Date:  December 28, 2018