```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,        :
                                           :
                        Plaintiff,         :
                                           :   No. 16-cv-6848 (BMC)
                                           :
    -v-                                    :
                                           :
PLATINUM MANAGEMENT (NY) LLC;              :
PLATINUM CREDIT MANAGEMENT, L.P.;          :
MARK NORDLICHT;                            :
DAVID LEVY;                                :
DANIEL SMALL;                              :
URI LANDESMAN;                             :
JOSEPH MANN;                               :
JOSEPH SANFILIPPO; and                     :
JEFFREY SHULSE,                            :
                                           :
                        Defendants.        :
-------------------------------------------------------------X
```

**SEVENTH INTERIM APPLICATION OF GOLDIN ASSOCIATES, LLC FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING THE PERIOD JANUARY 1, 2019 THROUGH MARCH 31, 2019**

Goldin Associates, LLC ("Goldin"), as financial advisor to Melanie L. Cyganowski, the Court-appointed receiver (the "Receiver") for Platinum Credit Management, L.P., Platinum Partners Credit Opportunities Master Fund LP ("PPCO"), Platinum Partners Credit Opportunities Fund (TE) LLC, Platinum Partners Credit Opportunities Fund LLC, Platinum Partners Credit Opportunity Fund (BL) LLC, Platinum Liquid Opportunity Management (NY) LLC, Platinum Partners Liquid Opportunity Fund (USA) L.P., Platinum Partners Liquid Opportunity Master Fund L.P, Platinum Partners Credit Opportunities Fund International Ltd, and Platinum Partners Credit Opportunities Fund International (A) Ltd. (collectively, the "Receivership Entities" or

1

"Platinum"),[1] hereby submits its Seventh Interim Application for Allowance of Compensation and Reimbursement of Expenses Incurred During the Period January 1, 2019 through March 31, 2019 ("Seventh Interim Application"). Goldin respectfully requests interim approval for payment of $504,528.79 in professional fees and reimbursement of $1,112.83 in expenses incurred for January 1, 2019 through March 31, 2018 (the "Seventh Application Period").

Goldin's Seventh Interim Application contains the following sections:

(a)  **Section I** contains a preliminary statement on Goldin's activities in this case during the Seventh Application Period.

(b)  **Section II** contains information about Goldin and the case's status, as required by Section C of the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Receivership Billing Instructions"). Section II also includes a description of each exhibit to this Seventh Interim Application, as well as the reduction in fees agreed to by Goldin in connection with its appointment as financial advisor to the Receiver.

(c)  **Section III** contains a narrative of the work that Goldin professionals performed under each activity category, as required by Section D of the SEC Receivership Billing Instructions.

(d)  **Section IV** summarizes the expenses for which Goldin seeks reimbursement, as required by Section E of the SEC Receivership Billing Instructions.

(e)  **Section V** describes the standards to be applied by the Court in determining fee awards in SEC equity receiverships.

---

[1]  On December 29, 2017, the Court entered an order approving the expansion of the Receivership Estate to include the following entities: (i) Platinum Partners Liquid Opportunity Master Fund L.P.; (ii) Platinum Partners Credit Opportunities Fund International Ltd; and (iii) Platinum Partners Credit Opportunities Fund International (A) Ltd [Docket No. 298].

2

    (f) **Section VI** describes the holdback arrangement to which Goldin has agreed.

## I. PRELIMINARY STATEMENT

  1. During the Seventh Application Period, Goldin devoted significant attention to the provision of analytical support to the Receiver's legal counsel in connection with commenced and/or contemplated actions against various third parties. For instance, in connection with the amended complaint filed by the Receiver, through her legal counsel, in March 2019 against certain insurance entities,[2] Goldin provided counsel with, among other things, (i) updated descriptions of pertinent transactions; (ii) assessments, over time, of the financial condition of Platinum and its affiliates; (iii) comprehensive analyses of relevant aspects of the long-term care and reinsurance industries; and (iv) assorted insurance industry analyses in support of the Receiver's claims.

  2. In addition, Goldin continued to utilize its funds flow analysis to facilitate the Receiver's understanding of the sources and uses of cash that flowed into and out of Platinum, as well as through and between the various Receivership Entities. During the Application period, Goldin, the Receiver and her legal counsel (collectively, the "Receivership Team") incorporated information gleaned from the funds flow analysis into their assessment of potential claims against third parties.

  3. In addition to its litigation support work, during the Seventh Application Period, Goldin continued to assist the Receiver monetize the Receivership Estate's remaining assets. Goldin's disposition-related efforts are described briefly below.

---

[2] This action bears the following caption: *Melanie L. Cyganowski, as Equity Receiver for Platinum Partners Credit Opportunities Master Fund LP, et al. v. Beechwood RE Ltd., et al.*, and is now pending as Case 1:18-cv-12018 in the United States District Court for the Southern District of New York

(a) Goldin supported Houlihan Lokey ("Houlihan") in connection with marketing certain Platinum portfolio positions.[3] Goldin, for instance, acted as liaison between Houlihan and LC Energy's third party manager. Goldin also advised the Receiver on Houlihan's disposition-related recommendations related to LC Energy. In order to so advise, Goldin reviewed analyses generated by, and conferred regularly with, Houlihan.

(b) Goldin also assisted the Receiver and her legal counsel in the development and execution of disposition strategies for certain assets Houlihan is not marketing. With regard to these assets, Goldin, among other things, (i) reviewed and analyzed relevant financial information; (ii) created comprehensive and detailed memoranda, spreadsheets and other documentation reflecting its financial analyses; (iii) held meetings with portfolio company management; (iv) conferred internally, as well as with the Receiver and her counsel; (v) identified and conferred with potential purchasers; and (vi) participated in negotiations pertinent to the sale of these assets, which ranged from thinly-traded, illiquid stock to debt positions in small private companies.

4. During the Seventh Application Period, Goldin continued to manage a variety of cash disbursement and budgeting protocols on behalf of the Receivership Estate. For instance, Goldin (i) prepared periodic 13-Week cash receipts and disbursements forecasts; (ii) performed weekly actual vs. forecasted variance analyses regarding Platinum's cash position; (iii) oversaw the procedures governing the review and approval of disbursements (including payroll); and (iv) conducted daily and weekly reconciliations of Platinum's cash and brokerage accounts.

---

[3] The Receiver retained Houlihan to market specific Platinum assets, including the following: (i) the life settlements portfolio; (ii) the litigation finance portfolio; (iii) the Brazilian gold tailings project (Abdala); (iv) Urigen Pharmaceuticals, Inc.; and (v) LC Energy Operations LLP.

## II.  APPLICATION REQUIREMENTS

### A.  Information about the Applicant and the Application

5.  **Application Period.**  This application covers the period of October 1, 2018 through December 31, 2018.

6.  **Appointment of the Receiver.**  On December 19, 2016, the U.S. Attorney for the Eastern District of New York unsealed an eight-count indictment (the "Indictment") against seven individuals who were formerly affiliated with Platinum, a purported $1.7 billion hedge-fund family based in New York.  The Indictment alleges that the defendants defrauded Platinum investors through, among other things, the overvaluation of assets, the concealment of severe cash flow problems and the preferential payment of redemptions.  The Indictment also charges four of the defendants with defrauding the independent bondholders of Black Elk Energy Offshore Operations, LLC, a portfolio company owned by Platinum, through a fraudulent offering document and diverting more than $95 million in proceeds to Platinum by falsely representing in the offering document that Platinum controlled approximately $18 million of the bonds when, in fact, Platinum controlled more than $98 million of the bonds.

On December 19, 2016, the SEC filed this action, asserting violations of the anti-fraud provisions of federal securities laws and seeking, among other relief, temporary and permanent injunctive relief, disgorgement of ill-gotten gains, imposition of civil penalties, and appointment of a receiver [Docket No. 1].

On December 19, 2016, the Court entered an Order to Show Cause and Temporary Restraining Order against the defendants, granting certain specified relief to the SEC, including the appointment of a receiver, and granting the receiver control over the assets of the Receivership Entities [Docket No. 5].

Also on December 19, 2016, the Court entered the Order Appointing Receiver, as amended on January 30, 2017 [Docket Nos. 6 and 59], naming Bart Schwartz as the initial receiver.

On January 31, 2017, the initial receiver sought to retain Cooley LLP as his counsel and Guidepost Solutions LLC to advise, assist and support him with his duties as receiver. [Docket Nos. 63 and 65]. Such retention applications were approved by the Court on February 17, 2017.

On June 23, 2017, Mr. Schwartz requested that the Court approve his resignation as receiver, effective upon the Court's appointment of a successor receiver [Docket No. 170]. On July 6, 2017, the Court accepted the resignation of Mr. Schwartz and appointed Melanie L. Cyganowski as his successor [Docket No. 216].

7. **Appointment of the Applicant**. The Amended Receiver Order authorized the Receiver to engage professionals to assist in fulfilling her duties. On July 21, 2017, the Court approved Goldin's retention as the Receiver's financial advisor *nunc pro tunc* to July 6, 2017 [Docket No. 232].

8. **Fee Schedule**. The names and hourly rates of all Goldin professionals who billed time during the Seventh Application Period is attached as **Exhibit B** (the "Fee Schedule"). The fees requested in this Seventh Interim Application were determined on the basis of the hours worked by Goldin professionals and Goldin's usual and customary hourly rates in effect at the time of its retention, as modified by a 10% public service discount.

9. **Prior Applications**. This application is interim and is Goldin's Seventh fee and expense application in this case. The fees and expenses requested by Goldin in its previous fee and expense applications were allowed and paid as follows:

| Period | Order Date Docket No. | Amount Requested | | Amount Allowed | | Amount Paid to Date | |
|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| 7/6/17-9/30/17 | 12/5/17 Docket No. 290 | $985,666.50 | $1,350.24 | $985,666.50 | $1,360.24 | $788,533.20 | $1,350.24 |
| 10/1/17-12/31/17 | 3/05/18 Docket No. 310 | $629,210.25 | $1,825.42 | $629,210.25 | $1,825.42 | $471,907.69 | $1,825.42 |
| 1/1/18-3/31/18 | 6/17/18 Docket No. 341 | $744,147.00 | $1,689.42 | $744,147.00 | $1,689.42 | $595,317.60 | $1,689.42 |
| 4/1/18-6/30/18 | 12/17/18 Docket No. 428 | $970,161.75 | $1,937.01 | $970,161.75 | $1,937.01 | $776,129.40 | $1,937.01 |
| 7/1/18 – 9/30/18 | 12/17/18 Docket No. 427 | $805,900.50 | $1,124.35 | $805,900.50 | $1,124.35 | $644,720.40 | $1,124.35 |
| 10/1/18-12/31/18 | -- | $834,330.38 | $1,956.81 | -- | -- | -- | -- |

B.  **Case Status**

10.  **Cash on Hand and Unencumbered Funds**. As of March 31, 2019, the Receivership Entities had approximately $37.1 million in unencumbered funds, of which $36.6 million was held in cash in bank accounts and the balance in brokerage accounts.

(a)  **Accrued Administrative Expenses**. As of March 31, 2019, it is estimated that accrued, unpaid administrative expenses amount to approximately $6.3 million. These administrative expenses primarily consist of accrued and unpaid professional fees. In addition to these unpaid administrative expenses, the Receivership Estate paid remaining in-house Platinum staff and other operating expenses during the Seventh Application Period.

11.  **Summary of Receipts and Disbursements**. Cash disbursements during the Seventh Application Period totaled approximately $1.3 million. This amount consisted primarily

7

of (i) $404,000 in disbursements to the Receiver, her retained professionals, as well as limited scope professionals hired by the prior receiver; (ii) $418,000 in business asset expenses (payroll and related expenses paid to Platinum employees, as well as rent); and (iii) $445,000 in investment expenses, which include funds disbursed to preserve the value of LC Energy.

Cash receipts during the Application Period totaled approximately $3.0 million. This amount primarily consists of proceeds derived from dispositions and collections associated with the following investment positions: Cokal ($2.2 million) and Greentown ($800,000).

12. **Closing of Case**. Goldin cannot at this time state when the Receiver will deem it appropriate to seek the conclusion of this case.

13. **Summary of Creditor Claims Proceedings**. The Receivership Team has not yet initiated a formal claims process.

14. **Summary of Assets**. The primary assets of the Receivership Estate consist of the following:

    (a)    Cash and cash equivalents of approximately $37.1 million.

    (b)    Real estate investments without any set book value, due to their inherently speculative nature.

    (c)    Natural resources investments, litigation financing, life settlement investments, energy and other miscellaneous investments.

15. **Liquidated and Unliquidated Claims**. The Receiver currently holds no liquidated litigation recoveries. The Receiver may, however, have causes of action against a number of parties and is currently considering associated claims, in addition to those already asserted, *see* note 2, *supra*.

C. **SEC Review**

16. Goldin submitted this Seventh Interim Application to the SEC on June 5, 2019 to allow for a thirty-day review period, as required by the SEC Receivership Billing Instructions.

**D.    Exhibits**

17. The Seventh Interim Application contains the following exhibits:

(a)    **Exhibit A**: The Standardized Fund Accounting Report ("SFAR") for the period January 1, 2019 through March 31, 2019.

(b)    **Exhibit B**: A Fee Schedule showing the total fees billed, hours worked and hourly rates of each Goldin professional involved.

(c)    **Exhibit C**: A summary of the total fees billed and hours worked by activity category.

(d)    **Exhibit D**: All time records of Goldin professionals listed chronologically by activity category, as required by Section D.5 of the SEC Receivership Billing Instructions.

(e)    **Exhibit E**: A summary of all expenses incurred by Goldin, organized by expense category, as required by Section E.1a of the SEC Receivership Billing Instructions.

(f)    **Exhibit F**: The certification contemplated by Section A.1 of the SEC Receivership Billing Instructions.

**III.    SERVICES RENDERED BY GOLDIN DURING THE SEVENTH APPLICATION PERIOD**

18. Goldin professionals recorded services performed in time increments of one tenth (0.1) of an hour.  Goldin made use of a lean team; the senior professionals involved each brought distinct, but essential, expertise to the engagement and were the primary responsible party on different tasks.

9

19. Per Section D.3 of the SEC Receivership Billing Instructions, Goldin accounted for its time charges during the Seventh Application Period by activity categories. Narrative summaries of these activity categories follow.

20. **Accounting (01)**. $13,837.50 requested. During the Seventh Application Period, Goldin continued to manage a variety of cash disbursement and budgeting protocols. For example, on a weekly basis, Goldin prepared 13-week cash flow forecasts and variance analyses, which enhanced the Receivership Estate's ability to monitor and manage its cash position. Goldin also conducted periodic reconciliations of Platinum's cash and brokerage accounts as a control. Additionally, Goldin provided day-to-day oversight of Platinum's accounting function, which included monitoring work performed by Platinum's Chief Financial Officer. Alois Chakabva is the only Goldin professionals who billed time in this activity category during the Seventh Application Period. Mr. Chakabva has principal responsibility for overseeing Platinum's cash disbursement and budgeting protocols.

21. **Asset Analysis and Recovery (02)**. $36,067.50 requested. During the Seventh Application Period, Goldin continued to provide advice and analysis in connection with the Receivership Estate's efforts to obtain a recovery on a $16 million loan from Platinum to Arabella Exploration, Inc. In particular, Goldin performed substantial work related to the sale process for the Arabella assets, including (i) negotiating with the Non-operating Working Interests and other parties regarding claims against Arabella; and (ii) updating the valuation analysis related to PPCO's share of the proceeds from the sale process. Curt Solsvig is the only Goldin professional who billed time in this activity category during the Seventh Application Period. Mr. Solsvig has principal responsibility for coordinating the Arabella-related

10

negotiations on behalf of the Receivership Team, as well as for the provision of financial advice and analysis to the Receiver related to Arabella.

22. **Asset Disposition (03)**. $135,798.75 requested. During the Seventh Application Period, Goldin assisted the Receiver, as well as professionals at Houlihan, with respect to the monetization of certain Platinum portfolio positions. In connection with these and other disposition-related efforts, Goldin provided Houlihan information and analysis related to LC Energy. Goldin also advised the Receiver on Houlihan's disposition-related recommendations for LC Energy after reviewing Houlihan's analyses

In addition, Goldin assisted the Receiver and her legal counsel in the development and execution of disposition strategies for assets not being marketed by Houlihan, including certain Bahamian properties, China Horizon, Cleveland Mining, Cokal Limited, and New Jersey Ethanol, among others. With regard to these assets, Goldin, among other things, (i) reviewed and analyzed relevant financial information; (ii) created detailed memoranda, spreadsheets and other documentation reflecting its financial analyses; (iii) conducted meetings with relevant portfolio company management; (iv) conferred internally, as well as with the Receiver and her counsel; (v) identified and conferred with potential purchasers; and (vi) participated in negotiations pertinent to the sale of these assets, which ranged from thinly-traded, illiquid stock to debt positions in small private companies. In particular, during the Seventh Application Period, Goldin performed substantial work related to LC Energy, an idle coal mine in Illinois. This work entailed (i) evaluating residual claims from the mine's previous bankruptcy and (ii) developing a strategy for selling the assets free and clear of these claims. Goldin also (i) closed the sale of Platinum's stock and options in Cokal; and (iii) completed the sale process for American Patriot Gold. Goldin professionals who billed time in this activity category during the

11

Seventh Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Karthik Bhavaraju and Alois Chakabva. Mr. Solsvig has principal responsibility for executing disposition strategies for assets not otherwise assigned to Houlihan; Mr. Kirschner and Mr. Edwards assist Mr. Solsvig in the development of the strategies, themselves. In addition, Mr. Solsvig is responsible for coordinating with Houlihan in connection with the sale of LC Energy. Mr. Bhavaraju and Mr. Chakabva assist in the execution of certain discrete disposition-related tasks.

23. **Case Administration (06)**. $43,677.00 requested. The Receivership Team endeavored throughout the Seventh Application Period to administer the Receivership Estate efficiently. Accordingly, Goldin conferred frequently with the Receiver and her legal counsel to ensure that its efforts were coordinated with their own to maximize efficiency. In addition, Goldin's internal team members met to plan their approach to necessary tasks.

The effective administration of the Receivership Estate also entails communicating with external stakeholders about the status of the Receivership, and addressing questions related thereto. To that end, during the Seventh Application Period, Goldin spoke periodically with investors and the SEC, among others. In addition, Goldin assisted the Receiver and her legal counsel in drafting the status report filed with the Court on October 22, 2018, as well as in hosting an investor "town hall" on December 4, 2018. Goldin professionals who billed time in this activity category during the Seventh Application Period included Marc Kirschner, William Edwards, Curtis Solsvig, Karthik Bhavaraju, Alois Chakabva and Troy Sarpen. Mr. Kirschner and Mr. Edwards have principal responsibility for organizing Goldin personnel to ensure that their assigned tasks are executed effectively and efficiently. In that connection, Mr. Kirschner focuses principally on the oversight and administration of Goldin's forensic and disposition-

related efforts, with Mr. Edwards focused on the management of Goldin's reporting obligations, as well as its interactions with the Receiver's legal counsel, investors and the SEC. The time billed by Mr. Solsvig, Mr. Bhavaraju, Mr. Chakabva and Mr. Sarpen in this category relate in significant measure to their participation in coordination meetings with members of the Receivership Team.

24. **Tax Issues (11)**. $562.50 requested. During the Seventh Application Period, Goldin provided support to the Receiver in connection with the preparation and issuance of Platinum's tax filings. Alois Chakabva is the only Goldin professional who billed time in this category during the Seventh Application Period.

25. **Litigation Consulting (14)**.[4] $274,585.54. During the Seventh Application Period, Goldin provided significant analytical assistance to the Receiver and her legal counsel in connection with several contemplated and/or commenced legal actions. For instance, in connection with the complaint filed in March 2019 against certain insurance entities, Goldin provided the Receiver's legal counsel with, among other things, (i) updated descriptions of pertinent transactions; (ii) assessments, over time, of the financial condition of Platinum and its affiliates; (iii) comprehensive analyses of relevant aspects of the long-term care and reinsurance industries; and (iv) prepared insurance industry analyses in support of the Receiver's claims. Goldin professionals who billed time in this activity category during the Seventh Application Period included Marc Kirschner, Karthik Bhavaraju, Alois Chakabva and Troy Sarpen. Mr. Kirschner supervises and provides strategic direction to the efforts of Mr. Bhavaraju and Mr. Chakabva in connection with their litigation support work. Mr. Bhavaraju has principal

---

[4] At the outset of this engagement, Goldin agreed to provide a 10% public service discount in connection with its work as Financial Advisor to the Receiver. Beginning with this Seventh Interim Fee Application, for tasks that fall within the "Litigation Consulting" activity category, Goldin has agreed to provide an additional discount of 25% on top of the aforementioned public service discount.

responsibility for litigation support work-related commenced and/or contemplated actions against Beechwood, SHIP and CNO. Mr. Chakabva has principal responsibility for litigation support work related to commenced and/or contemplated actions against Platinum's service providers. Mr. Sarpen provides various forms of assistance to senior members of the litigation support team.

### IV. EXPLANATION OF EXPENSES AND RELATED POLICIES

26. Goldin seeks reimbursement of its out-of-pocket costs in the amount of $1,112.83. Exhibit E sets forth various categories of expenses for which Goldin seeks reimbursement. Goldin will retain the documentation supporting these expenses for a period of seven years in accordance with the SEC Receivership Billing Instructions and will provide the SEC with copies of such materials upon request. Goldin's request for expense reimbursement complies with the SEC Receivership Billing Instructions.

### V. FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

27. The case law on equity receiverships sets forth the standards for approving receiver compensation and the fees and expenses for the receiver's retained professionals. The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and her retained professionals and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994). Many authorities (some quite dated) provide "convenient guidelines," but in the final analysis, "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

28. In allowing professional fees in receiverships, "[t]he court will consider . . . the complexity of problems faced, the benefit to the receivership estate, the quality of work

14

performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); s*ee also United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained). "'[R]esults are always relevant.'" *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992), *quoting Moody,* 374 F. Supp. at 480, as are the extent to which "a receiver reasonably and diligently discharges his duties." *Id*.

29. Under these standards Goldin has demonstrated that the amount of fees requested is appropriate. Goldin, in concert with the rest of the Receivership Team, has acted with appropriate dispatch to develop and execute monetization strategies for the Platinum assets. Given the unusual diversity and complexity of these assets, to say nothing of the fact that relevant documentation inherited from prior management requires careful scrutiny, Goldin has had to expend meaningful effort to prepare these assets for disposition, as well as to assist in the dispositions themselves. In addition, Goldin has worked diligently to assist in the development of actionable legal claims that, if successful, could provide meaningful recoveries to the Receivership Estate.

**VI. HOLDBACK**

30. Goldin has agreed to hold back twenty percent (20%) of its allowed fees for all activity categories, save for the "Litigation Consulting" category. With regard to allowed fees associated with the "Litigation Consulting" category, Goldin has agreed to hold back five percent (5%) of these fees in view of the fee accommodation described in footnote 4. The holdbacks

15

described in this section, collectively, constitute the Holdback Amount. All payments will be made from the Receivership assets.

    WHEREFORE, Goldin respectfully requests that the Court:

    (a)    grant interim approval of Goldin's request for compensation in the amount of $504,528.79;

    (b)    grant interim approval of Goldin's request for reimbursement of its out-of-pocket expenses in the amount of $1,112.83;

    (c)    authorize the Receiver to immediately pay from the Receivership assets (i) the allowed fees of Goldin, less the Holdback Amount, plus (ii) 100% of the allowed out-of-pocket expenses of Goldin; and

    (d)    grant such other relief as the Court deems appropriate.

Dated: June 25, 2019
       New York, NY

Respectfully submitted,

/s/ Marc S. Kirschner
Marc S. Kirschner
Senior Managing Director
Goldin Associates, LLC
350 Fifth Avenue
44th Floor
New York, NY 10118
Telephone: (212) 593-2255
mkirschner@goldinassociates.com

Of Counsel:
Jonathan E. Goldin
General Counsel
Goldin Associates, LLC
350 Fifth Avenue
44th Floor
New York, NY 10118
Telephone: (212) 593-2255
jegoldin@goldinassociates.com