UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION, :
                                                           :
                            Plaintiff,                     :
                                                           :        No. 16-cv-6848 (BMC)
                                                           :
         -v-                                               :
                                                           :
PLATINUM MANAGEMENT (NV) LLC;                              :
PLATINUM CREDIT MANAGEMENT, L.P.;                          :
MARK NORDLICHT;                                            :
DAVID LEVY;                                                :
DANIEL SMALL;                                              :
URI LANDESMAN;                                             :
JOSEPH MANN;                                               :
JOSEPH SANFILIPPO; and                                     :
JEFFREY SHULSE,                                            :
                                                           :
                            Defendants.                    :
-----------------------------------------------------------------X

## FIFTH INTERIM AND FINAL APPLICATION OF CONWAY MACKENZIE CAPITAL ADVISORS, LLC FOR THE ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING THE PERIOD OCTOBER 1, 2018 THROUGH DECEMBER 31, 2018

Conway MacKenzie Capital Advisors, LLC ("CM"), as consultant to Melanie L. Cyganowski, the Court-appointed receiver (the "Receiver") for Platinum Credit Management, L.P., Platinum Partners Credit Opportunities Master Fund LP ("PPCOMF"), Platinum Partners Credit Opportunities Fund (TE) LLC, Platinum Partners Credit Opportunities Fund LLC, Platinum Partners Credit Opportunity Fund (BL) LLC, Platinum Liquid Opportunity Management (NY) LLC, Platinum Partners Liquid Opportunity Fund (USA) L.P., Platinum Partners Liquid Opportunity Master Fund L.P., Platinum Partners Credit Opportunities Fund International Ltd. and Platinum Partners Credit Opportunities Fund International (A) Ltd. (collectively, the "Receivership Entities" or "Platinum" or "PPCO"), hereby submits its Fifth Interim and Final

Application for Allowance of Compensation and Reimbursement of Expenses incurred During the Period October 1, 2018 through December 31, 2018 ("Fifth Interim and Final Application"). CM respectfully requests interim approval for payment of $37,334.50 in professional fees and reimbursement of $8.29 in expenses incurred for October 1, 2018 through December 31, 2018 (the "Fifth Application Period"). This Fifth Interim and Final Application will serve as CM's final fee application.

CM's Fifth Interim and Final Application contains the following sections:

(a)     **Section I** contains a preliminary statement on CM's activities in this case during the Fifth Application Period.

(b)     **Section II** contains information about CM and the case's status, as required by Section C of the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Receivership Billing Instructions"). Section II also includes a description of each exhibit to this Fifth Interim and Final Application, as well as the reduction in fees agreed to by CM in connection with appointment as consultant to the Receiver.

(c)     **Section III** contains a narrative of the work that CM professionals performed by professional and under each activity category, as required by Section D of the SEC Receivership Billing Instructions.

(d)     **Section IV** summarizes the expenses for which CM seeks reimbursement, as required by section E of the SEC Receivership Billing Instructions.

(e)    **Section V** describes the standards to be applied by the Court in determining fee awards in SEC equity receiverships.

(f)    **Section VI** describes the interim payment and holdback arrangement to which CM has agreed.

## I.    PRELIMINARY STATEMENT

1.    During the Fifth Application Period, CM's central focus has been assisting the Receiver with due diligence, strategic alternatives analysis and monetization efforts with respect to the following portfolio companies of the Platinum receivership estate (the "Receivership Estate"): Daybreak Oil & Gas, Arabella Exploration, American Patriot Gold, Greentown Oil & Gas, Nordaq Energy, and Cokal Industries (the "Portfolio Companies").

2.    Specifically, with regard to the Portfolio Companies, CM performed the following services:

    a.    *Due Diligence*: The performance of focused due diligence with emphasis on (A) understanding and validating the rights and obligations of the Receivership Entities under relevant investment agreements, (B) gaining an understanding of the financial condition and prospects for each portfolio company, and (C) evaluation of potential near term funding requirements for the Receivership Entities;

    b.    *Strategic Alternatives Analysis*: The identification and evaluation of relevant strategic alternatives that are available to the Receivership Entities to monetize their debt and equity interests, which may range from (A) working with portfolio company management teams and other stakeholders to effectuate a consensual sale of assets to (B) other alternatives, including but not limited to a foreclosure action.

    c.    *Monitoring and Analysis of Investment Positions*: The performance of routine monitoring and analysis of investment positions and correspondence with portfolio company management teams; and

    d. *Financial Advisory Services*:  The performance of financial advisory services as requested by the Receiver to assist with the disposition of specifically identified Platinum portfolio company investment positions.

3.     During the Fifth Application Period, CM has been asked by the Receiver to provide the assistance described previously with respect to the Portfolio Companies, which are separate and apart from assets that are being monetized by the Receiver's other professionals.  Details regarding the assistance provided to each Portfolio Company is set forth below:

    a. ***Daybreak Oil & Gas ("Daybreak")***.  Daybreak is a publicly held oil and gas company with assets in Kern Country, California and in Montcalm County, Michigan. PPCO owns 99% of the membership interests and is the managing member of Maximilian Resources LLC, an entity which is owed approximately $9.2 million from Daybreak on account of a senior loan, secured by Daybreak's interest in two joint ventures via a senior secured real property mortgage.  CM assisted the Receiver with monetizing PPCO's interests in Daybreak during the Fifth Application Period, resulting in proceeds of $700,000.

    b. ***Arabella Exploration ("Arabella")***.  Arabella refers to three entities: Arabella Exploration, an entity to which PPCO made a $16 million senior secured loan in 2014, along with two other subsidiary entities that are guarantors and whose assets secure the PPCO senior secured loan.  Arabella is engaged in the ownership and operation of certain oil and gas properties in the Permian and Delaware Basins in Texas.  Certain of the Arabella entities are debtors in bankruptcy proceedings that are presently pending in the Northern District of Texas and in coordinated liquidation proceedings in the Cayman Islands. PPCO filed claims in Arabella's bankruptcy proceedings in an amount of approximately $20.1 million.  During the Fifth Application Period, CM prepared analysis for the Receiver and her advisors about the sale of Arabella's assets; total CM fees related to Arabella were $1,894.00.

    c. ***American Patriot Gold ("American Patriot")***.  American Patriot is an entity that formerly operated a gold mine in Montezuma County, Colorado.  The PPCO investment was structured as a senior secured loan that was made to the company with the intent of restarting the mine, but it was unable to achieve economic production.  After a protracted process, PPCO successfully foreclosed on American Patriot's assets, including the mine and underlying real estate.  CM assisted the Receiver in executing a monetization plan centered on the APG related real estate as well as assisted with interactions with environmental regulators as part of the plan.

d. ***Greentown Oil Company ("Greentown")***.  Greentown refers to an investment in a company holding certain oil and gas assets located in the Paradox Basin in the state of Utah.  PPCO holds a debt and equity interest in the company through its affiliate, Maximillian.  CM worked in concert with the Receiver and her advisors to evaluate strategic alternatives to maximize the value of PPCO's interests in Greentown and assist with ongoing litigation with the company and its principals, during the Fifth Application Period.

e. ***Cokal Limited ("Cokal")***.  Cokal is a coal mining company headquartered in Sydney, NSW. CKA's active mining project is on the island of Borneo in the Bumi Barito Mineral of Indonesia. Over the past year, the BBM mine has been developed and CKA has received commitments from several investors to support continued development of the mine.  CM contacted certain potential buyers for the Receivership's Cokal positions as part of a monetization process executed and coordinated with Goldin Associates and the Receiver.  Total fees related to Cokal during the period were $1,254.00.

4.     With respect to the monetization of assets related to the Portfolio Companies, CM had in prior Interim Periods:

a. Developed and implemented marketing plans with respect to the Portfolio Companies, including identifying prospective investors/buyers to be contact;

b. Prepared executive summaries/communications and managed electronic data rooms relating to potential sale transactions for distribution and presentation to prospective investors/buyers;

c. Coordinated (together with involvement from key personnel from the Portfolio Companies, the Receiver and the Receiver's legal counsel and other professionals) materials and information to be made available to prospective investors/buyers as part of their due diligence investigations and as a supplement to the electronic data room materials;

5.     During the Fifth Application Period CM continued its activities to monetize assets related to the Portfolio Companies, specifically CM:

a. Continued contacting potential investors/buyers of the assets;

b. Assisted the Receiver in evaluating indications of interest and/or letters of intent received from prospective investors/buyers;

    c.  Assisted the Receiver and legal counsel in its negotiation of documents related to any potential sale transaction;

    d.  Advised the Receiver with respect to the form and structure of, and consideration to be received in, any potential sale transaction; and

    e.  Assisted with the closing of a transaction to sell the Receivership's assets relating to Daybreak.

6.  In addition to the above services with respect to the Portfolio Companies, CM:

    a.  Assisted with the identification and safeguarding of assets and other potential sources of recovery for the Receivership Entities if and to the extent requested by the Receiver;

    b.  Evaluated strategic alternatives available to maximize value for the Receivership Entities related to Portfolio Companies, including the comparison of potential near term liquidity events with orderly exits over a longer timeframe;

    c.  Performed routine monitoring and analysis of investment positions, including engaging in regular communications with management teams and other relevant stakeholders, for Portfolio Companies and prepared and delivered periodic updates regarding the same to the Receiver;

    d.  Provided investment advice to the Receiver and advocacy to the Receivership Entities in connection with key investment decisions related to the Portfolio Companies, including transactions involving the potential disposition of investment securities.

## II.   APPLICATION REQUIREMENTS

### A.  Information About the Applicant and the Application

7.    **Application Period**.  This Fifth Interim and Final Application covers the Fifth Application Period from October 1, 2018 through December 31, 2018.

8.    **Appointment of Receiver**.  On December 19, 2016, the U.S. Attorney for the Eastern District of New York unsealed an eight-count indictment (the "Indictment") against seven individuals who were formerly affiliated with Platinum, a purported $1.7 billion hedge-fund family based in New York.  The Indictment alleges that the defendants defrauded Platinum investors

through, among other things, the overvaluation of assets, the concealment of severe cash flow problems and the preferential payment of redemptions.  The Indictment also charges four of the defendants with defrauding the independent bondholders of Black Elk Energy Offshore Operations, LLC, a portfolio company owned by Platinum, through a fraudulent offering document and diverting more than $95 million in proceeds to Platinum by falsely representing in the offering document that Platinum controlled approximately $18 million of the bonds when, in fact, Platinum controlled more than $98 million of the bonds.

On December 19, 2016, the SEC filed this action, asserting violations of the anti-fraud provisions of federal securities laws and seeking, among other relief, temporary and permanent injunctive relief, disgorgement of ill-gotten gains, imposition of civil penalties, and appointment of a receiver [Docket No. 1].

On December 19, 2016, the Court entered an Order to Show Cause and Temporary Restraining Order against the defendants, granting certain specified relief to the SEC, including the appointment of a receiver, and granting the receiver control over the assets of the Receivership Entities [Docket No. 5].

On January 31, 2017, the initial receiver sought to retain Cooley LLP as his counsel and Guidepost Solutions LLC to advise, assist and support him with his duties as receiver.  [Docket Nos. 63 and 65].  Such retention applications were approved by the Court on February 17, 2017.

On June 3, 2017, Mr. Schwartz requested that the Court approve his resignation as receiver, effective upon the Court's appointment of a successor receiver [Docket No. 170].  On July 6, 2017, the Court accepted the resignation of Mr. Schwartz and appointed the Receiver as his successor [Docket No. 216].  On October 16, 2017, in connection with the Motion of the SEC to Appoint a

Substitute Receiver, the Court entered the Second Amended Order Appointing Receiver (the "Amended Receiver Order") [Docket No. 276].

9.     **Appointment of the Applicant**.  The Amended Receiver Order authorized the Receiver to engage professionals to assist in fulfilling her duties.  On November 11, 2017 (as modified on November 30, 2017), this Court approved CM's retention as consultant to the Receiver *nunc pro tunc* to October 12, 2017 [Docket Nos. 280 and 287].

10.     **Fee Schedule**.  The names and hourly rates of all CM professionals who billed during the Fifth Application Period is attached as Exhibit B (the "Fee Schedule").  The fees requested in this Fifth Interim and Final Application were determined on the basis of the hours worked by CM professionals and CM's usual and customary hourly rates, as modified by a 10% public service discount.  Pursuant to the authority of this Court, CM has not received any interim payments for fees and expenses for the activity during the Fifth Application Period.

11.     **Prior Applications**.  CM's fee applications for the First Application for fees and expenses for the period October 12, 2017 through December 31, 2017, Second Application for fees and expenses for the period January 1, 2018 through March 31, 2018, Third Application for fees and expenses for the period April 1, 2018 through June 30, 2018 and Fourth Application for fees and expenses for the period July 1, 2018 through September 30, 2018 were each approved by orders entered by this Court on January 18, 2019, [Docket Nos. 446, 447, 448 and 449].  In connection with its First Application for fees and expenses, CM sought payment for professional fees in the amount of $251,530.00 and expenses of $2,940.07; in connection with its Second Application for fees and expenses, CM sought payment for professional fees in the amount of $438,080.25 and expenses of $5,204.45; and in connection with its Third Application for fees and

expenses, CM sought payment for professional fees in the amount of $456,562.50 and expenses of $4,974.46; and in connection with its Fourth Application for fees and expenses, CM sought payment for professional fees in the amount of $205,518.50 and expenses of $336.27.

### B.  Case Status

12.      **Cash on Hand and Unencumbered Funds**.  As of December 31, 2018, the Receivership Entities had $35.3 million in unencumbered funds, all of which represented cash and cash equivalents.

13.      **Accrued Administrative Expenses**.  As of December 31, 2018, it is estimated that accrued, unpaid administrative expenses amount to approximately $4.5 million.   These administrative expenses primarily consist of accrued and unpaid professional fees.  In addition to these unpaid administrative expenses, the Receivership Estate paid remaining in-house Platinum staff and other operating expenses during the Fifth Application Period.

14.      **Summary of Receipts and Disbursements**.  Cash disbursements during the Fifth Application Period totaled approximately $4.6 million.  This amount primarily consists of the following: (i) payments to the Receiver and retained professionals ($3.7 million); (ii) $441,224 in investment expenses, which include funds disbursed to preserve the value of LC Energy ($386,000) and the Abdala Tailings Project ($55,000); and (iii) $472,125  in rent, payroll and related expenses paid to Platinum employees.  Cash receipts during the Fifth Application Period totaled approximately $35.3 million.  This amount primarily consists of proceeds derived from dispositions associated with the following investment positions:  Abdala Tailings Project ($21.3

million), Azarga Uranium Corp. ($1.3 million), Daybreak Oil and Gas Inc. ($700,000) and Pro Player Athletes ($20,000).

15.     **Closing of Case**.  CM cannot at this time state when the Receiver will deem it appropriate to seek the conclusion of this case.

16.     **Summary of Creditor Claims Proceedings**.  The Receiver and her professionals have not yet initiated a formal claims process.

17.     **Summary of Assets**.  The primary assets of the Receivership Estate consist of the following:

> (a) Cash and cash equivalents of approximately $35.3 million.
>
> (b) Real estate investments without any set book value, due to their inherently speculative nature.
>
> (c) Natural resources investments, litigation financing, life settlement investments, energy and other miscellaneous investments.
>
> (d) Potential litigation claims.

18.     **Liquidated and Unliquidated Claims**.  The Receiver currently holds no liquidated litigation recoveries.  The Receiver may, however, have causes of action against a number of parties and is currently considering associated claims.

**C.  SEC Review**

19.     CM submitted this Fifth Interim and Final Application to the SEC in sufficient time to allow for a thirty-day review period, as required by the SEC Receivership Billing Instructions. The SEC review resulted in no comments or objections.

**D.  Exhibits**

20.     The Fifth Interim and Final Application contains the following exhibits:

a.  **Exhibit A**:  The Standardized Fund Accounting Report ("SFAR") for the period October 1, 2018 through December 31, 2018.

b.  **Exhibit B**:  A Fee Schedule showing the total fees billed, hours worked and hourly rates of each CM professional involved.

c.  **Exhibit C**:  A summary of the total fees billed and hours worked by activity category.

d.  **Exhibit D**:  All time records of CM professionals listed chronologically by activity category, as required by Section E.1a of the SEC Receivership Billing Instructions.

e.  **Exhibit E**:  A summary of all expenses incurred by CM, organized by expense category, as required by Section E.1a of the SEC Receivership Billing Instructions.

f.  **Exhibit F**:  The certification contemplated by Section A.1 of the SEC Receivership Billing Instructions.

**III.     SERVICES RENDERED BY CM DURING THE FIFTH APPLICATION PERIOD**

21.     CM professionals recorded services performed in time increments of one tenth (0.1) of an hour.  CM made use of a lean team; the senior professionals involved each brought distinct, but essential, expertise to the engagement and were the primary responsible parties on the different tasks.

22.     While four CM professionals provided services to the Receivership during the Fifth Application Period, CM is seeking approval for the fees expenses associated with two professionals[1]; they are: Kenneth Garnett and Brian Smith.

23.     The particular roles of each of the CM professionals who billed time during the Fourth Application Period were as follows:

   a.   Kenneth Garnett (Managing Director) (8.1 hours to P01; 26.1 hours to P02; 9.9 hours to P04) – Mr. Garnett is co-leader of CM's Private Fund Services practice, which provides advisory and fiduciary services to the stakeholders of private capital funds.  He has particular industry expertise in the mining and energy industries.  During the Fifth Application Period, Mr. Garnett managed and participated in the CM team that continued its strategic alternatives and monetization analyses for Greentown, as well as supported the Receivership's

---

[1]   Conway MacKenzie has elected to not bill the time of any professional that billed less than fifteen (15) hours during the time period covered.

litigation efforts with respect to the company. In addition, Mr. Garnett managed CM efforts to sell the Receiverships interests in Daybreak. With respect to APG, Mr. Garnett managed and participated in CM's (i) due diligence into the form and specifics of the Receivership's ownership of the land assets, and (ii) assisted the Receivership in retaining real estate broker/professional who specializes in the type of property owned by the Receiver. During the Fifth Application Period, Mr. Garnett managed and participated in CM's (i) strategic alternatives analysis and recommendations for the company and (ii) contacted potential buyers for the Receivership's related positions.

b. Brian Smith (Director) (5.0 hours to P01; 14.6 hours to P02; .9 hours to P04) – Mr. Smith is member of CM's energy practice, with a particular expertise in the oil & gas industry. During the Fifth Application Period, Mr. Smith led CM's efforts to monetize the Receivership's Daybreak interests. In addition, Mr. Smith performed due diligence on Greentown and assisted in the of preparation of CM's analysis of strategic alternatives for the Receivership's related investments and pending litigation. Mr. Smith also assisted the Receiver in analyzing certain parts of the Arabella's asset sale.

24.     Per Section D.3 of the SEC Receivership Billing Instructions, CM accounted for its time charges during the Fifth Application Period by activity categories. Narrative summaries of these activity categories follow.

25.     ***Asset Disposition (P02).*** During the Fifth Application Period, CM incurred 40.7 hours and $23,564.00 of fees related to the activity category Asset Disposition. Key tasks

comprising this activity category included origination and execution of sales, leases, abandonment and/or related documentation and transaction work. The CM professionals and staff that incurred time in connection with this activity category during the Fifth Application Period included Kenneth Garnett and Brian Smith.

26.    ***Case Administration (P04)***. During the Fifth Application Period, CM incurred 10.8 hours and $6,178.50 of fees related to the activity category *Case Administration*.  Key tasks comprising this activity category included communications and briefing with the Receiver and her other professionals regarding the Portfolio Companies; internal CM correspondence re engagement status and strategy; preparation for and participation in regular and as needed communications and updates with the Receiver and her other professionals; preparation of summary materials and document production activities.  The CM professionals and staff that incurred time in connection with this activity category during the Fifth Application Period included Kenneth Garnett and Brian Smith.

27.    ***Asset Analysis and Recovery (P01)***. During the Fifth Application Period, CM incurred 13.1 hours and $7,592.00 of fees related to the activity category Asset Analysis and Recovery. Key tasks comprising this activity category included the review, analysis and commentary regarding settlement proposals with and among key Portfolio Company constituents, review and analysis of key agreements and correspondence re the same with the Receivership team, review and analysis of recovery scenarios for Portfolio Company investment positions. The CM professionals and staff that incurred time in connection with this activity category during the Fifth Application Period primarily included Kenneth Garnett and Brian Smith.

## IV.    EXPLANATION OF EXPENSES AND RELATED POLICIES

28.     CM seeks reimbursement for its out-of-pocket costs in the amount of $8.29.  Exhibit E sets forth various categories of expenses for which CM seeks reimbursement.  CM will retain the documentation supporting these expenses for a period of seven years in accordance with the SEC Receivership Billing Instructions and will provide the SEC with copies of such materials upon request.  CM's request for expense reimbursement complies with the SEC Receivership Billing Instructions.

## V.     FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

29.     The case law on equity receiverships sets forth the standards for approving receiver compensation and the fees and expenses for the receiver's retained professionals.  This Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and her retained professionals and "may consider all of the factors involved in a particular receivership in determining the appropriate fee."  *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994).  Many authorities (some quite dated) provide "convenient guidelines," but in the final analysis, "the unique fact situation renders direct reliance on precedent impossible."  *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465 (S.D. Tex. 1974), aff'd, 519 F.2d 1087 (5th Cir. 1975).

30.     In allowing professional fees in receiverships, "[t]he court will consider . . . the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented."  *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *see also United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir 1966) (court should consider the time, labor and skill, the degree of activity, the dispatch with which the work is conducted, and the result obtained).  "'[R]esults are always

relevant.'" *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992), quoting Moody, 374 F. Supp. At 480, as are the extent to which "a receiver reasonably and diligently discharges his duties." Id.

31.    Under these standards CM has demonstrated that the amount of fees requested is appropriate.  CM, in concert with the Receiver and her professionals, has acted with appropriate dispatch to develop and execute monetization strategies for the Portfolio Companies.  CM's efforts during the Fifth Application Period were crucial for gaining a deep understanding of the specific nature and value of the interests held by the Receivership Entities in connection with the Portfolio Companies and positioning those assets for and executing near term monetization.

## VI.   HOLDBACK

27.    CM and the Receiver are cognizant of the fact that the disposition of assets is still in the early stages and that there are significant costs of maintaining certain of the portfolio assets until they can be sold in an orderly manner (e.g. the monthly premiums required to be paid in the life settlement policies.)   Accordingly, in an effort to preserve assets at this stage of the Receivership, the Receiver has requested, and CM has agreed to limit interim monthly payments to no more than $100,000.00 per month.  To date, CM has received aggregate interim monthly payments from the Receiver of $980,094.25; CM has not received interim payments related to the Fifth Application Period.   In addition, CM received a $200,000 retainer at the outset of its retention; no fees or expenses have been applied against the retainer.

28.    Furthermore, CM understands that the SEC has requested that certain Receivership contractors and professionals, including CM, be subject to a holdback (the "Holdback") equal to 20% of its fees and expenses incurred in connection with each application filed with the Court.

Total amounts held back will be available for payment at the conclusion of the Receivership at the discretion of the Court pursuant to a final fee application.  Based on CM's total fees and expenses incurred during the Fifth Application Period of $37,334.50, CM is subject to a Holdback of $7,468.56 in connection with the Fifth Application Period.

WHEREFORE, CM respectfully requests that this Court:

a.     Grant interim approval of CM's request for $37,334.50 in professional fees and $8.29 expenses incurred during the Fifth Application Period;

b.     Grant interim approval of payment of the amount of $29,865.94, representing CM's aggregate professional fees incurred during the Fifth Application Period of $37,334.50, less the Holdback of $7,468.56;

c.     CM's request for reimbursement of its out-of-pocket expenses in the amount of $8.29, for which CM has not received interim compensation from the Receiver;

d.     Authorize the Receiver to immediately pay from the Receivership assets (i) any unpaid allowed fees of CM, plus (ii) 100% of the allowed out-of-pocket expenses of CM; and

e.    Grant such other relief as the Court deems appropriate.

Respectfully submitted,

/s/ Kenneth T. Latz
Senior Managing Director
Conway MacKenzie Capital Advisors, LLC
600 Fifth Avenue, 25th Floor
New York, NY  10020
Telephone:  (212) 586-2200
klatz@conwaymackenzie.com

Date:  June 26, 2019

# EXHIBIT A

# EXHIBIT A

**PLATINUM PARTNERS CREDIT OPPORTUNITIES MASTER FUND LP AND AFFILIATED ENTITIES**
STANDARDIZED FUND ACCOUNTING REPORT
Reporting Period from 10/1/2018 to 12/31/2018

| FUND ACCOUNTING (See Instructions) | | PPCO | PPLO | Total |
|---|---|---|---|---|
| | | Period from 10/1/2018 to 12/31/2018 | | |
| Line 1 | Beginning Balance (As of 10/1/2018) | $ 14,779,490 | $ 1,808,926 | $ 16,588,416 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | - | - | - |
| Line 3 | Cash and Securities | - | - | - |
| Line 4 | Interest/Dividend Income | - | - | - |
| Line 5 | Business Asset Liquidation[1] | 23,358,554 | - | 23,358,554 |
| Line 6 | Personal Asset Liquidation | - | - | - |
| Line 7 | Third-Party Litigation Income | - | - | - |
| Line 8 | Miscellaneous – Other | 28,761 | 148 | 28,910 |
| | Total Funds Available (Lines 1-8) | $ 38,166,816 | $ 1,809,074 | $ 39,975,890 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Investors/Claimants | - | - | - |
| Line 10 | Disbursements for Receivership Operations | - | - | - |
| Line 10a | Disbursements to Receiver or Other Professionals | (3,737,444) | - | (3,737,444) |
| Line 10b | Business Asset Expenses | (472,125) | - | (472,125) |
| Line 10c | Personal Asset Expenses | - | - | - |
| Line 10d | Investment Expenses[2] | (441,224) | - | (441,224) |
| Line 10e | Third-Party Litigation Expenses | - | - | - |
| | 1. Attorney Fees | - | - | - |
| | 2. Litigation Expenses | - | - | - |
| | Total Third-Party Litigation Expenses | - | - | - |
| Line 10f | Tax Administrator Fees and Bonds | (6,023) | (10,248) | (16,271) |
| Line 10g | Federal and State Tax Payments | - | - | - |
| | Total Disbursements for Receivership Operations | $ (4,656,817) | $ (10,248) | $ (4,667,064) |
| Line 11 | Disbursements for Distribution Expenses Paid by the Fund | - | - | - |
| Line 12 | Disbursements to Court/Other | - | - | - |
| | Total Funds Disbursed | $ (4,656,817) | $ (10,248) | $ (4,667,064) |
| Line 13 | Ending Balance (As of 12/31/2018) | $ 33,509,999 | $ 1,798,827 | $ 35,308,826 |

(1) This amount consists primarily of proceeds derived from dispositions and collections associated with the following investment positions: Abdala Gold ($21.5 million), Azerga Uranium Corp ($1.3 million), Daybreak Oil and Gas, Inc. ($700,000) and Pro Player Athletes ($20,000).
(2) This amount consists primarily of $441,000 disbursed to preserve the value of the following investments: LC Energy ($386,000) and Abdala Gold ($55,000).

# EXHIBIT B

## Exhibit B - Summary of Hours, Rates and Fees Billed by Professional

| Name | Title | Hours | Hourly Rate | Amount Billed ($) |
|---|---|---|---|---|
| Garnett, Kenneth | Managing Director | 44.1 | $ 570.00 | $ 25,137.00 |
| Smith, Brian | Director | 20.5 | $ 595.00 | $ 12,197.50 |
| **GRAND TOTAL:** | | **64.6** | | $ **37,334.50** |

# EXHIBIT C

**Exhibit C - Summary of Hours and Fees Billed by Activity Category**

| Name | Hours | Amount Billed ($) |
|---|---|---|
| Asset Disposition | 40.7 | $23,564.00 |
| Case Administration | 10.8 | $6,178.50 |
| Asset Analysis and Recovery | 13.1 | $7,592.00 |
| **GRAND TOTAL:** | 64.6 $ | 37,334.50 |

# EXHIBIT D

**Exhibit D - Detail of Time Entries by Professional Organized Chronologically by Activity Category**

| Activity Category | Date | Name | Description of Services | Hours | Total |
|---|---|---|---|---|---|
| Asset Analysis and Recovery | 10/5/2018 | BJS | Prepare list of Greentown due diligence questions based on information provided by the company | 0.9 | 535.50 |
| Asset Analysis and Recovery | 10/9/2018 | BJS | Call with CM team regarding Greentown due diligence questions | 0.5 | 297.50 |
| Asset Analysis and Recovery | 10/9/2018 | KAG | Prepared for team call re: Greentown subpoenas | 0.5 | 285.00 |
| Asset Analysis and Recovery | 10/9/2018 | KAG | Participated in CM team call re: PPCO request for assistance with preparing subpoenas | 0.5 | 285.00 |
| Asset Analysis and Recovery | 10/9/2018 | BJS | Evaluation of Greentown due diligence request re: litigation with the company | 0.7 | 416.50 |
| Asset Analysis and Recovery | 10/10/2018 | BJS | Prepared reviesed due diligence requests for Greentown, as part of litigation and potential litigation with the company | 0.8 | 476.00 |
| Asset Analysis and Recovery | 10/11/2018 | KAG | Reviewed CM team information request lists prepared to support potential subpoena to be issued to Greentown | 0.6 | 342.00 |
| Asset Analysis and Recovery | 10/11/2018 | BJS | Prepared/revised operating asset section of due diligence information request list to be provided to the Greentown as part of settlement/litigation process | 0.9 | 535.50 |
| Asset Analysis and Recovery | 10/19/2018 | KAG | Reviewed Greentown subpoena information prepared by CM team | 0.7 | 399.00 |
| Asset Analysis and Recovery | 10/19/2018 | KAG | Discussed Greentown subpoena information preparation with CM team | 0.8 | 456.00 |
| Asset Analysis and Recovery | 10/19/2018 | KAG | Prepared Greentown subpoena information document | 0.9 | 513.00 |
| Asset Analysis and Recovery | 10/23/2018 | KAG | Prepared subpoena information for JMD and Entrada for Greentown | 0.5 | 285.00 |
| Asset Analysis and Recovery | 10/23/2018 | KAG | Prepared subpoena information for Green and Ahmed for Greentown | 0.5 | 285.00 |
| Asset Analysis and Recovery | 10/23/2018 | KAG | Prepared subpoena information for Greentown | 0.9 | 513.00 |
| Asset Analysis and Recovery | 10/24/2018 | KAG | Held call with CM team to discuss Greentown Subpoena information document | 0.5 | 285.00 |
| Asset Analysis and Recovery | 10/24/2018 | BJS | Work on revision of Greentown request list for potential subpoena | 0.7 | 416.50 |
| Asset Analysis and Recovery | 10/24/2018 | KAG | Made revisions to subpoena information document for Greentown and distributed to Receiver team | 0.8 | 456.00 |
| Asset Analysis and Recovery | 10/24/2018 | KAG | Prepared for and held call with CM Houston team re: Greentown subpoena information document | 0.9 | 513.00 |
| Asset Analysis and Recovery | 11/30/2018 | BJS | Discussion with J Westmoreland on financing status for Daybreak sale transaction | 0.5 | 297.50 |
| **Total** | | | | **13.1** | **$7,592.00** |
| Asset Disposition | 10/1/2018 | BJS | Call with K Green counsel to  Arabella Petroleum's UCC regarding sale process and case status | 0.3 | 178.50 |
| Asset Disposition | 10/1/2018 | KAG | Update call with CM team regarding Daybreak sale process status | 0.4 | 228.00 |
| Asset Disposition | 10/1/2018 | KAG | Reviewed qualifications for APG appraiser and discussed with Lorenz for possible retention | 0.5 | 285.00 |
| Asset Disposition | 10/1/2018 | KAG | Prepare for  hearing re: APG motion to retain R. Lorenz at broker Wells Group for sale of APG land | 0.6 | 342.00 |
| Asset Disposition | 10/2/2018 | BJS | Calls and communication with Daybreak management re: sale process status | 0.2 | 119.00 |
| Asset Disposition | 10/2/2018 | BJS | Communication with Daybreak bidding parties re: progress with bids for sale process | 0.2 | 119.00 |
| Asset Disposition | 10/2/2018 | BJS | Review of markup to purchase agreement provided by potential purchaser of Daybreak assets | 0.6 | 357.00 |
| Asset Disposition | 10/3/2018 | BJS | Discussion with CEO of Daybreak re: sale process and due diligence efforts of potential buyers | 0.3 | 178.50 |
| Asset Disposition | 10/3/2018 | BJS | Call with potential buyer of Daybreak assets | 0.4 | 238.00 |
| Asset Disposition | 10/4/2018 | BJS | Review of updated Daybreak share purchase agreement | 0.3 | 178.50 |
| Asset Disposition | 10/4/2018 | BJS | Call with Daybreak CEO to discuss his ongoing efforts to fund a potential bid for assets | 0.4 | 238.00 |
| Asset Disposition | 10/4/2018 | KAG | Communications with potential Cokal buyers | 0.5 | 285.00 |
| Asset Disposition | 10/5/2018 | BJS | Write up terms and points for Daybreak funding letter | 0.3 | 178.50 |

**Exhibit D  Detail of Time Entries by Professional Organized Chronologically by Activity Category**

| Activity Category | Date | Name | Description of Services | Hours | Total |
|---|---|---|---|---|---|
| Asset Disposition | 10/5/2018 | KAG | Discussed status of retention of Rick Lorenz, Wells Group for APG and Daybreak sale process with C. Solsvig of Goldin Associates | 0.4 | 228.00 |
| Asset Disposition | 10/5/2018 | KAG | Communications with Rick Lorenz, broker at the Wells Group, re: retention for APG | 0.4 | 228.00 |
| Asset Disposition | 10/5/2018 | BJS | Gather diligence materials for Daybreak backup bidder | 0.6 | 357.00 |
| Asset Disposition | 10/9/2018 | KAG | Participated in CM team call re: Daybreak sale process and dicussions with Westmoreland CEO | 0.2 | 114.00 |
| Asset Disposition | 10/9/2018 | KAG | Coordinated with Goldin Associates and Otterbourg re: APG real estate listing and contractor retention - APG | 0.8 | 456.00 |
| Asset Disposition | 10/10/2018 | KAG | Communication with potential Cokal position purchasers | 0.7 | 399.00 |
| Asset Disposition | 10/10/2018 | KAG | Prepared for and participated in call with Goldin and Otterbourg re: communications from Lukko and APG | 0.8 | 456.00 |
| Asset Disposition | 10/11/2018 | BJS | Preparation and call with A Sayeh regarding Daybreak asset sale documentation | 0.3 | 178.50 |
| Asset Disposition | 10/11/2018 | KAG | Discussions with R. Lorenz of Wells Group re: sale issues | 0.6 | 342.00 |
| Asset Disposition | 10/11/2018 | KAG | Discussions with Rynerson of Bryan Cave re: access road for APG as part of land sale process | 0.6 | 342.00 |
| Asset Disposition | 10/12/2018 | KAG | Discussed APG recommendation to hire broker to sell APG land position with Goldin Associates | 0.4 | 228.00 |
| Asset Disposition | 10/12/2018 | KAG | Reviewed documentation re: access road for APG as part of land sale process | 0.7 | 399.00 |
| Asset Disposition | 10/15/2018 | KAG | Followed up with potential Cokal postion purchasers | 0.5 | 285.00 |
| Asset Disposition | 10/16/2018 | KAG | Followed up with Goldin Associates re: APG and Wells (real estate broker) retetention for land sale process | 0.3 | 171.00 |
| Asset Disposition | 10/17/2018 | BJS | Calls and communication with Daybreak CEO on funding status of potential bid for assets | 0.3 | 178.50 |
| Asset Disposition | 10/17/2018 | BJS | Communication with Otterbourg and Daybreak re: asset sale documents | 0.4 | 238.00 |
| Asset Disposition | 10/18/2018 | KAG | Discussed documentation for Daybreak sale with Otterbourg | 0.4 | 228.00 |
| Asset Disposition | 10/18/2018 | KAG | Followed up with Goldin Associates re: Cokal share sale documentation and APG conference call to dicuss land sale process | 0.5 | 285.00 |
| Asset Disposition | 10/18/2018 | KAG | Call with Jim Westmoreland (Daybreak CEO) re: purchase documentation and capital raise status | 0.5 | 285.00 |
| Asset Disposition | 10/18/2018 | KAG | Reviewed title/foreclosure documentation and communicated with Bryan Cave re: APG | 0.7 | 399.00 |
| Asset Disposition | 10/19/2018 | KAG | Various follow up communications re: R. Lorenz retention for APG land sale process | 0.3 | 171.00 |
| Asset Disposition | 10/19/2018 | KAG | Followed up with potential Daybreak asset buyers to ascertain findings of their due diligence | 0.4 | 228.00 |
| Asset Disposition | 10/22/2018 | KAG | Prepared various communications re: Daybreak sale process | 0.4 | 228.00 |
| Asset Disposition | 10/22/2018 | KAG | Reviewed Goldin Associates APG communications and response | 0.6 | 342.00 |
| Asset Disposition | 10/23/2018 | BJS | Update call with CM team regarding Daybreak sale process status | 0.1 | 59.50 |
| Asset Disposition | 10/23/2018 | BJS | Calls with Jim Westmoreland CEO of Daybreak regarding purchase agreement | 0.4 | 238.00 |
| Asset Disposition | 10/23/2018 | KAG | Discussed next steps with CM team re: Daybreak asset sale closing | 0.4 | 228.00 |
| Asset Disposition | 10/23/2018 | KAG | Communication with various Daybreak bidders about sale process status | 0.5 | 285.00 |
| Asset Disposition | 10/23/2018 | KAG | Review of asset sale documents for Daybreak | 0.7 | 399.00 |
| Asset Disposition | 10/24/2018 | KAG | Prepared various communications re: Daybreak sale process | 0.4 | 228.00 |
| Asset Disposition | 10/25/2018 | KAG | Held call with CM team to discuss next steps RE: Daybreak asset sale closing documentation | 0.4 | 228.00 |
| Asset Disposition | 10/25/2018 | KAG | Discussed next steps in Cokal and APG sale processes with Goldin Associates | 0.6 | 342.00 |
| Asset Disposition | 10/26/2018 | BJS | Calls and communications with Jim Westmoreland CEO of Daybreak re: asset sale process | 0.6 | 357.00 |

**Exhibit D- Detail of Time Entries by Professional Organized Chronologically by Activity Category**

| Activity Category | Date | Name | Description of Services | Hours | Total |
|---|---|---|---|---|---|
| Asset Disposition | 10/30/2018 | BJS | Call with Jim Westmoreland on asset sale documentation status | 0.3 | 178.50 |
| Asset Disposition | 10/30/2018 | KAG | Discussed road access issue and potential legal approach with R. Lorenz (Wells Group) as part of land sale process | 0.4 | 228.00 |
| Asset Disposition | 10/30/2018 | KAG | Discussed real estate tax status with Goldin and Otterbourg for APG as part of land sale process | 0.5 | 285.00 |
| Asset Disposition | 10/30/2018 | KAG | Discussed restructuring agreement and share sale documents with Goldin for Cokal | 0.5 | 285.00 |
| Asset Disposition | 10/30/2018 | KAG | Reviewed various communications re: APG real estate taxes as part of land sale process | 0.6 | 342.00 |
| Asset Disposition | 11/1/2018 | KAG | Discussed Daybreak asset sale status with CM team | 0.4 | 228.00 |
| Asset Disposition | 11/1/2018 | KAG | Communicated with Bryan Cave re: APG land sale process issues | 0.5 | 285.00 |
| Asset Disposition | 11/2/2018 | KAG | Reviewed buyer markup of Securities Puchase Agreement for Daybreak, provided to Otterbourg | 0.8 | 456.00 |
| Asset Disposition | 11/5/2018 | KAG | Communicated with Bryan Cave re: access road for APG as part of land sale process | 0.3 | 171.00 |
| Asset Disposition | 11/5/2018 | KAG | Participated in team call re: Daybreak asset sale transaction | 0.3 | 171.00 |
| Asset Disposition | 11/6/2018 | KAG | Reviewed analysis prepared by Bryan Cave re: APG sale process issues | 0.5 | 285.00 |
| Asset Disposition | 11/7/2018 | BJS | Call with CM team regarding asset sale status and path forward on Daybreak | 0.4 | 238.00 |
| Asset Disposition | 11/8/2018 | BJS | Analysis of net recovery to Receiver on Arabella sale | 0.3 | 178.50 |
| Asset Disposition | 11/8/2018 | BJS | Review and analysis of Arabella Exploration docket (0.6),evaluation of broker fees (0.9) and resultant waterfall due the Receiver (0.7) | 2.2 | 1309.00 |
| Asset Disposition | 11/9/2018 | BJS | Call with Jim Westmoreland on pre closing items for Daybreak asset sale | 0.4 | 238.00 |
| Asset Disposition | 11/12/2018 | KAG | Review of Arabella recovery analysis prepared by CM team | 0.4 | 228.00 |
| Asset Disposition | 11/13/2018 | BJS | Call with Jim Westmoreland on Daybreak funding status for company's bid to purchase Receiver's Daybreak assets | 0.5 | 297.50 |
| Asset Disposition | 11/14/2018 | BJS | Call with KAG and J Westmoreland re Daybreak sale transaction | 0.3 | 178.50 |
| Asset Disposition | 11/14/2018 | KAG | Communicated with CM and Daybreak teams re: close of sale transaction | 0.4 | 228.00 |
| Asset Disposition | 11/14/2018 | KAG | Communication  with Otterbourg team re: Daybreak closing documents | 0.4 | 228.00 |
| Asset Disposition | 11/14/2018 | KAG | Communication with Otterbourg and CM teams re: engagement wrap up and Daybreak transaction | 0.7 | 399.00 |
| Asset Disposition | 11/15/2018 | BJS | Call with Otterbourg regarding Daybreak close date and documentation for sale transaction | 0.2 | 119.00 |
| Asset Disposition | 11/15/2018 | KAG | Review of Bryan Cave research with Goldin Associates, re: APG as well provided update on Daybreak transaction | 0.7 | 399.00 |
| Asset Disposition | 11/19/2018 | KAG | Communicated with team and counterparty re: Daybreak transaction closing | 0.5 | 285.00 |
| Asset Disposition | 11/20/2018 | BJS | Call with J Westmoreland on closing status for Daybreak transaction | 0.3 | 178.50 |
| Asset Disposition | 11/26/2018 | BJS | Calls and communication with J Westmoreland around Daybreak close for sale transaction | 0.2 | 119.00 |
| Asset Disposition | 11/27/2018 | BJS | Communication with Jim Westmoreland of Daybreak re: sale transaction | 0.2 | 119.00 |
| Asset Disposition | 11/28/2018 | BJS | Call with Jim Westmoreland of Daybreak re:sale transaction | 0.2 | 119.00 |
| Asset Disposition | 11/28/2018 | KAG | Discussed Daybreak transaction progress with CM team | 0.4 | 228.00 |
| Asset Disposition | 12/4/2018 | BJS | Discussion with KAG around path and strategic alternatives for closing Daybreak sale transaction | 0.2 | 119.00 |
| Asset Disposition | 12/4/2018 | KAG | Call with J Wesmoreland on Daybreak funding status and asset sale closing | 0.3 | 171.00 |
| Asset Disposition | 12/6/2018 | BJS | Discussed status of Daybreak asset sale transaction with CM team | 0.2 | 119.00 |
| Asset Disposition | 12/6/2018 | KAG | Emails and communication around closing of Daybreak sale process and transaction clsoing | 0.3 | 171.00 |

**Exhibit D - Detail of Time Entries by Professional Organized Chronologically by Activity Category**

| Activity Category | Date | Name | Description of Services | Hours | Total |
|---|---|---|---|---|---|
| Asset Disposition | 12/13/2018 | BJS | Call and communication with CEO of Daybreak regarding funding for sale transaction | 0.3 | 178.50 |
| Asset Disposition | 12/13/2018 | KAG | Direct CM team re: Daybreak closing process for asset sale | 0.4 | 228.00 |
| Asset Disposition | 12/13/2018 | KAG | Calls and communication with CM and Otterbourg team to facilitate closing of Daybreak transaction | 0.5 | 285.00 |
| Asset Disposition | 12/18/2018 | KAG | Direct CM team re: Daybreak closing process for asset sale | 0.2 | 114.00 |
| Asset Disposition | 12/19/2018 | KAG | Calls and communication with J Westmoreland regarding closing of Daybreak sale transaction | 0.2 | 114.00 |
| Asset Disposition | 12/19/2018 | BJS | Participated in team call re: Daybreak asset sale transaction | 0.3 | 178.50 |
| Asset Disposition | 12/20/2018 | KAG | Calls and communication with J Westmoreland regarding closing of asset sale transaction | 0.2 | 114.00 |
| Asset Disposition | 12/20/2018 | BJS | Calls with Jim Westmoreland of Daybreak and K Garnett (CM) re: funding and sale closing process | 0.4 | 238.00 |
| Asset Disposition | 12/21/2018 | KAG | Follow up on closing mechanics for Daybreak asset sale transaction | 0.2 | 114.00 |
| Asset Disposition | 12/21/2018 | BJS | Discussed current state of negotiations for Daybreak with Goldin Associates | 0.8 | 476.00 |
| Asset Disposition | 12/24/2018 | BJS | Prepare for and participate in negotiation call with J. Westmoreland, of Daybreak re: asset sale transaction | 0.6 | 357.00 |
| Asset Disposition | 12/26/2018 | KAG | Confirmation of Daybreak asset sale closing with Otterbourg team | 0.3 | 171.00 |
| Asset Disposition | 12/26/2018 | BJS | Direct CM team re: Daybreak closing process for asset sale | 0.4 | 238.00 |
| Asset Disposition | 12/27/2018 | BJS | Call with J Westmoreland on Daybreak funding status and asset sale closing | 0.2 | 119.00 |
| **Total** | | | | **40.7** | **$23,564.00** |
| Case Administration | 10/1/2018 | KAG | Attend hearing re: APG motion to retain Lorenz at broker for sale of APG land | 0.9 | 513.00 |
| Case Administration | 10/12/2018 | KAG | Preparation of CM Weekly Update document for Receiver | 0.7 | 399.00 |
| Case Administration | 10/12/2018 | KAG | Participated in Weekly Update meeting with Receiver | 0.7 | 399.00 |
| Case Administration | 10/17/2018 | KAG | Reviewed portions of Receiver's Quarterly Update relevant to CM activities | 0.5 | 285.00 |
| Case Administration | 10/18/2018 | KAG | Prepared weekly update document for Receiver | 0.9 | 513.00 |
| Case Administration | 10/25/2018 | KAG | Discussed next steps for Platinum positions with CM team re: asset sales and analysis to perform | 0.9 | 513.00 |
| Case Administration | 10/26/2018 | BJS | Weekly CM and Receiver update call | 0.3 | 178.50 |
| Case Administration | 10/26/2018 | KAG | Participated in the weekly Receiver update call | 0.5 | 285.00 |
| Case Administration | 10/26/2018 | KAG | Prepared weekly update document for Receiver update | 0.9 | 513.00 |
| Case Administration | 10/29/2018 | BJS | CM team discussion on Platinum assets and status | 0.6 | 357.00 |
| Case Administration | 11/2/2018 | KAG | Participated in weekly Receiver update meeting | 0.5 | 285.00 |
| Case Administration | 11/2/2018 | KAG | Prepared weekly update document for Receiver | 0.7 | 399.00 |
| Case Administration | 11/15/2018 | KAG | Preparation for and participation in call with Otterbourg team re: engagement wrap and remaining efforts | 0.9 | 513.00 |
| Case Administration | 11/20/2018 | KAG | Discussed engagement wrapup with Otterbourg | 0.5 | 285.00 |
| Case Administration | 11/27/2018 | KAG | Preparation and participatin in call with Otterbourg, re: case administration | 0.8 | 456.00 |
| Case Administration | 11/30/2018 | KAG | Prepare for and participate in update meeting with Receiver | 0.5 | 285.00 |
| **Total** | | | | **10.8** | **$6,178.50** |
| **Grand Total** | | | | **64.6** | **$37,334.50** |

# EXHIBIT E

**Exhibit E - Detail of Expenses Incurred Organized Chronologically by Expense Category**

| Date | Expense Category | Description | Amount | |
|------|------------------|-------------|--------|---|
| 11/2/2018 | Telephone | Teleconference charges | $ | 8.29 |
| **GRAND TOTAL:** | | | $ | 8.29 |

# EXHIBIT F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,   :
                                       :
                 Plaintiff,        :
                                         :        No. 16-cv-6848 (BMC)
                                         :
     -v-                               :
                                       :
PLATINUM MANAGEMENT (NV) LLC;      :
PLATINUM CREDIT MANAGEMENT, L.P.;  :
MARK NORDLICHT;               :
DAVID LEVY;                   :
DANIEL SMALL;                 :
URI LANDESMAN;               :
JOSEPH MANN;                 :
JOSEPH SANFILIPPO; and         :
JEFFREY SHULSE,             :
                                       :
                Defendants.    :
------------------------------------------------------------X

**CERTIFICATION IN SUPPORT OF FIFTH INTERIM AND FINAL APPLICATION OF
CONWAY MACKENZIE CAPITAL ADVISORS, LLC FOR THE ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING
THE PERIOD OCTOBER 1, 2018 THROUGH DECEMBER 31, 2018**

       I, Kenneth T. Latz (the "Certifying Professional"), hereby certify that Conway MacKenzie

Capital Advisors, LLC ("CM"), has designated me as the Certifying Professional with respect to

the Certification required by Section A of the Billing Instructions for Receivers in Civil Actions

Commenced in the U.S. Securities and Exchange Commission (the "SEC Billing Guidelines") and

further certify that:

       1.      I am a Senior Managing Director at CM.

       2.      I have read the Fifth Interim and Final Application of CM for Allowance of

Compensation and Reimbursement of Expenses Incurred during the Period October 1, 2018

through December 31, 2018 (the "Fifth Interim and Final Application").

3.      To the best of my knowledge, information and belief formed after reasonable inquiry, the Fourth Interim Application and all fees and expenses sought therein are true and accurate and comply with the SEC Billing Guidelines.

4.      All fees contained in the Fifth Interim and Final Application are based on the rates listed in the Fee Schedule (Exhibit B to the Fifth Interim and Final Application), subject to the discounts described in the Fifth Interim and Final Application, and all such fees are reasonable, necessary, and commensurate with the skill and experience required for the activity performed.

5.      All necessary and reasonable expenses contained in the Fifth Interim and Final Application are based on the actual cost incurred by CM.  CM has not included in the amounts for which expense reimbursement is sought any amortization of the cost of any investment, equipment, or capital outlay (except to the extent any such amortization is included within the permitted allowable amounts for photocopies and fax transmission).

6.      In seeking reimbursement for an outside vendor service, which CM justifiably purchased or contracted for from a third party, CM requests reimbursement only for the actual amount billed to CM by the third party vendor and paid by CM to such vendor.  CM is not making a profit on such reimbursable service.

7.      I represent that (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and (ii) with the exception of the SEC Billing Guidelines, CM has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

/s/ Kenneth T. Latz_____
Kenneth T. Latz
Certifying Professional

Date:  June 26, 2019