UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION, :
:
                 Plaintiff, :
: No. 16-cv-6848 (BMC)
:
  -v- :
:
PLATINUM MANAGEMENT (NY) LLC; :
PLATINUM CREDIT MANAGEMENT, L.P.; :
MARK NORDLICHT; :
DAVID LEVY; :
DANIEL SMALL; :
URI LANDESMAN; :
JOSEPH MANN; :
JOSEPH SANFILIPPO; and :
JEFFREY SHULSE, :
:
                 Defendants. :
------------------------------------------------------------X

**SEVENTEENTH INTERIM APPLICATION OF GOLDIN ASSOCIATES, LLC FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING THE PERIOD JULY 1, 2021 THROUGH SEPTEMBER 30, 2021**

Goldin Associates, LLC ("Goldin"), as financial advisor to Melanie L. Cyganowski, the Court-appointed receiver (the "Receiver") for Platinum Credit Management, L.P., Platinum Partners Credit Opportunities Master Fund LP ("PPCO"), Platinum Partners Credit Opportunities Fund (TE) LLC, Platinum Partners Credit Opportunities Fund LLC, Platinum Partners Credit Opportunity Fund (BL) LLC, Platinum Liquid Opportunity Management (NY) LLC, Platinum Partners Liquid Opportunity Fund (USA) L.P., Platinum Partners Liquid Opportunity Master Fund L.P, Platinum Partners Credit Opportunities Fund International Ltd, and Platinum Partners Credit Opportunities Fund International (A) Ltd. (collectively, the "Receivership Entities" or

1

"Platinum"),[1] hereby submits its Seventeenth Interim Application for Allowance of Compensation and Reimbursement of Expenses Incurred During the Period July 1, 2021 through September 30, 2021 ("Seventeenth Interim Application"). Goldin respectfully requests interim approval for payment of $52,170.75 in professional fees incurred for the period July 1, 2021 through September 30, 2021 (the "Seventeenth Application Period").

Goldin's Seventeenth Interim Application contains the following sections:

(a) **Section I** contains a preliminary statement on Goldin's activities in this case during the Seventeenth Application Period.

(b) **Section II** contains information about Goldin and the case's status, as required by Section C of the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Receivership Billing Instructions"). Section II also includes a description of each exhibit to this Seventeenth Interim Application, as well as the reduction in fees agreed to by Goldin in connection with its appointment as financial advisor to the Receiver.

(c) **Section III** contains a narrative of the work that Goldin professionals performed under each activity category, as required by Section D of the SEC Receivership Billing Instructions.

(d) **Section IV** summarizes the expenses for which Goldin seeks reimbursement, as required by Section E of the SEC Receivership Billing Instructions.

(e) **Section V** describes the standards to be applied by the Court in determining fee awards in SEC equity receiverships.

---

[1] On December 29, 2017, the Court entered an order approving the expansion of the Receivership Estate to include the following entities: (i) Platinum Partners Liquid Opportunity Master Fund L.P.; (ii) Platinum Partners Credit Opportunities Fund International Ltd; and (iii) Platinum Partners Credit Opportunities Fund International (A) Ltd [Docket No. 298].

    (f)  **Section VI** describes the holdback arrangement to which Goldin has agreed.

## I. PRELIMINARY STATEMENT

1. During the Seventeenth Application Period, Goldin continued to assist the Receiver to devise disposition strategies for the remaining assets.

2. In addition, during the Seventeenth Application Period, Goldin assisted the Receiver and her legal counsel in analyzing potential investor and creditor claims, as well as in developing a proposed plan of distribution.

3. Finally, during the Seventeenth Application Period, Goldin continued to manage a variety of cash disbursement and budgeting protocols on behalf of the Receivership Estate. For instance, Goldin (i) prepared 13-Week cash receipts and disbursements forecasts; (ii) performed weekly actual vs. forecasted variance analyses regarding Platinum's cash position; (iii) oversaw the procedures governing the review and approval of disbursements (including payroll); and (iv) conducted daily and weekly reconciliations of Platinum's cash and brokerage accounts.

## II. APPLICATION REQUIREMENTS

  **A.** **Information about the Applicant and the Application**

4. **Application Period**. This application covers the period of July 1, 2021 through September 30, 2021.

5. **Appointment of the Receiver**. On December 19, 2016, the U.S. Attorney for the Eastern District of New York unsealed an eight-count indictment (the "Indictment") against seven individuals who were formerly affiliated with Platinum, a purported $1.7 billion hedge-fund family based in New York. The Indictment alleged that the defendants defrauded Platinum investors through, among other things, the overvaluation of assets, the concealment of severe cash flow

problems and the preferential payment of redemptions. The Indictment also charged four of the defendants with defrauding the independent bondholders of Black Elk Energy Offshore Operations, LLC, a portfolio company owned by Platinum, through a fraudulent offering document and diverting more than $95 million in proceeds to Platinum by falsely representing in the offering document that Platinum controlled approximately $18 million of the bonds when, in fact, Platinum controlled more than $98 million of the bonds.

On December 19, 2016, the SEC filed this action, asserting violations of the anti-fraud provisions of federal securities laws and seeking, among other relief, temporary and permanent injunctive relief, disgorgement of ill-gotten gains, imposition of civil penalties, and appointment of a receiver [Docket No. 1].

On December 19, 2016, the Court entered an Order to Show Cause and Temporary Restraining Order against the defendants, granting certain specified relief to the SEC, including the appointment of a receiver, and granting the receiver control over the assets of the Receivership Entities [Docket No. 5].

Also on December 19, 2016, the Court entered the Order Appointing Receiver, as amended on January 30, 2017 [Docket Nos. 6 and 59], naming Bart Schwartz as the initial receiver.

On January 31, 2017, the initial receiver sought to retain Cooley LLP as his counsel and Guidepost Solutions LLC to advise, assist and support him with his duties as receiver. [Docket Nos. 63 and 65]. Such retention applications were approved by the Court on February 17, 2017.

On June 23, 2017, Mr. Schwartz requested that the Court approve his resignation as receiver, effective upon the Court's appointment of a successor receiver [Docket No. 170]. On

July 6, 2017, the Court accepted the resignation of Mr. Schwartz and appointed Melanie L. Cyganowski as his successor [Docket No. 216].

6. **Appointment of the Applicant**. The Amended Receiver Order authorized the Receiver to engage professionals to assist in fulfilling her duties. On July 21, 2017, the Court approved Goldin's retention as the Receiver's financial advisor *nunc pro tunc* to July 6, 2017 [Docket No. 232].

7. **Fee Schedule**. The names and hourly rates of the Goldin professionals who billed time during the Seventeenth Application Period is attached as **Exhibit B** (the "Fee Schedule"). The fees requested in this Seventeenth Interim Application were determined on the basis of the hours worked by Goldin professionals and Goldin's usual and customary hourly rates in effect at the time of its retention in this matter, as modified by a 10% public service discount.

8. **Prior Applications**. This application is interim and is Goldin's seventeenth fee and expense application in this case. The fees and expenses requested by Goldin in its previous fee and expense applications were allowed and paid as follows:

| Period | Order Date Docket No. | Amount Requested | | Amount Allowed | | Amount Paid to Date | |
|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| 7/6/17-9/30/17 | 12/5/17 Docket No. 290 | $985,666.50 | $1,350.24 | $985,666.50 | $1,360.24 | $788,533.20 | $1,350.24 |
| 10/1/17-12/31/17 | 3/05/18 Docket No. 310 | $629,210.25 | $1,825.42 | $629,210.25 | $1,825.42 | $471,907.69 | $1,825.42 |
| 1/1/18-3/31/18 | 6/17/18 Docket No. 341 | $744,147.00 | $1,689.42 | $744,147.00 | $1,689.42 | $595,317.60 | $1,689.42 |

5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/1/18-6/30/18 | 12/17/18 Docket No. 428 | $970,161.75 | $1,937.01 | $970,161.75 | $1,937.01 | $776,129.40 | $1,937.01 |
| 7/1/18-9/30/18 | 12/17/18 Docket No. 427 | $805,900.50 | $1,124.35 | $805,900.50 | $1,124.35 | $644,720.40 | $1,124.35 |
| 10/1/18-12/31/18 | 7/16/19 Docket No. 477 | $834,330.38 | $1,956.81 | $834,330.38 | $1,956.81 | $667,464.30 | $1,956.81 |
| 1/1/19-3/31/19 | 7/16/19 Docket No. 479 | $504,528.79 | $1,112.83 | $504,528.79 | $1,112.83 | $444,807.08 | $1,112.83 |
| 4/1/19-6/30/19 | 12/26/19 Docket No. 508 | $259,250.84 | $597.41 | $259,250.84 | $597.41 | $220,358.85 | $597.41 |
| 7/1/19-9/30/19 | 12/30/19 Docket No. 510 | $101,240.21 | $26.56 | $101,240.21 | $26.56 | $89,147.40 | $26.56 |
| 10/1/19-12/31/19 | 3/9/20 Docket No. 528 | $128,003.86 | $84.48 | $128,003.86 | $84.48 | $110,565.83 | $84.48 |
| 1/1/20-3/31/20 | 6/4/20 Docket No. 534 | $137,160.56 | $41.29 | $137,160.56 | $41.29 | $110,167.40 | $41.29 |
| 4/1/20-6/30/20 | 11/12/20 Docket No. 545 | $141,727.50 | $19.51 | $141,727.50 | $19.51 | $113,401.51 | $19.51 |
| 7/1/20-9/30/20 | 12/21/20 Docket No. 558 | $80,642.25 | $51.55 | $80,642.25 | $51.55 | $64,565.35 | $51.55 |
| 10/1/20-12/31/20 | 6/11/21 Docket No. 568 | $89,599.50 | $11.88 | $89,599.50 | $11.88 | $71,679.60 | $11.88 |
| 1/1/21-3/31/21 | 8/2/21 Docket No. 589 | $52,069.50 | $1.92 | $52,069.50 | $1.92 | $41,655.60 | $1.92 |
| 4/1/21 – 6/30/21 | 11/23/21 Docket No. 601 | $91,842.50 | $0.00 | $91,842.50 | $0.00 | $73,474.00 | $0.00 |

B.     Case Status

6

9. **Cash on Hand and Unencumbered Funds**. As of September 30, 2021, the Receivership Entities had approximately $20.7 million in funds.

(a) **Accrued Administrative Expenses**. As of September 30, 2021, it is estimated that accrued, unpaid administrative expenses amount to approximately $5.7 million. These administrative expenses primarily consist of accrued and unpaid professional fees. In addition to these unpaid administrative expenses, the Receivership Estate paid remaining in-house Platinum staff and other operating expenses during the Seventeenth Application Period.

10. **Summary of Receipts and Disbursements**. Cash disbursements during the Seventeenth Application Period totaled $943,385. This amount consisted primarily of (i) $783,625 in professional expenses; and (ii) $153,825 in business asset expenses (payroll and related expenses paid to Platinum employees, as well as office rent).

Cash receipts during the Seventeenth Application Period totaled $27,093, consisting of interest and a return of a security deposit with respect to a prior office lease.

11. **Closing of Case**. Goldin cannot at this time state when the Receiver will deem it appropriate to seek the conclusion of this case.

12. **Summary of Creditor Claims Proceedings**. Pursuant to the previously-approved bar date procedures motion [Docket No. 453], the bar date to file a proof of claim asserting a claim arising before the Receivership was March 29, 2019 and the bar date for governmental units to file a proof of claim was April 12, 2019. In total, 327 claims were filed prior to the applicable bar date. Some of these claims may be duplicate claims and some may be asserted against non-Receivership Entities. Parties holding investor claims, claims for unpaid redemptions and administrative claims were not required to file proofs of claim.

The Receiver will likely be objecting to certain of the filed and/or deemed filed claims in whole or in part. To facilitate the objection process, the Receiver filed a motion seeking to implement procedures for the reconciliation of claims and the verification of the investment and withdrawal amounts with respect to the interests held by investors (the "Claims Procedures Motion"). The Court entered an Order approving the Claims Procedures Motion on December 1, 2020 [Docket No. 554]. Subject to her soon-to-be completed review of filed claims, the Receiver will be filing a notice of her determinations with respect to each of the claims and claimants will have an opportunity to respond, if necessary in accordance with the procedures provided for by the Claims Procedures Order.

The Claims Procedures Motion only sought the Court's approval of the Receiver's proposed procedures for finalizing the reconciliation and verification of claims and interests; it did not seek approval of the validity, amount, classification, or distribution methodology on account of any claims against, or interests in, any of the Receivership Entities. The Receiver will be filing a separate motion with the Court to approve a plan for making distributions to claimants and investors. The formulation of the plan is ongoing.

13.     **Summary of Assets**. The primary assets of the Receivership Estate consist of the following:

    (a)     Cash and cash equivalents of approximately $20.7 million.

    (b)     Remaining stock and royalty interests, litigation financing and other miscellaneous investments; and

    (c)     Potential litigation claims.

14. **Liquidated and Unliquidated Claims**. The Receiver currently holds no liquidated litigation recoveries.

### C. SEC Review

15. Goldin submitted this Seventeenth Interim Application to the SEC and allowed for a thirty-day review period, as required by the SEC Receivership Billing Instructions.

### D. Exhibits

16. The Seventeenth Interim Application contains the following exhibits:

(a) **Exhibit A**: The Standardized Fund Accounting Report ("SFAR") for the period July 1, 2021 through September 30, 2021.

(b) **Exhibit B**: A Fee Schedule showing the total fees billed, hours worked and hourly rates of each Goldin professional involved.

(c) **Exhibit C**: A summary of the total fees billed and hours worked by activity category.

(d) **Exhibit D**: Time records of Goldin professionals listed chronologically by activity category, as required by Section D.5 of the SEC Receivership Billing Instructions.

(e) **Exhibit E**: A summary of all expenses incurred by Goldin, organized by expense category, as required by Section E.1a of the SEC Receivership Billing Instructions.

(f) **Exhibit F**: The certification contemplated by Section A.1 of the SEC Receivership Billing Instructions.

### III. SERVICES RENDERED BY GOLDIN DURING THE SEVENTEENTH APPLICATION PERIOD

9

17. Goldin professionals recorded services performed in time increments of one tenth (0.1) of an hour. Goldin made use of a lean team; the senior professionals involved each brought distinct, but essential, expertise to the engagement and were the primary responsible party on different tasks.

18. Per Section D.3 of the SEC Receivership Billing Instructions, Goldin accounted for its time charges during the Seventeenth Application Period by activity categories. Narrative summaries of these activity categories follow.

19. **Accounting (01)**. $5,832.00 requested. During the Seventeenth Application Period, Goldin continued to manage a variety of cash disbursement and budgeting protocols. For example, on a weekly basis, Goldin prepared 13-week cash flow forecasts and variance analyses, which enhanced the Receivership Estate's ability to monitor and manage its cash position. Goldin also conducted periodic reconciliations of Platinum's cash and brokerage accounts as a control. Additionally, Goldin provided day-to-day oversight of Platinum's accounting function, which included monitoring work performed by Platinum's Chief Financial Officer. Karthik Bhavaraju is the only Goldin professional who billed time in this activity category during the Seventeenth Application Period. Mr. Bhavaraju has principal responsibility for overseeing Platinum's cash disbursement and budgeting protocols.

20. **Asset Disposition (03)**. $20,002.50 requested. During the Seventeenth Application Period, Goldin assisted the Receiver with respect to the monetization of Platinum's portfolio positions. Curtis Solsvig is the only Goldin professional who billed time in this activity category during the Seventeenth Application Period. Mr. Solsvig has principal responsibility for executing disposition strategies on behalf of the Receivership Team.

21. **Case Administration (06)**. $26,336.25 requested. The Receivership Team endeavored throughout the Seventeenth Application Period to administer the Receivership Estate efficiently. Accordingly, Goldin conferred frequently with the Receiver and her legal counsel to ensure that efforts were coordinated to maximize efficiency. In addition, Goldin's internal team members met to plan their approach to necessary tasks.

The effective administration of the Receivership Estate also entails communicating with third parties about the status of the Receivership, and addressing questions related thereto. In addition, Goldin assisted the Receiver and her legal counsel in drafting the status report filed with the Court on July 20, 2021. Goldin professionals who billed time in this activity category during the Seventeenth Application Period included Marc Kirschner, William Edwards, Curtis Solsvig and Karthik Bhavaraju. Mr. Kirschner and Mr. Edwards have principal responsibility for organizing Goldin personnel to ensure that their assigned tasks are executed effectively and efficiently. The time billed by Mr. Solsvig and Mr. Bhavaraju in this category relate in significant measure to their participation in coordination meetings with members of the Receivership Team.

## IV. EXPLANATION OF EXPENSES AND RELATED POLICIES

22. Goldin did not incur any reimbursable out-of-pocket expenses during the Seventeenth Application Period.

## V. FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

23. The case law on equity receiverships sets forth the standards for approving receiver compensation and the fees and expenses for the receiver's retained professionals. The District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and her retained professionals and "may consider all of the factors involved in a particular receivership in determining the appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253

(7th Cir. 1994). Many authorities (some quite dated) provide "convenient guidelines," but in the final analysis, "the unique fact situation renders direct reliance on precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

24. In allowing professional fees in receiverships, "[t]he court will consider . . . the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); s*ee also United States v. Code Prods*., 362 F.2d 669, 673 (3rd Cir. 1966) (court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained). "'[R]esults are always relevant.'" *Securities & Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992), *quoting Moody,* 374 F. Supp. at 480, as are the extent to which "a receiver reasonably and diligently discharges his duties." *Id*.

25. Under these standards Goldin has demonstrated that the amount of fees requested is appropriate. Goldin, in concert with the rest of the Receivership Team, has acted with appropriate dispatch to develop and execute monetization strategies for the Platinum assets. In addition, Goldin, again acting in concert with the rest of the Receivership Team, has expended meaningful effort to analyze potential claims in connection with the preparation of a plan of distribution.

**VI. HOLDBACK**

26. Goldin has agreed to hold back twenty percent (20%) of its allowed fees for all activity categories, save for the "Litigation Consulting" category. With regard to allowed fees

12

associated with the "Litigation Consulting" category, Goldin has agreed to hold back five percent (5%) of these fees.   The holdbacks described in this section, collectively, constitute the Holdback Amount.  All payments will be made from the Receivership assets.

WHEREFORE, Goldin respectfully requests that the Court:

(a) grant interim approval of Goldin's request for compensation in the amount of $52,170.75;

(b) authorize the Receiver to immediately pay from the Receivership assets (i) the allowed fees of Goldin, less the Holdback Amount; and

(c) grant such other relief as the Court deems appropriate.

Dated: December 6, 2021
New York, NY

Respectfully submitted,

/s/ Marc S. Kirschner
Marc S. Kirschner
Senior Managing Director
Goldin Associates, LLC
350 Fifth Avenue
44th Floor
New York, NY 10118
Telephone: (212) 593-2255
mkirschner@goldinassociates.com

Of Counsel:
Jonathan E. Goldin
General Counsel
Goldin Associates, LLC
350 Fifth Avenue
44th Floor
New York, NY 10118
Telephone: (212) 593-2255
jegoldin@goldinassociates.com